payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

**§ 9.4 CERTIFICATES FOR PAYMENT**
**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION**
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of:
    .1    defective Work not remedied;

**Init.**

**AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                              (2404291990)**

**27**

.2 third party claims ...ed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5 damage to the Owner or another contractor;

.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7 persistent failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**§ 9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## § 9.7 FAILURE OF PAYMENT

**§ 9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                        (2404291990)

Init.

/

28

## § 9.8 SUBSTANTIAL COMPLETION

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT

§ 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                    (2404291990)

29

AUA 000044

the final Certificate is due and pa~ole. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ 9.10.3 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:
   .1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
   .2    failure of the Work to comply with the requirements of the Contract Documents; or
   .3    terms of special warranties required by the Contract Documents.

§ 9.10.5 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
## § 10.1 SAFETY PRECAUTIONS AND PROGRAMS
§ 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

## § 10.2 SAFETY OF PERSONS AND PROPERTY
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
   .1    employees on the Work and other persons who may be affected thereby;
   .2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
   .3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 10.2.2 The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                     (2404291990)

30

**§ 10.2.3** The Contractor shall erec.....d maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

### § 10.3 HAZARDOUS MATERIALS

**§ 10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**§ 10.4** The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

---

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No. 1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                    (2404291990)

31

AUA 000046

§ 10.5 If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

§ 10.6 EMERGENCIES
§ 10.6.1 In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Section 4.3 and Article 7.

ARTICLE 11  INSURANCE AND BONDS
§ 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

  .1    claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

  .2    claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

  .3    claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

  .4    claims for damages insured by usual personal injury liability coverage;

  .5    claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

  .6    claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

  .7    claims for bodily injury or property damage arising out of completed operations; and

  .8    claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ 11.1.2 The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

§ 11.1.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

§ 11.2 OWNER'S LIABILITY INSURANCE
§ 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

§ 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                    (2404291990)

32

**§ 11.3.2** To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**§ 11.3.3** The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

**§ 11.4 PROPERTY INSURANCE**
**§ 11.4.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**§ 11.4.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**§ 11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**§ 11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**§ 11.4.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**§ 11.4.1.5** Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**§ 11.4.2** Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**§ 11.4.3** Loss of Use Insurance. The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                    (2404291990)

**33**

**§ 11.4.4** If the Contractor request.    writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**§ 11.4.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**§ 11.4.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**§ 11.4.7** Waivers of Subrogation.  The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 11.4.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**§ 11.4.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**§ 11.4.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## § 11.5 PERFORMANCE BOND AND PAYMENT BOND
**§ 11.5.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

Init.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1987 and 1997 by The American Institute of Architects.  All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/18/2009, and is not for resale.
User Notes:

(2404291990)

34

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12  UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
§ 12.2.1.1 The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION
§ 12.2.2.1 In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ 12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                          (2404291990)

**35**

Documents may be sought to be ...orced, nor to the time within which proceedings ma; ue commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

### § 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### ARTICLE 13   MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW
§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

### § 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE
§ 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                        (2404291990)

**36**

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

### § 13.6 INTEREST
§ 13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

### § 13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD
§ 13.7.1 As between the Owner and Contractor:
> .1 Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;
>
> .2 Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and
>
> .3 After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT
### § 14.1 TERMINATION BY THE CONTRACTOR
§ 14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:
> .1 issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;
>
> .2 an act of government, such as a declaration of national emergency which requires all Work to be stopped;
>
> .3 because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
>
> .4 the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                      (2404291990)

37

by the Owner as described in Se...  14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

§ 14.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE

§ 14.2.1 The Owner may terminate the Contract if the Contractor:

  .1    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

  .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

  .3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

  .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

  .1    take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

  .2    accept assignment of subcontracts pursuant to Section 5.4; and

  .3    finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 14.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

## § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE

§ 14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

  .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

  .2    that an equitable adjustment is made or denied under another provision of the Contract.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The America Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356899_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                      (2404291990)

**38**

**§ 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**

**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1    cease operations as directed by the Owner in the notice;

    .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/15/2009, and is not for resale.
User Notes:                                                                                                    (2404291990)

**39**

# Additions and Deletions Report for
## AIA® Document A201™ – 1997

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 13:26:35 on 09/24/2008.

### PAGE 1

American University of Antigua
College of Medicine

...

