# Exhibit C

# REDFERN AND HUNTER ON INTERNATIONAL ARBITRATION

NIGEL BLACKABY
CONSTANTINE PARTASIDES
WITH
ALAN REDFERN
MARTIN HUNTER



OXFORD
UNIVERSITY PRESS

*The Award*

**9.123** The pattern is the same in national laws. Switzerland requires a reasoned award, as do the Netherlands and England, unless the parties agree to dispense with them.[148] In the US, however, the highest court has ruled that: 'Arbitrators have no obligation to the court to give their reasons for an award.'[149] An exception to this rule is where the parties have provided for reasons to be given in their arbitration agreement or in any arbitration rules they have chosen. The ICDR Rules require reasons to be given unless the parties agree otherwise,[150] but the AAA's domestic rules maintain the tradition in the US that reasons are not given.

**9.124** The general consensus in favour of a reasoned (or 'motivated') award is reflected in the European Convention of 1961, which states:

> The parties shall be presumed to have agreed that reasons shall be given for the award unless they
>
> (a) either expressly declare that reasons shall not be given; or
>
> (b) have assented to an arbitral procedure under which it is not customary to give reasons for awards, provided that in this case neither party requests before the end of the hearing, or if there has not been a hearing then before the making of the award, that reasons be given.[151]

### (v) Different ways of giving reasons

**9.125** The way in which reasons are given in arbitral awards varies considerably. Sometimes the reasoning (or 'motivation') is set out with extreme brevity. However, a mere statement that the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other, which was a common practice in some circles, had rightly fallen into disrepute by the end of the twentieth century. Certainly such a practice would be regarded as being defective as a matter of form by the ICC Court. In other cases, awards may run into hundreds of pages, including a detailed review of the evidence and arguments put forward by the parties, followed by a closely reasoned conclusion.

**9.126** The general practice of arbitral tribunals in international cases is to devote more time and space in the award to giving the reasons for its determination of the legal arguments than it devotes to a review of the factual issues. This is not surprising, since most arbitral tribunals in international cases are composed of lawyers.[152]

---

[148] English Arbitration Act 1996, s 52(4).

[149] *United Steelworkers of America v Enterprise Wheel Car Corp*, 363 US 593, at 598 (1960). US federal courts appear to have continued to rule consistently that arbitrators are 'not required to justify, explain, or otherwise give reasons for the . . . award'; see, eg, *Michael M Pfeifle v Chemoil Corporation* 73 Fed Appx 720, at 722 (2003).

[150] ICDR Rules, Art 27(2).

[151] European Convention of 1961, Art VIII.

[152] Even where the party-nominated arbitrators are technical specialists, expert in the subject-matter of the project or transaction, it is usual for the presiding arbitrator to be a lawyer.

---

However, it shou
intelligible decisi
the reasons for a
according to the
underlying the d

**(d) Time limits**

A limit may be i
make its award. '
tral tribunal is at
This means that

- the time limit
- the time limit

The purpose of
limits may be in
tion, by the relev

The laws of a nu
must be made, s
commenced. In
that was impose
In some states th
However, time l
parties or by cou

It is important t
one of the parti
were to run fror
ple, the end of th
of one party alo
parties, a party
extension of tin
invalidate a late
untimely award
raised. The cour
tion for denying

---

[153] See Binghar
arbitral award bein
[154] *State of Neu
2d 797.

*D. Validity of Awards*

However, it should be borne in mind by such tribunals that what is needed is an intelligible decision, rather than a legal dissertation. The object should be to keep the reasons for a decision as concise as possible and limited to what is necessary, according to the nature of the dispute. The parties want the essential *reasoning* underlying the decision, not a lesson in the law.[153]

### (d)  Time limits

A limit may be imposed as to the time within which the arbitral tribunal must make its award. When this limit is reached, the authority or mandate of the arbitral tribunal is at an end and it no longer has jurisdiction to make a valid award. This means that where a time limit exists, care must be taken to see that either:  **9.127**

- the time limit is observed; or
- the time limit is extended before it expires.

The purpose of time limits is to ensure that the case is dealt with speedily. Such limits may be imposed on the arbitral tribunal by the rules of an arbitral institution, by the relevant law, or by the agreement of the parties.

The laws of a number of countries provide for time limits within which an award must be made, sometimes starting from the date upon which the arbitration itself commenced. In India, the 1996 Arbitration Act has dispensed with a time limit that was imposed by the old law. In the US the position varies from state to state. In some states the limit is 30 days from the date on which the hearings are closed. However, time limits in the US may also be extended by mutual agreement of the parties or by court order.  **9.128**

It is important that a fixed time limit for rendering the award should not enable one of the parties to frustrate the arbitration. This might happen if a fixed limit were to run from the appointment of the arbitral tribunal rather than, for example, the end of the hearings. If a court has no power to intervene on the application of one party alone, and the time limit can be extended only by agreement of the parties, a party might frustrate the proceedings simply by refusing to agree to any extension of time. However, the courts of many countries would be reluctant to invalidate a late award in such a case. For example, in New York it was held that an untimely award was not a nullity, even though the issue of timeliness was properly raised. The court stated that, without a finding of prejudice, there was no justification for denying confirmation of the award.[154]  **9.129**

---

[153]  See Bingham, n 142 above; and for the risks that the alleged absence of reasons may lead to an arbitral award being overturned, see Redfern, 'ICSID—Losing its Appeal?' (1987) 3 Arb Intl 98.

[154]  *State of New York Department of Taxation and Finance v Valenti* 57 AD 2d 174 and 393 NYS 2d 797.