UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

           Petitioner,

      v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

          Respondents.

------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF Case)

Honorable Lewis A. Kaplan
United States District Judge

---

**RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS
MOTION TO DISMISS AND IN OPPOSITION TO THE PETITION AND MOTION TO
CONFIRM ARBITRATION AWARD**

---

SILLS CUMMIS & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 643-7000

*Attorneys for Respondents
American University in Antigua –
College of Medicine and Manipal Education
Americas, LLC f/k/a GCLR LLC*

Of Counsel and On the Brief:
    Michael B. Goldsmith
    Katherine M. Lieb

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

    A.    The Parties .................................................................................................. 3

    B.    The Arbitration............................................................................................ 4

    C.    The Arbitration Award Contains Several Significant Defects................... 7

I.      THE PETITION SHOULD BE DISMISSED ON FORUM NON
       CONVENIENS GROUNDS.................................................................................. 10

    A.    Plaintiff's Choice of Forum is Owed Little Deference............................ 13

    B.    Antigua is an Appropriate Alternative Forum for This Action............... 16

    C.    The Public and Private Factors Favor Dismissal .................................... 17

II.    LEEWARD FAILS TO STATE A CLAIM AGAINST MEA ............................ 19

III.   IN THE ALTERNATIVE, THE AWARD SHOULD BE VACATED OR
       MODIFIED OR PORTIONS OF THE AWARD SHOULD NOT BE
       ENFORCED UNDER THE NEW YORK CONVENTION .............................. 20

    A.    The Award Should Be Vacated............................................................... 22

    B.    The Defects in the Award Also Provide a Basis for Modification .......... 27

    C.    Two Portions of the Award Should Not be Enforced Under the
         New York Convention as Outside the Submission to the Arbitrator . . . .28

CONCLUSION.................................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937 (2009)....................................................................19

*Carte Blanche (Singapore) Pte., Ltd. V. Carte Blanche Intern., Ltd.*
    888 F.2d 260 (2d. Cir. 1989)............................................................................24

*Cat Charter LLC v. Shortenberger,*
    646 F.3d 836 (11th Cir. 2011) .........................................................................23

*Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's,*
    2009 WL 667272 (S.D.N.Y. Mar. 16, 2009) ...............................................11, 12

*CHS Europe S.A. v. El Attal,*
    2010 WL 3000059 (S.D.N.Y. July 22, 2010) ...............................................11, 18

*Engenharia de Projecto Ltda., v. Republic of Peru,*
    665 F.3d 384 (2d Cir. 2011).......................................................................*passim*

*Feinstein v. Curtain Bluff Resort,*
    1998 WL 458060 (S.D.N.Y. Aug. 4, 1998).................................................16, 17

*Hidrocarburos y Derivados, C.A. v. Lemos,*
    453 F. Supp. 160 (S.D.N.Y. 1978) ..................................................................20

*In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. (Monde
Re) v. NAK Naftogaz of Ukraine v. NAK Naftogaz of Ukraine,*
    311 F.3d 488 (2d Cir. 2002)......................................................................*passim*

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001) (en banc)...........................................................12, 16

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,*
    312 F.2d 299 (2d Cir. 1963)............................................................................20

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003)...........................................................................11, 16

*Rain CII Carbon, LLC v. ConocoPhillips Co.,*
    674 F.3d 469 (5th Cir. 2012) ..........................................................................23

*Relias Star Ins. Co. of NY v. EMC Nat'l Life Co.,*
    564 F.3d 81 (2d Cir. 2009)..............................................................................24

TABLE OF AUTHORITIES
(continued)

PAGE

*Scandinivian Reins Co. Ltd. V. St. Paul Marine & Fire Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012).................................................................21

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506, 94 S. Ct. 2449 (1974).................................................18

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422, 127 S. Ct. 1184 (2007).................................................10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006).................................................................21

*Telcordia Techs., Inc. v. Telkom SA, Limited,*
    2003 U.S. Dist. LEXIS 23726 (D.D.C. July 20, 2003).......................13

*W. Emplrs. Ins. Co. v. Jeffreys & Co.*
    958 F.2d 258 (9th Cir. 1992) ..............................................................27

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997).................................................................21

**STATUTES**

9 U.S.C. § 9.................................................................................................21

9 U.S.C. § 10.........................................................................................*passim*

9 U.S.C. § 11.........................................................................................*passim*

9 U.S.C. § 201.......................................................................................*passim*

**OTHER AUTHORITIES**

http://www.gov.gd/about_grenada.html. .......................................................14

Redfern & Hunter on International Arbitration ...........................................26

## PRELIMINARY STATEMENT

Despite the fact that the arbitration involved *Antiguan* companies, *Antiguan* law, claims arising out of an agreement to build a medical school campus in *Antigua*, and an intent by the parties to arbitrate in *Antigua*, petitioner Leeward Construction Company, Ltd. ("Leeward") improperly brings this action to confirm an arbitration award against American University in Antigua – College of Medicine ("AUA") in the *United States* in an effort to obtain a favorable forum to confirm a materially flawed arbitration award.  To try to establish a link to New York, Leeward goes as far as naming a New York limited liability company, Manipal Education Americas, LLC ("MEA"), as a respondent, even though MEA was not a signatory to the construction agreement, nor was it a respondent in the arbitration.  As it has no place in the courts of New York or in the United States generally, this action should be dismissed on forum non conveniens grounds so that the parties may address this dispute where it belongs, in Antigua.

The Second Circuit has previously recognized that a petition to enforce a foreign arbitration may be dismissed on forum non conveniens grounds prior to any determination of jurisdiction.  In doing so, the Second Circuit applies a three-step inquiry, which takes into consideration the deference owed to the petitioner's choice of forum, the availability of alternative adequate forums, and the public and private interest factors favoring dismissal.   Here, all three inquiries favor dismissal.

 As a foreign entity suing in the United States, Leeward's choice of forum is automatically entitled to little deference, as there is no apparent convenience to Leeward in suing in a foreign country.  Leeward's decision to sue in the United States is entitled to even less deference here, as it is obvious that Leeward's goal in bringing suit in the United States is to obtain a tactical advantage.  Other than the location of the hearing in Puerto Rico, there are no facts to link the arbitration to the United States.  The construction agreement provided that the

hearings take place in Antigua, and the arbitration hearing was only moved to Puerto Rico at the request of the arbitrators because they resided in Puerto Rico.  Leeward's forum shopping is also evidenced by the fact that Antiguan law is arguably more favorable to AUA than to Leeward, and is more likely to result in a setting aside of the award.  As a result, Leeward's choice of forum should receive little, if any, deference.

