UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY, LTD.,

        Petitioner,

    v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

        Respondents.

------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF CASE)

Honorable Lewis A. Kaplan
United States District Judge

**DECLARATION OF LEONARD SCLAFANI**

Leonard Sclafani, being duly sworn, deposes and says:

1. I am the Senior Vice President and General Counsel of Manipal Eucation Americas, LLC, agent for American University of Antigua-College of Medicine ("AUA"), and unless otherwise stated, I am fully familiar with all the facts and circumstances hereinafter set forth herein.

2. I submit the within declaration in support of AUA's cross-motion to dismiss this matter on forum non conveniens grounds and in the alternative in opposition to petitioner Leeward Construction Company, Ltd.'s ("Leeward") motion to confirm an arbitration award and in support of the cross motion to vacate or modify. A copy of Leeward's petition is attached hereto as Exhibit A.

3. As set forth herein and in the accompanying memorandum of law, this dispute and its adjudication have no contact whatsoever with New York State or in fact, the United

States, and the appropriate forum to consider Leeward's application and respondents' cross motion to vacate the award is Antigua.

**The Parties**

4. Respondent AUA is a corporation organized and existing under the laws of Antigua and Barbuda (hereinafter, "Antigua"), with an office and principal place of business at Coolidge, Antigua. AUA was chartered by the Government of Antigua in 2004 to operate a medical school. Its principal and only place of business is in Antigua. AUA does not now have, nor has it ever maintained, an office in the United States.

5. Manipal Education Americas LLC f/k/a GCLR LLC ("MEA") is a limited liability company organized and existing under the laws of the State of New York. MEA provides back office and administrative services, such as accounting, finance and registarial services, for institutions of higher education internationally. AUA is one of MEA's clients and has been since AUA was first formed. Since December 2007, MEA has owned 100% of the stock of AUA.

6. Leeward is an Antiguan corporation. Upon information and belief, Leeward has never transacted business in the United States and does not now, nor has it ever, maintained an office in the United States.

**Background of the Dispute**

7. In 2008, discussions were initiated between representatives of AUA and Leeward concerning the construction of a new medical school campus for AUA in Antigua. In furtherance of those discussions, a written agreement was entered into between AUA and Leeward (the "Construction Agreement") pursuant to which Leeward was retained to construct the campus in Antigua. A copy of the Construction Agreement is annexed as Exhibit A to the

2

Petition to Confirm the Arbitration Award. The Construction Agreement was between AUA and Leeward. MEA was not a party to the Construction Agreement nor was it a party to the underlying arbitration.

8. Indeed, the only reason that it appears that Leeward has made MEA a party to this motion is to try to convince the court that this dispute has a semblance of a contact with the United States or New York in particular. It does not.

9. The Construction Agreement required any disputes to be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). The Construction Agreement further required that any such arbitration would be conducted in Antigua. The Construction Agreement also provided that the contract was to be governed by and construed according to the laws of Antigua and Barbuda. (*See* Construction Agreement, AUA 000036 & AUA 000051.)

10. More than two years after the project was completed, Leeward initiated an arbitration proceeding against AUA before the AAA under its Construction Arbitration Rules. By coincidence, all of the members of the panel of arbitrators that the parties selected resided in Puerto Rico. During the September 8, 2011 initial administration hearing for the arbitration, the arbitrators requested that, for their own convenience and logistical reasons, that the hearing locale be moved to Puerto Rico; however, the application of Antiguan law remained a fundamental premise of the arbitration. Both parties ultimately consented to the proposed change in the situs of the arbitration hearing. In addition to its ruling that the arbitration would be governed under and by Antiguan law as the parties had expressly agreed, the Tribunal ruled during the September 8, 2011 initial hearing that the award in this Arbitration would be a

"Reasoned Award as provided for in Rules L-6 and R-[44(a)] of the AAA." A true and correct copy of this ruling is annexed hereto as Exhibit B.

11. Under Leeward's initial arbitration demand, Leeward sought the recovery of approximately EC$13,000,000, or, in US currency, US$ 4,887,178 for various unspecified damages it claimed to have experienced under the contract. In response to an application filed by AUA, Leeward was required to re-file its demand to specifically delineate its claim, a copy of which is annexed hereto as Exhibit C. In the amended demand, Leeward reduced its claim by half and sought the following relief:

