# EXHIBIT E

AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION RULES
-------------------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD.,

                                    Claimant,

              -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE C/O GCLR, LLC,

                                    Respondent.
-------------------------------------------------------------------------x

**CLAIMANT'S PROPOSED
FINDINGS OF FACTS AND
CONCLUSIONS OF LAW**

Case No. 50 110 T 00075 11

Claimant, Leeward Construction Company, Ltd. ("Claimant" or "Leeward") submits this Proposed Findings of Facts and Conclusions and Law in accordance with the Tribunal's Resolution dated March 2, 2012, and directive at the conclusion of the evidentiary hearing held on March 5 - 9, 2012.

## BACKGROUND

a.    **Parties**

1.    Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda ("Antigua"), with an office and principal place of business at All Saints Road, St. Johns, Antigua.

2.    Leeward was formed in 2006 and is the progeny of Linde Antigua, Ltd., which was formed in 1992.

3.    The Respondent, American University of Antigua -- College of Medicine ("Respondent" or "AUA") is owned by the GCLR, LLC, which is a limited liability company organized and existing under the laws of the State of New York, with an office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York; and University

1

Park, Jabberwock Beach Road, Coolidge, Antigua.  (On March 19, 2012, GCLR, LLC changed its name to Manipal Education Americas, LLC.)

**b.      Nature of the Dispute**

4.      This dispute arises out of the construction of a medical school in Antigua (the "Project").

5.      Leeward, as general contractor, entered into a contract, dated September 25, 2008, with the AUA, as owner of the Project, for the construction of the medical school for a fixed sum of US $10,162,599.61/EC $27,436,824.00[1] subject to additions and deductions by change order as provided in the Contract documents (the "Contract").

6.      Leeward commenced this arbitration to recover damages from the AUA for breach of the Contract, including the AUA's failure to pay the contract balance when due.

**c.      The Arbitration**

7.      The General Conditions to the Contract contain an arbitration clause that reads as follows:

> § 4.6 ARBITRATION
>
> § 4.6.1  Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.
>
> § 4.6.2  Claims shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the

---

[1] As of April 17, 2012, the conversion rate for Eastern Caribbean dollars to United States dollars is 0.3704 United States dollars for each Eastern Caribbean dollar, and United States dollar to Eastern Caribbean dollar is 2.7000 Eastern Caribbean dollars for each United States dollar.  *See* http://www.likeforex.com.

Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. Location of any Arbitration will be Antigua.

8.     Leeward commenced this arbitration on February 3, 2011, by filing a Demand for Arbitration with the American Arbitration Association, International Center for Dispute Resolution (the "AAA").

9.     On or about June 9, 2011, the AAA appointed a panel of three neutrals to hear and determine this dispute:  Jorge R. Jimenez, Esq. (Chairman), Hector M. Varela, P.E., MBA, FASCE, and Jose Rafael Capo, Esq.  (The arbitration panel is collectively referred to herein as the "Arbitrators" or "Tribunal.")

10.     At the Preliminary Hearing on September 14, 2011, the Tribunal directed Leeward to file an Amended Demand for Arbitration (the "Amended Demand") by October 14, 2011, and further directed the AUA to file a reply to the Amended Demand by November 30, 2011.

11.     On or about October 14, 2011, Leeward served and filed the Amended Demand for Arbitration requesting an award for breach of contract in the amount of US $2,518,931.97/EC $6,800,572.28; interest on late payments as provided in the Contract from the date the payments were due until the date the payments were made at the legal rate of interest in Antigua as determined by the Arbitrators; and legal fees and expenses, including the cost and expense of arbitration, as determined by the Arbitrators in accordance with the laws of Antigua.

12.     Leeward's breach of contract claim alleges that the AUA repeatedly breached the contract by failing to issue change orders/change directives for additional contract work; failing to pay for additional work that the AUA authorized and directed Leeward to perform; failing to pay

3

Leeward's payment applications in accordance with the terms of the Contract; failing to certify the Project as substantially complete; failing to issue a final certificate of payment; failing to make final payment to Leeward in accordance with the terms of the Contract; failing to pay the mobilization fee as provided in the Contract; failing to authorize overtime as provided in the Contract; failing to coordinate the work of other contractors as required in the Contract; and failing to properly administer the Contract as provided in the Contract documents.

13.     On or about November 30, 2011, the AUA filed a reply to the Amended Demand that included counterclaims for liquidated delay damages in the amount of US $117,000.00 and in the alternative, actual delay damages in the amount of US $371,955.31/EC $1,004,199.00. (The AUA withdrew its counterclaim for actual delay damages on April 11, 2012.)

14.     At a hearing held on December 11, 2011, the parties stipulated to conduct the evidentiary hearing in San Juan, Puerto Rico, notwithstanding the venue provision in the Arbitration Agreement requiring that the Arbitration take place in Antigua.

15.     Also at the hearing on December 11, 2011, the parties represented that they did not intend to use an expert witness at the evidentiary hearing.

16.     On January 9, 2012, the Parties made a joint request to the Tribunal to submit direct witness testimony by witness statement, which the Tribunal granted by resolution dated January 10, 2012.

17.     The January 10, 2012 Resolution also scheduled the evidentiary hearing to take place in San Juan, Puerto Rico on March 5, 2012 through March 9, 2012.

18.     On or about February 3, 2012, the Parties exchanged witness statements and documents in support of the respective claims, and on February 24, 2012, the AUA served witness statements and documents in reply to Leeward's witness statements.

4

19.     On February 28, 2012, the Parties submitted a Joint Pre-Trial Report containing factual stipulations, document stipulations, exhibit lists, witness summaries, and a list of issues and interlocutory matters to be resolved.

20.     The evidentiary hearing was held at the Isla Verde, Marriott Courtyard in Isla Verde, Puerto Rico on March 5, 2012 through March 9, 2012 (the "hearing").

21.     Leeward submitted the following witness statements in support of it's claims and each of the witnesses submitted to cross examination in person or by Skype at the hearing:

- Neil Dickinson ("Dickinson");
- Robert Winwood ("Winwood");
- Eric Linde ("Linde"); and
- Andy Green ("Green").

22.     The AUA submitted the following witness statements in support of its counterclaims and defenses and each of the witnesses submitted to cross examination in person or by Skype at the hearing:

- Peter McLeod ("McLeod");
- Lt. Col. Roche Antony ("Antony");
- Prahbu Marudheri ("Marudheri"); and
- A.S. Nagesh ("Nagesh").

23.     During the hearing, Leeward submitted five binders of exhibits identified as LC 1 - LC 245 and the AUA submitted two binders of exhibits identified as AUA 1 - AUA 74.

24.     During the hearing, the Tribunal ruled that all exhibits are deemed admitted into evidence in the absence of an objection.

25.     At the close of the evidentiary hearing on March 9, 2012, the parties placed

stipulations on the record with respect to the withdrawal and/or amendment of certain exhibits and revisions to their respective exhibit lists, and the revised exhibit lists were submitted on April 12, 2012.

26.     The AUA admitted during the hearing that it owes Leeward retainage under the contract in the amount of US $218,566.74/EC $590,083.00.

27.     The AUA admitted during the hearing that it owes Leeward US $30,743.20/EC $83,000.00 due to an error in the calculation of Antigua and Barbuda Sales Tax ("ABST") on the Contract payments.

## FINDINGS OF FACT

28.     The Project was originally projected to include 325,000 square feet of classrooms, library, and amphitheater space, as well as the construction of a housing blocks (living quarters) for the students.

29.     Leeward initially began its work on the Project with the installation of deep foundations and building slabs.

30.     The installation of these foundations and slabs was done under a prior contract that Leeward entered into with the AUA on May 14, 2007 for the fixed price of US $937,121.63/EC $2,530,026.00, subject to additions and deductions by change order.

31.     The Project site required extensive engineering work because it is in a flood plain on reclaimed ground that was once a sugar plantation.

32.     The deep pile foundations that Leeward was contracted to install were required to maintain the structure on this type of ground, but the required piles were not manufactured in Antigua.

33.     To purchase the manufactured piles, Leeward would have to import them from

Trinidad, but the cost of importing the piles was prohibitive.

34.     Leeward's solution was to construct its own plant on site to manufacture the piles.

35.     Leeward understood that it could not recoup its investment in the plant from the construction of the deep foundations and building slabs, but Leeward made the investment because the AUA promised to retain Leeward for the construction of additional works, including the classrooms, laboratories, library, and housing blocks, which would allow Leeward to recoup the cost of the plant.

36.     Leeward commenced the installation of the deep foundation and building slabs on or about June 18, 2007 and completed the work on or about April 21, 2008.

