# EXHIBIT G

# SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

30 Rockefeller Plaza
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**Mark S. Olinsky**
Member of the Firm
Direct Dial: (973) 643-5402
E-mail: molinsky@sillscummis.com

650 College Road East
Princeton, NJ 08540
Tel: 609-227-4600
Fax: 609-227-4646

July 10, 2012

**Via Email**

Rekha Rangachari, Esq.
International Case Manager
International Centre for Dispute Resolution,
A Division of the American Arbitration Association
1633 Broadway, 10th Floor
New York, New York 10019

      Re:    *Leeward Construction Company Limited v. American University of Antigua – College of Medicine*, Case No. 50 110 T 00075 11

Dear Ms. Rangachari:

    This firm represents Respondent American University of Antigua ("AUA") in the above-referenced matter. We write, pursuant to R-48 of the Construction Industry Arbitration Rules for the American Arbitration Association ("CIAR"), to request a modification of the Final Award dated June 22, 2012 to correct certain "technical and computational errors," as detailed below.

    During the September 8, 2012 Initial Hearing, the Tribunal ruled that the Award in this Arbitration would be a "Reasoned Award as provided for in Rules L-6 and R-[44(a)] of the AAA." According to Redfern, giving reasons in an arbitral award requires more than a statement that "the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other ... ." *Redfern and Hunter on International Arbitration* (5th ed.), § 9.125 (excerpt attached). AUA has conducted a diligent review of the Final Award and, bearing in mind what is typically required of a "Reasoned Award," has identified four specific errors in the Final Award issued to the Claimant Leeward Construction Co., Ltd. ("Leeward") that call for modification.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Ms. Rangachari
July 10, 2012
Page 2

1. **Interest on the Payments Due and Unpaid (EC $44,617.37).**

This portion of the Final Award contains a computational error. As set forth in Section VI.(A-3) and VI.(A-4), the Tribunal found that AUA failed to timely pay certain payment requisitions and awarded Leeward interest on late payments at a rate of 7% per annum. The Tribunal also found, however, that Leeward was not entitled to an award of interest with respect to the allegedly late mobilization payments because "the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009." *See* Final Award, Section VI.(B-33). In Paragraph 144 of Leeward's April 20, 2012 Proposed Findings of Fact and Conclusion of Law, Leeward claimed it was entitled to interest in the amount of EC $63,739.12 for all late payments. Leeward's claim included interest on mobilization (EC $39,234.95)[1] and was calculated at a rate of 10% per annum. The Final Award does not detail the calculation of the interest award, but the amount awarded, EC $44,617.37, is exactly 70% of the EC $63,739.12 claimed by Leeward. Thus, the Tribunal reduced the interest rate by 30% (from 10% to 7%) but erroneously included interest on mobilization when calculating this portion of the Final Award. The correct amount of interest is EC $17,152.92 as follows:

$$\begin{aligned}
&\text{EC } \$63,739.12 \text{ (Amount sought by Leeward)} \\
-\ &\underline{\text{EC } \$39,234.95} \text{ (interest sought on Mobilization)} \\
=\ &\text{EC } \$24,504.17 \\
*\ &\underline{\qquad 70\%} \\
=\ &\text{EC } \$17,152.92
\end{aligned}$$

Accordingly, the Final Award should be modified by reducing the amount due for interest from EC $44,617.37 to EC $17,152,92.

2. **Damages (EC $232,670.13).**

This portion of the Final Award contains both a technical and computational error. The Tribunal awarded damages of EC $232,670.13 under the "bad faith doctrine" "after careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts." Final Award, Section VI.(A-19). However, Leeward only sought to recover its Overhead and Profits on the deleted work (which the Tribunal awarded in part), and never asked to be awarded additional damages "under the bad faith doctrine" or any other theory. As a result, neither party briefed the "bad faith doctrine" in post-hearing submissions. The Tribunal's assessment of damages, while precise in amount to the penny, does not provide the factual basis for the award or an explanation as to how it was calculated,

---

[1] Leeward sought two interest payments with respect to Mobilization -- EC $9,588.95 and EC $29,646, which total EC $39,234.95. *See* Leeward's Proposed Findings of Fact and Conclusions of Law, ¶ 144.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Ms. Rangachari
July 10, 2012
Page 3

depriving AUA of the ability to determine whether there is a computational error. Moreover, absent a "Reasoned Award," AUA cannot assess what rights it may have to challenge this aspect of the Award.

Accordingly, AUA requests that the Final Award be modified so as to include the reasoning for assessing these damages and an explanation of how the Tribunal calculated the amount of damages.