*(Name and address):*
AUA College of Medicine
c/o Greater Caribbean Learning Center
New York, NY 10005

...

*(Name and address):*
Sundaram Architects PVT. Ltd.
No. 19 Kumara Krupa Road.
Bangalore 560-001
India

### PAGE 21

§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.  Location of any Arbitration will be Antigua.

Additions and Deletions Report for AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                              (240421990)

1

AUA 000055

Exhibit B

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LEEWARD CONSTRUCTION COMPANY, LTD., <br><br> Claimant, <br><br> vs. <br><br> AMERICAN UNIVERSITY OF ANTIGUA – COLLEGE OF MEDICINE, <br><br> Respondent. | Case No.: 50 110 T 00075 11 |

## FINAL AWARD

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into between the above named parties and dated September 25, 2008, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and the parties having agreed that the Arbitrators need to render a reasoned award, do hereby, AWARD, as follows:

I.    BRIEF PROCEDURAL BACKGROUND:

The present case was brought on February 3, 2011 by Leeward Construction Company, LTD. ("Leeward") against American University of Antigua - College of Medicine ("AUA"), claiming the amount of EC $13,161,137[1] from a dispute that arose out of the construction of a medical school in St. Johns, Antigua.    Leeward claimed that AUA breached their contract and sought remedies under § 4.6 of the Contract, henceforth, demanded arbitration for the disputes set forth in their claim.

AUA filed a response on March 4, 2011, stating that Leeward's claim was so vague, confusing and contradictory that AUA was not in the position to understand the basis for the claims.

The Panel was selected and sworn on July 6th, 2011, comprised by Attorneys José R. Capó, Jorge R. Jiménez and Professional Engineer Héctor M. Varela.  Attorney Jiménez was designated Chair of the Panel.

On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC $6,800.572.28 in damages.  AUA filed its Answering Statement and Counterclaim on November 30, 2011.

---

[1] Whenever reference is made to a monetary sum, same shall be understood to be represented in Eastern Caribbean (EC) dollars, unless otherwise stated.

On December 12, 2011, Leeward filed a Statement objecting AUA's claims for liquidated damages and delay damages, arguing that such claims have been presented untimely. On December 23, 2011, AUA's filed a Statement in opposition to the motion presented by Leeward to dismiss AUA's counterclaims, asserting the timeliness of its claims.

Afterwards both parties commenced discovery proceedings and filed numerous motions including dispositive motions, the resolution of which the Panel held in abeyance until the holding of the Hearings to be decided as part of the Final Award. We will discuss same in detail in *Section III* of this Award. The Hearings were held in the Marriott Courtyard in Isla Verde, Puerto Rico, from March 5th through March 9th 2012. On April 11, 2012, AUA withdrew from its Answering Statement and Counterclaim the portion that sought actual damages and left only those claims for liquidated damages in the amount of US $117,000.00 and for attorneys' fees and expenses. As per their request, the parties submitted their Proposed Findings of Facts and Conclusions of Law on April 20, 2012. The parties also submitted rebuttal briefs on May 4th, 2012.

The Panel declared the hearings closed and the case submitted for resolution on May 22, 2012.

This case was administered under the AAA Construction Industry Arbitration Rules ("CIAR") as amended and in effect October 1, 2009.

## II.    UNCONTESTED FACTS:

1.      Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.

2.      AUA is owned by the GCLR, LLC, a limited liability company organized and existing under the laws of the State of New York, with office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York, U.S.A.

3.      In the Spring of 2008, AUA and Leeward began to negotiate the terms of a contract to construct the structural works portion of the AUA's new medical school campus in Antigua.

4.      AUA and Leeward entered into a Letter of Intent on or about April 21, 2008 which was signed by Neal Simon, President of AUA, and Andy Green, Managing Director of Leeward. A copy of the April 21, 2008 Letter of Intent was marked as LC 69.

5.      AUA and Leeward entered into a second Letter of Intent on or about May 10, 2008, which was signed by Corey Greenberg, Chief Operating Officer of AUA, and Andy Green, Managing Director of Leeward. A copy of the May 10, 2008 Letter of Intent was marked as LC 70.

6.      On September 25, 2008, Leeward (as contractor) and AUA (as project owner) executed a contract for the construction of the College of Medicine in St. John's

Antigua for the fixed price of EC $27,436,824.00, subject to additions and deductions as provided in the Contract Documents, under the AIA Contract Document (A101-1997).