Moreover, Antigua constitutes an adequate alternative forum.  The parties to the arbitration, AUA and Leeward, are based in Antigua, and are therefore subject to service of process there.  Likewise, the Arbitration Act of Antigua has provisions for both recognizing and setting aside arbitration awards.  Thus, no reason exists why the courts of Antigua would not be fit to handle this matter.  Both the private and public interest factors also favor Antigua.  The parties, the subject matter, and the pertinent law of the arbitration have nothing to do with New York and the United States.  Instead, this is a dispute local to Antigua, where it would be more convenient and appropriate to resolve the issue of the enforcement or setting aside of the award. For these reasons, the entire petition should be dismissed on forum non conveniens grounds.

Alternatively, to the extent this Court retains jurisdiction over this action, respondent MEA should be dismissed in its entirety, and the arbitration award should be vacated or at the least modified.  MEA has no connection to the confirmation proceeding – it was not a party to the construction agreement or to the arbitration itself.  Instead, the only reason that it appears that Leeward has made MEA a party is to try to convince the court that this dispute has a semblance of a contact with New York (which there is not).

Even if the Court was not to dismiss for forum non conveniens grounds, the award should be vacated, modified or portions of it should not be enforced.  Under the New York Convention and the Federal Arbitration Act (the "FAA"), a court may decline enforcement of all, or part of

an award, when it addresses issues outside the scope of the submission to arbitration or is beyond its terms.  Here, the arbitrators awarded damages under the "bad faith doctrine."  Leeward never requested an award of damages under this doctrine, it was never briefed by the parties, does not appear to be recognized under Antiguan law and clearly exceeds the damage limitation provisions of the contract.  Moreover, contrary to the requirement that the arbitrators provide a "reasoned award," the award provides no details whatsoever about this or another part of the award or explanation of the doctrine.  The arbitrators also awarded certain damages for lost profits and overhead that were never a part of Leeward's claim until after the arbitration was tried.  Indeed, Leeward made these claims for the first time in its post-arbitration submission, thereby depriving AUA the ability to defend this claim.

The respondents respectfully request that this Court grant the present motion to dismiss on forum non conveniens grounds, and dismiss the entire petition.  In the alternative, to the extent the Court retains jurisdiction for this action, the respondents request either modification or vacatur of the award under the FAA, or denial of those portions of the award outside of the scope of the submission to the arbitrator under the New York Convention.

## FACTUAL BACKGROUND

### A.    The Parties

Petitioner Leeward Construction Company, Ltd. ("Leeward" or "Petitioner") is a corporation organized and existing under the Commonwealth of Antigua and Barbuda, with an office and principal place of business at All Saints Road, St. Johns, Antigua.  (Petition, ¶ 4.)  Upon information and belief, Leeward has never transacted business in the United States, and does not now nor has it ever maintained an office in the United States.  (*See* Declaration of Leonard Sclafani ("*Sclafani Decl.*"), dated September 25, 2012, at ¶ 6.)

Respondent AUA is a corporation organized and existing under the laws of Antigua, with an office and principal place of business at Coolidge, Antigua. (*Id.* ¶ 4). AUA was chartered by the Government of Antigua in 2004 to operate a medical school. (*Id.*) Its principal and only place of business is Antigua. (*Id.*) AUA does not now have, nor has it ever maintained an office in the United States. (*Id.*)

Respondent MEA is a New York limited liability company, organized and existing under the laws of the State of New York. (*Id.* ¶ 5.) Since December 2007, MEA has owned 100% of the stock of AUA. (*Id.*) MEA and AUA are entirely separate and distinct legal entities. (*Id.* at ¶¶ 4-5.) Leeward has set forth no facts connecting MEA to the arbitration nor the construction contract (*see* Petition at ¶ 5), and MEA is apparently being named to the present proceeding due to the fact that MEA is the parent company to AUA.

**B.    The Arbitration**

In 2008, discussions were initiated between representatives of AUA and Leeward concerning the construction of a new medical school campus for AUA in Antigua. (*Id.* at ¶ 7). In furtherance of those discussions, a written agreement was entered into on September 25, 2008 between AUA and Leeward (the "Construction Agreement") pursuant to which Leeward was retained to construct the campus in Antigua. (*Id.* at 7; Petition, Exhibit A.) The Construction Agreement was between AUA and Leeward. (*Sclafani Decl.* ¶ 7.) MEA was not a party to the Construction Agreement nor was it a party to the underlying arbitration.[1] (*Sclafani Decl.* ¶ 7.; Petition, Exhibit A at AUA 000015.)

The Construction Agreement contained the following arbitration clause:

§ 4.6.1 Any claim arising out of or related to the Contract . . . shall . . . be subject to arbitration.

---

[1] Leeward has set forth no facts connecting MEA to the arbitration nor the construction contract.

§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract, and with the American Arbitration Association, and a copy shall be filed with the Architect. Location of any arbitration shall be Antigua.[2]

(Petition, Exhibit A at AUA 000036.) The Construction Agreement further provided that it was to be governed under Antiguan law. (Petition, Exhibit A at AUA 000051 ("The Contract shall be governed by the law of the place where the Project is located.")).

Subsequent to the completion of the project, on February 3, 2011, Leeward initiated an arbitration proceeding against AUA before the American Arbitration Association International Center for Dispute Resolution ("AAA") in accordance with its Construction Arbitration Rules. (*Sclafani Decl.* ¶ 10.) The panel of arbitrators selected resided in Puerto Rico. (*Id.*) During the September 8, 2011 initial administration hearing of the arbitration, the arbitrators requested for their own cost and logistical reasons that the hearing locale be switched to Puerto Rico; however, the application of Antiguan law remained a fundamental premise of the arbitration. (*Id.*) Both parties ultimately consented to the proposed change in venue. (*Id.*) Additionally, the Tribunal ruled during a September 8, 2011 hearing that the award in this Arbitration would be a "Reasoned Award as provided for in Rules L-6 and R-[44(a)] of the AAA." (*Id.*, Ex. B.)

Pursuant to Leeward's initial arbitration demand, it sought the recovery of approximately EC $13.1M/US $4,887,178 for various unspecified damages it claimed to have experienced under the contract. (*Id.*, ¶ 11.) In response to an application filed by AUA, Leeward was required to re-file its demand to specifically delineate its claim. (*Id.*, Ex. C.) In the amended demand, Leeward reduced its claim by half and sought the following relief:

---

[2] Mediation was removed in an amendment of the Construction Agreement.

| | | |
|---|---|---|
| Original Contract Amount Sum (BS 9) | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work (Summary of Deleted Work, Annexed Hereto) | EC $1,948,755.32 | US $721,818.97 |
| Overhead and Profit (18%) on Deleted Work (Article 14.4.3 of General Conditions; Schedule of Claim) | EC $350,775.96 | US $129,927.42 |
| Revised Contract Sum | EC $25,838,844.64 | US $9,570,708.05 |
| Approved Extra Work — Paid (Revised Statement of Claim and BS 50-60) | EC $1,422,219.10 | US $526,789.95 |
| Approved Extra Work — Unpaid (Revised Statement of Claim and BS 52, 55, 56) | EC $181,847.52 | US $ 67,356.32 |
| Additional Work (Revised Statement of Claim and BS 258-282) | EC $1,361,628.64 | US $504,347.25 |
| Additional Preliminaries/General Conditions (BS 11, 283-286) | EC $1,985,711.68 | US $735,507.61 |
| Total | EC $30,790,251.58 | US $11,404,709.19 |
| Payments Received (BS 16) | EC $23,989,679.30 | US $8,885,777.21 |
| TOTALS: | EC $6,800,572.28 | US $2,518,931.97 |