| | | |
|---|---|---|
| Original Contract Amount Sum (BS 9) | EC $27,436,824.00 | US$10,162,599.61 |
| Deleted Work (Summary of Deleted Work, Annexed Hereto) | EC $1,948,755.32 | US $721,818.97 |
| Overhead and Profit (18%) on Deleted Work (Article 14.4.3 of General Conditions; Schedule of Claim) | EC $350,775.96 | US $129,927.42 |
| Revised Contract Sum | EC $25,838,844.64 | US $9,570,708.05 |
| Approved Extra Work — Paid (Revised Statement of Claim and BS 50-60) | EC $1,422,219.10 | US $526,789.95 |
| Approved Extra Work — Unpaid (Revised Statement of Claim and BS 52, 55, 56) | EC $181,847.52 | US $67,356.32 |
| Additional Work (Revised Statement of Claim and BS 258-282) | EC $1,361,628.64 | US $504,347.25 |
| Additional Preliminaries/General Conditions (BS 11, 283-286) | EC $1,985,711.68 | US $735,507.61 |
| Total | EC $30,790,251.58 | US$11,404,709.19 |
| Payments Received (BS 16) | EC $23,989,679.30 | US$8,885,777.21 |
| TOTALS: | EC $6,800,572.28 | US$2,518,931.97 |

12. Briefly, Leeward claimed that is was entitled to be paid the original contract sum of EC $27,436,824, notwithstanding that, as the job progressed, changes were made that

4

eliminated from it significant portions of the construction, thereby reducing significantly scope of the work, labor, services and materials that Leeward was required to deliver. Leeward also claimed that it was entitled to sums under the contract for work that it had performed and had already been paid for under subsequent agreements that the parties had entered into after that work had been removed from the scope of Leeward's work under the original contract. Leeward made this claim despite that such would result in Leeward's being paid twice for work that it performed once. Lastly, Leeward sought to recover various monies as damages, including EC $350,775.96 for the overhead and profits that Leeward would have been paid for specific work that had been removed from Leeward and that had been given to another contractor to provide.

13.  The actual arbitration proceeded first, by each party's written submission of its witnesses direct testimony, followed by live cross examinations, rebuttals and arguments that were held before the arbitrators in Puerto Rico on March 5 through March 9, 2012. Following the conclusion of the oral testimony, the parties submitted proposed findings of fact and conclusions of law. Copies of AUA's findings of fact and conclusions of law are annexed as Exhibit D and Leeward's as Exhibit E. When AUA received Leeward's proposed findings of fact and conclusions of law, it was shocked to learn that, contrary to the relief sought in the demand, Leeward was now seeking, as an alternative to being paid in full (EC $3,345,649) for work it did not perform or work that it performed under separate contacts, only the overhead and profits that it would have been paid for such work (EC $602,216.82). AUA vehemently objected to the interposition of this claim, made by Leeward for the first time subsequent to the close of testimony, particularly in light of the fact that Leeward had had numerous opportunities, both during the project, prior to the hearing, and at the hearing itself, to assert this claim. *See* AUA's

Rebuttal Submission, ¶¶ 26-38, attached hereto as Exhibit F.  In its post-hearing reply papers to the arbitrators, AUA noted among other things:

> Indeed, at no time during the hearing did Leeward seek Overhead and Profits on Omitted Work and neither party submitted any evidence in support of or in defense of such a Claim . . . . Were Leeward permitted to add this new claim now, AUA would be deprived of the opportunity to submit evidence in response, as it did not have a reason to do so at the hearing.

Exhibit F, ¶ 37.

**<u>The Arbitration Award</u>**

14.     On June 25, 2012, the arbitrators issued an award.  A copy of the arbitration award is annexed as Exhibit B to the Petition to Confirm the Arbitration Award (the "Award"). Although the Award itself is lengthy, it breaks down the separate issues submitted to them by each side in question and answer form – first answering the issues as posed by Leeward, and then as posed by AUA.  In several key areas, the award was fraught with glaring deficiencies. Thus, for example, it grants relief beyond the scope of the issues that were raised by the parties and tried before the arbitrators.  Moreover, and while in most instances, the arbitrators do provide some limited reasoning for their decision, in several key areas they completely failed to do so, notwithstanding that the Rules governing the arbitration as the arbitrators themselves had expressly found required them to provide a "reasoned award."  These glaring deficiencies of the Award can be broken down into four categories:

(A)     The arbitrators awarded Leeward EC $232,670.13 under the "bad faith doctrine."  This award was made even though Leeward never asked to be awarded additional damages under the "bad faith doctrine" or any other theory.  As the court will see from reviewing the post-hearing findings of fact and conclusions of law submitted by the parties, Leeward did not raise or make any claim for damages based on any assertion that AUA's was guilty of "bad

6

faith," and did not, at any time before, during or after the arbitration hearing was concluded, reference any "bad faith doctrine," much less any facts related to it. As a result, neither party briefed the "bad faith doctrine." Moreover, while the award was required to be a reasoned award, the arbitrators failed to refer to any factual basis, or provide any citation or explanation of legal authority as to how or why they calculated this damage award. They did so notwithstanding that the amount that they awarded under the "bad faith doctrine" was not a rounded or round number, but was a very precise amount, down to the dollar. As noted in AUA's application to the arbitrators to modify the award, the arbitrators were required to provide reasons for their award; it was not sufficient for the arbitrators to cite evidence that was adduced at the hearing without providing any indication as to how that evidence satisfied the elements of the claims of the party in whose favor the arbitrators made their award. It was certainly improper for the arbitrators to find in favor of a party on claims that the party did not raise without providing a legal basis or any reason for them to do so. *See* Redfern & Hunter on International Arbitration (5th Ed, § 9.125).