37.     In the spring of 2008, the AUA began negotiating a contract with Leeward for the construction of the structural works portion of the Project.

38.     Although Leeward was reluctant to commence the construction of the structural works portion of the Project without a formal contract, the parties executed a Letter of Intent dated April 21, 2008, and Leeward commenced work on or about May 10, 2008.

39.     The April 21, 2008 Letter of Intent provided for the construction of 325,000 square feet including the structural works, finishing works, and pile castings for the library and administrative building, laboratory, and housing blocks at approximately US $110.00/EC $297.00 per square foot for a total value of US $35,750,000.00/EC $96,525,000.00.

40.     On May 10, 2008, the AUA issued a second Letter of Intent which further delineated the terms of the parties' agreement, including:

- Sundaram Architects Pvt., Ltd. ("Sundaram"), the Project architect, would provide the architectural, structural, mechanical, electrical and plumbing designs as well as all the Bills of Quantities for the entire Project, including Housing Blocks 1, 2 and 3 by July 15, 2008;

7

- Sundaram's Bills of Quantities would be used to agree on "a Stipulated Sum contract for the entire project scope;"

- The form of agreement for the contract would be AIA Document A101, Standard Form of Agreement between Owner and Contractor where the basis of payment is a Stipulated Sum (1997 Edition); and

- A mobilization advance would be paid within seven days of receipt of an executed copy of the May 10, 2008 Letter of Intent.

41.     On September 25, 2008, Leeward and the AUA executed the Contract for Leeward's work on the Project for the fixed sum of US $10,162,599.61/EC $27,436,824.00 subject to additions and deductions by change order.

42.     The Contract included the structural works and finished works for the classroom and laboratory building, service block, library block and library amphitheater, but not the housing blocks as promised in the Letters of Intent.

43.     The Contract includes the following documents:

- Table of Contents (LC 1, p. LC000002-LC000003)

- AIA Document A101-1997: Standard Form of Agreement Between Owner and Contractor where the basis of payment is a stipulated sum. (LC 1, p. LC000005-LC000010)

- Supplementary Conditions (LC 1, p. LC000010-LC000015)

- AIA Document A201-1997: General Conditions of the Contract for Construction (LC 1, p. LC000016-LC000056)

- List of Drawings (LC 1, p. LC000057-LC000061)

- Pricing Schedules and Bill of Quantities (LC 1, p. LC000062-LC000105)

- Division One Specifications (LC 1, p. LC000106-LC000161)

- Project Drawings (LC 1, p. LC000162-LC000238)

8

44.    The first part of the Bill of Quantities is the "Statement of Contract Sum and Collections Page." (LC 1, p. LC000073)    The total preliminaries in the amount of US $1,358,491.63/EC $3,667,634.00, comes from the unit pricing (set forth at LC 1, p. LC000066-LC000072) based upon a weekly rate of US $26,124.68/EC $70,531.00 for 52 weeks.

45.    The second part of the Statement of Contract Sum and Collections Page are the measured works broken down into four areas: Classroom and Library Building, Service Block, Library Block, and Library Block-Amphitheater.

46.    The column on the far right entitled "Amount" reflects measured quantities as determined by the AUA's Quantities Surveyor multiplied by the agreed unit prices for each of the line items for work and material for each of the measured work works categories (LC 1, p. LC0000073), which comes from the Bill of Quantities itself.  For example, the second page of the Bill of Quantities is entitled "Construction of Classroom and Library Buildings" (top center).

47.    The next six pages lay out the measured quantities, unit prices, and pricing for each item of work for the construction of the classroom and laboratory buildings.  The total amount of those items, which is set forth in the bottom of "page 6 of 6" (LC 1, p. LC000079) is US $1,874,251.78/EC $5,060,075.00.  This is the same number that appears on the Statement of Contract Sum and Collections Page, Measured Works, Line 2.1.

48.    The Bill of Quantities breakdown for the Service Block is set forth at LC 1, p. LC000080-LC000086; the Bill of Quantities breakdown for the Library Block is at LC 1, p. LC000087-LC000098; and the Bill of Quantities breakdown for the Library Block-Amphitheater is at LC 1, p. LC000099-LC000105.

49.    The measured work items summarized on the Statement of Contract Sum and Collections Page (LC 1, p. LC000073) and as determined in the Bill of Quantities (LC 1, p.

9

LC000073-LC000105) includes the work, labor and materials that Leeward provided to the AUA pursuant to the April 21, 2008 Letter of Intent (LC 69) and the May 10, 2008 Letter of Intent (LC 70), as re-measured by the AUA's Quantities Surveyor just prior to the execution of the contract, thereby incorporating the remeasured work into the fixed contract price of US $10,162,599.61/EC $27,436,824.00.

50.    The last item on the Statement of Contract Sum and Collections Page is "cash allowances" in the amount of US $370,400.00/EC $1,000,000.00 for scaffolding, craneage, and overtime.

51.    Article 7.3 of the contract identifies Lt. Col. Antony as the Owner's representative on the Project.

52.    Article 4.1.1 of the Contract defines the project architect as the person or entity lawfully licensed to practice architecture.

53.    Nagesh, a Civil Engineer, was the Architect's representative on the Project.

54.    Although Nagesh had a permit to work in Antigua, he did not have a license or authorization to practice engineering or architecture in Antigua.

55.    Neither Antony nor Nagesh had any prior experience with AIA Document A101-1997: Standard Form Agreement Between Owner and Contractor Where the Basis of Payment is a Stipulated Sum; or AIA Document A201-1997: General Conditions of the Contract for Construction.

56.    According to Article 3 of the Contract, the commencement date of the Contract work was May 1, 2008 and the substantial completion date was April 30, 2009.

57.    Leeward commenced the Contract work on or about May 10, 2008, substantially completed the Contract work on or about July 31, 2009, and finally completed the Contract work

on or about September 18, 2009.

58.    The AUA conducted a "soft opening" of the Project in October 2009 and has been

occupying and using the Project for its intended purpose since no later than January, 2010.

59.    Article 5.1.3 of the Contract requires the AUA to pay Leeward's monthly payment

applications by the twenty-second day of each month for applications submitted by the seventh day

of the month.

60.    Leeward submitted requisitions and the AUA paid the requisitions as follows:

| Requisition | Date Submitted | Amount Demanded Excluding Retainage | Amount Paid | Date Paid |
|---|---|---|---|---|
| Application No.1 | 04/18/08 | EC $375,681.18 | EC $333,833.67 | 04/24/08 |
| Application No. 2 | 05/14/08 | EC $669,343.00 | EC $435,986.79 | 05/30/08 06/02/08 |
| Application No. 3 | 05/16/08 | EC $279,181.26 | EC $244,630.15 | 06/09/08 |
| Application No. 4 | 05/23/08 | EC $231,368.72 | EC $243,906.02 | 06/09/08 |
| Application No. 5 | 06/04/08 | EC $264,084.00 | EC $310,132.65 | 06/20/08 |
| Application No. 7 | 07/11/08 | EC $1,510,675.16 | EC $1,176,211.22 | 07/30/08 |
| Application No. 8 | 08/01/08 | EC $950,206.36 | EC $467,440.11 | 08/27/08 |
| Application No. 10 | 09/05/08 | EC $490,837.00 | EC $264,299.89 | 10/01/08 10/08/08 |
| Application No. 11 | 10/03/08 | EC $1,626,059.69 | EC $958,531.17 | 11/04/08 |
| Application No. 12 | 10/31/08 | EC $1,146,958.07 | EC $718,588.47 | 11/20/08 |
| Application No. 13 | 11/05/08 | EC $1,538,676.60 | EC $774,718.48 | 12/23/08 |
| Application No. 14 | 01/08/09 | EC $924,817.42 | EC $635,009.83 | 01/23/09 |
| Application No. 15 | 12/31/08 | EC $1,655,020.79 | EC $1,538,143.25 | 02/26/09 |
| Application No. 16 | 03/02/09 | EC $3,615,080.71 | EC $2,737,012.49 | 03/24/09 |
| Application No. 17 | 04/02/09 | EC $3,638,851.41 | EC $2,768,550.39 | 04/22/09 |
| Application No. 18 | 05/02/09 | EC $2,243,550.10 | EC $1,309,404.75 | 05/26/09 |
| Application No. 19 | 06/01/09 | EC $2,478,272.93 | EC $1,393,869.68 | 06/23/09 |
| Application No. 20 | 07/03/09 | EC $2,765,603.84 | EC $1,270,603.57 | 07/21/09 |
| Advance Payment | 07/10/09 | EC $1,000,000.00 | EC $500,000.00 | 07/20/09 |
| Application No. 21 | 07/31/09 | EC $2,765,603.84 | EC $840,947.85 | 08/21/09 |
| Payment No. 25 | | | EC $553,888.27 | 09/30/09 |
| Payment No. 26 | | | EC $57,244.40 | 10/01/09 |
| Interim      Final | 10/09/09 | EC $1,322,022.79 | EC $104,862.91 | 10/27/09 |

| Application | | | | |
|---|---|---|---|---|
| **TOTAL** | | | **EC $19,637,816.01/ US $7,273,847.05** | |

61.     Article 5.1.9 of the Contract requires the AUA to pay Leeward an advance payment for mobilization equal to twelve percent (12%) of the Contract price US $1,219,511.92/EC $3,292,418.80 within seven (7) days of execution of the Contract, which occurred on September 25, 2008.