### 3. Overhead and Profit for work deleted, omitted or modified (EC $802,399.25).

This portion of the Final Award contains both a technical and computational error. As set forth in Section VI.(A-7) of the Final Award, the Tribunal determined that Leeward was entitled to its Overhead and Profit for "work omitted, deleted or modified" pursuant to Section 7.3.7 of the General Conditions of the Contract for Construction, less EC $185,425.07 "for the overhead and profit for the Doors & Window and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract." While the Tribunal did not provide its mathematical calculations, the logic of the Award indicates that the Tribunal intended to award 18% of the difference between the Measured Works portion of the Contract Sum set forth in the initial Bill of Quantities (EC $22,530,678) and the Measured Works actually paid to Leeward for the work it actually performed (EC $17,727,635.37), less a credit of EC $185,425.07. The difference between the Measured Works as originally designed and as built is EC $5,258,042.63. *See* AUA's Findings of Fact and Conclusions of Law, ¶ 67. The overhead and profit (at 18%) on this net decrease in the Contract Sum is EC $946,447.67. After applying the EC $185,425.07 credit, Leeward's award should have been EC $761,022.60, not EC $802,399.25.

Leaving aside this computational error, the Final Award is technically flawed because it adjudicated a claim that was not submitted to the Tribunal by Leeward prior to the hearing held on March 5-9, 2012. Leeward only sought to be awarded Overhead and Profits on the Painting Work and the Doors and Windows Work and sought an award of EC $350,777.96 in overhead and profits for that work. Leeward sought to be paid in full for the balance of the work it did not perform, as confirmed in Paragraph 23 of its Amended Demand for Arbitration. CIAR R-6 prohibits submitting new or different claims after the arbitrator is appointed absent the arbitrators' consent. Leeward submitted its new claim for overhead and profits on the net change in Measured Works in its April 20, 2012 Post-Hearing submission without obtaining consent from the Tribunal to do so, in violation of CIAR R-6. By adjudicating a claim that was submitted after the hearing, and in violation of CIAR R-6, the Tribunal deprived AUA of an opportunity to proffer a defense, exceeded its powers, and issued an award that deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or containing decisions on matters beyond the scope of the submission to arbitration.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Ms. Rangachari
July 10, 2012
Page 4

Accordingly, AUA requests both correction of the computational error detailed above and a reasoned explanation of why Leeward was entitled to receive an award on a claim for which it did not obtain consent to raise and AUA did not have an opportunity to offer evidence and defend.

### 4. Change Order Work (EC $190,210.19).

This portion of the Final Award contains a technical error. In awarding Leeward EC $190,201.19 in Change Order Work, the Tribunal stated "[f]rom the evidence presented at trial, the Panel finds that Leeward is entitled to the additional EC $190,210.19." Final Award, Section VI.(B-16). No other reasons are given. As discussed above, the Final Award was required to be a reasoned decision and merely citing the "evidence presented at trial" is not sufficient. *See Redfern and Hunter on International Arbitration* (5th ed.), § 9.125. Given the absence of a "Reasoned Award," AUA does not know how the Tribunal reached its ruling and is, therefore, unable to assess what rights it may have to challenge this aspect of the Award. Substantively, awarding Leeward EC $190,210.19 in additional Change Order Work is squarely at odds with the undisputed facts submitted at the hearing. Leeward initially sought payment for the additional Change Order Work when it submitted its Draft Final Account for approval. After Leeward and the Architect reviewed the Draft Final Account to confirm that it accurately reflected the work Leeward actually performed, Leeward agreed that its claim for Change Order Work was in error. Leeward submitted a revised Draft Final Account that corrected this error, which AUA paid in full. The difference between the total amount of Change Order Work Leeward claimed it was entitled to recover at the hearing (EC $1,422,219.10) and the amount it agreed it was entitled to be paid when it submitted the corrected Draft Final Account (EC $1,232,008.91), is the EC $190,210.19 that the Tribunal awarded Leeward without providing its reasoning. *See* AUA's Findings of Fact and Conclusions of Law, ¶ 75 and AUA's Rebuttal Submission, ¶¶ 66-67.

Accordingly, AUA requests a modification of the Final Award so that it either: (i) provides a Reasoned Award in the portion granting Leeward EC $190,210.91 in Change Order Work; or (ii) if no reasoning can be provided, removes this portion of the Final Award.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Ms. Rangachari
July 10, 2012
Page 5

*   *   *

Therefore, AUA moves for modification on the four matters set forth above.