7.     The parties agreed that the commencement date for the works was May 1, 2008.

8.     Leeward had to achieve substantial completion of the entire work in 364 calendar days or as follows:

| Portion of the work | Substantial Completion Date |
|---|---|
| Classroom block | 29/01/2009 |
| Lab Block | 06/03/2009 |
| Service Block | 29/01/2009 |
| Library and Admin. Block | 30/04/2009 |

9.     Lt. Colonel Roche Antony was AUA's representative for the project and signed the Contract Documents on AUA's behalf.

10.    Neil Dickinson was Leeward's Project Manager for the project and signed the Contract Documents on Leeward's behalf.

11.    Sundaram Architects Pvt., Ltd. ("SAPL" or the Architect") was the architect that designed AUA's new Medical School Campus.  A.S. Nagesh served as the Architect's representative.

12.    Leeward and AUA also entered into a number of Separate Contracts, including a contract to install the doors and windows dated July 13, 2009 (marked as LC 228) and a contract of laying floor tiles dated July 13, 2009 (marked as LC 229).

13.    On February 3, 2011, Leeward filed a Demand for Arbitration seeking EC$13,161,137.00 in damages.

14.    On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC$6,800,572.28 in damages.

III.    **TRIAL EXHIBITS:**

A) Leeward's Trial Exhibits

*Exhibit list 1-245 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

B) AUA's Trial Exhibits

*Exhibit list 1-71 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

3

IV.    WITNESSES:

A) Leeward's Witnesses

1.  Robert Winwood-Senior Quantity Surveyor for Leeward, from Sept. 1, 2008-August 14, 2009.  He was responsible for administration and surveying of the work with respect to the Construction of the AUA Project.

2.  Eric Linde-Director of Leeward. Over 45 years of hands on experience in the Construction Industry in Antigua and US.

3.  Neil Dickinson-Projects Director for Leeward from March 1, 2007 to Feb. 17, 2009, then managing director until Oct. 9, 2009, and was responsible for contract negotiations and administration of the works with respect to the Construction of the AUA Project.

4.  Andy Green-Managing Director of Leeward.

B) AUA's Witnesses

1.  Prabhu Marudheri-Executive Director of Finance for GCLE, LLC, an agent for AUA.

2.  Peter McLeod-Partner with DHP Associates, a firm of Chartered Quantity Surveyors and Project Managers located in the Bahamas.

3.  A.S.Nagesh-Architects' representative.

4.  Lt. Col. Roche Antony-General Manager on behalf of AUA, for the project.

V.    INTERLOCUTORY MATTERS:

1.    Controversy:

Leeward's request to strike the testimony of AUA's witness Peter McLeod based on the fact that same is expert testimony, which AUA had represented it would not be using.  The Panel must decide if said testimony is factual or expert testimony.

    Panel's Decision:

Refer to the Panel's Decision in section VI. (A-25).

2.    Controversy:

AUA's motion requesting dismissal of Leeward's claims for amounts unpaid or due under the contracts for additional work.  The Panel must decide if: (1) Leeward's claim for unpaid

4

balances and monies owed for additional works was included in the Amended Demand for Arbitration, henceforth, providing AUA with due process; and (2) if the parties submitted to arbitration said claims in this proceeding.

Panel's Decision:

After reviewing both parties' arguments and careful analysis of the questions posed, this Panel finds that all claims arising from the Separate Contracts are not subject to this Arbitration. We find in favor of AUA and conclude that the arbitration clause that both parties agreed to, only reached claims arising out of or relating to the original Contract. Nothing in the Separate Contracts evidence intent from the parties to subject same to arbitration, nor does the record show that AUA agreed to arbitrate disputes under the Separate Contracts.

3.   Controversy:

AUA's motion requesting that Leeward's claims be dismissed for untimely filing. This Panel must decide if dismissal is appropriate against Leeward, because Leeward's claim for final payment was initiated in violation of the 21 day notice requirement, and because Leeward's 16-20 month delay in commencing arbitration was unreasonable.

Panel's Decision:

After due analysis, this Panel denies AUA's motion requesting that Leeward's claims be dismissed for untimely filing.

4.   Controversy:

Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing. This Panel must determine if AUA filed the counterclaim within the time period stated under Section R-4(c)(ii) of the AAA's CIAR.