(*Id.*)

Leeward claimed that is was entitled to be paid the original contract sum of EC $27,436,824, regardless of whether it actually performed all of the work upon which that contract sum was based and regardless of whether it performed and was paid for such work under a separate contract (which would result in Leeward being paid twice for the same work). (*Id.*, ¶ 12.)  Leeward also sought to recover various monies as damages, including EC $350,775.96 for the overhead and profits Leeward would have been paid for specific work that AUA removed from the contractor and gave to another contractor.  (*Id.*)

The oral hearings were held in Puerto Rico during from March 5 through 9, 2012.  (*Id.,* ¶ 13.)  Following the conclusion of the oral testimony, the parties submitted proposed findings of fact and conclusions of law.  (*Id.,* Exs. D & E.)  When AUA received the proposed findings of fact and conclusions of law submitted by Leeward, it was shocked to find that contrary to the relief sought in the demand, Leeward was now seeking, as an alternative to being paid in full (EC $3,345,649) for work it did not perform or work it performed under a separate contact, the overhead and profits it would have been paid for such work.  (*Id.,* ¶ 13.)  In addition to responding to the other inaccuracies in Leeward's proposed findings of fact, AUA vehemently objected to the interposition of this new, alternative claim subsequent to the close of testimony, particularly given that Leeward had numerous opportunities, both during the project, prior to the hearing, and at the hearing itself, to assert it.  (*Id.,* Ex. F, ¶¶ 26-38.)  In its post-hearing reply papers to the arbitrators, AUA noted among other things:

> Indeed, at no time during the hearing did Leeward seek Overhead and Profits on Omitted Work and neither party submitted any evidence in support of or in defense of such a Claim . . . .  Were Leeward permitted to add this new claim now, AUA would be deprived of the opportunity to submit evidence in response, as it did not have a reason to do so at the hearing.

(*Id.,* Ex. F, ¶ 37.)

### C.    The Arbitration Award Contains Several Significant Defects

On June 22, 2012, the arbitrators issued an award, which was modified on August 8, 2012 (the "Award").  (*Id.,* ¶ 14.)  The Award contains four key defects.

First, the arbitrators awarded Leeward EC $232,670.13 under the "bad faith doctrine." (*Id.,* ¶ 14 (A).)  This award was made even though Leeward never asked to be awarded additional damages under the "bad faith doctrine" or any other theory.  (*Id.*)  Leeward did not make any "claim" for damages based on AUA's alleged "bad faith," and did not reference any "bad faith doctrine," much less any facts related to it.  (*Id.*)  As a result, neither party briefed the

7

"bad faith doctrine." (*Id.*)  Moreover, while the award was required to be a reasoned award, the arbitrators failed to refer to any factual basis, much less legal explanation, as to how or why they calculated this damage award, despite awarding a very precise amount.  (*Id.*)  As noted in AUA's application to the arbitrators to modify the award, the final award was required to be a reasoned decision and not merely citing the evidence presented at trial.  (*Id.*)

Second, the arbitrators awarded Leeward a total of EC $802,399.25 in lost profits and overhead.  (*Id.* ¶ 14(B).)  The Award included both what Leeward had actually sought prior to and during the hearing, i.e., EC $350,557 in overhead and profits for work that had been removed from the contract and given to another contractor, and also what Leeward had sought for the first time in its post-trial submissions, i.e., overhead and profit for work that it had not performed at due to changes in the design of the project and the scope of Leeward's work thereunder (what the parties called "Omitted Work.") (*Id.*)  The Award also granted sums to Leeward for work that it had it performed and was paid for under separate contracts – what the parties called the "Flooring Work."  (*Id.*)  It did so despite that Leeward had argued up to and through the hearing only that it was entitled to be paid in full for the Omitted Work and the Flooring Work under the terms of the Contract Documents, and had never asserted a claim to the effect that, if its claim for payment of the full contract price was rejected, it was entitled to be paid overhead and profits on this work.  (*Id.*)  AUA defended (successfully) Leeward's claim that it was entitled to payment in full for the Omitted Work and the Flooring Work.  (*Id.*) However, AUA did not defend, because it had not been asserted, Leeward's new fall back claim for lost profit and overhead on the Omitted Work and Flooring Work.  (*Id.*)

Thus, the arbitrators adjudicated a claim that was not submitted to the Tribunal by Leeward prior to the hearings or, in fact, during the course of the hearings.  (*Id.*)  The first time

8

that Leeward made such a claim was in its proposed findings of fact and conclusions of law, thereby depriving AUA of an opportunity to proffer any defense to this claim. (*Id.*)

Third, the Award also granted Leeward EC $190,201.19 (final award Section VI(B-16)) for various extra work that Leeward claimed it had performed but had not been paid, which the parties called "Change Order Work." (*Id.*, ¶ 14(C).) As the sole support for this award, the arbitrators note that "[f]rom the evidence presented at trial, the panel finds that Leeward is entitled to the additional EC $190,201.19." (*Id.*) No other reasons are given for this award, which is particularly troubling given that the contemporaneous documentary evidence presented at the hearing unambiguously reflected that representatives of Leeward and AUA agreed that Leeward was not entitled to these monies. (*Id.*)

Finally, the award is defective because it contains an obvious arithmetical error. (*Id.*, ¶ 14(D).) Leeward's proposed findings of fact and conclusions of law sought interest on late payments for both monthly invoices and mobilisation at a rate of 10%. (*Id.*) The Tribunal awarded interest on alleged late payments of monthly invoices throughout the duration of the project. (*Sclafani Decl.*, ¶ 13; Petition, Exhibit A, at VI.(A-3) and VI.(A-4).) The Tribunal denied interest on mobilisation payments, however, ruling that any claims arising out of mobilisation payments had been settled previously. (*Sclafani Decl.*, ¶ 13; Petition, Exhibit A, at VI.(B-33).) Finally, the Tribunal rejected Leeward's request to apply a 10% interest rate; it found 7% to be the appropriate rate. (*Sclafani Decl.*, ¶ 13; Petition, Exhibit A, at VI.(A-4).) When the Tribunal calculated Leeward's interest award, it simply reduced the total amount of interest Leeward claimed for both monthly invoices and mobilisation from 10% to 7%. (*Sclafani Decl.*, ¶ 13.) The Tribunal forgot, however, to remove that portion of the interest attributable to mobilisation, contrary to its ruling that the mobilisation claims had been previously settled. (*Id.*)

9

Had it calculated the interest award correctly, Leeward should have been awarded EC$17,152.92 and not EC $44,617.37.  (*Id.*)  This is a clear computational error in the award.  (*Id.*)

Under the limited grounds provided by the AAA rules, AUA filed a motion with the Tribunal seeking a modification and correction of the award with respect to the four issues raised above.  (*Id.*, Ex. G.)  The arbitrators denied AUA's motion without discussion, as stated in their decision attached hereto as Exhibit H, refusing to modify the Final Award, even with respect to the clear mathematical error on its award of interest.  (*Id.*, Ex. H.)