    (B)  The arbitrators awarded Leeward a total of EC $802,399.25 in lost profits and overhead. The Award included both what Leeward had actually sought prior to and during the hearing, *i.e.*, EC $350,557 in overhead and profits for work that had been removed from the contract and given to another contractor, and also what Leeward had sought for the first time in its post-trial submissions, *i.e.*, overhead and profit for work that it had not performed at due to changes in the design of the project and the scope of Leeward's work thereunder (what the parties called "Omitted Work.") The Award also granted sums to Leeward for work that it had it performed and was paid for under separate contracts – what the parties called the "Flooring Work." It did so despite that Leeward had argued up to and through the hearing only that it was

7

entitled to be paid in full for the Omitted Work and the Flooring Work under the terms of the Contract Documents, and had never asserted a claim to the effect that, if its claim for payment of the full contract price was rejected, it was entitled to be paid overhead and profits on this work. AUA defended (successfully) Leeward's claim that it was entitled to payment in full for the Omitted Work and the Flooring Work. However, AUA did not defend, because it had not been asserted, Leeward's new fall back claim for lost profit and overhead on the Omitted Work and Flooring Work.

In short, the arbitrators adjudicated a claim that was not submitted to the Tribunal by Leeward prior to the hearings or, in fact, during the course of the hearings. As noted hereinabove, the first time that Leeward made such a claim was in its proposed findings of fact and conclusions of law, thereby depriving AUA of an opportunity to proffer any defense to this claim. By permitting a post-hearing amendment of claims, the arbitrators ignored the rules of the AAA, exceeded their powers and issued an award that deals with a claim not contemplated by, nor falling within the terms of the submission to arbitration. As a result, the Tribunal awarded far more in overhead and profits than AUA was on notice to defend at the hearing.

(C) The Award also granted Leeward EC $190,201.19 (final award Section VI(B-16)) for various extra work that Leeward claimed it had performed, but for which it had not been paid (the parties called this work the "Change Order Work.") The sole basis and support for this portion of the award to Leeward consisted of the arbitrators' conclusory statement as follows: "From the evidence presented at trial, the panel finds that Leeward is entitled to the additional EC $190,201.19." No basis or reason is given for this award, which is particularly troubling given that the contemporaneous documentary evidence presented at the hearing unambiguously demonstrated that, long before Leeward commenced the arbitration,

8

representatives of Leeward and AUA had met with each other, had investigated Leeward's claims in this regard, had negotiated the issue and had agreed that Leeward was not entitled to these monies. As a result, this portion of the award failed to constitute a "reasoned award."

(D)  Finally, AUA believes that the award is defective because it contains an obvious arithmetical error. Leeward's proposed findings of fact and conclusions of law sought interest on late payments for both monthly invoices and mobilisation at a rate of 10%. The Tribunal awarded interest on alleged late payments of monthly invoices throughout the duration of the project. (*See* Award, VI.(A-3) and VI.(A-4)). The Tribunal denied interest on mobilisation payments, however, ruling that any claims arising out of mobilisation payments had been settled previously. (Award, VI.(B-33)). Finally, the Tribunal rejected Leeward's request to apply a 10% interest rate; it found 7% to be the appropriate rate. (Award, VI.(A-4)). However, when the Tribunal calculated Leeward's interest award in light of its rulings, it simply reduced the total amount of interest that Leeward had claimed for both monthly invoices and mobilisation from 10% to 7% without removing that portion of the interest that Leeward had claimed was attributable to mobilization. This was clearly contrary to their ruling that Leeward was not entitled to any sums or interest for mobilisation because the claims for these sums had already been settled. Had the arbitrators calculated the interest award correctly, Leeward would have been awarded EC$17,152.92 and not EC $44,617.37. This is a clear computational error in the award.

15.  Under the limited grounds provided by the AAA rules, AUA filed a motion with the Tribunal seeking a modification and correction of the award with respect to the four issues raised above, which application is annexed as Exhibit G. The arbitrators denied AUA's motion

without discussion, as stated in their decision attached hereto as Exhibit H, refusing to modify the Final Award, even with respect to the clear mathematical error on its award of interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 25, 2012

_____
Leonard A. Sclafani, Esq.