62.     Upon the signing of the Contract, the AUA paid the mobilization fees as follows:

| Mobilization Payments | Date Submitted | Amount Requested | Amount Paid | Date Paid |
|---|---|---|---|---|
| Mobilization Pmt. No. 1 | 06/04/08 | EC $806,460.00 | EC $806,460.00 | 06/19/08 |
| Mobilization/ Scaffolding | 07/29/08 | EC $222,000.00 | EC $150,000.00 | 08/01/08 |
| Mobilization Pmt. No. 2 | 10/01/08 | 12% of Contract sum less prior mobilization advances. | EC $1,000,000.00 | 11/06/08 (Due 10/02/08) |
| Mobilization Pmt. No. 3 | 10/01/08 | 12% of Contract sum less prior mobilization advances. | EC $1,335,900.48 | 12/22/08 (Due 10/02/08) |
| **TOTAL** | | | **EC $3,292,360.48/ US $1,219,490.32** | |

63.     Article 5.1.6 of the Contract authorizes the AUA to withhold retainage in the amount of five percent (5%) of the Contract sum US $508,129.98/EC $1,371,841.20 and requires the AUA to release fifty percent (50%) of the retainage to Leeward at substantial completion.

64.     The AUA currently holds retainage in the amount of US $218,566.74/EC $590,083.00, and admits owing Leeward that amount.

12

65.     Article 7 of the General Conditions and Section 1.7 of the Division 1 Specifications require the Architect to prepare and the Owner sign written change orders or change directives for changes to the Contract work that result in an increase or decrease in the Contract price.

66.     Leeward repeatedly requested the Architect and the AUA to issue written change orders for changes to the Contract work that increased or decreased the Contract price.

67.     The Architect and the AUA failed to issue a single change order on the Project with respect to the Contract.

68.     Article 9.8.4 of the General Conditions requires the Architect to issue a Certificate of Substantial Completion with respect to the Contract work.

69.     Upon substantial completion of the Contract work, Leeward requested the Architect to issue a Certificate of Substantial Completion.

70.     As of the commencement of the hearing, neither the Architect nor the AUA has issued a Certificate of Substantial Completion for the Contract work.

71.     Article 5.2 of the Contract and Article 9.10 of the General Conditions requires the Architect to issue a Final Certificate of Payment upon completion of the Project work.

72.     Leeward requested the Architect and the AUA to issue a Final Certificate of Payment for the Contract work.

73.     As of the commencement of the hearing, neither the Architect nor the AUA has issued a Final Certificate for Payment.

74.     Article 7.2 of the Contract and Article 13.6 of the General Conditions requires the AUA to pay interest on payments due and unpaid under the Contract at the "legal rate" in Antigua from the date the payment is due until the date the payment is made.

75.     According to the Pricing Schedules and the Bills of Quantities in the Contract,

13

Leeward is entitled to 18% overhead and profit on its own work and 5% overhead and profit on items of supply only.

76.     Under Section 01200, Part 1.9(A) of the Division 1 Specifications for the Contract, unit prices are inclusive of overhead and profit.

77.     Article 4.3 of the Contract provides that changes to the Contract sum based upon the unit prices are inclusive of overhead and profit, except as provided in Article 7 of the General Conditions.

78.     Under Article 7.3.7 of the General Conditions, changes to the Contract work that result in a net decrease in the Contract sum shall be "actual net cost," excluding overhead and profit.

79.     Leeward performed extra work under the Contract at the request of the AUA which increased the Contract sum by US $594,146.28/EC $1,604,066.62, from US $10,162,599.61/EC $27,436,824.00 to US $10,756,745.89/EC $29,040,890.62.

80.     The AUA paid Leeward for the extra work except, the AUA failed to pay for hurricane safety measures; works carried out to shut down and secure the site on October 23-24, 2008; customs storage charges; election day close down costs; Labour Day close down costs; Whit Monday close down costs, and other adverse weather costs in the total amount of US $67,350.93/EC $181,847.52.

81.     Neither the AUA nor the Project Architect issued change orders for the extra work.

82.     The AUA changed the Contract price as a result of design changes and the modification or omission of work from the Contract.  Omissions to the Contract work on the Project resulted in a decrease to the Contract price in the amount of US $594,302.59/EC

14

$1,604,617.00.

83.    Neither the Architect nor the AUA issued change orders for changes to the scope of work that reduced the Contract price.

84.    The AUA did not pay Leeward overhead and profit on work removed from the Contract as a result of the design changes, modifications, omissions, or removal of work from the Contract.

85.    On or about April 21, 2009, the AUA removed the following items of work from the Contract and put each item of work up for competitive bids: painting and finishes, flooring, doors and windows.

86.    These deletions resulted in a decrease in the Contract price in the amount of US $1,358,520.15/EC $3,667,711.00.

87.    Neither the Architect nor the AUA issued change orders for changes to the scope of work that reduced the Contract price.

88.    The AUA did not pay Leeward overhead and profit on work removed from the Contract and put up for competitive bids.

89.    The AUA removed these items of work from the Contract in an effort to reduce the cost of the works through competitive bidding and to avoid paying Leeward preliminaries for work performed after the substantial completion date set forth in Article 3.3 of the Contract, as extended by the AUA to the May 10, 2009 date.

90.    The AUA awarded the following additional works contracts for the work removed from the initial Contract as well as additional works required for the Project:

| Additional Work | Contract Amount |
|---|---|
| Doors & Windows | EC $419,932.68 |
| Tile Work | EC $610,206.58 |

| | |
|---|---|
| Screed Work at Terrace | EC $48,020.00 |
| A/C Compressors Concrete | EC $40,462.50 |
| Screed Work on Blocks A, B, C and Walkways | EC $74,751.10 |
| Plyboard for Service Building Floor | EC $3,350.00 |
| Additional Plastering for Amphitheatre and Service Block Steps | EC $22,870.00 |
| Glazing | EC $48,770.00 |
| Downpipes | EC $12,464.46 |
| Civil Works in the Data Centre | EC $27,250.00 |
| Concrete Band Work | EC $74,491.12 |
| Toilet Fixtures | EC $130,523.75 |
| Porch Pavers | EC $28,792.00 |
| PVC Pipes | EC $9,250.00 |
| **TOTAL** | **EC $1,551,134.19/ US $574,494.14** |

91.    The AUA paid Leeward for the work under the additional works contracts except

US $79,443.43/EC $214,480.10 as follows:

| Additional Work | Contract Amount | Amount Paid |
|---|---|---|
| Doors & Windows | EC $419,932.68 | EC $424,106.83 |
| Tile Work | EC $610,206.58 | EC $448,054.30 |
| Screed Work at Terrace | EC $48,020.00 | EC $59,517.67 |
| A/C Compressors Concrete | EC $40,462.50 | EC $37,771.80 |
| Screed Work on Blocks A, B, C and Walkways | EC $74,751.10 | EC $74,751.10 |
| Plyboard for Service Building Floor | EC $3,350.00 | EC $3,350.00 |
| Additional Plastering for Amphitheatre and Service Block Steps | EC $22,870.00 | EC $22,870.00 |
| Glazing | EC $48,770.00 | EC $56,170.00 |
| Downpipes | EC $12,464.46 | EC $10,000.00 |
| Civil Works in the Data Centre | EC $27,250.00 | EC $27,250.00 |
| Concrete Band Work | EC $74,491.12 | EC $32,816.82 |
| Toilet Fixtures | EC $130,523.75 | EC $118,268.24 |

| Porch Pavers | EC $28,792.00 | EC $25,200.00 |
|---|---|---|
| PVC Pipes | EC $9,250.00 | EC $9,250.00 |
| **TOTAL** | **EC $1,551,134.19/** **US $574,494.14** | **EC $1,349,376.76/** **US $499,809.15** |

92.     Under Article 4 of the General Conditions, the Architect is responsible for administering the Contract, including, but not limited to review of Leeward's payment requisitions and certification of the amounts due Leeward; preparation of change orders and change directives; and the determination of claims initiated at the AUA or Leeward including Leeward's claims for additional compensation and/or additional time to complete the contract work.