Respectfully,

Mark S. Olinsky

cc:   J. Scott Greer, Esq. (*via E-Mail*)

# REDFERN AND HUNTER ON INTERNATIONAL ARBITRATION

Nigel Blackaby
Constantine Partasides
with
Alan Redfern
Martin Hunter

OXFORD
UNIVERSITY PRESS

9.123 The pattern is the same in national laws. Switzerland requires a reasoned award, as do the Netherlands and England, unless the parties agree to dispense with them.[148] In the US, however, the highest court has ruled that: 'Arbitrators have no obligation to the court to give their reasons for an award.'[149] An exception to this rule is where the parties have provided for reasons to be given in their arbitration agreement or in any arbitration rules they have chosen. The ICDR Rules require reasons to be given unless the parties agree otherwise,[150] but the AAA's domestic rules maintain the tradition in the US that reasons are not given.

9.124 The general consensus in favour of a reasoned (or 'motivated') award is reflected in the European Convention of 1961, which states:

> The parties shall be presumed to have agreed that reasons shall be given for the award unless they
>
> (a) either expressly declare that reasons shall not be given; or
> (b) have assented to an arbitral procedure under which it is not customary to give reasons for awards, provided that in this case neither party requests before the end of the hearing, or if there has not been a hearing then before the making of the award, that reasons be given.[151]

### (v) Different ways of giving reasons

9.125 The way in which reasons are given in arbitral awards varies considerably. Sometimes the reasoning (or 'motivation') is set out with extreme brevity. However, a mere statement that the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other, which was a common practice in some circles, had rightly fallen into disrepute by the end of the twentieth century. Certainly such a practice would be regarded as being defective as a matter of form by the ICC Court. In other cases, awards may run into hundreds of pages, including a detailed review of the evidence and arguments put forward by the parties, followed by a closely reasoned conclusion.

9.126 The general practice of arbitral tribunals in international cases is to devote more time and space in the award to giving the reasons for its determination of the legal arguments than it devotes to a review of the factual issues. This is not surprising, since most arbitral tribunals in international cases are composed of lawyers.[152]

---

[148] English Arbitration Act 1996, s 52(4).
[149] *United Steelworkers of America v Enterprise Wheel Car Corp*, 363 US 593, at 598 (1960). US federal courts appear to have continued to rule consistently that arbitrators are 'not required to justify, explain, or otherwise give reasons for the . . . award'; see, eg, *Michael M Pfeifle v Chemoil Corporation* 73 Fed Appx 720, at 722 (2003).
[150] ICDR Rules, Art 27(2).
[151] European Convention of 1961, Art VIII.
[152] Even where the party-nominated arbitrators are technical specialists, expert in the subject-matter of the project or transaction, it is usual for the presiding arbitrator to be a lawyer.

However, it should be borne in mind by such tribunals that what is needed is an intelligible decision, rather than a legal dissertation. The object should be to keep the reasons for a decision as concise as possible and limited to what is necessary, according to the nature of the dispute. The parties want the essential *reasoning* underlying the decision, not a lesson in the law.[153]

### (d) Time limits

A limit may be imposed as to the time within which the arbitral tribunal must make its award. When this limit is reached, the authority or mandate of the arbitral tribunal is at an end and it no longer has jurisdiction to make a valid award. This means that where a time limit exists, care must be taken to see that either: **9.127**

- the time limit is observed; or
- the time limit is extended before it expires.

The purpose of time limits is to ensure that the case is dealt with speedily. Such limits may be imposed on the arbitral tribunal by the rules of an arbitral institution, by the relevant law, or by the agreement of the parties.

The laws of a number of countries provide for time limits within which an award must be made, sometimes starting from the date upon which the arbitration itself commenced. In India, the 1996 Arbitration Act has dispensed with a time limit that was imposed by the old law. In the US the position varies from state to state. In some states the limit is 30 days from the date on which the hearings are closed. However, time limits in the US may also be extended by mutual agreement of the parties or by court order. **9.128**

It is important that a fixed time limit for rendering the award should not enable one of the parties to frustrate the arbitration. This might happen if a fixed limit were to run from the appointment of the arbitral tribunal rather than, for example, the end of the hearings. If a court has no power to intervene on the application of one party alone, and the time limit can be extended only by agreement of the parties, a party might frustrate the proceedings simply by refusing to agree to any extension of time. However, the courts of many countries would be reluctant to invalidate a late award in such a case. For example, in New York it was held that an untimely award was not a nullity, even though the issue of timeliness was properly raised. The court stated that, without a finding of prejudice, there was no justification for denying confirmation of the award.[154] **9.129**

---

[153] See Bingham, n 142 above; and for the risks that the alleged absence of reasons may lead to an arbitral award being overturned, see Redfern, 'ICSID—Losing its Appeal?' (1987) 3 Arb Intl 98.
[154] *State of New York Department of Taxation and Finance v Valenti* 57 AD 2d 174 and 393 NYS 2d 797.