Panel's Decision:

After due analysis, this Panel denies Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.

## VI.   CONTROVERSIES SUBMITTED TO THE PANEL FOR RESOLUTION:

### A.   Claimant's (Leeward's) controversies submitted to arbitration:

1.   Controversy:

Whether the Contract is a fixed price contract subject to additions or deletions by change order or whether the Contract price is based upon measured works?

Panel's Decision:

The Panel rules that the Contract is a fixed price contract subject to additions and deletions. Leeward is entitled to receive compensation for work performed.  Even though the Contract provides that additions and deletions should be made by formal change orders, from the evidence considered by the Panel it appears that both parties waived this requirement.

2.   Controversy:

Whether AUA breached the Contract with respect to the issuance of change orders, certificates of substantial completion, certificate of final completion, the review, certification, and payment of payment requisitions, the determination of claims, and the administration of the Contract?

Panel's Decision:

This Panel finds that both parties failed in their contractual responsibility to follow and enforce the General Conditions of the Contract AIA 201-1997.  The respective liability of each party with respect to certain claims will be addressed in this Final Award.

3.   Controversy:

Whether AUA breached the Contract by failing to timely pay the amount due on payment requisitions?

Panel's Decision:

This Panel finds that AUA did breach the Contract on this matter. In many instances AUA had concerns regarding the quantities invoiced, however, there were reasonable alternatives in case the parties did not reach an agreement to issue the partial payments, as stated in Article 9.5.1 of the Contract. This Panel rules that holding the entire amount was far from reasonable and fair.

4.   Controversy:

If AUA breached the Contract by failing to timely pay the amount due on payment requisitions, is Leeward entitled to interest on the late payments at the legal rate under the laws of Antigua and if so, whether l0% per annum is the proper rate?

Panel's Decision:

This Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under sections 7.2 and 13.6.1 of the Contract and General Conditions. However, this Panel agrees with AUA in that the interest agreed upon by the parties was the "legal rate" and therefore interest shall be calculated at 7% per annum.

5.   Controversy:

If the Contract was for a fixed price, is Leeward entitled to payment for work that AUA omitted, deleted or modified from the Contract's original scope of work?

Panel's Decision:

No. Leeward is only entitled to payment for work performed. However, this Panel finds that Leeward is entitled to damages in the amount of EC $ 232,670.13 for work that was deleted

7

from the Contract and then assigned to Leeward under Separate Contracts, under the bad faith doctrine.

6.    Controversy:

If the Contract price is based upon measured works, what adjustments should be made to the Contract sum for work omitted, deleted or modified from the Contract's original scope of work despite the AUA's failure and refusal to issue change orders?

Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.

7.    Controversy:

If the Contract was based upon measured works, is Leeward entitled to overhead and/or profit for work omitted, deleted or modified from the Contract's original scope of work and if so, what amount is Leeward entitled to for overhead and/or profit on omitted, deleted or modified work?

Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost. When both additions and credits covering related work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change, i.e., AIA Document A201-1997 General Conditions of the Contract for Construction, Section 7.3.7. Therefore, Leeward is entitled to overhead and profit for work omitted, deleted or modified as claimed, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

8

8.    Controversy:

What amount is Leeward entitled to for additions to the Contract that should have been added pursuant to change orders had AUA properly issued change orders on the Project?

Panel's Decision:

This Panel finds that Leeward is entitled to receive compensation for work performed, despite any formal change orders, based on Measured Work and the Bill of Quantities (BOQ).

9.    Controversy:

Whether AUA was responsible for project delays that impaired Leeward's ability to substantially complete the Contract work by the substantial completion dates in the Contract, as extended?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were equally responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.   The numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal responsibility for both parties regarding the delays in the substantial completion.

10.  Controversy:

If AUA is responsible for project delays that impaired Leeward's ability to complete the project by the substantial completion dates in the Contract as extended, then what amount is Leeward entitled to for additional preliminaries as a result of the AUA's actions?

Panel's Decision:

This Panel finds that both parties were equally responsible for the project delays. Consequently, we find AUA responsible for 50% of the Additional Preliminaries in the

9

amount of EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. <u>Controversy:</u>

Whether Leeward was responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines?

   <u>Panel's Decision:</u>

No. *Refer to Panel Decisions in* **Section VI. (A-9) and (A-10),** *above.*

12. <u>Controversy:</u>

If Leeward is responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines, what amount is due from Leeward to AUA for liquidated damages?