## ARGUMENT

## I.  THE PETITION SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS

Assuming arguendo that this Court has subject matter and personal jurisdiction, the action must be dismissed in its entirety on forum non conveniens grounds pursuant to binding Second Circuit authority.

The Supreme Court has held that courts may address a motion to dismiss on forum non conveniens grounds prior to adjudicating the issue of subject matter jurisdiction.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-35, 127 S. Ct. 1184, 1190-93 (2007); *see also Figueiredo Ferraz e Engenharia de Projecto Ltda., v. Republic of Peru*, 665 F.3d 384, 389 (2d Cir. 2011) (hereinafter, "*Figueiredo*").  In both *Figueiredo* and *In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine* (hereinafter, "*Monde Re*"), the Second Circuit has dismissed petitions to confirm foreign arbitration awards on forum non conveniens grounds prior to any determination of jurisdiction. *See Figueiredo*, 665 F.3d at 392-94 (dismissing petition to confirm a foreign arbitration award on forum non conveniens grounds where contract was executed in Peru, parties both appeared to be Peruvian, and contract concerned work to be done in Peru, *inter alia*); *Monde Re*, 311 F.3d 488,

500-01 (2d Cir. 2002) (dismissing petition to confirm foreign arbitration award on forum non

conveniens grounds where suit involved foreign parties, application of the laws of Ukraine and

Russia, and had "no connection with the United States other than the fact the United States is a

Convention signatory," *inter alia*); *see also CHS Europe S.A. v. El Attal*, 2010 WL 3000059, at

\*2-\*3 (S.D.N.Y. July 22, 2010) (dismissing action on forum non conveniens grounds where no

party was physically present in New York, dispute was governed by English law, and no reason

existed for burdening the Southern District of New York).

The Second Circuit has set forth a three-step inquiry to determine whether dismissal is

appropriate for forum non conveniens.  First, the Court determines what level of deference is

owed to a plaintiff's choice of forum.  *Monde Re*, 311 F.3d at 498 (citing *Iragorri v. United*

*Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)).  Second, the Court decides whether an

alternative forum exists.  *Id.* at 499.  Third, if an alternative forum exists, then a court is to

balance the public and private interest factors.  *Id.* at 500.  Here, each of these factors weigh in

favor of dismissal.

### A.   Plaintiff's Choice of Forum is Owed Little Deference

Plaintiff's choice of forum in the United States, and in New York in particular, should be

entitled to little, if any, deference.  Foreign corporations that sue in the United States are

inherently entitled to less deference in their choice of forum.  *See Cavlam Bus. Ltd. v. Certain*

*Underwriters at Lloyd's*, 2009 WL 667272, at \*3 (S.D.N.Y. Mar. 16, 2009) ("While plaintiffs

who file suit in the district in which they reside are entitled to great deference, less deference is

owed to foreign citizens suing in the United States . . . ."); *see also Pollux Holding, Ltd. v. Chase*

*Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) ("[W]hen a foreign plaintiff sues in a United

States forum such choice is entitled to less deference because one may not easily presume that

choice is convenient.")

Leeward is an Antiguan corporation with its principal place of business in Antigua. Upon respondents' information and belief, Leeward has never transacted business in the United States, nor has it ever maintained an office in the United States.  (*Sclafani Declaration*, ¶ 6.) Consequently, Leeward should not be entitled to great deference for its choice of forum in the United States.

Moreover, Leeward's choice of forum is entitled to even less deference as Leeward's decision to bring suit in the United States appears to be solely motivated by its desire to forum shop for a favorable jurisdiction.  In interpreting Supreme Court case law, the Second Circuit has articulated the following sliding scale to determine the deference owed to a plaintiff's choice of forum:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice . . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001).  *See also Cavlam Bus. Ltd.*, 2009 WL 667272 at *3 ("The key to the analysis is distinguishing between a plaintiff's legitimate right to select a forum and mere forum-shopping that is designed to burden the defendants or to give the plaintiff a tactical advantage.")

Plaintiff's attempt to forum shop is made obvious by the following facts: (i) the dispute has no connection to the United States, and (ii) the grounds to contest an award under the New York Convention or the FAA are arguably more limited than under the laws of Antigua.

1.      **This Dispute Bears No Connection to the United States**

This dispute bears no connection to the United States or New York in particular.  As noted above, Leeward is an Antiguan corporation with its principal place of business in Antigua, and to respondents' information and belief, it has never transacted business nor maintained an office in the United States.  (*Sclafani Declaration* ¶ 6.)  Likewise, AUA was chartered by the Government of Antigua in 2004, and its principal and only place of business is in Antigua.  (*Id.* ¶ 4.)

The Construction Agreement under which the arbitration was commenced was for the construction of a medical school campus in St. Johns, Antigua.  (*Id.* ¶ 7.)  The Construction Agreement and the arbitration were governed by the laws of Antigua, and the Construction Agreement provided that the arbitration was to take place in Antigua.  (*Id.* ¶ 9.)  The panel of arbitrators selected resided in Puerto Rico.  (*Id.* ¶ 10.)  For cost and logistical reasons, the panel requested that the arbitration be moved to Puerto Rico, yet Antiguan law remained a fundamental premise of the arbitration.  (*Id.*)

Leeward nevertheless attempts to connect this action to New York by naming MEA, a New York limited liability company and owner of AUA, as a respondent.  (*Id.* ¶ 5).  Yet, this is a red herring, since Leeward appears to have named MEA solely for the purpose of bringing this action in the Southern District of New York.  MEA has no connection to this action – it did not sign the Contract, nor was it ever a party to the arbitration.  (*Id.* ¶ 7.)  The Award was against AUA, not MEA, and Leeward has set forth no facts in its Petition under which MEA would be held liable for the Award. Consequently, Leeward's naming of MEA as a party to this action is simply an attempt to establish a connection to New York.