93.     Although the Architect's representative, Nagesh, reviewed Leeward's payments and requisitions, the Owner's representative, Lt. Col. Antony, determined the amounts due Leeward.

94.     In making this determination, Lt. Col. Antony changed the unit prices in the Contract without Leeward's consent.

95.     In making this determination, Lt. Col. Antony changed the quantities in Leeward's payment requisitions without Leeward's consent with respect to the work performed.

96.     Leeward submitted the following payment requisitions to the AUA which were modified by Nagesh and then modified again, without Leeward's consent, by Lt. Col. Anthony.

| Requisition | Date Submitted | Requisitioned Amount | Amount Approved by Nagesh | Amount Paid as Approved by Antony | Date Paid |
|---|---|---|---|---|---|
| Application No. 1 | 04/18/08 | EC $375,681.18 | EC $333,833.67 | EC $333,833.67 | 04/24/08 |
| Application No. 2 | 05/14/08 | EC $669,343.00 | EC $435,986.79 | EC $435,986.79 Two Payments: EC $234,601.98 EC $201,384.81 | 05/30/08 06/02/08 |
| Application No. 3 | 05/16/08 | EC $279,181.26 | EC $244,603.12 | EC $244,630.15 | 06/09/08 |

| | | | | | |
|---|---|---|---|---|---|
| Application No. 4 | 05/23/08 | EC $231,368.72 | EC $243,906.96 | EC $243,906.02 | 06/09/08 |
| Application No. 5 | 06/04/08 | EC $264,084.00 | EC $310,132.65 | EC $310,132.65 | 06/20/08 |
| Mobilization | 06/04/08 | EC $806,460.00 | EC $806,460.00 | EC $806,460.00 | 06/19/08 |
| Application No. 7 | 07/11/08 | EC $1,510,675.16 | EC $1,176,211.22 | EC $1,176,211.22 | 07/30/08 |
| Mobilization Scaffolding | 07/29/08 | EC $222,000.00 | EC $150,000.00 | EC $150,000.00 | 08/01/08 |
| Application No. 8 | 08/01/08 | EC $950,206.36 | EC $467,440.11 | EC $467,440.11 | 08/27/08 |
| Application No. 10 | 09/05/08 | EC $490,837.00 | EC $64,446.50 approved on requisition. EC $199,853.39 added to payment for pre-contract preliminaries. | EC $264,299.89 Two Payments: EC $90,333.02 EC $173,966.87 | 10/01/08 10/08/08 |
| Application No. 11 | 10/03/08 | EC $1,626,059.69 | EC $1,120,766.52 | EC $958,531.17 | 11/04/08 |
| Mobilization | 10/01/08 | 12% of contract sum less prior mobilization advances. | EC $1,000,000.00 | EC $1,000,000.00 | 11/06/08 |
| Application No. 12 | 10/31/08 | EC $1,146,958.07 | EC $803,742.11 | EC $718,588.47 | 11/20/08 |
| Application No. 13 | 11/05/08 | EC $1,538,676.60 | EC $1,011,742.66 | EC $774,718.48 | 12/23/08 |
| Mobilization | 10/01/08 | 12% of contract sum less advances already issued. | EC $1,335,900.48 | EC $1,335,900.48 | 12/22/08 |
| Application No. 14 | 01/08/09 | EC $924,817.42 | | EC $635,009.83 | 01/23/09 |
| Application No. 15 | 12/31/08 | EC $1,655,020.79 | EC $1,562,060.21 | EC $1,538,143.25 | 02/26/09 |
| Application No. 16 | 03/02/09 | EC $3,615,080.71 | | EC $2,737,012.49 | 03/24/09 |
| Application No. 17 | 04/02/09 | EC $3,638,851.41 | | EC $2,768,550.39 | 04/22/09 |
| Application No. 18 | 05/02/09 | EC $2,243,550.10 | | EC $1,309.404.75 | 05/26/09 |
| Application No. 19 | 06/01/09 | EC $2,478,272.93 | | EC $1,393,869.68 | 06/23/09 |
| Application No. 20 | 07/03/09 | EC $2,765,603.84 | | EC $1,270,603.57 | 07/21/09 |
| Advance | 07/10/09 | EC $1,000,000.00 | EC $1,000,000.00 | EC $500,000.00 | 07/20/09 |
| Application No. | 07/31/09 | EC | | EC $840,947.85 | 08/21/09 |

| 21 | | $2,765,603.84 | | | |
|---|---|---|---|---|---|
| Payment No. 25 | | | | EC $553,888.27 | 09/30/09 |
| Payment No. 26 | | | | EC $57,244.40 | 10/01/09 |
| Interim Final Payment | 10/09/09 | EC $1,322,022.79 | | EC $104,862.91 | 10/27/09 |
| **TOTAL** | | | | **EC $22,930,176.49/ US $8,493,337.37** | |

97.    Leeward submitted written claims for additional time and/or compensation to Nagesh by email and/or hand delivery to Nagesh's office located approximately 150 yards from Leeward's office on the Project site.

98.    Leeward's claims included the AUA's unilateral reduction of preliminaries rates; failure to pay preliminaries, failure to timely pay mobilization and requisition payments; failure to adequately communicate; failure to coordinate the work of all trades on the Project; failure to timely process materials through customs; denial of overtime applications; additional holidays, shutdowns, adverse weather and election costs; AUA's refusal to settle outstanding payment issues at the conclusion of the Project; and AUA contracting directly with Leeward's subcontractors.

99.    Lt. Col. Antony decided the claims instead of Nagesh.

100.    Nagesh, as the Architect's representative and the administrator of the Contract, failed to issue any change orders for the project.

101.    Nagesh, as the Architect's representative and the administrator of the Contract, failed to issue the certificate of substantial completion.

102.    Nagesh, as the Architect's representative and the administrator of the Contract, failed to issue the final certificate.

103.    Nagesh, as the Architect's representative and the administrator of the Contract,

19

failed to approve Leeward's requests for overtime expenses provided in the Contract.

104.    Nagesh, as the Architect's representative and the administrator of the Contract, failed to review and determine Leeward's claim, in good faith, for extra costs attributable to public holidays and weather, in the amount of US $67,350.93/EC $181,847.52, including hurricane safety measures; works carried out to shut down and secure the site on October 23-24, 2008; customs storage charges; election close down costs; labor day close down costs; Wit Monday close down cost; and other adverse weather costs.

105.    The AUA extended the substantial completion date set forth in Article 3.3 of the Contract from April 30, 2009 until May 10, 2009.

106.    Leeward was unable to substantially complete the project by May 10, 2009 and did not substantially complete the project until July 31, 2009 because of delays attributable to the AUA or other factors beyond Leeward's control.

107.    Leeward was delayed in the performance of the Contract work by unanticipated adverse weather conditions.

108.    Leeward was delayed in the performance of the Contract work by significant owner-initiated design changes, including delays in the issuance of and changes to the design of the mechanical, electrical and plumbing, toilet blocks, library, windows, doors, and tiling.

109.    Leeward was delayed in the performance of the Contract work as a result of the AUA's failure to timely pay mobilization fees.

110.    Leeward was delayed in the performance of the Contract work as a result of the AUA's failure to timely "endorse" customs documents and sign the warrants that Leeward required to clear and move materials from the Trade Free Zone.

111.    Leeward was delayed in the performance of the Contract work by the AUA's

20

failure to timely purchase windows and doors which were not delivered to the Project site until on or about July 14, 2009; and tiling, which were not delivered to the Project site until on or about July 29, 2009.

112.    As a result of these delays, Leeward incurred costs for preliminaries as set forth in the Contract pricing schedules and bills of quantities for an additional 19 weeks running from May 10, 2009, the substantial completion date in the Contract, as extended to September 18, 2009, when Leeward finally completed the Contracted work.

113.    The cost of the additional preliminaries for the extended period is EC $1,985,711.68.

114.    The AUA failed and refused to pay the additional preliminaries to Leeward.

## CONCLUSIONS OF LAW

a.    **Breach of Contract**

115.    A basic presumption of contract law is that a written contract contains all of the terms of the agreement. *See Jacobs v. Batavia & General Plantations Ltd.* [1924] 1 Ch 287.  In the instance of a fully executed contract, the parties are bound by all the terms contained therein. *See Chua Chian Ya v. Music & Movements (S) Pte Ltd.* [2010] 3 LRC 506, ¶13; *L'Estrange v. F Graucob Ltd.,* (1934) 2 KB 394. (A copy of each case is submitted herewith as Appendix A.)