   <u>Panel's Decision:</u>

*Refer to Panel Decisions in* **Section VI. (A- 9), (A-10) and (B-36),** *above.*

13. <u>Controversy:</u>

Whether Leeward substantially complied with the notice of claim provision in the Contract?

   <u>Panel's Decision:</u>

By reason of the conduct of the parties during the development, construction and liquidation of the Project, the Panel concludes that the time limit for the notice of claims stipulated in Section 4.3.2 of the General Conditions was waived, as well as Section 4.6.3 of the General Conditions referring to the initiation of an arbitration process. This decision is applicable to both parties.

14. <u>Controversy:</u>

If Leeward did not substantially comply with the notice of claim provision in the Contract, whether AUA waived compliance with such provision?

   <u>Panel's Decision:</u>

*See Panel's Decision of Controversy in* **Section VI. (A-13),** *above.*

15.  <u>Controversy</u>:

Whether AUA substantially complied with the notice of claim provision in the Contract?

   <u>Panel's Decision</u>:

*See Panel Decisions in **Section VI. (A-14) and (A-15),** above.*

16.  <u>Controversy</u>:

Whether Leeward is entitled to pre-judgment interest on its damages as a result of the

AUA's breach of the Contract?

   <u>Panel's Decision</u>:

This Panel is awarding pre-judgment interest to Leeward from October 31, 2009, as detailed

in the Award, at the rate of 7% per annum.

17.  <u>Controversy</u>:

If Leeward is entitled to pre-judgment interest on its damages, is 10% per annum the

appropriate rate of interest to be charged under the laws of Antigua and if so, from what

date should the interest begin to run?

   <u>Panel's Decision</u>:

Yes. *But see Panel's Decision to Controversy 16, above.*

18.  <u>Controversy</u>:

Whether Leeward is entitled to payment in the amount of US $30,743.20/EC $83,000.00 for

the AUA's acknowledged error in the calculation of ABST payments?

   <u>Panel's Decision</u>:

This Panel finds that the ABST error was mutually acknowledged by both parties, and not

having been originally claimed and submitted as a controversy in this Arbitration and having

been discovered and in good faith informed by AUA representatives during the Hearings,

11

the Panel concludes that this claim should be corrected outside of the context of this Arbitration.

19.  Controversy:

If Leeward is not entitled to any other damages in this proceeding, whether Leeward is entitled to the payment of US $218,566.74/EC $590,083.00 in retainage?

   Panel's Decision:

After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine.  Therefore, this Panel grants Leeward damages in an amount equal to EC $232,670.13.  As per Leeward's claim for retainage, *refer to the Panel's Decision in section VI. (B-29), infra.*

20.  Controversy:

If AUA breached the Contract, is Leeward entitled to damages as specified in Claimant's Proposed Findings of Fact and Conclusions of Law Paragraphs 130, 131, or 133 or some other amount?

   Panel's Decision:

The Panel finds that both parties breached the Contract and therefore, in some instances share direct responsibility for same.  As such, this Panel will not grant damages to Leeward as requested, but as specifically provided in the Award on page 31.

21.  Controversy:

Whether the additional works contracts Leeward entered into with AUA are subject to arbitration?

   Panel's Decision:

The Panel finds that the additional works contracts are not subject to this Arbitration.

12

22.   Controversy:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

Panel's Decision:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.

23.   Controversy:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced timely.

24.   Controversy:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25.   Controversy:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

Panel's Decision:

This Panel finds that Peter McLeod's testimony is not that of an expert witness. Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record. However, this Panel considered as factual the testimony

13

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26. <u>Controversy:</u>

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

   <u>Panel's Decision:</u>

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

**B.     RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:**

1. <u>Controversy:</u>

Is Leeward barred from seeking to be paid EC $1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

   <u>Panel's Decision:</u>

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2.    Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

    Panel's Decision:

*See Panel's Decision to Controversy 1, supra.*

3.    Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

   a)  Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? Or

   b)  Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? Or

   c)  Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

15

Panel's Decision:

This Panel will not exclude any claim under the sole contention of timeliness. Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4.    Controversy:

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?

Panel's Decision:

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5.    Controversy:

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

Panel's Decision:

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract, therefore, this Panel will not exclude

16