2. **Leeward Improperly Seeks a Tactical Advantage By Bringing Suit in the United States**

By filing suit in the United States, Leeward seeks confirmation under the New York Convention, which arguably provides more limited bases upon which to vacate the award than the laws of Antigua. Leeward is therefore more likely to obtain a confirmation of the award under the New York Convention than under the laws of Antigua. The Arbitration Act of Antigua and Barbuda (the "Antiguan Arbitration Act") allows the High Court of Antigua to set aside an arbitration award "[w]here an arbitrator or umpire has misconducted himself or the proceedings, or an arbitration or award has been improperly procured." (*See* Declaration of Katherine M. Lieb, dated September 25, 2012 ("*Lieb Decl.*"), Ex. A, at 24(2).) In interpreting an identical arbitration provision under the laws of Grenada, the Court of Appeal of Grenada held noted that "[t]he expression 'misconduct' in section 19 of the Act does not necessarily refer to dishonesty or breach of business morality . . . [i]t would also apply to procedural errors or omissions by arbitrators." *One Call Construction Company Limited v. Grenada Solid Waste Management Authority,* at [12], Court of Appeal of Grenada, decided September 8, 2010 (*Lieb Decl.*, Ex. B.)[3] The *One Call* case further noted that under the Arbitration Act of Grenada "the words 'final and binding' do not by themselves exclude, and in the absence of any other contextual indicators, are not insufficient to exclude a right of appeal that may be given under the Arbitration Act." *Id.* at [7].

In light of the above case law, Antiguan law would seemingly refuse the enforcement of an arbitration award where the arbitrator considered facts or claims not at issue during the

---

[3] Respondents were not able to locate any cases interpreting provision 24(2) of the Arbitration Act of Antigua and Barbuda regarding arbitrator misconduct. However, as both the Court of Appeal of Grenada and the High Court of Antigua are lower courts within the Eastern Caribbean Supreme Court system, the High Court of Grenada's interpretation of the identical Grenadian arbitration provision provides insight as to the interpretation of the Arbitration Act of Antigua. Like Antigua, Grenada is governed by the laws of the British Commonwealth. *See* The Official Website of the Government of Grenada, http://www.gov.gd/about_grenada.html.

arbitration and made material miscalculations of the amounts owed, as such errors should be deemed as "misconduct" under the Antiguan Arbitration Act.  As set forth more fully in section III, here, the arbitrators engaged in several instances of this type of misconduct.  For example, the arbitrators awarded Leeward EC$232,670.13 under the "bad faith doctrine."  (*Sclafani Decl.*, ¶ 14 (A).)  This award was made even though Leeward never asked to be awarded additional damages under the "bad faith doctrine" or any other theory.  (*Id.*)  As a result neither party briefed the "bad faith doctrine," a legal theory which does not appear to exist under Antiguan law.  (*Id.*)  While the Award was required to be a "reasoned award," the arbitrators failed to refer to any factual basis much less legal explanation as to how or why this damage award was calculated.  (*Id.*)  Likewise, the arbitrators adjudicated another claim for lost profits and overhead that was not submitted to the tribunal by Leeward prior to the hearings or in fact during the course of the hearings.  (*Id.*, ¶ 14(B).)  The first time that Leeward made such a claim was in its proposed findings of fact and conclusions of law, thereby depriving AUA of an opportunity to proffer any defense to this claim.  (*Id.*)  The arbitrators also miscalculated interest and ignored several material facts in rendering an award on certain change order work.  (*Id.*, ¶ 14 (C & D.))  While AUA believes that each of these errors would also provide a basis for vacatur or at the least modification under the FAA or the New York Convention, the fact of the matter is that neither the laws of the United States nor international statutes have any place in resolving issues regarding a dispute that is entirely Antiguan centric.

In light of such glaring inaccuracies and omissions by the arbitrators, it appears that Leeward may be unable to have the Award confirmed in the Antiguan courts.  Consequently, its attempt to bring this action in New York, where the arbitration has no significant nexus, is an

obvious attempt to shop for a more favorable forum. Leeward's choice of forum in New York or the United States should therefore be entitled to little, if any, deference.

### B.    Antigua is an Appropriate Alternative Forum for This Action

The second step in the forum non conveniens analysis is to determine whether an adequate alternative forum exists for the dispute. *Iragorri*, 274 F.3d 65 at 73. "An alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

Antigua is an appropriate and adequate forum for this dispute. As Antiguan entities with their principal places of business in Antigua, both Leeward and AUA are amenable to service of process in Antigua.[4] Likewise, the Arbitration Act of the Laws of Antigua and Barbuda expressly allows for both the enforcement and setting aside of an arbitration award by the High Court of Antigua. Section 27 of the Act provides that "[a]n award on an arbitration agreement may, by leave of the High Court or a judge thereof, be enforced in the same manner as a judgment or order of the High Court to the same effect, and where leave is so given, judgment may be entered in terms of the award." (*Lieb Decl.*, Ex. A.) Likewise, Section 24(2) provides that "[w]here an arbitrator or umpire has misconducted himself or the proceedings, or an arbitration or award has been improperly procured, the High Court may set the award aside." (*Id.*) Moreover, this Court has previously recognized that Antigua constituted an adequate alternative forum in response to a forum non conveniens motion. *See Feinstein v. Curtain Bluff Resort*, 1998 WL 458060, at *4-*5 (S.D.N.Y. Aug. 4, 1998) (dismissing case on forum non conveniens grounds and holding that Antigua constituted an adequate alternative forum).

---

[4] As MEA was not a party to the arbitration and should never have been named in this action, the questions of whether MEA is subject to service of process or has assets in Antigua are wholly irrelevant.

For these reasons, Antigua is an adequate alternate forum for this dispute.

**C.**     <u>**The Public and Private Factors Favor Dismissal**</u>

Finally, a court is to weigh both the public interest and private factors to determine whether the adjudication should take place in the alternate forum. *Monde Re*, 311 F.3d at 500. The private interest factors pertain "to the convenience of the litigants – 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)). The public interest factors "include the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law." *Id.* (citing *Gulf Oil Corp.*, 330 U.S. at 508-9.) *See also Figuerido*, 665 F.3d at 389-90 ("Among the public interests are a local interest in having localized controversies decided at home . . . and the interest in having foreign law interpreted by a foreign court.") (internal citations and quotation marks omitted).

Both the public and private interest factors favor bringing this action in Antigua. To the extent that the parties would need to engage in further litigation, it would be more convenient to litigate in Antigua. The parties to the arbitration are based in Antigua and the arbitration concerns the construction of a medical school campus in Antigua. (*Sclafani Decl.*, ¶¶ 4, 5, & 7.)

The public interest factors also favor Antigua's adjudication of this local dispute. As Antiguan law applied to the arbitration, the parties, the subject matter, and the pertinent law have nothing to do with New York and the United States. Were it not for the arbitrators' request to hold the arbitration in Puerto Rico, the arbitration would have taken place in Antigua as per the

express terms of the Construction Contract.  (*Id.*, ¶ 10.)  Moreover, Antigua has an interest in

applying its own Arbitration Act to disputes between Antiguan citizens, rather than the New

York Convention, or the FAA where the parties have specified that Antiguan laws apply.  *See*

*Figueiredo*, 665 F.3d at 392 (noting that Peru had a public interest in applying a cap statute that

limited the disbursement of funds by government agencies).