116.    Although parole evidence is generally not admissible, ambiguities in contract terms are construed to give effect to the parties' intentions from the standpoint of a reasonable person. *See* Antigua and Barbuda Unfair Contract Terms Act §12.

117.    Under Antigua law, a breach of contract may occur in any of the following ways:

(i)    by repudiating one's liability under the contract;

21

    (ii)     by rendering the performance of the contract impossible;

    (iii)    by failing to fulfill the contractual obligations.

*See Christopher Wheatley et al. v. Waterpoint Caribbean Homes LTD.*, Antigua and Barbuda Suit No. ANUHCV 2010/0029, in the Eastern Caribbean Supreme Court in the High Court of Justice. (Appendix A)

118.    A breach of contract will not necessarily terminate the contract; the primary obligations of both parties may continue even after a breach has occurred. *See Id.*

119.    The party alleging a breach of contract is obliged to prove that a breach has occurred. *See Id.*

120.    The AUA breached the Contract with Leeward by, *inter alia*: failing to issue change orders for changes to the Contract work and for extra work; failing to issue a Certificate of Substantial Completion; failing to issue a Final Certificate of Payment; failing to pay Leeward overhead and profit on the deleted Contract works; failing to pay Leeward for extra works relating to various site closures and adverse weather; failing to release the remaining 50% of the retainage to Leeward; failing to have the Architect administer the Contract; and failing to pay Leeward what they were owed for preliminaries. (Dickinson Witness Statement, ¶¶38-64, 78-92; Green Witness Statement, ¶¶28-40, 42-53; Winwood Witness Statement, ¶¶17-22, 27-31)

121.    Leeward has demonstrated the AUA's numerous breaches of contract through the testimony of Dickinson, Winwood and Green as well as the 244 separate exhibits Leeward entered into evidence during the evidentiary hearings. Neither the AUA's cross-examination of Leeward's witnesses nor its own witnesses' testimony and exhibits has demonstrated otherwise. In fact, Leeward's cross-examination of Antony and Nagesh further illuminated the significant nature and breath of the AUA's breaches.

**b.      Damages**

122.    When a breach of contract has been proven, the non-breaching party is entitled to general damages: Actual damages that are the natural consequence of the breach. The purpose of general damages is to put the non-breaching party in the same position as if the contract had been performed perfectly. *See Christopher Wheatley et al. v. Waterpoint Caribbean Homes LTD., [2010], supra.* (Appendix A)

**(i). The Contract**

123.    On or about April 21, 2009, the AUA removed portions of work from the Contract and put those items of work up for competitive bids. The items of work included painting and finishing, flooring, doors and windows originally included in the Contract's Bill of Quantities. The deletion of these work items resulted in a decrease in the Contract price in the amount of EC $3,667,711.00. (LC 1, pp. LC 000072-LC 000105, AUA 26, AUA 30, pp. AUA 000267-AUA 000295)

124.    The AUA removed these items of work from the Contract in an effort to reduce the cost of the works through competitive bidding and to avoid paying Leeward preliminaries for work performed after the substantial completion date for the Contract as modified by the AUA to May 10, 2009. (Dickinson Witness Statement, ¶¶78-90; Green Witness Statement, ¶¶42-43; Winwood Witness Statement, ¶¶27-29)

125.    According to the Pricing Schedules and the Bill of Quantities in the Contract, Leeward is entitled to 18% overhead and profit on its own work. (LC 1, p. LC 000072)  Under Section 01200, Part 1.9(A) of the Division 1 Specifications for the Contract, unit prices are inclusive of overhead and profit. (LC 1, p. LC 000119)

126.    Article 4.3 of the Contract provides that changes to the Contract sum based upon

the unit prices are inclusive of overhead and profit, except as provided in Article 7 of the General Conditions. (LC 1, pp. LC 000034-LC 000035)  Article 7.3.7 of the General Conditions provides that changes to the Contract work that result in a net decrease in the Contract sum shall be "actual net cost," excluding overhead and profit. (LC 1, p. LC 000040)

127.    Pursuant to Article 4 of the General Conditions, when the AUA deleted these items of work from the Contract, it should have issued change orders reducing the Contract sum by the amount included in the Bill of Quantities for these items, but still compensate Leeward for its overhead and profit. (LC 1, p. LC 000033, p. LC 000039, p. LC 000117)  The AUA breached the Contract because neither the AUA nor the Architect issued change orders for these reductions in the scope of the work that reduced the Contract price.  Further, the AUA did not pay Leeward overhead and profit on this deleted work removed from the Contract and put up for competitive bid.

128.    In addition to overhead and profit on work deleted from the Contract's scope, Leeward is also entitled to be fully compensated for extra work performed under the Contract that should have resulted in change orders increasing the Contract sum had the AUA and its Architect upheld the Contract's terms.    In all, Leeward performed US $594,146.28/EC $1,604,066.62 in "change order" work under the Contract, most of which was paid for by the AUA.  However, Leeward was not paid for hurricane safety measures; works carried out to shut down and secure the site on October 23-24, 2008; customs storage changes; election day close down costs; Labour Day close down costs; Whit Monday close down costs, and other adverse weather costs in the total amount of US $67,350.93/EC $181,847.52. (Green Witness Statement, ¶51; Winwood Witness Statement, ¶21; AUA 30, pp. AUA 000297-AUA 000308)

129.    Leeward was also entitled to be compensated for the entire amount of

preliminaries it incurred while constructing the Project.  There is no basis in Antigua Law or under the Contract for the AUA to adjust the preliminaries prices.  Yet, throughout the Project the AUA routinely forced Leeward to accept reductions in its preliminaries costs, including arbitrary reductions in the preliminaries rates.  Had the AUA paid the preliminaries as incurred (US $2,182,344.08/EC $5,891,857.68), Leeward would have been paid US $735,507.61/EC $1,985,711.68 more than the originally projected amount for preliminaries and site set up costs as provided for in the Bill of Quantities (US $1,446,836.48/EC $3,906,146.00). (LC 1, p. LC000073; AUA 30, pp. AUA 000260-AUA 000261)  Paying Leeward the full amount of preliminaries incurred on the Project also adjusts the Project's costs to account for the delays Leeward experienced on the Project because the preliminaries were actual on-site costs that were being incurred on a week-to-week basis.

130.    As a result of the AUA's breach of the Contract, Leeward is entitled to general damages in the amount of US $1,847,627.88/EC $4,988,196.21 as follows:

| | | |
|---|---|---|
| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work | EC $ 3,667,711.00 | US $ 1,358,520.15 |
| Overhead and Profit (18%) on Deleted Work | EC $   559,481.40 | US $   207,231.91 |
| Revised Contract Sum | EC $24,328,594.40 | US $ 9,011,311.37 |
| Extra Work Under Contract | EC $ 1,604,066.62 | US $   594,146.28 |
| Additional Preliminaries/General Conditions | EC $ 1,985,711.68 | US $   735,507.61 |
| Total | EC $27,918,372.70 | US $10,340,965.25 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $ 4,988,196.21 | US $ 1,847,627.88 |

131.    The AUA has argued that the Collections Page included with the Interim Final Payment (AUA 22, p. AUA 002855) is an accurate accounting of what the AUA paid for each category listed therein.  If the Tribunal accepts the AUA's contention then, Leeward is entitled to general damages in the amount of US $1,466,057.15/EC $3,958,037.67.  The only difference

25

between this damages calculation and the one in Paragraph 130 above is that the preliminaries are calculated by deducting what the AUA claims it paid for preliminaries on the Collections Page (US $1,828,406.85/EC $4,936,303.60) (AUA 22, p. AUA 002855) from the total amount of preliminaries Leeward calculated for the Project (US $2,182,344.08/EC $5,891,857.68) (AUA 30, pp. AUA 000260-AUA 000261) as follows:

| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work | EC $ 3,667,711.00 | US $ 1,358,520.15 |
| Overhead and Profit (18%) on Deleted Work | EC $    559,481.40 | US $    207,231.91 |
| Revised Contract Sum | EC $24,328,594.40 | US $ 9,011,311.37 |
| Extra Work Under Contract | EC $ 1,604,066.62 | US $    594,146.28 |
| Additional Preliminaries/General Conditions | EC $    955,554.08 | US $    353,937.23 |
| Total | EC $26,888,215.10 | US $ 9,959,394.87 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $ 3,958,038.61 | US $ 1,466,057.50 |

132.   In addition to the work that was deleted from the Contract's scope and put out for competitive bidding, there was also work included in the Contract's scope that was not performed.  As with the deleted work, a change order was never issued removing the omitted work from the scope of the Contract.