     Moreover, application of the New York Convention to this dispute does not further the

goal of the New York Convention, "and the principal purpose underlying American adoption and

implementation of it," which "was to encourage the recognition and enforcement of commercial

arbitration agreements in international contracts and to unify the standards by which agreements

to arbitrate are observed and arbitral awards are enforced in the signatory countries."  *Scherk v.*

*Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S. Ct. 2449, 2457 (1974).  The dispute between

Leeward and AUA does not arise from an international contract; on the contrary, it is a purely

local dispute between two Antiguan companies to build a medical school campus in Antigua.

Consequently, the Award falls beyond the intended scope of the New York Convention.

     In light of the total lack of local interest in the subject matter of this dispute, there is no

reason whatsoever to burden this Court with the adjudication of this dispute.  Instead, because

the courts of Antigua have a significant interest in resolving this local dispute, they are in a better

position to apply the laws of Antigua.[5]  When evaluating similar facts, this Court has noted the

following in holding that public and private factors favored dismissal:

> There is no particular reason why the burden, however great or modest it may
> prove to be, of adjudicating this case should fall on this Court rather than the
> courts of England, which [the parties] for most purposes agreed would be the
> exclusive forum.  Both the Contract and the arbitration are governed by English
> law as to which the English courts quite naturally enjoy the advantage.

---

[5] To the extent that Leeward's claims remain against MEA, the issue of whether MEA, a non-signatory to the
Construction Agreement and a non-party to the arbitration, can be bound to the Award will need to be determined
under Antiguan law.

*See CHS Europe S.A. v. El Attal*, 2010 WL 3000059 at *2; *see also Monde Re*, 311 F.3d at 500 ("[T]here is no reason why localized matters should not be determined by the courts of the locale bearing the most significant contacts with them."). Similar to *CHS Europe*, there is no particular reason why this Court should bear the burden of adjudicating this case, and thus, the public interest factors weigh in favor of dismissal.

Each of the three steps in the Second Circuit's inquiry for determining whether dismissal on forum non conveniens grounds weigh in favor of dismissal to Antigua. Leeward is a foreign petitioner who seeks solely a tactical advantage bringing suit in New York, and thus, its choice of forum is entitled to little, if any, deference. Antigua serves as an appropriate and adequate alternate forum in which to adjudicate this matter, and both public and private interests strongly favor adjudication in the Antiguan courts. For these reasons, this Court should dismiss this action on forum non conveniens grounds.

## II.   LEEWARD FAILS TO STATE A CLAIM AGAINST MEA

While the entire petition should be dismissed on forum non conveniens grounds, the petition should also be dismissed as to MEA under Rule 12(b)(6) for its failure to state a claim under which relief may be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Here, Leeward has set forth no facts under which MEA would be held liable for a judgment pursuant to the Award. MEA was not a party to the Construction Contract, nor was it a party to the arbitration. While Leeward appears to try to hold MEA liable as the "own[er] and operat[or]" of AUA, such assertions fail to establish any basis for liability against MEA for the arbitration award. MEA and AUA are

separate and distinct legal entities, and Leeward has set forth no theory or facts that would bind MEA to the arbitration award.

Additionally, this summary action to confirm an arbitration award is not the appropriate time to determine whether a non-party should be bound to an arbitration award. *See Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963) ("[W]e hold that an action for confirmation is not the proper time for a District Court to 'pierce the corporate veil.'"); *Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160, 177 (S.D.N.Y. 1978) ("[T]he alter ego theory, and any other theory determinative of the identity of parties to an arbitration agreement, [should] be tested by an action to compel arbitration under § 4, prior to the arbitration hearings.")

Accordingly, MEA must be dismissed from this action.

### III.     IN THE ALTERNATIVE, THE AWARD SHOULD BE VACATED OR MODIFIED OR PORTIONS OF THE AWARD SHOULD NOT BE ENFORCED UNDER THE NEW YORK CONVENTION

Assuming arguendo that the Court declines to dismiss this matter on forum non conveniens grounds, we nevertheless submit that there is ample evidence to vacate the award or, in the alternative, modify it under the Federal Arbitration Act, 9 U.S.C. 1, *et seq*. ("FAA") and the New York Convention.  Pursuant to 9 U.S.C. § 201, a court may refuse to recognize a foreign arbitration award where such award violates one of the grounds for refusal or deferral set forth in the New York Convention.  9 U.S.C. § 201.  Article V of the New York Convention provides two pertinent grounds for denying the recognition of an award (i) "the award . . . has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made" (Article V(e)), and (ii) where an award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of submission to arbitration, provided that if the decisions

on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced" (Article V(c)).  (*Lieb Decl.*, Ex. D.)

Where an arbitration is conducted in the United States, "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." *Scandinivian Reins Co. Ltd. v. St. Paul Marine & Fire Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("[T]he FAA and the New York Convention work in tandem, and they have 'overlapping coverage' to the extent that they do not conflict.").  Because the arbitration took place within the United States, this Court may apply the FAA to the current dispute to vacate or modify the arbitration award.  *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997) ("[B]ecause the Convention allows the district court to refuse to enforce an award that has been vacated by a competent authority in the country where the award was rendered, the court may apply FAA standards to a motion to vacate a nondomestic award rendered in the United States.")  The Second Circuit further explained:

> From the plain language and history of the Convention, it is thus apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered. Moreover, the language and history of the Convention make it clear that such a motion is to be governed by domestic law of the rendering state, despite the fact that the award is nondomestic within the meaning of the Convention . . . .

*Id.* at 23.

Pursuant to 9 U.S.C. § 9, a court may deny the confirmation of an arbitration award where the "award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  Section 10 provides that an award may be vacated "(3) where the arbitrators were guilty of . . . any other misbehavior by which the rights of any party have been prejudiced; or (4) where

the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.  A court may also modify or correct an arbitration award under Section 11 "(a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11.  As set forth below, the award contains four defects providing a basis for vacating or modifying the award under the FAA, or denying enforcement of the award under the New York Convention as outside the scope of the submission to the arbitrators.

### A.    <u>The Award Should be Vacated</u>

The Award contains several major defects requiring the vacatur of the Award.  First, the arbitrators awarded Leeward EC $232,670.13 under the "bad faith doctrine." (*Sclafani Decl.*, ¶ 14(A).)  Although the award does not explain the "bad faith doctrine," it appears to be a tort claim first recognized in California under insurance contracts.  Where this theory is recognized, the party is not restricted to contract damages, but is able to recover the generally more liberal measure of tort damages**.**  The "bad faith doctrine" appears to have limited application in the United States, and from our limited analysis, it has not been recognized by the courts of Antigua. AUA did not agree to arbitrate tort claims nor was a tort claim made by Leeward in the arbitration.