133.   In the event that the Tribunal concludes that Leeward is not entitled to payment for this omitted work, Leeward is still entitled to be paid its overhead and profit on this omitted work pursuant to Article 7.3.7 of the General Conditions. (LC 1, p. LC 000040)  As such, Leeward would be entitled to general damages in the amount of US $962,370.95/EC $2,598,193.71 as follows:

| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Omitted and Deleted Work | EC $ 5,272,328.00 | US $ 1,952,870.29 |
| Overhead and Profit (18%) on Omitted and Deleted Work | EC $    804,253.50 | US $    297,895.50 |
| Revised Contract Sum | EC $22,968,749.50 | US $ 8,507,624.82 |

26

| Extra Work Under Contract | EC $  1,604,066.62 | US $    594,146.28 |
|---|---|---|
| Additional Preliminaries/General Conditions | EC $    955,554.08 | US $    353,937.23 |
| Total | EC $25,528,370.20 | US $ 9,455,708.33 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $  2,598,193.71 | US $    962,370.95 |

### (ii).   Additional Works Contracts

134.   Throughout the course of the Project, Leeward was awarded additional works contracts for work that was deleted from the Contract's scope as well as additional works required for the Project.  This work arose out of and relates to the Contract work on the Project. (Dickinson Witness Statement, ¶¶78-90; LC 228-241)

135.   In Section 4.6.1 of the General Conditions to the Contract, the parties agreed to submit to arbitration "[a]ny Claim arising out of or related to the Contract…"  The contracts for the additional works arise out of and relate to the contract containing the arbitration clause, in that the additional works were initially part of the original contract, including design documents, specifications, and project schedule, that the AUA subsequently removed from that contract and gave back to Leeward under separate contracts. (LC 1, p. LC 000036)

136.   The total amount of additional works contracts was US $574,494.14/EC $1,551,134.19.  To date, the AUA has paid US $499,809.15/EC $1,349,376.76 on the additional works contracts leaving a balance due and owing of US $74,730.95/EC $201,757.43. (Green Witness Statement, ¶51, LC 228-241, AUA 52-54)

### c.   Interest

137.   Article 7.2 of the Contract provides "[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence there of, at the legal rate prevailing from time to time at the place where the Project is

27

located." (LC 1, p. LC 000009)

138.    Article 13.6.1 of the General Conditions similarly provides that "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located." (LC 1, p. LC 000052)

139.    The Parties did not agree to an interest rate on "payments due and unpaid" and therefore, Leeward respectfully requests the Tribunal to assess interest at the legal rate prevailing from time to time in Antigua on both (a) the payments the AUA made to Leeward after the due date set forth in Article 5.1.3 of the Contract (22nd day of the month if payment requisition received by the seventh day of the month or within fifteen days if received thereafter); and (b) the unpaid balance due under the Contract from the AUA to Leeward as the Tribunal may determine.

140.    Antigua does not have a "legal rate of interest" such as the maximum rate of interest that may be legally charged on a loan or a statutory rate of interest that applies to breach of contract claims prior to the entry of judgment. *Compare* New York General Obligations Law §5-501(1) (maximum legal rate of interest upon a loan or forbearance cannot exceed six per centum per annum or the rate prescribed in New York Banking Law §14-a); New York Civil Practice Law and Rules §§5001, 5004 (interest in an action for breach of contract shall be nine per centum per annum running from the earliest ascertainable date that the cause of action existed).

141.    Instead, the courts in Antigua have opined that prejudgment interest in commercial cases is the rate at which the "Plaintiff would have had to borrow the money to supply the place of that which was withheld." *Roxanne Frederich, as Administratrix of Steve*

28

*Fraser v. Richard Lam*, Antigua and Barbuda Suit No. ANUHCV 2008/0322, Eastern Caribbean

Supreme Court in the High Court of Justice (Civil) (2010), ¶45 n.33 (*quoting Tate & Lyle Food*

*and Distributor v G.L.C.* [1981] 3 All ER 716, 722 (Queen's Bench Division).  (A copy of each

case is submitted herewith in Appendix B.)

> 142.    As the Court explained in *Tate & Lyle*:
>
>> I do not think the modern law is that interest is awarded against the
>> defendant as a punitive measure for having kept the plaintiff out of
>> his money.  I think that principle now recognized is that it is all
>> part of the attempt to achieve *restitutio in integrum*.  One looks,
>> therefore, not to the profit which the defendant wrongfully made
>> out of the money he withheld (this would indeed involve a scrutiny
>> of the defendant's financial position) but at the cost to the plaintiff
>> of being deprived of the money which he should have had.  I feel
>> satisfied that in commercial cases the interest is intended to reflect
>> the rate at which the plaintiff would have had to borrow money to
>> supply the place of that which was withheld.  I am also satisfied
>> that one should not look at the special position in which the
>> plaintiff may have been; one should disregard, for instance, the fact
>> that a particular plaintiff, because of his personal situation, could
>> only borrow money at a very high rate or, on the other hand, was
>> able to borrow at specially favorable rates.  The correct thing to do
>> is to take the rate at which plaintiffs in general could borrow
>> money.

(3 All ER at 722) (Appendix B)

143.    Based upon information widely available on the internet, the commercial bank

prime lending rate in Antigua was 10.43 percent on December 31, 2008; 10.07 percent on

December 31, 2009; 11.025 percent on December 31, 2010; and 10 percent on December 31,

2011.   *See* http://www.exxun.com/afd_hy/AntiguaandBarbuda/ec_commercial_bank_rate.html

and http://www.cia.gov/library/publications/the-world-factbook/fileds/2208.html.  (A copy of the

web pages is included herewith in Appendix B.)  For purposes of simplicity, Leeward will accept

ten (10) percent per annum as the legal rate of interest prevailing from time to time in Antigua.

144.    Leeward is entitled to interest on the requisitions that the AUA paid late at 10%

29

per annum running form the 22nd of the month until the date that AUA made the payment as set

forth in the following summary:

| Application | Date Submitted | Amount Requested | Due Date | Amount Paid | Date Paid | Days Late | Interest |
|---|---|---|---|---|---|---|---|
| Application No. 1 | 04/18/08 | EC $375,681.18 | 05/03/08 | EC $333,833.67 | 04/24/08 | 0 | |
| Application No. 2 | 05/14/08 | EC $669,343.00 | 05/29/08 | EC $435,986.79 Two Payments: EC $234,601.98 EC $201,384.81 | 05/30/08 06/02/08 | 1 3 | EC $64.27 EC $165.51 |
| Application No. 3 | 05/16/08 | EC $279,181.26 | 05/13/08 | EC $244,630.15 | 06/09/08 | 9 | EC $603.18 |
| Application No. 4 | 05/23/08 | EC $231,368.72 | 06/07/08 | EC $243,906.02 | 06/09/08 | 2 | EC $133.64 |
| Application No. 5 | 06/04/08 | EC $264,084.00 | 06/22/08 | EC $310,132.65 | 06/20/08 | 0 | |
| Mobilization | 06/04/08 | EC $806,460.00 | 06/22/08 | EC $806,460.00 | 06/19/08 | 0 | |
| Application No. 7 | 07/11/08 | EC $1,510,675.16 | 07/26/08 | EC $1,176,211.22 | 07/30/08 | 4 | EC $1,289.00 |
| Mobilization Scaffolding | 07/29/08 | EC $222,000.00 | 08/13/08 | EC $150,000.00 | 08/01/08 | 0 | |
| Application No. 8 | 08/01/08 | EC $950,206.36 | 08/22/08 | EC $467,440.11 | 08/27/08 | 5 | EC $640.35 |
| Application No. 10 | 09/05/08 | EC $490,837.00 | 09/22/08 | EC $264,299.89 Two Payments: EC $90,333.02 EC $173,996.87 | 10/01/08 10/08/08 | 9 16 | EC $222.75 EC $762.72 |
| Application No. 11 | 10/03/08 | EC $1,626,059.69 | 10/02/08 | EC $958,531.17 | 11/04/08 | 13 | EC $3,413.93 |
| Mobilization | 10/01/08 | 12% of contract sum less prior mobilization advances. | 10/22/08 | EC $1,000,000.00 | 11/06/08 | 35 | EC $9588.95 |
| Application No. 12 | 10/31/08 | EC $1,146,958.07 | 11/22/08 | EC $718,588.47 | 11/20/08 | 0 | |
| Application No. 13 | 11/05/08 | EC $1,538,676.60 | 11/22/08 | EC $774,718.48 | 12/23/08 | 31 | EC $6,579.75 |
| Mobilization | 10/01/08 | 12% of contract | 10/02/08 | EC | 12/22/08 | 81 | EC |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | sum less advances already issued. | 8 | $1,335,900.48 | 8 | | $29,646.00 |
| Application No. 14 | 01/08/09 | EC $924,817.42 | 01/23/09 | EC $635,009.83 | 01/23/09 | 0 | |
| Application No. 15 | 12/31/08 | EC $1,655,020.79 | 02/22/09 | EC $1,538,143.25 | 02/26/09 | 4 | EC $1,685.64 |
| Application No. 16 | 03/02/09 | EC $3,615,080.71 | 03/22/09 | EC $2,737,012.49 | 03/24/09 | 2 | EC $1,499.74 |
| Application No. 17 | 04/02/09 | EC $3,638,851.41 | 04/22/09 | EC $2,768,550.39 | 04/22/09 | 0 | |
| Application No. 18 | 05/02/09 | EC $2,243,550.10 | 05/22/09 | EC $1,309.404.75 | 05/26/09 | 4 | EC $1,434.96 |
| Application No. 19 | 06/01/09 | EC $2,478,272.93 | 06/22/09 | EC $1,393,869.68 | 06/23/09 | 1 | EC $381.88 |
| Application No. 20 | 07/03/09 | EC $2,765,603.84 | 07/22/09 | EC $1,270,603.57 | 07/21/09 | 0 | |
| Advance | 07/10/09 | EC $1,000,000.00 | 07/25/09 | EC $500,000.00 | 07/20/09 | 0 | |
| Application No. 21 | 07/31/09 | EC $2,765,603.84 | 08/22/09 | EC $840,947.85 | 08/21/09 | 0 | |
| Payment No. 25 | | | 08/22/09 | EC $553,888.27 | 09/23/09 | 32 | EC $4,856.00 |
| Payment No. 26 | | | 08/22/09 | EC $57,244.40 | 10/01/09 | 40 | EC $627.20 |
| Interim Final Payment | 10/09/09 | EC $1,322,022.79 | 10/22/09 | EC $104,862.91 | 10/27/09 | 5 | EC $143.65 |
| **TOTAL** | | | | | | | **EC $63,739.12/ US $23,608.97** |