The award of "bad faith" damages was made even though Leeward never asked to be awarded tort damages under this doctrine or any other theory, and indeed the contract in Section 4.3.10 specifically precludes the awarding of consequential damages arising out of or relating to this contract. (*Id.*; Petition, Exhibit A.)  Similarly, the arbitration clause specifically excludes the arbitration of consequential damages, provides solely for the arbitration of claims and does not

encompass the arbitration of tort claims, particularly tort claims not recognized under Antiguan law. (*Id.*)

   As the court will see from reviewing the post-hearing findings of fact and conclusions of law submitted by the parties, this "claim" was not mentioned in Leeward's papers. Quite simply, no reference to this "doctrine," much less any facts related to it can be found. (*Sclafani Decl.*, ¶ 14(A).) As a result neither party briefed the "bad faith doctrine."   (*Id.*)  Moreover, while the award was required to be a reasoned award, the arbitrators failed to refer to any factual basis, much less any legal explanation, as to how or why they calculated this very precise damage award. (*Id.*)  As noted in AUA's application to the arbitrators to modify the award, the final award was required to be a reasoned decision and not merely citing the evidence presented at trial. *See* Redfern & Hunter on International Arbitration (5th Ed, Section 9.125) (*Lieb Decl.*, Ex. C.)

   It is clear that "an arbitrator may also exceed her authority by failing to provide an award in the form required by an arbitration agreement." *Cat Charter LLC v. Shortenberger,* 646 F.3d 836, 843 (11th Cir. 2011).  Moreover, and while generally arbitrators have no requirement to provide the reasons for their ruling, a contractual provision that requires a reasoned award must be enforced.  If arbitrators fail to do so, they have exceeded their powers and vacatur of an award is proper.  *Rain CII Carbon LLC – Conoco Phillips Co.,* 674 F.3d 469 (5th Cir. 2012).

   In the present instance, while the award itself is lengthy and in most instances contains more explanation than is typical for an arbitration award, in at least two instances the award is entirely devoid of any reasoning whatsoever.  That the award in other instances is reasoned, cannot and should not obfuscate the fact that in these particular instances the arbitrators do nothing more than to state a result causing the parties and the court to be in a position where they

are forced to guess what the basis for these rulings.  Specifically, the arbitrators provide no reasoning whatsoever, much less "good reason" for their finding that Leeward should be awarded a very specific dollar amount for "bad faith damages" particularly where it is clear that Leeward never made such a tort claim in this arbitration.  Where a contractual provision requires a "reasoned" award, courts have held this requirement satisfied with "something short of findings [of fact] and conclusions [of law] but more than a simple result." *Rain CII Carbon, LLC v. ConocoPhillips Co.,* 674 F.3d 469, 473 (5th Cir. 2012) (quoting *Cat Charter, 646 F.3d at 844).* Clearly as it relates to the "bad faith damages" and the award of the lost profits and overhead related to the "Omitted Work" damages (discussed *infra*) the arbitrators have done nothing more than to write a result without providing any reasoning.  Accordingly, and while courts have been reluctant to vacate awards for such a failure, it is nevertheless clear that the failure to do so is a situation when an arbitrator has exceeded his authority and as such is a basis to vacate an award.

Equally of significance is the fact that not only was the "bad faith damages" claim not made by Leeward, but it is specifically precluded by the contract and does not appear to find any support in the Antiguan common law.  Section 10(A)(4) of the FAA allows a court to vacate an award "where the arbitrators exceeded their powers." *See Relias Star Ins. Co. of NY v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009).  In addition, case law in this circumstance supports the proposition that an award may be vacated if it is rendered in manifest disregard of the terms of the parties' agreement or the law. *See also Carte Blanche (Singapore) Pte., Ltd. V. Carte Blanche Intern., Ltd.* 888 F.2d 260 (2d. Cir. 1989).  In the present instance, the arbitrators not only rewrote the parties' contract by providing for a mechanism of damages that did not exist under the contract (much less in Leeward's arbitration demand), and in doing so, invented a legal doctrine that appears to have no application whatsoever under Antiguan law.  By so ruling, the

arbitrators have clearly exceeded their powers and in addition have manifest disregard of the law as well as the contract pursuant to which the parties agreed to arbitrate.  The award should therefore be vacated in light of the damages under the "bad faith doctrine."

Second, the arbitrators awarded Leeward EC $802,399.25 in lost profits and overhead for, among other things, work it did not perform due to changes in the design of the project -- what the parties called "Omitted Work."[6]  (*Sclafani Decl.*, ¶ 14(B).)  Pursuant to § 9 U.S.C. 10, an award may be vacated "if the arbitrators were guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced," and where the arbitrators have exceeded their powers.  We submit that permitting a party to amend its claim subsequent to the close of the oral hearings is fundamentally prejudicial behavior on the part of the arbitrators, which has deprived one of the litigants of its basic right to properly defend itself.  As noted in AUA's rebuttal to claimant's findings of fact and conclusions of law:

> 36.   Neither the Amended Demand nor the Revised Statement of Claim attached thereto asserted a Claim for Overhead and Profits on the Omitted Work. Rather, Leeward's Claim for Overhead and profits was limited to "the items of work that the AUA removed from Leeward's contract and awarded other contractors."  Amended Demand, ¶ 24, Leeward then specifically referred to its May 12, 2009 Claim (LC 213) and the Deleted Work Summary attached to its Amended Demand as encompassing the scope of this Claim, both of which were limited to the Painting Work and the Doors and Windows Work.  *Id.*

> 37.   …Indeed, at no time during the hearing did Leeward seek Overhead and Profits on Omitted Work and neither party submitted any evidence in support of or in defense of such Claim.

> 38.   Because Leeward did not include its new claim for Overhead and Profits for Omitted Work in its Demand for Arbitration or its Amended Demand for Arbitration, Section 4.6.5 precludes Leeward from doing so now."

---

[6] The Award included both what Leeward had actually sought prior to and during the hearing, i.e., EC $350,557 in overhead and profits for work that had been removed from the contract and given to another contractor, and also what Leeward had sought for the first time in its post-trial submissions, i.e., overhead and profit for work that it had not performed at due to changes in the design of the project and the scope of Leeward's work thereunder.  (Id.)

(*Sclafani Decl.*, ¶ 14(B), Ex. F.)  Leeward had argued up to and through the hearing that it was entitled to be paid in full for the Omitted Work under the terms of the Contract Documents. AUA defended (successfully) Leeward's claim that it be paid in full for work it did not perform. AUA did not defend, because it had not been asserted, Leeward's claim for lost profit and overhead on the Omitted Work.  (*Sclafani Decl.*, ¶ 14(B).)  Consequently, the arbitrators adjudicated a claim that was not submitted to the Tribunal by Leeward prior to the hearings, or in fact during the course of the hearings.  (*Id.*)  As noted hereinabove, the first time that Leeward made such a claim was in its proposed findings of fact and conclusions of law, thereby depriving AUA of an opportunity to proffer any defense to this claim.  (*Id.*)  By permitting a post-hearing amendment of claims, the arbitrators ignored the rules of the AAA, exceeded their powers and issued an award that deals with a claim not contemplated by, nor falling within the terms of the submission to arbitration.   Consequently, the award should be vacated.