145.   In addition, Leeward is entitled to interest at the rate of 10% per annum on the unpaid contract balance, as the Tribunal may determine, running from no later than October 23, 2009 (fifteen days after the submission of the Draft Final Account) (AUA 30) until the date of payment, as provided in Article 5.1.3 of the Contract (LC 1, p. LC 000007).

a.   If the Tribunal determines that Leeward is entitled to general damages as provided in Paragraph 130, *supra*, in the amount of US $1,847,627.88/EC $4,988,196.21, then Leeward

would be entitled to interest through May 31, 2012, in the amount of US $508,097.66/EC $1,371,753.94 with a per diem rate thereafter of US $506.20/EC $1,366.63.

b. If the Tribunal determines that Leeward is entitled to general damages as provided in Paragraph 131, *supra*, then Leeward would be entitled to interest through May 31, 2012, in the amount of US $403,165.83/EC $1,088,460.66 with a per diem rate thereafter of US $401.66/EC $1,084.39.

c. If the Tribunal determines that Leeward is entitled to general damages as provided in Paragraph 133, *supra*, then Leeward would be entitled to interest through May 31, 2012, in the amount of US $264,652.00/EC $714,503.23 with a per diem rate thereafter of US $263.66/EC $711.83.

**d.   Attorney's Fees and Arbitration Fees, Expenses, and Compensation**

146.   Construction Industry Rule R-45(c) states that the arbitrator, in the final award, "shall assess fees, expenses, and compensation as provided in Sections R-52, R-53, and R-54." R-45(c) further provides that the "arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines in appropriate."

147.   R-45(d)(ii) states that the arbitrator may include attorney's fees in the final award "if all parties have requested such an award or if it is authorized by law or their arbitration agreement."

148.   The Arbitration Agreement (LC 1, p. LC000036) does not provide for an award of attorney's fees.   Leeward, however, requested the Tribunal, in paragraph 35 of its Amended Demand for Arbitration, to include attorney's fees in the award; and while the AUA alleges in paragraphs 144-146 of its Answering Statement and Counterclaim that Leeward is not entitled to an award of legal fees, the AUA itself requests legal fees in Paragraph 152 of its Answer

Statement to the extent the Tribunal decides to award attorney's fees to the prevailing party. Thus, while the Arbitration Agreement does not authorize an award of attorney's fees, both parties have requested attorney's fees in their respective pleadings.

149.    In addition, under the Eastern Caribbean Supreme Court Civil Procedure Rules that apply to all member states/territories in the The Organisation of Eastern Caribbean States, of which Antigua is a member, *see* http://www.oecs.org/about-the-oecs/member-states/antigua-and-barbuda, a court in Antigua is required to assess "prescribed costs" in an action between corporate entities in accordance with Part 65.5 of the Rules in accordance with the sliding scale set forth in Appendix B of Part 65 as follows:

<center>"APPENDIX B<br>Scale of prescribed costs</center>

| Column I | Column 2 | Column 3 |
|---|---|---|
| | Value of Claim | Percentage |
| (1) | Not exceeding $100,000 | 15% |
| (2) | Exceeding 100,000 but not exceeding $250,000 | 12.5% |
| (3) | Exceeding 250,000 but not exceeding 500,000 | 10% |
| (4) | Exceeding 500,000 but not exceeding $1,000,000 | 7% |
| (5) | Exceeding 1,000,000 but not exceeding $2,500,000 | 3% |
| (6) | Exceeding 2,500,000 | 0.5% |

Note: The costs for each stage of the scale are cumulative

| | | |
|---|---|---|
| (Example | Claim for | $750,000 |
| First | $100,000 | $ 15,000 |
| Next | $150,000 | $ 18,750 |
| Next | $250,000 | $ 25,000 |
| Last | $250,000 | $ 17,500 |
| Total | $76,250)"; and | |

(Eastern Caribbean SC Civ. Pro.(2000) Rules, Rule 65.5; Eastern Caribbean Supreme Court Civil Procedure (Amendment) Rules 2011, Appendix B to Part 65) (A copy of Rule 65.5 and

<center>33</center>

Appendix B to Part 65, as amended, is submitted herewith in Appendix C.)

150.    Should the Tribunal issue an award in Leeward's favor, Leeward respectfully requests the award to assess the AUA 100% of the arbitration fees, expenses, and compensation as provided in R-45(c), and Leeward's legal fees and expenses as provided in R-45(d)(ii).

151.    An assessment of arbitration fees, expenses and compensation as well as attorney's fees is particularly appropriate in the present case given the undisputed fact that Leeward had to commence this arbitration to recover contract retainage and an overpayment of ABST totaling US $249,309.94/EC $673,083.00, even though the AUA admitted owing Leeward that amount in its opening statement at the hearing.  In addition, Leeward had to defend against the AUA's counterclaim for actual delay damages in the amount of US $371,955.31/EC $1,004,199.00, which the AUA withdrew by email dated April 12, 2012,[2] even though Leeward requested the AUA in December, 2011, to withdraw the Counterclaim because it sought consequential damages in violation of General Conditions Section 4.3.10 (LC 1, p. 000035), but the AUA refused.  Indeed, as a result of the AUA's refusal to withdraw the counterclaim Leeward expended (a) legal fees and expenses on a motion to strike the Counterclaim; (b) legal fees and expenses preparing for and addressing the Counterclaim during the evidentiary hearing; and (c) legal fees and expenses addressing the Counterclaim in its Proposed Findings of Fact and Conclusions of Law prior to the AUA's withdrawal of the Counterclaim on April 12, 2012.  In addition, while Leeward was content to proceed before a single arbitrator in an effort to reduce the cost of arbitration, the AUA insisted, under Construction Industry Rule L-3(a), on a panel of three arbitrators despite the significant increase in cost.

---

[2]  Under Construction Industry Rule R-50, the AUA does not have the unilateral right to withdraw its Counterclaim without Leeward's or the Tribunal's consent.  Although Leeward does not object to the withdrawal of the Counterclaim, with prejudice, the withdrawal of the Counterclaim should have no impact on Leeward's request for arbitration costs, expenses, and corporate legal fees and expenses.

152.    In the event the Tribunal issues and award in Leeward's favor, Leeward respectfully requests an opportunity to submit proof of actual legal fees and expenses as opposed to use of the sliding scale under Antiguan Law.

153.    In the alternative, Leeward consents to the determination of legal fees and expenses using the sliding scale for "prescribed costs" as provided in Appendix B to Part 65 of the Eastern Caribbean Supreme Court Civil Procedure (Amendment) Rules 2011, as set forth in ¶149 herein.

e.    **Expert Testimony**

154.    Leeward has moved to strike the witness statement of AUA's Peter McLeod to the extent it constitutes an expert testimony in contravention of the AUA's representation to the Tribunal during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony at the hearing.