Third, the award also granted Leeward EC $190,201.19 (final award Section VI(B-16) for a Change Order Work.  (*Sclafani Decl.*, ¶ 14(C).)  As the sole support for this award, the arbitrators note that "[f]rom the evidence presented at trial, the panel finds that Leeward is entitled to the additional EC $190,201.19."  (*Id.*)  No other reasons are given for this award, which is particularly troubling given that the contemporaneous documentary evidence presented at the hearing unambiguously reflected that Leeward was not entitled to these monies.  As a result, this portion of the award failed to constitute a "reasoned award."  (*Id.*)

As AUA noted in its application to the arbitrators to modify the award, according to the leading treatise on international arbitration, giving reasons in an arbitral award requires more than a statement that "the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other . . . ."  *Redfern and Hunter on International Arbitration* (5th ed.), § 9.125

(*Lieb Decl.*, Ex. C.)  Once again, this specific part of the award was completely devoid of any reasoning and was nothing more than a "bare result."  While other parts of the award may contain substantial detail, this particular relief awarded to Leeward does not even attempt to address the basis for the award, it simply rules that it is based on the evidence presented at trial. This is clearly insufficient to meet the standards required of a reasoned award.  As such, it represents a clear failure on the arbitrators' part to "arbitrate the dispute according to the terms of the arbitration agreement."  *See W. Emplrs. Ins. Co. v. Jeffreys & Co.*, 958 F.2d 258 (9th Cir. 1992).  Accordingly, the award of Change Order damages also requires vacatur of the award.

**B.      The Defects in the Award Also Provide a Basis for Modification**

Although AUA submits that it is clear under § 9 U.S.C. 10 that the above-referenced defects in the arbitration award required the vacatur of the entire award, in the alternative, AUA also argues that these grounds and an obvious mathematical miscalculation by the arbitrators form a basis for modification under § 9 U.S.C. 11.

As stated hereinabove, § 9 U.S.C. 11 permits a court to modify an award where there was an evident material miscalculation of figures or where the arbitrators have awarded upon a matter not submitted to them.

While the arbitrators' decision to permit Leeward to change its claim for the "Omitted Work" after the oral hearings requires that the award be vacated under § 9 U.S.C. 10, in the alternative, this portion of the award should also be modified under § 9 U.S.C. 11.  In this context, there is no question whatsoever that this claim for relief was not part of the original claim or the amended claim filed by Leeward.  Indeed, during the course of five (5) days of testimony, Leeward never made such a claim much less submitted any evidence whatsoever that it was entitled to profit, in particular for "Omitted Work."  It was only subsequent to the close of the oral hearings when Leeward submitted its proposed findings of fact and conclusions of law

that it raised this alternative claim for the first time.  While this is clearly improper and beyond the scope of the arbitrators' powers, it also represents a decision on a matter not properly submitted to the arbitrators.  Accordingly, and while we believe it is clear that the award should be vacated on this ground, if the court declines to vacate the award, in the alternative, the award should be modified to remove from it the damages award for the "Omitted Work."

Finally, AUA believes that the award is defective because it contains an obvious arithmetical error.  Leeward's proposed findings of fact and conclusions of law sought interest on late payments for both monthly invoices and mobilisation at a rate of 10%.  The Tribunal awarded interest on alleged late payments of monthly invoices throughout the duration of the project.  The Tribunal denied interest on mobilisation payments, however, ruling that any claims arising out of mobilisation payments had been settled previously.  Finally, the Tribunal rejected Leeward's request to apply a 10% interest rate; it found 7% to be the appropriate rate.  When the Tribunal calculated Leeward's interest award, it simply reduced the total amount of interest Leeward claimed for both monthly invoices and mobilisation from 10% to 7%.  The Tribunal forgot, however, to remove that portion of the interest attributable to mobilisation, contrary to its ruling that the mobilisation claims had been previously settled.  Had it calculated the interest award correctly, Leeward should have been awarded EC$17,152.92 and not EC $44,617.37.  This is a clear computational error in the award, and provides another basis for modification of the award under the FAA.

### C.    Two Portions of the Award Should Not be Enforced Under the New York Convention as Outside the Submission to the Arbitrator

For the reasons set forth hereinabove, AUA submits that the award should be vacated or modified as provided for under the FAA.  In the alternative, two portions of the award should be denied recognition under Article V(c) of the New York Convention, as addressing a dispute not

contemplated by the submission to arbitration, or containing decisions beyond the scope of the arbitration.  For the reasons described hereinabove, we believe it is clear that an award of damages under the "bad faith doctrine" is violative of the prescriptions set forth in Article V(c).  As noted hereinabove, Leeward's claim does not mention the "bad faith doctrine" nor does it seek monetary relief for any set of facts that would remotely entitle it to such relief.  While we are forced to guess the reason, much less a good reason, the arbitrators had in making this particular award, the record is clear that such an award is beyond the scope of anything submitted to the arbitrators, and accordingly is subject to rejection under Article V(c).

We also submit that the arbitrators' award of damages on the Omitted Work is also violative of the framework of the New York Convention.  Once again, the claim was not part of Leeward's demand, was not addressed during the course of the oral hearings and was raised for the first time in Leeward's findings of fact and conclusions of law.  The arbitrators' ruling to consider a new claim after the close of the oral hearings is patent misconduct and resulted in an award which is clearly beyond the scope of the matters submitted to them.  Consequently, this Court may also deny enforcement of the "bad faith doctrine" damages and the "Omitted Work" damages under the New York Convention as outside of the scope of the submission to the arbitration.  *See* Article V(c) (noting that "if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced.")

## CONCLUSION

The controversy between AUA and Leeward is a local controversy that only involves the application of Antiguan law for a project to build a medical school campus in Antigua.  New York clearly has no connection to this dispute and should have no interest whatsoever in adjudicating it.  While it is clear that a basis exists to vacate the award under the FAA and the

29

New York Convention, we believe this is ultimately not the proper course for the court to take. Whether this award should stand or fall is a matter that should be determined by the courts of Antigua, applying Antiguan law.  Leeward's attempt at forum shopping to attempt to obtain what it perceives to be the more stringent standards of the New York Convention and/or the FAA should be rejected and this matter should be dismissed so that it can be determined by the courts of the only country that has any interest in the outcome of this dispute.

Dated: New York, New York
        September 25, 2012

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
(212) 643-7000

By:  s/ Michael B. Goldsmith
      MICHAEL B. GOLDSMITH
      KATHERINE M. LIEB

*Attorneys for Respondents*
*American University in Antigua – College of*
*Medicine and Manipal Education Americas,*
*LLC f/k/a GCLR LLC*

30