155.    Specifically, Leeward objects to Mr. McLeod's witness statement because he gives opinions based upon his experiences in the construction industry as a professional quantities surveyor and project manager, as opposed to facts that are based upon his personal observations during his limited involvement with the Project form the Spring of 2008 through September 28, 2008, with respect to the drafting of the letters of intent and negotiation and drafting of the Contract, which the parties signed on September 25, 2008.

156.    If this dispute had been venued in a United States District Court, then the Federal Rules of Evidence would have limited Mr. McLeod's testimony to those matters that are based upon his "personal knowledge," *See* F.R.E. 602, or lay opinions based upon matters that he personally saw, heard, touched, or sensed, *See* F.R.E. 701.   Indeed, under Federal Rule of

Evidence 701, a lay witness may only give an opinion that if it is rationally based on what the witness has personally observed, helpful to clearly understanding the witnesses testimony, and not based upon scientific, technical, or specialized knowledge that would otherwise constitute expert testimony or opinion under Federal Rule of Evidence 702. *See* F.R.E. Rule 701; F.R.E. Rule 702; *United States v. Garcia*, 413 F.3d 201, 211-215 (2nd Cir. 2005). (A copy of the cited authorities is submitted herewith in Appendix D.)

157.    Moreover, under Antiguan Law, testimony is limited to facts within the personal knowledge of the witness and a party may not offer opinion testimony without the prior permission of the Tribunal. (Eastern Caribbean SC Civ. Pro.(2000) Rules, Rule 32.6(1)) (Appendix D)

158.    If Mr. McLeod had limited his testimony to what he observed, heard, read, stated or personally did or did not do between the Spring of 2008 and September 2008 concerning the Project, then Leeward would not be objecting to Mr. McLeod's witness statement. The problem is that Mr. McLeod goes well beyond mere factual testimony as to his involvement with the Project.

159.    Beginning with ¶23 of Mr. McLeod's witness statement, Mr. McLeod repeatedly gives opinions based upon his experiences in the construction industry, rather than what he observed or did on the project. For example, although Mr. McLeod was not involved with the review or processing Leeward's monthly requisitions after the parties signed the contract documents on September 25, 2008, he gives an opinion as to the "monthly true-up of additions and deductions to the contract sum" in lieu of the use of change orders as required under the contract, and opines that adhering to the change order requirements in the very contract that he drafted is "often impractical, and thus it is not uncommon for parties to disregard such

36

formalities in favor of more informal means for communicating and effectuating changes." Similarly, at the end of ¶24 and in ¶29, he gives an opinion as to the effectiveness of the "monthly true-up" to adjust the contract price as opposed to the use of the contractually required change orders.

160.     In ¶25 of his witness statement, Mr. McLeod gives several opinions and draws conclusions based upon his review of the "draft final account" that Leeward submitted in October, 2009, more than a year after Mr. McLeod left the project, as well as his review of Mr. Dickinson's witness statement and the allegations in the AUA's Answering Statement, as opposed to Mr. McLeod's personal knowledge of the facts. Again, in ¶28 of his statement, he gives an opinion and draws conclusions based upon his review of Leeward's "draft final account" even though he had nothing whatsoever to do with the preparation or approval of that document or any of Leeward's monthly requisitions subsequent to the signing of the contract.

161.     Lastly, the fact that the AUA bought Mr. McLeod's testimony at a cost of $220.00/hr is further evidence that Mr. McLeod testified as an expert witness, rather than a fact witness.  Although Leeward concedes that a party may compensate a fact witness for actual expenses and reasonable compensation for loss of time (i.e. the witness' lost wages), the AUA has apparently compensated Mr. McLeod for his expenses and time at the rate that Mr. McLeod's employer charges its customers for Mr. McLeod's knowledge and expertise. (McLeod's witness statement, ¶14; McLeod Testimony, March 3, 2012)

## SUMMARY

162.     Upon the evidence submitted at the evidentiary hearing, Leeward respectfully requests that the Tribunal award it damages in this matter as follows:

| | | |
|---|---|---|
| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work | EC $ 3,667,711.00 | US $ 1,358,520.15 |
| Overhead and Profit (18%) on Deleted Work | EC $ 559,481.40 | US $ 207,231.91 |
| Revised Contract Sum | EC $24,328,594.40 | US $ 9,011,311.37 |
| Extra Work Under Contract | EC $ 1,604,066.62 | US $ 594,146.28 |
| Additional Preliminaries/General Conditions | EC $ 1,985,711.68 | US $ 735,507.61 |
| Total | EC $27,918,372.70 | US $10,340,965.25 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $ 4,988,196.21 | US $ 1,847,627.88 |
| **Additional Monies Due** | | |
| Interest on balance due for 2 years, 9 months at 10%/yr through May 31, 2012. | EC $ 1,371,753.94 | US $ 508,097.66 |
| ABST Error | EC $ 83,000.00 | US $ 30,743.20 |
| Interest on Late Payments | EC $ 63,739.12 | US $ 23,608.97 |
| SUBTOTAL: | EC $ 6,506,689.27 | US $ 2,410,077.71 |
| Monies due on Additional Works Contracts | EC $ 201,757.43 | US $ 74,730.95 |
| TOTAL: | EC $ 6,708,446.70 | US $ 2,484,808.66 |

163.    If the Tribunal determines that Leeward is entitled to damages as specified in Paragraph 131, *supra*, then Leeward respectfully requests that the Tribunal award it damages in this matter as follows:

| | | |
|---|---|---|
| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work | EC $ 3,667,711.00 | US $ 1,358,520.15 |
| Overhead and Profit (18%) on Deleted Work | EC $ 559,481.40 | US $ 207,231.91 |
| Revised Contract Sum | EC $24,328,594.40 | US $ 9,011,311.37 |
| Extra Work Under Contract | EC $ 1,604,066.62 | US $ 594,146.28 |
| Additional Preliminaries/General Conditions | EC $ 955,554.08 | US $ 353,937.23 |
| Total | EC $26,888,215.10 | US $ 9,959,394.87 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $ 3,958,038.61 | US $ 1,466,057.50 |
| **Additional Monies Due** | | |
| Interest on balance due for 2 years, 9 months at 10%/yr. through May 31, 2012. | EC $ 1,088,460.66 | US $ 403,165.83 |
| ABST Error | EC $ 83,000.00 | US $ 30,743.20 |
| Interest on Late Payments | EC $ 63,739.12 | US $ 23,608.97 |
| SUBTOTAL: | EC $ 5,193,238.39 | US $ 1,923,575.50 |
| Monies due on Additional Works Contracts | EC $ 201,757.43 | US $ 74,730.95 |
| TOTAL: | EC $ 5,394,995.82 | US $ 1,998,306.45 |

38

164.   If the Tribunal determines that Leeward is entitled to damages as specified in Paragraph 133, *supra*, then Leeward respectfully requests that the Tribunal award it damages in this matter as follows:

| | | |
|---|---|---|
| Original Contract Sum | EC $27,436,824.00 | US $10,162,599.61 |
| Omitted and Deleted Work | EC $ 5,272,328.00 | US $ 1,952,870.29 |
| Overhead and Profit (18%) on Omitted and Deleted Work | EC $     804,253.50 | US $     297,895.50 |
| Revised Contract Sum | EC $22,968,749.50 | US $ 8,507,624.82 |
| Extra Work Under Contract | EC $ 1,604,066.62 | US $     594,146.28 |
| Additional Preliminaries/General Conditions | EC $     955,554.08 | US $     353,937.23 |
| Total | EC $25,528,370.20 | US $ 9,455,708.33 |
| Payments Received | EC $22,930,176.49 | US $ 8,493,337.37 |
| TOTAL: | EC $ 2,598,193.71 | US $     962,370.95 |
| **Additional Monies Due** | | |
| Interest on balance due for 2 years, 9 months at 10%/yr. through May 31, 2012. | EC $     714,503.23 | US $     264,652.00 |
| ABST Error | EC $       83,000.00 | US $       30,743.20 |
| Interest on Late Payments | EC $       63,739.12 | US $       23,608.97 |
| SUBTOTAL: | EC $ 3,459,436.06 | US $ 1,281,375.12 |
| Monies due on Additional Works Contracts | EC $     201,757.43 | US $       74,730.95 |
| TOTAL: | EC $ 3,661,193.49 | US $ 1,356,106.07 |

Dated:  April 20, 2012

LEWIS & GREER, P.C.
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
*Counsel for Claimant,*
*Leeward Construction Company, Ltd.*

By: _____
J. Scott Greer, Esq.