# Exhibit F

*Lewis & Greer, P.C.*

*Attorneys at Law*

LOU LEWIS
J. SCOTT GREER
VERONICA A. McMILLAN*
—
JOAN QUINN**
PAUL E. DENBAUM
ALANA R. BARTLEY*
—
*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN MASSACHUSETTS

510 HAIGHT AVENUE
POUGHKEEPSIE, NEW YORK 12603

(845) 454-1200
FAX (845) 454-3315
WWW.LEWISGREER.COM

MAILING ADDRESS
—
P.O. BOX 2990
POUGHKEEPSIE, NY 12603

July 19, 2012

**VIA ELECTRONIC MAIL**
Rekha Rangachari, Esq.
International Case Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019

      Re:    Leeward Construction Company Limited v. American University of Antigua -
              College of Medicine
              **Case No. 50 110 T 00075 11**
              Our File No.:  966-04

Dear Ms. Rangachari:

      This office represents Leeward Construction Company Limited in the above referenced.
We write in response to the Respondent American University of Antigua's July 10, 2012 motion
to modify the Final Award, dated June 22, 2012, to "correct certain 'technical and computational
errors.'"

      The AUA's motion is improper under the Construction Industry Arbitration Rules for the
American Arbitration Association ("CIAR").  CIAR R-48(a) provides that a party "may [only]
request that the arbitrator correct any clerical, typographical, technical or computational errors in
the award," and that the Tribunal "is not empowered to re-determine the merits of any claim
already decided."  Under CIAR R-48(a), "technical errors" are in the nature of misspellings or
failure to sign the award. *See, e.g., Chicago Regional Council of Carpenters v. Kattan & Kattan
General Constractors, Inc.*, 2006 WL 314517 (N.D. Ill. 2006); *Local No. 20 Sheet Metal
Workers' Intern. Ass'n. v. Culver Roofing, Inc.*, 2006 WL 229041 (N.D. Ind. 2006)[1]
Computation errors are mathematical errors "appear[ing] on the face of the award." *Apex
Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998)  The AUA alleges
errors in its motion to modify that go far beyond the limited scope of CIAR R-48 and should not
be considered by the Tribunal as a basis for modification.

---

[1] Each of the cited cases are submitted herewith in the order that they appear in this letter.

Rekha Rangachari, Esq.
July 19, 2012
Page 2 of 4

Should the Tribunal decide that the AUA seeks a modification of the award within the meaning of CIAR R-48(a), then Leeward responds as follows:

1.    **The Award is a Reasoned Award:**  The AUA contends that the Tribunal did not provide a reasoned award.  The AUA bases its claim on *Redfern and Hunter on International Arbitration* (5th ed.).  Although the AAA ICDR has administered this arbitration, the AUA is well aware that the arbitration is not governed by the International Arbitration Rules.  Rather, the parties agreed in Section 4.6.2 of the General Conditions to the Contract to arbitrate in accordance with "the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect."  *See* AUA Exhibit 1, AUA 000016.  The AUA's citation to a treatise on international arbitration to define a reasoned award in an arbitration governed by the AAA Construction Industry Arbitration Rules is irrelevant, improper and violates the terms of the arbitration agreement between the parties.

United States Courts have held that where there is no agreement between the parties as to what the award shall contain (as in the present case) the contents of a reasoned award is within the discretion of the arbitrators and the award will be deemed a reasoned award if it is "something short of findings of fact and conclusions of law but more than a simple result." *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 215 n.1 (5th Cir. 2006); *see also, Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469 (5th Cir. 2012) (court found that arbitrators had rendered a sufficiently "reasoned award" when the arbitration award thoroughly described contentions asserted by the parties and then summarily concluded that the evidence presented either supported or did not support each contention.)  The Tribunal has more than complied with the minimum requirements for a reasoned award.

2.    **Computational Errors:**  In sections 1, 2, and 3 of its motion, the AUA claims that the award contains computational errors.  The AUA's claims are based upon conjecture and not upon mathematical errors appearing on the face of the award.  *See Apex Plumbing Supply, Inc.*, 142 F.3d at 194 (court denied modification of award because alleged miscalculation was not evident from the face of the award).  Quite frankly, after reading and re-reading the AUA's motion to modify we still cannot determine the basis of the alleged computational errors.  The fact that the AUA needs five pages to explain the alleged computation errors that are not obvious on the face of the award demonstrates that the AUA's application goes far beyond the scope of CIAR R-48 and is an attempt to substantively rewrite the award to obtain a more favorable result for the AUA.

CIAR R-45(a) and (d)(i) provide, the Tribunal may "grant any remedy or relief" they deem "just and equitable and within the scope of the agreement of the parties...," including "interest at such rate and from such date as the arbitrator may deem appropriate..."  The AUA has not demonstrated that the Tribunal's award was inappropriate or that it does not reflect exactly what the Tribunal intended to award.  Rather, the Tribunal has made an award with

Rekha Rangachari, Esq.
July 19, 2012
Page 3 of 4

which the AUA disagrees. The AUA's disagreement, however, is not a basis for modification under CIAR R-48.

Moreover, the Tribunal is not required to provide "an explanation of how the Tribunal calculated the amount of the damages." The Tribunal has met its obligations for a reasoned award by stating the issue, finding for Leeward (or the AUA) on the issue, and stating the damages associated therewith. *See Rain CII Carbon, LLC*, 674 F.3d at 474 (court sustained eight page award as "reasoned" where the "arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposal should prevail"). The AUA is not entitled to anything more.

3.    **Technical Errors:**   In sections 2, 3 and 4 of its motion, the AUA claims that the award contains technical errors because the Tribunal exceeded its authority in awarding Leeward damages for AUA's "bad faith," overhead and profit on work deleted, omitted or modified and for unpaid change order work. The AUA is incorrect. First, the AUA's argument is not an attempt to modify the award to correct a "technical error" as the term is used in CIAR R-48, but rather, an attempt to vacate part of the award to obtain a more favorable result for the AUA. What the AUA is really requesting the Tribunal to do is to re-determine the merits of a claim in violation of CIAR R-48(a).

Second, Federal courts enforcing arbitration awards under the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act have held that an arbitrator does not exceed his/her authority where he/she decides an issue submitted for arbitration even when the award is made on the basis of a fact, law or legal tenet that may not have been specifically argued. An arbitration panel exceeds its authority when it reaches conclusions on issues that the parties never submitted to arbitration at least in general. *See, e.g., Rosati v. Bekhor*, 167 F.Supp.2d 1340, 1345 (M.D. Fla. 2001) (court upheld award in favor of the claimant based upon Florida securities law statute even though claimant raised the issue of securities fraud, in general, without a specific reference to the Florida statute); *Vandenavond v. I2 Technologies, Inc.*, 2008 WL 5336300 (N.D. Texas 2008) (court upheld arbitration award for breach of employment contract even though the award was based upon the breach of a contract provision that neither party specifically addressed during arbitration).

Here, the general issue before the Tribunal was whether the AUA breached the contract and therefore, the Tribunal was authorized to consider every breach of contract supported by the evidence, including whether the AUA breached the contract by acting in bad faith[2] and whether Leeward was entitled to damages for that bad faith, as well as overhead and profit for work deleted, omitted or modified and unpaid through change orders, regardless of whether the parties raised "bad faith" as a specific basis for the breach.

---

[2] Every contract carries with it a duty that the parties exercise good faith. *See Restatement (Second) of Contracts*, §205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.")

Rekha Rangachari, Esq.
July 19, 2012
Page 4 of 4

     We suspect that the AUA will submit a reply in response to their letter if only to have the last word.  We respectfully request the Tribunal to reject any further submissions in which the AUA attempts to explain what it was unable to explain in its initial motion papers.  Enough is enough.  The AUA should not be permitted to elongate what is supposed to be a process for the efficient and relatively inexpensive resolution of disputes.

     We respectfully request that the Tribunal deny the AUA's motion for modification of the award in its entirety.

                           Very truly yours,

                           **LEWIS & GREER, P.C.**

                           J. Scott Greer

JSG/mlb
cc:    Mark Olinsky, Esq. (via electronic mail)
       Jonathan Jemison, Esq. (via electronic mail)
       Andy Green (via electronic mail)
       Eric Linde (via electronic mail)

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 314517 (N.D.Ill.), 179 L.R.R.M. (BNA) 2315
(Cite as: 2006 WL 314517 (N.D.Ill.))

United States District Court,
N.D. Illinois, Eastern Division.
CHICAGO REGIONAL COUNCIL OF CAR-
PENTERS and United Brotherhood of Carpenters
and Joiners of America, Plaintiffs,
v.
KATTAN & KATTAN GENERAL CONTRACT-
ORS INCORPORATED and Kattan & Kattan
Group, Inc., Defendants.

No. 05 C 3958.
Feb. 9, 2006.

Amy Elizabeth Paluch-Epton, Terrance Bryan
McGann, Whitfield & McGann, Chicago, IL, for
Plaintiffs.

Robert Jon Schlyer, Robert J. Schlyer, PC, Manhat-
ten, IL, for Defendants.

*MEMORANDUM OPINION*
KOCORAS, Chief J.
   **\*1** This matter is before the Court on Cross-
Motions for Summary Judgment. Plaintiffs, Chica-
go Regional Counsel of Carpenters and United
Brotherhood of Carpenters and Joiners of America
("Unions"), seek summary judgment confirming an
arbitration award and, in addition, request that we
grant fees and costs incurred in enforcing said
award. Kattan & Kattan General Contractors, Inc.
and Kattan & Kattan Group, Inc. (collectively re-
ferred to as "Defendants") seek summary judgment
vacating the award as to Kattan & Kattan Group,
Inc. For the following reasons, we grant Unions'
Motion for Summary Judgment, deny their request
for fees and costs without prejudice and deny De-
fendants' Motion.

*BACKGROUND*
   The relevant facts are taken from the parties'
Local Rule 56.1 (" L.R.56.1 ") filings. As is the
practice in this district, we only consider those facts
or additional facts presented in conformity with

L.R. 56.1. The alleged facts not properly before us
or unsupported by the record have been disreg-
arded. *See Brasic v. Heinemann's Inc.,* 121 F.3d
281, 284 (7th Cir.1997).[FN1]

   FN1. Although the Defendants submitted a
   56.1 statement, they failed to provide any
   record citations supporting their purported
   facts. Consequently, those factual allega-
   tions were disregarded.

   Unions are unincorporated labor organizations
as defined under § 301 of the Labor Management
Relations Act, as amended, 29 U.S.C. § 185, with
their principal places of business in Chicago,
Illinois. Defendants are Illinois corporations with
their principal places of business in Chicago,
Illinois, and are signatory to the Chicago Regional
of Carpenters' Collective Bargaining Agreement
("CBA"). Hilda Alfaro is the president of Kattan &
Kattan Group, Inc., and Gustavo Kattan is the pres-
ident of Kattan & Kattan General Contractors, Inc.

   In a letter dated March 24, 2005, Unions re-
newed a request for arbitration, pursuant to the
CBA, against Defendants by demanding records
pertaining to the wage dispute of Gerardo Peralto
and a July 1999 to March 2000 Wage & Hour
Audit. That demand cautioned Defendants that fail-
ure to produce said records would result in the ad-
mission of Unions' claim pursuant to the CBA.

   Subsequently, Unions requested from the Ar-
bitrator an arbitration hearing date. The Arbitrator
suggested possible dates, and on April 13, 2005,
Unions faxed their May 26, 2005 choice to the Ar-
bitrator, Hilda Alfaro and Gustavo Kattan. Copies
of the demand for hearing and the Arbitrator's pro-
posed hearing dates were also included.

   In a letter dated April 18, 2005, Unions reques-
ted a conference call with the Arbitrator and the
Defendants. On the day of the conference call, the
Arbitrator and Unions' attorney called the single

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 314517 (N.D.Ill.), 179 L.R.R.M. (BNA) 2315
(Cite as: 2006 WL 314517 (N.D.Ill.))

telephone number listed for Kattan & Kattan Group, Inc., Kattan & Kattan General Contractors, Inc., Hilda Alfaro and Gustavo Kattan. They were informed that Hilda Alfaro was unavailable and that Gustavo Kattan was "out in the field." Consequently, the Arbitrator suggested that Unions issue subpoenas for the requested documents. Unions did so on April 27, 2005, but the Defendants failed to comply.

On May 19, 2005, the Arbitrator noted in a letter that it was apparent Defendants did not intend to participate in the arbitration hearing, and that unless they did so within ten (10) days, a directed verdict would be issued pursuant to Unions' request. Defendants again failed to respond, and on June 2, 2005, the Arbitrator issued a directed verdict and awarded Unions penalties, pursuant to Article 18.1 of the CBA, for failure to respond to repeated requests for the documents necessary to proceed to arbitration. Unions demanded payment of the arbitration award from Defendants on June 8, 2005. Again Defendants failed to respond.

*2 On July 7, 2005, Unions brought the instant suit to collect the arbitration award and, on December 1, 2005, filed the instant Motion for Summary Judgment. Subsequently, on December 22, 2005, Defendants filed their Cross-Motion for Summary Judgment contesting Kattan & Kattan Group, Inc.'s liability.

*LEGAL STANDARDS*

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In seeking a grant of summary judgment, the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting

Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

When parties file cross-motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States,* 140 F.2d 367, 369 (7th Cir.1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broad., Inc.,* 87 F.3d 224, 230 (7th Cir.1996). With these principles in mind, we turn to the parties' motions.

*DISCUSSION*

At the outset, it is important to note that Defendants do not contest the arbitration award as it relates to Kattan & Kattan General Contractors, Inc. and, therefore, summary judgment is granted in favor of Unions against Kattan & Kattan General Contractors, Inc. However, Defendants contend that Kattan & Kattan Group, Inc. was never notified of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 314517 (N.D.Ill.), 179 L.R.R.M. (BNA) 2315
(Cite as: 2006 WL 314517 (N.D.Ill.))

the pending arbitration because the original documents and arbitration demands were incorrectly addressed to "The Kattan Group, Inc." rather than to the properly named "Kattan & Kattan Group, Inc" and, therefore, the award should be vacated as a matter of law. The Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.*, established the due process requirements for notice, holding that, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

\*3 The Seventh Circuit, in *Employer Ins. of Wausau v. Banco de Seguros Del Estado*, 199 F.3d 937, 945 (7th Cir.1999), being very similar to the present case, found that the opposing party was notified of an arbitration despite the fact that its name was misspelled in the arbitration documents. The Court held that the "burden of deciphering the technical error in its principal's name should have rested on the principal's agents," and that the party demanding arbitration had provided "notice reasonably calculated of the pending arbitration award." *Id.*

In the instant case, Kattan & Kattan Group, Inc. was served arbitration documents that contained a technical error; however, the name of the entity was substantially similar to Kattan & Kattan Group, Inc. Additional facts, such as: 1) the documents that Kattan & Kattan Group, Inc. were served indicated that Kattan & Kattan General Contractors, Inc. were also a party to the arbitration; 2) there were multiple letters and telephone calls regarding the arbitration; and 3) said notice was faxed to a phone number that both Defendants shared, support a finding that Kattan & Kattan Group, Inc. was provided "notice reasonably calculated" of the pending arbitration. Consequently, Defendants' Motion is denied.

Unions, in their Motion, contend that because it

is undisputed that an arbitration award was issued against Defendants, and that they failed to contest it within the applicable limitation period, summary judgment is warranted. Parties to a federal labor arbitration, who receive notice of such, may challenge the award within a 90-day limitations period. *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987). A letter notifying Kattan & Kattan Group, Inc. of the arbitration award was sent on June 8, 2005. The parties fail to provide an exact date on which Defendants first contested the award, therefore we will assume that it was on October 13, 2005, the date they filed their Answer in the instant case and 132 days after the June 8, 2005 letter, notifying them of the award, was sent. Consequently, because Kattan & Kattan Group, Inc. failed to contest the award within the applicable 90 day limitation period, Unions' Motion is granted.

Unions also request an award of fees and costs incurred in enforcing the arbitration award. The Federal Arbitration Act does not authorize a district court to award attorney's fees to a party "who successfully confirmed an arbitration award in federal court." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 557 (7th Cir.2000) (relying on *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir.1994)). However, costs and attorney's fees have been awarded in such arbitration cases where a party refused "without justification" to abide by the arbitration award. *Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135 v. Jefferson Trucking Co.*, 473 F.Supp. 1255, 1259-60 (S.D.Ind.1979).

\*4 Although it is evident that Defendants refused to abide by the arbitration award without justification, Unions make only a bare request for fees and costs. They do not provide us with any information related to the reasonableness of said fees and costs, which will not arbitrarily be awarded without ensuring such. Consequently, Unions' request for fees and costs is denied without prejudice.

*CONCLUSION*
For the foregoing reasons, we grant Unions'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2006 WL 314517 (N.D.Ill.), 179 L.R.R.M. (BNA) 2315
**(Cite as: 2006 WL 314517 (N.D.Ill.))**

Motion for Summary Judgment. We deny Unions' request for fees and costs without prejudice, as well as Defendants' Motion for Summary Judgment.

N.D.Ill.,2006.
Chicago Regional Council of Carpenters v. Kattan & Kattan General Contractors Inc.
Not Reported in F.Supp.2d, 2006 WL 314517 (N.D.Ill.), 179 L.R.R.M. (BNA) 2315

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173
(Cite as: 2006 WL 229041 (N.D.Ind.))

▷

United States District Court,
N.D. Indiana, Hammond Division.
LOCAL NO. 20 SHEET METAL WORKERS' IN-
TERNATIONAL ASSOCIATION, Plaintiff
v.
CULVER ROOFING, INC., Defendant.

No. 2:04 CV 142.
Jan. 30, 2006.

Cynthia E. Carlson, Paul T. Berkowitz, Thomas E.
Moss, Paul T. Berkowitzand Associates Ltd.,
Chicago, IL, for Plaintiff.

Steven A. Johnson, Johnson & Rappa LLC, Mer-
rillville, IN, for Defendant.

*OPINION AND ORDER*
RODOVICH, Magistrate J.
*1 This matter is before the court on the Mo-
tion for Summary Judgment filed by the defendant,
Culver Roofing, Inc., ("Culver") on July 6, 2005,
and the First Amended Motion, With Self-
Contained Brief, for Confirmation of Arbitration
Award and For Its Attorney's Fees and Costs filed
by the plaintiff, Sheet Metal Workers International
Association Local Union No. 20, (the "Union") on
July 7, 2005. For the following reasons, the motion
for summary judgement is DENIED, and the mo-
tion for confirmation of arbitration award and
attorney's fees and costs is GRANTED.

*Background*
On December 3, 2003, the Local Joint Adjust-
ment Board for the Sheet Metal Industry ("LJAB")
issued an arbitration decision in favor of the Union.
In the decision, the LJAB held that Culver violated
Addendum X, Section 1(a) of the collective bar-
gaining agreement ("CBA") by laying off the stew-
ard, Rob Long, before the last man on a job. The
award, which was signed by Chairman of the LJAB
Steven A. Nelson, instructed Culver to reinstate

Long by December 10, 2003 and to compensate
Long in the amount of $8,400.00 in back pay. On
December 4, 2003, the LJAB formally notified Cul-
ver of the award in a letter signed only by Nelson.
The letter did not provide an explanation of the
reasoning behind the LJAB's decision.

On December 9, 2003, counsel for Culver noti-
fied Nelson that Culver considered the arbitration
award invalid because the LJAB decision did not
comply with Indiana's Uniform Arbitration Act. On
December 10, 2003, counsel for the Union reques-
ted clarification on the defendant's assertion that the
Uniform Arbitration Act applied to the labor arbit-
ration award. After rejecting a settlement offer from
Culver for $3,000, the Union filed suit to enforce
the LJAB arbitration award on April 4, 2004 under
section 301 of the Labor Relations Act. *See* 29
U.S.C. 8185. In its motion to enforce the arbitration
award, the Union seeks a total of $20,314.24, which
represents the $8,400 originally ordered by the
LJAB plus the $8,285.06 in wages and $3,629.18 in
fringe benefits Long lost due to Culver's failure to
rehire him.

*Discussion*
The parties' motions are cross motions for sum-
mary judgment in which the Union is seeking to en-
force the LJAB award and Culver seeks to have the
award vacated.

Pursuant to Federal Rule of Civil Procedure
56(c), summary judgment is proper only if it is
demonstrated that "there is no genuine issue as to
any material fact and the moving party is entitled to
a judgment as a matter of law." *See Celotex Corp.
v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548,
91 L.Ed.2d 265 (1986); *Lawrence v. Kenosha
County,* 391 F.3d 837, 841 (7th Cir.2004); *Bran-
ham v. Snow,* 392 F.3d 896, 901 (7th Cir.2004);
*Windle v. City of Marion, Indiana,* 321 F.3d 658,
660-61 (7th Cir.2003), *cert. denied,* 540 U.S. 873,
124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden
is upon the moving party to establish that no mater-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173
(Cite as: 2006 WL 229041 (N.D.Ind.))

ial facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Lawrence*, 391 F.3d at 841; *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir.2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir.2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir.2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir.1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir.1994). *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir.1999); *Plair v. E.J. Brach & Sons. Inc.*, 105 F.3d 343, 346 (7th Cir.1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir.1990).

*2 In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir.2003) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

A. The Arbitration Award

Judicial review of arbitration awards under collective bargaining agreements is extremely narrow. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 396, 122 S.Ct. 2151, 2176, 153 L.Ed.2d 375 (2001); *Hasbro Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir.2004); *Perfection Bakeries, Inc. v. Chauffeurs, Teamsters & Helpers, Local Union No. 414*, 105 Fed. Appx. 102, 105 (7th Cir.2004). A court will set aside an arbitration award only if the arbitrator "exceeded his or her authority." *Northern Indiana Public Service Company v. United Steel Workers of America, AFL-CIO-CLC*, 243 F.3d 345, 347 (7th Cir.2001). Because arbitral authority is "born in contract," the court's review is limited to determining whether the arbitrator based his award on "some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to draw its essence from the [CBA]." *NIPSCO*, 243 F.3d at 347 (quoting *Jasper Cabinet Company v. United Steelworkers of America*, 77 F.3d 1025, 1028 (7th Cir.1996)); *Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.*, 688 F.Supp. 462, 470 (S.D.Ind.1988), *aff'd*, 877 F.2d 547 (7th Cir.1989). The court "may not review

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173
(Cite as: 2006 WL 229041 (N.D.Ind.))

an arbitrator's decision on the merits despite allegations that the decision rests on factual errors, legal blunders, or misinterpretation of the CBA." *Perfection Bakeries*, 105 Fed. Appx. at 105. *See also NIPSCO*, 243 F.3d at 347.

\*3 The parties dispute whether state or federal law applies to the CBA arbitration in this case. The Union maintains that federal law applies, but Culver contends that the award must comply with Indiana's Uniform Arbitration Act in every respect. Because Culver's position is contrary to long-established principles of labor law, summary judgment must be granted in favor of the Union.

Section 301(a) of the LMRA states that "suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction...." 29 U.S.C. ß185. In 1957, the Supreme Court determined that "the substantive law to "federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Moreover, Section 301 "creates a federal remedy for the breach of a collective bargaining agreement. The remedy is exclusive; no action to enforce such an agreement may be based on state law." *National Metalcrafters, a Division of Keystone Consolidated Industries v. McNeil*, 784 F.2d 817, 823 (7th Cir.1986). Therefore, "the LMRA preempts the entire field of disputes involving the interpretation or enforcement of collective bargaining agreements, and thus governs all claims which are founded on rights directly created by collective bargaining agreements, or are substantially dependent on analysis of a collective-bargaining agreement." *Fish v. Reliance Electric Company*, No. 93-1481, 1994 WL 196425, at \*1 (7th Cir. May 18, 1994) (internal quotations and citations omitted.) Although state law may supply a rule when the LMRA is silent and the state law is compatible with the purposes of Section 301, the state law "will be absorbed as federal law and will not be an inde-

pendent source of private rights." *Lincoln Mills*, 353 U.S. at 457, 77 S.Ct. at 918.

For example, the court must apply the statute of limitations found in the Indiana Arbitration Act because the LMRA does not contain a statute of limitations. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (AUW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Company, Inc.*, 628 F.2d 1023, 1027 (7th Cir.1980); *School City of East Chicago, Indiana v. East Chicago Federation of Teachers, Local # 511, A.F.T.*, 422 N.E.2d 656, 660 (Ind.App.1981). The Indiana Arbitration act provides an action to vacate an arbitration award

shall be made within ninety (90) days after the mailing of a copy of the award to the applicant, except that, if predicated upon corruption or fraud or other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known.

\*4 Ind.Code ß34-57-2-13(b)

Federal policy indicates that under this statute, "defenses to an award recognized by Sections 13 [for vacating an award] and 14 [for modification or correction of an award] [must] be asserted within the ninety (90) day period or they would be waived." *East Chicago*, 422 N.E.2d at 660. *See also* Ind.Code ßß34-57-2-13, 34-57-2-14; *Jefferson Trucking*, 628 F.2d at 1027; *Sheet Metal*, 688 F.Supp. at 471. Procedural and technical deficiencies are among the defenses waived if not timely asserted. *See, e.g., International Brotherhood of Electrical Workers, Local Union 969 v. Babcock & Wilcox*, 826 F.2d 962, 965 (10th Cir.1987) (finding that no notice of a hearing was not grounds to vacate when the employer received notice of the arbitration award); *Sheet Metal*, 688 F.Supp. at 474 (finding that failure to follow the procedures for dispute resolution under a CBA waived this de-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173
(Cite as: 2006 WL 229041 (N.D.Ind.))

fense); *Melvin P. Windsor, Inc. v. Mayflower Savings & Loan Association,* 115 N.J.Super. 219, 278 A.2d 547, 548 (N.J.Super.1971) (finding that absence of signatures of the majority of arbitrators on the arbitration award is a mere technical deficiency not warranting vacating the award).

Culver first argues that the arbitration award should have been signed by all of the arbitrators, rather than just Nelson. The Indiana Arbitration Act requires that an arbitration award "be in writing and signed by the arbitrators concurring therein." Ind.Code ß34-57-2-9(a). Although no court has interpreted the signature requirement in the Indiana act, the general rule is that mere failure to sign an arbitration award is a technical error that does not give cause to vacate the award. *See, e.g. Tenderella v. Kaiser Permanente,* 139 Or.App. 147, 911 P.2d 360, 361-62 (Or.App.1996); *United Brotherhood of Carpenters and Joiners of America, Local 642, AFL-CIO v. DeMello,* 22 Cal.App.3d 838, 100 Cal.Rptr. 564, 565 (Cal.App.1972); *Windsor,* 278 A.2d at 548. Rather, lack of signature will warrant vacation of an award only if there is some evidence of other procedural misconduct, such as exclusion of other arbitrators from the hearing or other evidence than an arbitrator exceeded his powers. *See* Ind.Code ß34-57-2-13. *See also International Brotherhood of Electrical Workers, Local Union 1823 v. WGN,* 615 F.Supp. 64, 66-67 (D.Colo.1985); *International Hod Carriers Local 227 v. Sullivan,* 221 F.Supp. 696, 698 (E.D.Ill.1963). In any event, a party may not challenge an adverse arbitration award on the basis of insufficient signatures after the expiration of the 90 day statute of limitations. *See* Ind.Code ß34-57-2-14; *Jefferson Trucking,* 628 F.2d at 1027; *Baylor,* 688 F.Supp. at 474.

Next, Culver argues that the arbitration award is invalid because it did not detail the reasoning behind the arbitrators' decision. In addition to being untimely (and thus waived), Culver's challenges to the award's technical merit are not legally significant. Under the LMRA, "[a]rbitrators have no oblig-

ation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See also Amoco Oil Company v. Oil, Chemical & Atomic Workers International Union, Local 7-1, Inc.,* 548 F.2d 1288, 1295 (7th Cir.1977). Culver's "boot-strapped" argument that the lack of written determination rendered him unable to formulate an appeal fails for the same reason.

*5 Finally, Culver argues that the arbitration award was invalid substantively because Long was discharged for cause, rather than laid off. Because Culver failed to make this challenge timely, it is waived. *See* Ind.Code ß34-57-2-13(b).

In sum, Culver has no defense to the arbitration award. Therefore, Culver must pay $20,314.24 to Long in compliance with the reinstatement, back wages, and benefits awarded to him by the LJAB.

**B. Attorneys Fees**
Article X, Section 6 of the CBA states that in the event of non-compliance with a decision of the LJAB, the party seeking to enforce the decision is entitled to costs and attorney fees. In addition to this contractual right, the Union may be awarded attorneys fees by law if Culver's defense "was frivolous, which our cases define to mean brought in bad faith-brought to harass rather than to win." *Local 879, Allied Indus. Workers of America, AFL-CIO v. Chrysler Marine Corp.,* 819 F.2d 786, 791 (7th Cir.1987) (quoting *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO,* 739 F.2d 1159, 1167 (7th Cir.1984)). Under this standard, a "baseless challenge to an arbitration award" supports an award of attorney fees. *See Sheet Metal,* 688 F.Supp. at 474. However, "attorneys fees are not appropriate when the attorney for the losing party has made a reasonable inquiry into the law and facts." *Sheet Metal,* 688 F.Supp. at 474.

All of Culver's defenses were without merit and barred by the statute of limitations. Because Culver's arguments are not reasonable in light of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173
(Cite as: 2006 WL 229041 (N.D.Ind.))

the law or facts of this case, attorney fees are appropriate. In addition, Culver is a voluntary party to the CBA and agreed to be responsible for the Union's costs and fees in the event of non-compliance with an LJAB decision.

For the foregoing reasons, Motion for Summary Judgment filed by the defendant, Culver Roofing, Inc., on July 6, 2005 is DENIED, and the First Amended Motion, With Self-Contained Brief, for Confirmation of Arbitration Award and For Its Attorney's Fees and Costs filed by the plaintiff, Sheet Metal Workers International Association Local Union No. 20, on July 7, 2005 is GRANTED. The plaintiff is ORDERED to file an affidavit of attorneys fees and costs incurred in this action to enforce the arbitration award by February 10, 2006.

N.D.Ind.,2006.
Local No. 20 Sheet Metal Workers' Intern. Ass'n v. Culver Roofing, Inc.
Not Reported in F.Supp.2d, 2006 WL 229041 (N.D.Ind.), 178 L.R.R.M. (BNA) 3173

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

142 F.3d 188
(Cite as: 142 F.3d 188)

United States Court of Appeals,
Fourth Circuit.
APEX PLUMBING SUPPLY, INCORPORATED;
Harold Falchick, Plaintiffs-Appellees,
v.
U.S. SUPPLY COMPANY, INCORPORATED,
Defendant-Appellant.

No. 97-1368.
Argued Dec. 1, 1997.
Decided April 22, 1998.

Following arbitration of purchase price for plumbing supply company, buyer filed petition in Pennsylvania state court to vacate award. Company removed action to the United States District Court for the Eastern District of Pennsylvania, then petitioned to modify or confirm award in the United States District Court for the District of Maryland. Buyer objected to venue in Maryland. After denying that motion, the District Court, Alexander Williams, Jr., J., confirmed award, and the Pennsylvania district court dismissed all proceedings without prejudice. Buyer appealed. The Court of Appeals, Michael, Senior District Judge, sitting by designation, as a matter of first impression in its circuit, held that: (1) Maryland district court had venue to hear confirmation petition; (2) arbitration award could not be vacated; and (3) modification of award was not warranted.

Affirmed.

West Headnotes

[1] T 355

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk353 Confirmation or Acceptance by Court
                25Tk355 k. Jurisdiction and Venue.

Most Cited Cases
(Formerly 33k72.3 Arbitration)
    Although situs of parties' arbitration was in Pennsylvania, Maryland district court had venue to hear petition for confirmation of arbitration award under Federal Arbitration Act (FAA); FAA's venue provision was permissive in its grant of venue to districts courts in district in which award was made, Maryland district court possessed subject matter and personal jurisdiction over petition, and parties did not designate exclusive forum for confirmation decision. 9 U.S.C.A. § 9.

[2] T 374(7)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk366 Appeal or Other Proceedings for Review
                25Tk374 Scope and Standards of Review
                    25Tk374(7) k. Questions of Law or Fact. Most Cited Cases
(Formerly 33k73.7(4) Arbitration, 170Bk776)
    Court of Appeals would review district court's determination of venue under Federal Arbitration Act, like legal conclusions generally, de novo. 9 U.S.C.A. § 9.

[3] T 355

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk353 Confirmation or Acceptance by Court
                25Tk355 k. Jurisdiction and Venue.
Most Cited Cases
(Formerly 33k72.3 Arbitration)
    Venue provision of Federal Arbitration Act (FAA) confers permissive, rather than mandatory,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

venue to hear petition for confirmation of arbitration award upon district courts in and for district in which arbitration award was made. 9 U.S.C.A. § 9.

[4] T ⬥324

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk324 k. Consistency and Reasonableness; Lack of Evidence. Most Cited Cases
    (Formerly 33k61 Arbitration)
    Arbitration award determining purchase price of plumbing supply company could not be vacated under Federal Arbitration Act (FAA) on grounds that arbitrator included old inventory in inventory valuation, contrary to parties' agreement; arbitrator did not act irrationally in making inventory valuation decision, but rather relied upon expert testimony of certified public accountant. 9 U.S.C.A. § 10(a).

[5] T ⬥374(1)

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk366 Appeal or Other Proceedings for Review
        25Tk374 Scope and Standards of Review
          25Tk374(1) k. In General. Most Cited Cases
    (Formerly 33k73.7(4) Arbitration)
    Courts of Appeals are precluded from engaging in de novo review of confirmation of arbitration award.

[6] T ⬥329

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk327 Mistake or Error
        25Tk329 k. Error of Judgment or Mistake of Law. Most Cited Cases
    (Formerly 33k63.1 Arbitration)

T ⬥362(2)

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk360 Impeachment or Vacation
        25Tk362 Grounds for Impeachment or Vacation
          25Tk362(2) k. Limitation to Statutory Grounds. Most Cited Cases
    (Formerly 33k76(2) Arbitration)
    Federal courts may vacate arbitration award only upon showing of one of grounds listed in Federal Arbitration Act (FAA), or if arbitrator acted in manifest disregard of law. 9 U.S.C.A. § 1 et seq.

[7] T ⬥363(6)

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk360 Impeachment or Vacation
        25Tk363 Motion to Set Aside or Vacate
          25Tk363(6) k. Scope of Inquiry in General. Most Cited Cases
    (Formerly 33k77(4) Arbitration)
    Courts of Appeals do not review reasoning of arbitrators in determining whether their work draws its essence from contract, but look only to result reached; single question is whether award, however arrived at, is rationally inferable from contract.

[8] T ⬥324

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk324 k. Consistency and Reasonableness; Lack of Evidence. Most Cited Cases
    (Formerly 33k61 Arbitration)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

T ⬅329

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk327 Mistake or Error
            25Tk329 k. Error of Judgment or Mistake of Law. Most Cited Cases
      (Formerly 33k63.1 Arbitration)
    Arbitration award will not be set aside unless it is irrational or evidences manifest disregard for law.

[9] T ⬅316

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk316 k. Actions Exceeding Arbitrator's Authority. Most Cited Cases
      (Formerly 33k57.1 Arbitration)
    A conclusion reached by arbitrator, even if questionable, does not constitute exceeding his power.

[10] T ⬅328

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk327 Mistake or Error
            25Tk328 k. In General. Most Cited Cases
      (Formerly 33k63.3 Arbitration)
    Neither misapplication of principles of contractual interpretation nor erroneous interpretation of agreement in question constitutes grounds for vacating arbitration award.

[11] T ⬅330

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk327 Mistake or Error
            25Tk330 k. Mistake of Fact and Miscalculation. Most Cited Cases

(Formerly 33k63.2 Arbitration)
    Modification of arbitration award determining purchase price of plumbing supply company was not warranted on grounds that arbitrator included old inventory in inventory valuation, contrary to parties' agreement; even if claimed miscalculation of inventory's value was material mistake, miscalculation was not "evident," as required for vacation under Federal Arbitration Act (FAA), in that it did not appear on face of arbitration award. 9 U.S.C.A. § 11(a).

**189 ARGUED:** C. George Milner, C. George Milner, P.C., Philadelphia, PA, for Defendant-Appellant. Philip Scott Friedman, Ifshin & Friedman, Washington, DC, for Plaintiffs-Appellees. **ON BRIEF:** Gary S. Marx, David Kantrow, Marx & Frame, Washington, DC, for Plaintiffs-Appellees.

Before WILKINSON, Chief Judge, JONES, United States District Judge for the Western District of Virginia, sitting by designation, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Senior Judge MICHAEL wrote the opinion, in which Chief Judge WILKINSON and Judge JONES joined.

## OPINION
MICHAEL, Senior District Judge:
    In this case we consider appeals from the district court's confirmation of an arbitration award. Here, we decide whether, in an action seeking enforcement of such an award, the Federal Arbitration Act confers permissive or mandatory venue on Federal courts in *190 and for the district in which the award was made. As well, we decide whether, in this case, the district court erred in confirming the award. For the reasons stated herein, we affirm the district court.

I. *FACTUAL AND PROCEDURAL BACKGROUND*
    In December 1994, appellant U.S. Supply

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

("U.S.") and appellee Apex Plumbing Supply ("Apex") entered into a Management Agreement ("Agreement"). In the Agreement, Apex, a Maryland corporation, gave U.S., a Pennsylvania corporation, the right to manage Apex for a renewable, one-year period, as well as an option to purchase Apex after six months. The Agreement stated that a purchase price would be determined using a specific formula in which, *inter alia,* inventory would be valued based on how recently it was acquired (*i.e.* the more recent the acquisition, the higher the relative value), and that in any case inventory more than a year old would be given no value. Joint Appendix ("JA") at 334. In addition, the Agreement required the parties to submit any dispute to arbitration by the American Arbitration Association of Philadelphia, Pennsylvania, and to enter any award made by the arbitrator "in the Court of General Jurisdiction as a judgement of such court." JA at 338.

In its management role, U.S., per the Agreement, underwrote Apex's expenses. As a result, in January 1995, Apex gave a security interest in inventory, receivables, fixtures, leasehold rights, and equipment to U.S. JA at 287. Harold Falchick, president of Apex, guaranteed Apex's debt to U.S. JA at 344-45.

Near the end of its first year managing Apex, U.S. exercised the option to buy Apex. Prior to this time, however, Apex had become dissatisfied with U.S.'s performance of its duties under the Agreement, and a dispute arose as to how the purchase price should be determined. As a result of the disagreement, U.S. filed for arbitration.

After receiving testimony and other evidence at a hearing, an arbitrator made an award of $179,284 to Apex. The arbitrator based this award on the following calculations: first, the arbitrator credited to Apex $9,000, the amount received by U.S. from an auction of Apex inventory, as well as $45,725 in accounts receivable collected by Apex, for a total of $54,725. Then, the arbitrator valued Apex's inventory on April 24, 1996 (the last day Apex was in business) at $258,446, and gave an additional credit

of $25,219 to Apex for trade fixtures, goodwill, unpaid rent, and unpaid salaries, for a total of $283,665. The arbitrator finally took this figure and subtracted from it the amount owed by Apex to U.S. ($104,381) to reach the $179,284 owed by U.S. to Apex.

U.S. filed a petition to vacate the award in the Court of Common Pleas of Montgomery County, Pennsylvania. Apex removed the action to the United States District Court for the Eastern District of Pennsylvania. Apex then filed a petition to modify or confirm the award in the United States District Court for the District of Maryland. U.S. filed a motion objecting to venue in Maryland, but that motion was denied. The Maryland district court confirmed the arbitrator's award. The Pennsylvania district court then dismissed all proceedings without prejudice. This appeal followed.

## II. *DISCUSSION*

U.S. challenges one major aspect of the arbitrator's ultimate award. At the arbitration hearing, U.S. had claimed that the value of Apex's inventory on April 24, 1996 was $52,199 and Apex, using a "computer run" from 1995, had claimed that the value, instead, was $408,821.71. According to U.S., the arbitrator's calculation of inventory was higher substantially than its figure because the arbitrator failed to deduct the value of all inventory over one year old. In addition, U.S. raises the threshold issue of whether venue in the U.S. District Court for the District of Maryland was proper to begin with such that the confirmation action even could be heard. We address the issues in reverse order.

### A. *Venue under the Federal Arbitration Act*

[1] Section nine of the Federal Arbitration Act ("FAA"), the statute's venue provision, states, in pertinent part:

*191 If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then ... any party to the arbitration may apply to the court so specified for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application *may* be made to the United States court in and for the district within which such award was made....

9 U.S.C. § 9 (emphasis added).

[2] The appellant contends now, as it did below, that the Maryland district court lacked proper venue to hear the appellees' confirmation petition. Rather, it argues, the U.S. District Court for the Eastern District of Pennsylvania should have been the exclusive Federal forum under the FAA because section nine mandates that a party bring any confirmation action in the district court in the district where the arbitration occurred. Because, again, Philadelphia served as the *situs* of the arbitration, exclusive venue would vest in a Pennsylvania district court under U.S.'s reading of section nine. Apex, on the other hand, insists that the statute means what it says-that a party "may" not only choose to confirm an award in the local U.S. district court, but in any other district court that has subject matter and personal jurisdiction. In any district court meeting the jurisdictional requirements, venue is permissive under section nine, Apex concludes. The court below read the statute as Apex does and concluded that the FAA's venue provision conferred upon it permissive, not mandatory, venue.[FN1] *Apex Plumbing Supply, Inc., et al. v. U.S. Supply Co., Inc.,* Civil No. AW-96-3362, Memorandum Opinion at 3-6 (D.Md. January 14, 1997) ("Mem.Op."). JA at 863-66.

FN1. We review this conclusion as to venue, like legal conclusions generally, *de novo. United States v. Newsom,* 9 F.3d 337, 338 (4th Cir.1993).

To begin our analysis, we agree fully with the finding of the district court that, looking at the Agreement, "... it is undisputed that no particular court was specified where confirmation of the award could be sought." Mem. Op. at 3. JA at 863. The Agreement's choice of law provision did specify that Pennsylvania law would apply to certain arbitration matters,[FN2] but it in no way designated any one court as the exclusive forum in which a party could confirm an arbitration decision. Thus, because the parties themselves agreed to no particular forum, we address now whether the FAA confers permissive or mandatory venue on district courts to hear confirmation petitions when it states, "If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9.

FN2. Paragraph nine of the Agreement states, more fully, "The conduct of the arbitration proceedings shall include the right to discovery in accordance with the rules and principles set forth in the Pennsylvania Rules of Civil Procedure." JA at 338.

The issue is one of first impression in this circuit. While the circuits currently are split on the question (*i.e.,* whether, in the absence of an agreement by the parties, a confirmation action *must* be brought in the district in which the arbitration award was rendered or merely *can* be brought there), a majority of the circuits interpret section nine's venue provision as permissive. *See, e.g., Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2d Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986) (permissive); *In Re VMS Securities Litigation,* 21 F.3d 139 (7th Cir.1994) (permissive); *but see Sunshine Beauty Supplies, Inc. v. United States District Court for the Central District of California,* 872 F.2d 310, 312 (9th Cir.1989) (mandatory). Additionally, two district courts within this circuit, excluding the court in the decision below, have had occasion to interpret section nine; both have held that it confers permissive, rather than mandatory, venue on district courts with the requisite subject matter and person-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

al jurisdiction, *U.S. for Kirchdorfer v. Aegis/Zublin Joint Venture,* 869 F.Supp. 387 (E.D.Va.1994) **\*192** (holding that confirmation of an award to the district court in the district of arbitration and confirmed a New York arbitration over whose parties the court had personal jurisdiction); *Amalgamated Clothing and Textile Workers Union v. Federation of Union Reps.,* 664 F.Supp. 995 (S.D.W.Va.1987) (venue under section nine is permissive rather than exclusive).

Because there exists no binding precedent in this circuit, we look, first, to persuasive authority from our sister circuits. The Seventh Circuit undertook a particularly thorough examination of the question in *In Re VMS Securities Litigation, supra.* There, the court held that the venue provision of the FAA indeed is permissive. 21 F.3d at 145. The court looked to the express language of section nine and reasoned that "... in other statutes which restrict venue with so-called 'special venue provisions', Congress has usually employed more explicit language than that used in the FAA." *Id.* at 144. Noting that " '[o]rdinary canons of statutory construction suggest that Congress would have used stronger language ... if the intention was to restrict the power of the federal court in Arbitration Act cases[,]' " the court then cited several statutes with mandatory venue provisions. *Id.* (quoting *Smiga, supra,* 766 F.2d at 707). First, the Miller Act, 40 U.S.C. § 270b(b), states with respect to venue, "Every suit instituted under this section shall be brought ... in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere...." *Id.* at n. 3. Similarly, the Clean Air Act, 42 U.S.C. § 7604(c)(1), declares, "Any action ... may be brought only in the judicial district in which such sources are located." *Id.* Comparing the venue language of the several statutes, we join the conclusion of the Seventh Circuit that "... it is apparent that the FAA is not as explicit as the statutes which unequivocally restrict venue." *Id.*

Next, we look to a prior case in which, as Apex

correctly notes, [FN3] we held that the word "may" in section nine of the FAA is permissive, rather than mandatory, with respect to the time limit for the confirmation of an arbitration award. *Sverdrup v. WHC Constructors, Inc.,* 989 F.2d 148, 156 (4th Cir.1993). We held that in providing that at any time within one year after an arbitration award, any party thereto "may" petition court for a confirmation order, section nine was a permissive provision. *Id.* We reasoned that "[t]he word 'may' in a statute normally confers a discretionary power, not a mandatory power, unless the legislative intent, as evidenced by the legislative history, evidences a contrary purpose." *Id.* at 151 (citing *Dalton v. United States,* 816 F.2d 971, 973 (4th Cir.1987)) (citing *United Hospital Center, Inc. v. Richardson,* 757 F.2d 1445, 1453 (4th Cir.1985)). Looking behind that language to determine Congressional intent, we next found that "... Congress understood the plain meaning of 'may' to be permissive. Section 9 of the FAA states that any party 'may apply' for a confirmation order but the court 'must grant' the order absent a modification or vacation under §§ 10 or 11 ." *Id.* (quoting 9 U.S.C. § 9).

FN3. Appellee's Brief at 15-16.

Looking to section nine's venue provision, here, too, Congress could not have understood the plain meaning of "may" to be anything other than permissive. Had Congress intended to restrict venue under section nine to "the United States court in and for the district within which such award was made," it simply would have stated that the parties "must," not "may," bring a confirmation action there. Again, section nine's drafters knew well the distinction between the two verbs; they chose "must" to communicate the compulsory command elsewhere in section nine that "... the court must grant such an order unless the award is vacated, modified, or corrected...." 9 U.S.C. § 9.

[3] For all of these reasons, we hold that section nine of the FAA confers permissive, rather than mandatory, venue upon district courts in and for the district in which an arbitration award was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

made. In the case below, because the Maryland district court possessed subject matter and personal jurisdiction over the parties' confirmation petition, venue was lodged properly in that court.

**\*193 B. *Valuation of Inventory Over One Year Old***

[4] U.S. maintains here, as its accountants did at the arbitration hearing, that the arbitrator included inventory over one year old in its valuation of Apex's entire inventory. As U.S. points out, such an action, if true, would be in contravention of the clear terms of sale laid out in the "Option to Purchase" section of the Agreement. *See* JA at 334. U.S. claims that, because the arbitrator went outside of the management agreement in making his calculations, the arbitration award should have been vacated or modified below.

Apex does not dispute the allegation that the arbitrator included dated inventory in his valuation. Instead, Apex argues that U.S. should not be able to challenge the arbitrator's calculation methodology this late in the proceedings. Citing *United Food and Commercial Workers v. Marval Poultry*, 876 F.2d 346, 351 (4th Cir.1989), Apex states that "where the challenge to an award does not go to the arbitrator's fundamental power but instead involves the merit of an arbitration award, the challenge must be considered presumptively unjustified." Appellee's Brief at 21.

[5][6][7][8] Apex is correct in an important respect. Review of an arbitrator's award is severely circumscribed. Indeed, the scope of review of an arbitrator's valuation decision is among the narrowest known at law [FN4] because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. *Jih v. Long & Foster Real Estate, Inc.*, 800 F.Supp. 312, 317 (D.Md.1992). Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law. *In re A.H. Robins Co., Inc.*, 197 B.R. 513, 516 (E.D.Va.1994).[FN5]

FN4. Courts of Appeals are precluded from engaging in *de novo* review of a confirmation of an arbitration award. *Parsons & Whittemore v. Yeargin Const. Co., Inc.*, 744 F.2d 1482, 1484 (11th Cir.1984).

FN5. This narrow standard of review is necessary to preserve the benefits of arbitration, *to wit*, reduced delay and expense, and to prevent arbitration from becoming a preliminary step to judicial resolution. *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Moreover, Courts of Appeals do not review the reasoning of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award, however arrived at, is rationally inferable from the contract. *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215 (5th Cir.1990), *cert. denied*, 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991). An arbitration award will not be set aside unless it is irrational or evidences manifest disregard for law. *Upshur Coals Corp. v. United Mine Workers of America, Dist. 31*, 933 F.2d 225, 229 (4th Cir.1991).

The FAA provides, in pertinent part, that:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-

. . . . .

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

. . . . .

9 U.S.C. § 10(a). Section 11 of the FAA similarly allows modification of an arbitrator's award only in limited instances including, as U.S. argues here, "[w]here there was an evident miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).

[9] The appellant argues that both such errors were present maintaining that the arbitrator (1) exceeded his powers by valuing inventory that is expressly to be valueless in the Agreement and, thereby, (2) performed an evident miscalculation of the inventory figures as part of the total award. This argument, however, is not supported by courts in this or other circuits which have held that "as a matter of law" neither misinterpretation of a contract nor an error of law "constitutes a ground on which an award can *194 be vacated." *Farkas v. Receivable Financing Corp.*, 806 F.Supp. 84, 87 (E.D.Va.1992) (citations omitted). Indeed, "a conclusion reached by the [arbitrator], even if questionable ... does not constitute exceeding [his] power." *Kirchdorfer, supra*, 869 F.Supp. at 392.

[10] U.S., not unexpectedly, counters that here more than a mere "misinterpretation" of the contract has transpired because the arbitrator's valuation decision irrationally disregarded an unambiguous provision of the Agreement. Even if we were to accept the premise of U.S.'s assertion, however, no precedent supports vacation on this ground; indeed, U.S. cites none. To the contrary, authority interpreting the FAA has held that merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement; neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award. *See, e.g., Harry Hoffman Printing, Inc. v. Graphic Communications Intern. Union, Local 261*, 950 F.2d 95 (2d Cir.1991). Far from acting "irrationally," the entire record indicates that the ar-

bitrator relied on, among other evidence, the expert testimony of a certified public accountant on the question of inventory valuation. JA at 606, 805, 889.

[11] Again, U.S. also urges that the arbitrator's award be modified pursuant to 9 U.S.C. § 11(a) because the award owed to an evident miscalculation of the inventory figures. As to this proposed remedy, courts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award. *See Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805 (2d Cir.1960). As the district court stated on this point:

[C]ourts have construed literally the language of Section 11, relating to miscalculation of figures or misdescription of property as a ground for modification of an arbitration award.... Where no mathematical error appears on the face of the award ... an arbitration award will not be altered.

*Apex Plumbing Supply, Inc., et al. v. U.S. Supply Co.*, Civil No. AW96-3362, Memorandum Opinion at 5 (D.Md. February 24, 1997) (citing *Hough v. Merrill Lynch, Pierce, Fenner & Smith*, 757 F.Supp. 283, 288 (S.D.N.Y.1991)). JA at 905. Here, because even if the claimed miscalculation of the inventory's value constituted a "material mistake," the miscalculation was not "evident" because it did not appear on the face of the arbitration award. *Hough*, 757 F.Supp. at 288. Thus, as the district court correctly determined, U.S. did not meet its burden under section eleven in order to modify the award.

Accordingly, we hold that because the appellant failed to qualify under any ground listed in either section ten or eleven of the FAA allowing the vacation or modification of an arbitration award, the district court properly confirmed that award.

III.

For the foregoing reasons, the district court's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

142 F.3d 188
(Cite as: 142 F.3d 188)

confirmation of the arbitrator's award in this case hereby is

*AFFIRMED.*

C.A.4 (Md.),1998.
Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.
142 F.3d 188

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

440 F.3d 213
(Cite as: 440 F.3d 213)

United States Court of Appeals,
Fifth Circuit.
Valerie Biggs SAROFIM, Plaintiff-Appellee,
v.
TRUST COMPANY OF THE WEST, Defendant-
Appellant.

No. 05-20309.
Feb. 8, 2006.

**Background:** Investor sought to confirm arbitration award in her favor on claim of breach of fiduciary duty against investment company. Company moved to vacate punitive damages portion of award. The United States District Court for the Southern District of Texas, Lee H. Rosenthal, J., confirmed award including punitive damages. Company appealed punitive damages ruling.

**Holdings:** The Court of Appeals, Benavides, Circuit Judge, held that:
(1) arbitrators' award of punitive damages was not in manifest disregard of law, and
(2) punitive damages award did not violate California public policy.

Affirmed.

West Headnotes

**[1] Alternative Dispute Resolution 25T** ⟜
**374(1)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk366 Appeal or Other Proceedings for Review
        25Tk374 Scope and Standards of Review
          25Tk374(1) k. In General. Most Cited Cases
    (Formerly 33k23.25 Arbitration)

Court of Appeals reviews *de novo* district court's confirmation of arbitration award.

**[2] Alternative Dispute Resolution 25T** ⟜
**363(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk360 Impeachment or Vacation
        25Tk363 Motion to Set Aside or Vacate
          25Tk363(6) k. Scope of Inquiry in General. Most Cited Cases
    (Formerly 33k77(4) Arbitration)

Court of Appeals' review of arbitration award is deferential, with vacatur permitted only on narrow grounds.

**[3] Alternative Dispute Resolution 25T** ⟜**312**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk312 k. Conformity to Public Policy. Most Cited Cases
    (Formerly 33k56 Arbitration)

**Alternative Dispute Resolution 25T** ⟜**324**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk324 k. Consistency and Reasonableness; Lack of Evidence. Most Cited Cases
    (Formerly 33k63.1 Arbitration)

Arbitration award may be vacated on two non-statutory grounds: (1) if award displays manifest disregard of law, or (2) award is contrary to public policy.

**[4] Alternative Dispute Resolution 25T** ⟜**416**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
**(Cite as: 440 F.3d 213)**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(I) Exchanges and Dealer Associations
         25Tk411 Relations Between Customer-Investors and Broker-Dealers
            25Tk416 k. Award. Most Cited Cases
   (Formerly 33k91 Arbitration)

Arbitrators' award of punitive damages on investor's breach of fiduciary duty claim against investment company was not in manifest disregard of law, so as to warrant vacatur of award, even though arbitration panel failed to utilize exact language of governing California statute requiring finding of malice/fraud/oppression in order to award punitives; panel's decision could be construed as finding malice or fraud, given its findings that company had failed to educate itself about investor and to educate investor, had presented incomplete and misleading information to her, had failed to diversify investments in question and to respond to market downturns, and had wholly failed to exercise due diligence. West's Ann.Cal.Civ. Code § 3294(a, c).

**[5] Alternative Dispute Resolution 25T ⚖ 324**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk324 k. Consistency and Reasonableness; Lack of Evidence. Most Cited Cases
   (Formerly 33k63.1 Arbitration)

On "manifest disregard" challenge to arbitration award: (1) where on basis of information available to court it is not manifest that arbitrators acted contrary to applicable law, award is upheld, and (2) where it is manifest that arbitrators acted contrary to applicable law, award is upheld unless it would result in significant injustice.

**[6] Alternative Dispute Resolution 25T ⚖ 324**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award

         25Tk324 k. Consistency and Reasonableness; Lack of Evidence. Most Cited Cases
   (Formerly 33k63.1 Arbitration)

Court of Appeals reviewing arbitration award on claim of "manifest disregard" of law by arbitrators was not confined to four corners of arbitral award, and could consider all information available to Court.

**[7] Alternative Dispute Resolution 25T ⚖ 312**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk312 k. Conformity to Public Policy. Most Cited Cases
   (Formerly 33k56 Arbitration)

Public policy used to vacate arbitration award must be explicit, well defined, and dominant, and must reference laws and legal precedents rather than general considerations of proposed public interests.

**[8] Alternative Dispute Resolution 25T ⚖ 416**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(I) Exchanges and Dealer Associations
         25Tk411 Relations Between Customer-Investors and Broker-Dealers
            25Tk416 k. Award. Most Cited Cases
   (Formerly 33k91 Arbitration)

Arbitrators' award of punitive damages on investor's breach of fiduciary duty claim against investment company did not violate California public policy for punitive awards, namely purposes of deterrence and punishment; $2.9 million punitive award, which accompanied $6.3 million compensatory award, served as punishment for company, and had deterrent potential given arbitrators' specification of reasons. West's Ann.Cal.Code § 3294.

**[9] Alternative Dispute Resolution 25T ⚖ 325**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk325 k. Amount of Award, or Over-
valuation and Undervaluation. Most Cited Cases
    (Formerly 33k62 Arbitration)

California policy does not limit punitive dam-
ages awards in arbitration, even if those awards are
contrary to procedural or substantive law imposed
by statute and judicial interpretations.

**\*215** John Lee Dagley, Justin M. Campbell, III,
Campbell, Harrison & Dagley, Houston, TX, for
Sarofim.

D. Todd Smith, Fulbright & Jaworski, Austin, TX,
Robert Stanford Harrell, Fulbright & Jaworski,
Houston, TX, for Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Texas.

Before GARWOOD, BENAVIDES and OWEN,
Circuit Judges.

BENAVIDES, Circuit Judge:
    The Appellant, Trust Company of the West
("TCW"), asks this Court to vacate an arbitration
award for punitive damages. TCW argues that the
arbitrators manifestly disregarded applicable law
and violated public policy in granting the award.
We disagree and hold that vacatur is not required.
Therefore, we affirm.

*I. FACTUAL AND PROCEDURAL BACKGROUND*
    In July 2000, the Appellee, Valerie Biggs
Sarofim ("Sarofim"), invested approximately $12.7
million with TCW, an investment company. The
vast majority of the money went into TCW's Con-
centrated Core Portfolio, which consisted of stocks
selected for an emphasis on growth. The remaining
$2.2 million went into TCW's Galileo High Yield
Bond Fund, a mutual fund consisting of "admitted"
junk bonds. Sarofim received the invested money as

part of a divorce settlement. During her marriage,
her husband and father-in-law handled her finances.

In three years, Sarofim's portfolio lost $6 mil-
lion. That loss combined with withdrawals for per-
sonal expenses meant that by the time she closed
the account in May 2003, it contained only $2.5
million. The investment agreements between
Sarofim and TCW contained mandatory arbitration
provisions. Sarofim initiated arbitration proceed-
ings, claiming breach of fiduciary duty, fraud, un-
conscionability, constructive fraud, negligent mis-
representation, negligence, and breach of contract.
California law governed the agreements.

In July 2004, a three-member arbitration panel
heard the dispute. It listened to five days of testi-
mony and reviewed more than 200 exhibits. At the
request of the parties, the panel issued a "reasoned
award." [FN1] The twenty-page decision held that
TCW breached its fiduciary duties to Sarofim by
placing her assets in "wholly and negligently un-
suitable" investments. The panel found that TCW
failed to diversify the investments, failed to educate
Sarofim about the risks of investing, and failed to
educate itself about Sarofim's needs as an investor.
The panel rejected TCW's argument that it served
merely as a broker, finding that TCW was Sarofim's
financial consultant and adviser. It emphasized that
Sarofim gave TCW "virtually all of her liquid as-
sets to manage" and "had no other source of money
for living expenses."

> FN1. "[A] reasoned award is something
> short of findings and conclusions but more
> than a simple result." *Holden v. Deloitte &*
> *Touche LLP,* 390 F.Supp.2d 752, 780
> (N.D.Ill.2005) (internal citations omitted).

**\*216** The panel awarded Sarofim $6.3 million
in actual damages. It denied Sarofim's request for
attorney's fees, finding that California law and the
arbitration agreement prevented them. As to punit-
ive damages, the arbitrators stated:

After carefully considering the actions of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

parties relative to all issues discussed herein, the Panel finds that breach of TCW's fiduciary duties justifies an award of punitive damages against it ....

The panel awarded Sarofim $2.9 million in punitive damages. This amount is approximately the same as the amount Sarofim had requested in attorney's fees. [FN2]

> FN2. The panel did not explain how it reached the $2.9 million figure for punitive damages.

Sarofim filed a motion with the United States District Court for the Southern District of Texas, seeking confirmation of the award. TCW did not challenge the factual findings or actual damages award, but did seek vacatur on the punitive damages portion. The district court granted the motion to confirm and denied the motion to vacate. TCW appeals that decision.

## II. STANDARD OF REVIEW

[1][2][3] This Court reviews a district court's confirmation of an arbitration award *de novo*. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.,* 358 F.3d 337, 339-40 (5th Cir.2004). Review of the award is deferential, with vacatur permitted only on narrow grounds. *Brabham v. A.G. Edwards & Sons Inc.,* 376 F.3d 377, 380 (5th Cir.2004); *First Options of Chicago v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (stating that vacatur should occur only in "very unusual circumstances"). In this Circuit, an arbitration award may be vacated on two nonstatutory grounds: if the award displays manifest disregard of the law or is contrary to public policy. *Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 353 (5th Cir.2004).

## III. DISCUSSION

### A. The Panel Did Not Manifestly Disregard Applicable Law

[4] In California, punitive damages are governed by statute. A party may recover punitive damages "where it is proven by clear and convin-

cing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a) (West 1997). Section 3294 defines malice, oppression, and fraud:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*Id.* § 3294(c). TCW argues that the arbitrators manifestly disregarded this law.[FN3] It alleges that instead of applying the law, the panel awarded attorneys' fees "disguised" as punitive damages.

> FN3. TCW did not waive this argument, as suggested by Sarofim. TCW expressly opposed the request for punitive damages. That request relied on section 3294.

[5] A party asserting "manifest disregard" must meet a two-step test. *217 Williams v. Cigna Fin. Advisors Inc.,* 197 F.3d 752, 762 (5th Cir.1999).

First, where on the basis of the information available to the court it is not manifest that the arbitrators acted contrary to the applicable law, the award should be upheld.

Second, where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all the circumstances of the case, including powers of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

arbitrators to judge norms appropriate to the relations between parties.

*Id.* at 762. Here, TCW fails to meet the first inquiry. It is not manifest that the arbitrators acted contrary to the applicable law, and, therefore, the award must be upheld. We assume without deciding that the arbitration panel "appreciated" the existence of the California punitive damages statute.[FN4] *Brabham,* 376 F.3d at 381 (holding that, to manifestly disregard the law, arbitrators must have appreciated its existence).

> FN4. Sarofim cited section 3294 in her prehearing brief. We need not decide at this time whether one citation is sufficient to prove that an arbitrator "appreciated" the law.

[6] TCW argues that our review is "confined to the four corners of the arbitral award" and that we may not consider evidence from the record which supports the punitive damages award. We disagree. Our cases make clear that we consider all "the information available to the court" on review for manifest disregard. *Bridas S.A.P.I.C. v. Turkmenistan,* 345 F.3d 347, 363 (5th Cir.2003); *see also Brabham,* 376 F.3d at 385, 382 n. 4 (considering "the facts before the arbitrator" and specifically "an exchange during the arbitration hearing" in rejecting a manifest disregard claim). TCW mistakenly relies on Second Circuit decisions holding that an arbitration award may not be affirmed on legal theories not utilized by the arbitrator. *See, e.g., Hardy v. Walsh Manning Securities, L.L.C.,* 341 F.3d 126, 132 (2d Cir.2003). That principle is inapposite because Sarofim asks, not that we employ a different legal theory than the arbitrators, but that we confirm the award as decided.

As explained by the district court, TCW's argument rests on the assertion that its culpability did not exceed simple negligence. While it is true that the panel did not use the exact language of section 3294, the evidence sufficiently supports, under our standard of review, a determination that the award

satisfies the statute. *Kergosien,* 390 F.3d at 353 (holding that if an award is "rationally inferable from the facts before the arbitrator, the award must be confirmed"). This is true especially given the form of the panel's decision, a "reasoned award." TCW, as a party to the arbitration, agreed to this type of award rather than requesting specific findings of fact and conclusions of law. TCW cannot now seek vacatur based on the award's lack of specificity.

The panel found that TCW breached its duty to educate itself about Sarofim and to educate Sarofim about investment risks.[FN5] The panel found that TCW's attempts to educate Sarofim consisted of one or two undocumented telephone calls and one face-to-face meeting. At that meeting, a TCW representative showed Sarofim a graph comparing the Concentrated Core Portfolio with a fund operated by her father-in-law.*218 The panel described the graph as "incomplete, misleading and inflammatory." The panel also noted that a TCW vice president, Sarofim's primary contact with the company, testified that he believed her portfolio was inappropriate from the beginning.[FN6] The panel's final conclusion was that TCW "wholly failed to exercise due diligence."

> FN5. The record shows that Sarofim knew little about finances. For example, TCW had to explain to her that the brackets around the dollar figures on her account summary indicated financial losses.

> FN6. The vice president testified, "It was overly aggressive for Valerie I felt at the beginning, and I never changed that opinion." The panel did not accept his argument that although the investments were inappropriate, they were suitable.

The panel also considered the investment strategy unsuitable because of its lack of diversification and failure to address Sarofim's liquidity needs. The panel found that the investments offered no diversification and "would all move in the mar-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

ket in the same direction." This was revealed in
Sarofim's first month of investing with TCW, when
her account lost more than $600,000. The panel did
not fault TCW for failing to predict the market
downturn, but did fault it for failing to respond. The
panel noted that after repeated periods of loss,
TCW's only advice to Sarofim was to "hang in
there." Citing another "glaring example" of prob-
lems early in the history of the account, the panel
found that TCW invested all of Sarofim's funds,
leaving no money to pay taxes known to be due. As
a result, stock had to be sold one month after its
purchase. The panel quipped that the transaction
"presumably mean[t] another sales commission was
charged."

Despite the absence of the specific terms, the
panel's award could be construed as finding
"malice" or "fraud" by clear and convincing evid-
ence as defined under section 3294.[FN7] The award
explains that the actions of the parties "justify" the
punitive damages award. Although it does not say
that TCW committed "despicable conduct" with
"willful and conscious disregard of the rights" of
others, the decision contains enough information to
infer these things. Cal. Civ.Code § 3294(c)
(defining malice). Likewise, within its pages are the
underpinnings for a finding of "intentional misrep-
resentation, deceit, or concealment of a material
fact" that "depriv[ed] a person of property." *Id.*
(defining fraud). The award along with details in
the record support an arbitral determination that
TCW's conduct satisfied the requirements of Cali-
fornia's punitive damages statute.

> FN7. TCW argues that the arbitrators
> "rejected fraud as a foundation for liabil-
> ity," citing the award's focus on TCW's
> breach of fiduciary duties. The "reasoned
> award," however, never made such a rejec-
> tion. It did not state a conclusion on the is-
> sue.

This conclusion reflects the great deference we
must afford arbitration awards. "Arbitrators need
not give reasons for their awards .... Uncertainty

about arbitrators' reasoning cannot justify vacatur,
for a court must resolve all doubts in favor of arbi-
tration." *Brabham*, 376 F.3d at 385 (internal cita-
tions omitted). The test we apply requires *manifest*
disregard of the law, more than an "error or misun-
derstanding." *Id.* at 381. TCW has failed to prove
such disregard.[FN8] Given this determination,*219
it follows that the award does not "strain credulity,"
as argued by TCW. *See Westerbeke Corp. v.
Daihatsu Motor Co.*, 304 F.3d 200, 218 (2d
Cir.2002) ("A court may find intentional disregard
if the reasoning supporting the arbitrator's judgment
'strain[s] credulity' or does not rise to the standard
of 'barely colorable,' ....") (internal citations omit-
ted).

> FN8. TCW makes an extensive argument
> that this Court has been inconsistent in its
> application of the two-prong test for mani-
> fest disregard, particularly in cases citing
> Second Circuit precedent. As we review
> the decisions cited by TCW, we fail to see
> a contradiction. *See Kergosien*, 390 F.3d at
> 355; *Brabham*, 376 F.3d at 381-82;
> *Prestige Ford v. Ford Dealer Computer
> Servs., Inc.*, 324 F.3d 391, 395 (5th
> Cir.2003). While those cases have clarified
> and perhaps expanded the *Williams* test,
> they have done so in an effort to define
> when it is "manifest that the arbitrators ac-
> ted contrary to the applicable law."
>
> TCW asks us to examine the academic
> foundations of the test, suggesting that
> the scholar who created the approach did
> so in an attempt to avoid Second Circuit
> precedent such as *Merrill Lynch, Pierce,
> Fenner & Smith, Inc. v. Bobker*, 808
> F.2d 930 (2d Cir.1986). *Williams*,
> however, does not cite this as a reason
> for adopting the standard. 197 F.3d at
> 762 (stating that the test "should prove
> helpful as a basis for articulating and ap-
> plying the manifest disregard doctrine").
> *Williams* cited *Bobker* as an example of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

a formulation of the doctrine and never rejected its reasoning. *Id.* at 761 n. 2; *see also Prestige Ford,* 324 F.3d at 395 (noting that this Court used *Bobker* to describe manifest disregard in a case that predated *Williams*) (citing *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 539 n. 1 (5th Cir.1992)). While the two-prong approach is the starting point in this Circuit, Second Circuit authority remains persuasive.

### B. The Award Does Not Violate Public Policy

[7] "A court may refuse to enforce an arbitration award that is contrary to public policy." *Prestige Ford,* 324 F.3d at 396. Public policy used to vacate an award "must be explicit, well defined, and dominant." *Id.* (citing *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). The policy advanced must reference "laws and legal precedents" rather than "general considerations of proposed public interests." *Id.*

[8] TCW argues that the award at issue violates the underlying policy for punitive damages. It cites the relevant California policy as having the goals of "punishing" the wrongdoer and "deterring" others from engaging in similar conduct. *PPG Indus., Inc. v. Transamerica Ins. Co.,* 20 Cal.4th 310, 84 Cal.Rptr.2d 455, 975 P.2d 652, 657 (1999) (citing Cal. Civ.Code § 3294(a)(stating that a party may recover punitive damages "for the sake of example and by way of punishing the defendant")).[FN9] The punitive damages award at issue satisfies these twin aims. Requiring TCW to pay $2.9 million punishes the company, and the award has the potential to deter entities from engaging in similar behavior. The award offers enough specifics to caution financial advisers against operating in the same manner as TCW.

FN9. TCW also alleges that the award violates "national" public policy. In its only effort to define this policy, it cites *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574-86,

116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). This case, however, concerns the constitutionality of the amount of punitive damages rather than the justification for punitive damages. Given that TCW does not adequately define a "national" public policy, the claim fails. We note that the California policy is sufficient for examining the issue.

[9] In addition, California policy does not limit punitive damages awards in arbitration, even if those awards are contrary to "procedural or substantive law imposed by statute and judicial interpretations." *Rifkind & Sterling, Inc. v. Rifkind,* 28 Cal.App.4th 1282, 33 Cal.Rptr.2d, 828, 833 (1994). Indeed, arbitrators in California, "unless specifically required to act in conformity with rules of law, may base their decision[s] upon broad principles of justice and equity, and in so doing expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." *Moncharsh v. Heily & Blase,* 3 Cal.4th 1, 10 Cal.Rptr.2d 183, 832 P.2d 899, 904 (1992). These cases show that California public policy also includes an exceedingly deferential standard for punitive *220 damages awarded in an arbitration.[FN10] This is further evidence that the award at issue does not violate public policy.

FN10. This policy does not affect our inquiry in Section IIA. The Federal Arbitration Act ("FAA") and interpretative cases from this Circuit provide the rules of decision on when to vacate an award. While language in the investment agreements incorporate California substantive law into this dispute, the language does not replace the requirements for opting out of vacatur rules. *See Action Indus.,* 358 F.3d at 341, 342 (holding that contractual language required to opt out of the FAA must be "clear and unambiguous" and that broad choice-of-law language did not express the necessary intent to opt out). Manifest disregard of the law is a ground for vacating

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

440 F.3d 213
(Cite as: 440 F.3d 213)

an arbitration decision in this Circuit re-
gardless of California's view on the issue.

*IV. CONCLUSION*

In awarding punitive damages, the arbitration
panel did not manifestly disregard applicable law
and did not violate public policy. For these reasons,
we AFFIRM.

C.A.5 (Tex.),2006.
Sarofim v. Trust Company Of The West
440 F.3d 213

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

674 F.3d 469
(Cite as: 674 F.3d 469)

United States Court of Appeals,
Fifth Circuit.
RAIN CII CARBON, LLC, Plaintiff–Appellee,
v.
CONOCOPHILLIPS COMPANY, Defend-
ant–Appellant.

No. 11–30669.
March 9, 2012.

**Background:** Following arbitration involving
parties to long-term green anode coke supply agree-
ment, which resulted in arbitrator adopting buyer's
price formula, seller moved to vacate arbitration
award, and buyer moved to confirm. The United
States District Court of the Eastern District of
Louisiana, Helen Ginger Berrigan, J., confirmed
award. Seller appealed.

**Holdings:** The Court of Appeals, Carl E. Stewart,
Circuit Judge, held that:
(1) arbitrator did not exceed his authority under the
agreement by clerical error contained in initial
award, and
(2) arbitrator rendered a reasoned award that was
valid under Federal Arbitration Act (FAA).

Affirmed.

West Headnotes

**[1] Alternative Dispute Resolution** 25T ⬦
**374(1)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(H) Review, Conclusiveness, and En-
forcement of Award
      25Tk366 Appeal or Other Proceedings for
Review
        25Tk374 Scope and Standards of Re-
view
          25Tk374(1) k. In general. Most
Cited Cases

In light of the strong federal policy under the
Federal Arbitration Act (FAA) favoring arbitration,
judicial review of an arbitration award is ex-
traordinarily narrow; court reviews a district court's
confirmation of an award de novo, but the review
of the underlying award is exceedingly deferential.
9 U.S.C.A. § 1.

**[2] Alternative Dispute Resolution** 25T ⬦329

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk327 Mistake or Error
        25Tk329 k. Error of judgment or mis-
take of law. Most Cited Cases

**Alternative Dispute Resolution** 25T ⬦330

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk327 Mistake or Error
        25Tk330 k. Mistake of fact and mis-
calculation. Most Cited Cases
  An arbitration award may not be set aside for a
mere mistake of fact or law. 9 U.S.C.A. § 1.

**[3] Alternative Dispute Resolution** 25T ⬦**112**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(A) Nature and Form of Proceeding
      25Tk112 k. Contractual or consensual
basis. Most Cited Cases

**Alternative Dispute Resolution** 25T ⬦**316**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(G) Award
      25Tk316 k. Actions exceeding arbitrator's
authority. Most Cited Cases
  Arbitration is a matter of contract; therefore,
where arbitrators act contrary to express contractual

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2 of 6

Page 2

674 F.3d 469
(Cite as: 674 F.3d 469)

provisions, they have exceeded their powers, warranting vacatur of the arbitration award pursuant to the Federal Arbitration Act (FAA). 9 U.S.C.A. § 10(a)(4).

**[4] Alternative Dispute Resolution 25T ☞316**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk316 k. Actions exceeding arbitrator's authority. Most Cited Cases

**Alternative Dispute Resolution 25T ☞374(5)**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(H) Review, Conclusiveness, and Enforcement of Award
         25Tk366 Appeal or Other Proceedings for Review
            25Tk374 Scope and Standards of Review
               25Tk374(5) k. Presumptions. Most Cited Cases

   If a contract creates a plain limitation on the authority of an arbitrator, court will vacate an award that ignores the limitation, as exceeding the arbitrator's power in violation of Federal Arbitration Act (FAA); however, limitations on an arbitrator's authority must be plain and unambiguous, and a reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration. 9 U.S.C.A. § 10(a)(4).

**[5] Alternative Dispute Resolution 25T ☞316**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk316 k. Actions exceeding arbitrator's authority. Most Cited Cases
   Arbitrator determining price formula for parties to long-term green anode coke supply agreement, by inadvertently including two provisions from seller's proposed draft award, although adopting

buyer's price formula, did not exceed his authority, as would warrant vacatur of award pursuant to Federal Arbitration Act (FAA); although parties' supply agreement provided that if a dispute arose regarding price formula, arbitrator would have to select only one of the proposals submitted by the parties, arbitrator's inclusion of the provisions from the seller's proposed draft was a clerical error that the arbitrator corrected upon buyer's request.

**[6] Alternative Dispute Resolution 25T ☞307**

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(G) Award
         25Tk302 Making and Formal Requisites
            25Tk307 k. Findings, conclusions, and reasons for decision. Most Cited Cases
   Arbitrator determining price formula for parties to long-term green anode coke supply agreement rendered a reasoned award, so that award was valid under Federal Arbitration Act (FAA); in eight pages, the arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposals for a price formula should prevail, and the parties did not request findings of fact and conclusions of law. 9 U.S.C.A. § 10(a)(4).

\*470 James M. Garner, Darnell Bludworth, Thomas Joseph Madigan, II, Sher, Garner, Cahill, Richter, Klein & Hilbert, L.L.C., New Orleans, LA, for Plaintiff–Appellee.

Reagan William Simpson, Edward Caldwell Dawson, April L. Farris, Yetter Coleman, L.L.P., Austin, TX, Justin Paul Lemaire, Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann, L.L.C., New Orleans, LA, for Defend- ant–Appellant.

Appeals from the United States District Court of the Eastern District of Louisiana.

\*471 Before STEWART, CLEMENT and GRAVES, Circuit Judges.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

674 F.3d 469
(Cite as: 674 F.3d 469)

CARL E. STEWART, Circuit Judge:

Defendant–Appellant ConocoPhillips Company ("Conoco" or "COP") appeals the district court's judgment confirming an arbitration award favorable to Plaintiff–Appellee Rain CII Carbon, LLC ("Rain"). We AFFIRM.

## I.

Conoco and Rain are parties to a long-term supply agreement, whereby Conoco agreed to sell all green anode coke produced at its Alliance refinery from August 2005 to December 2015 to Rain. The 2005 agreement includes a complex formula for capturing the market price of green coke. The agreement further provides that if a party reasonably concludes that the contract formula no longer yields market price, the party may reopen price negotiations. If such negotiations prove unfruitful, the matter would be submitted to a "baseball" arbitration, whereby each party submits a proposal and the arbitrator selects one of the two.

In 2008, Conoco reopened market price negotiations. After being unable to reach an agreement, Conoco submitted the matter to arbitration. The parties requested a "reasoned" award in their joint proposed scheduling order. An evidentiary hearing was held in September 2010, and each party submitted a price formula proposal. In December 2010, the arbitrator requested that the parties submit draft awards, which were submitted on February 3, 2011.

On March 7, 2011, the arbitrator awarded $17,702,585.33 to Rain. In the eight-page award, the arbitrator set forth the contentions of the parties before adopting Rain's price formula, which was the formula contained in the initial agreement. The award stated:

Based upon the testimony, exhibits, arguments, and submissions presented to me in this matter, I find that the price formula contained in Section 4 of the Green Anode Coke Sales Agreement dated August 23, 2005, as amended January, 2007, and July, 2008, shall remain in effect for the balance of the term as stated in the contract.

The arbitrator used Conoco's draft award as the template for his award. Two brief paragraphs from Conoco's draft award were included in the arbitrator's award:

Applying the replacement formula from April 1, 2008 until March 31, 2009 results in an increased payment by Rain CII to COP of $6,920,234.07. Offsetting the amount of the true up COP owes Rain CII results in a net payment owed by Rain CII to COP in the amount of $1,357,480.82.

and

Applying the contractual rate of interest to the outstanding amount for the number from April 1, 2009 to February 3, 2011 results in the sum of $214,984.96.

On March 25, 2011, Rain filed a motion requesting that the arbitrator correct these two inconsistencies. On April 18, 2011, the arbitrator granted Rain's motion, identified the "inadvertently included sentences" as clerical errors, and removed them from the final award.

In the district court, Conoco moved to vacate the award. On June 27, 2011, the district court denied the motion to vacate the award, and granted Rain's motion to confirm the award. This appeal followed.

## II.

[1][2] "In light of the strong federal policy favoring arbitration, judicial review *472 of an arbitration award is extraordinarily narrow." *Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 672 (5th Cir.2002) (internal quotation marks omitted). "We review a district court's confirmation of an award de novo, but the review of the underlying award is exceedingly deferential." *Apache Bohai Corp. LDC v. Texaco China BV,* 480 F.3d 397, 401 (5th Cir.2007) (internal quotation marks omitted). This court's de novo review "is intended to reinforce the strong deference due an arbitrative tribunal." *Brook,* 294 F.3d at 672 (internal quotation marks omitted). "An

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

674 F.3d 469
(Cite as: 674 F.3d 469)

award may not be set aside for a mere mistake of fact or law." *Apache,* 480 F.3d at 401.

" Section 10 of the Federal Arbitration Act, 9 U.S.C. §§ 1 – 16 ('FAA') provides 'the only grounds upon which a reviewing court may vacate an arbitrative award.' " *Brook,* 294 F.3d at 672 (quoting *McIlroy v. PaineWebber, Inc.,* 989 F.2d 817, 820 (5th Cir.1993)). " Section 10 allows vacatur, *inter alia,* '[w]here the arbitrators exceeded their powers ....' " *Id.* (quoting 9 U.S.C. § 10(a)(4)).

[3][4] "Arbitration is a matter of contract." *Id.* "Where arbitrators act 'contrary to express contractual provisions,' they have exceeded their powers." *Apache,* 480 F.3d at 401 (quoting *Delta Queen Steamboat Co. v. AFL–CIO,* 889 F.2d 599, 604 (5th Cir.1989)). "If the contract creates a plain limitation on the authority of an arbitrator, we will vacate an award that ignores the limitation." *Id.* "[L]imitations on an arbitrator's authority must be plain and unambiguous ...." *Id.* at 404. "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Brook,* 294 F.3d at 672.

## III.

In this case, Conoco asserts that the arbitrator exceeded his powers in two ways: failing to select only one proposal, per the parties' baseball arbitration agreement; and failing to render a reasoned award. These matters will be addressed in turn.

## A.

The parties' "Green Anode Coke Sales Agreement" provided that if a dispute arose regarding the proper formula to yield market price for green coke, the dispute would be resolved by baseball arbitration:

[U]pon declaration of an impasse by either party, the matter shall be submitted to arbitration as provided in section 19, provided that each party shall submit to the arbitrator one replacement mechanism for determining the price of Green Anode Coke to be supplied under this Agreement

and the arbitrator shall be required to select from the two proposed mechanisms that one which, in the judgment of the arbitrator, is more likely to yield a market level price for Green Anode Coke to be supplied under this Agreement for the balance of the term then in effect.

Section 19 of the agreement clarified the arbitration procedure:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in effect at the time such arbitration is commenced, and judgment on the Award rendered by the arbitration may be entered in any court having jurisdiction thereof.

[5] Conoco asserts that the arbitrator exceeded his powers by using parts of both proposals in his award, rather than selecting only one proposed mechanism as required by the contract. As evidenced *473 above, the AAA Commercial Rules were incorporated into the 2005 agreement. Commercial Arbitration Rule 46 provides: "Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided." AAA Commercial Arbitration Rule 46, *available at* http:// www. adr. org/ sp. asp? id= 22440.

In the instant case, the arbitrator, upon motion by Rain, removed the two provisions derived from Conoco's proposed draft award from his final award, identifying the inadvertently included sentences as clerical errors. However, despite the arbitrator's correction and reason given, Conoco insists that the arbitrator did not choose one proposal as required by the contract, and that the inclusion of the paragraphs was not a clerical error. Conoco has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible. Given the considerable deference af-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

674 F.3d 469
(Cite as: 674 F.3d 469)

forded arbitration awards, Conoco's argument that the arbitrator exceeded his powers by failing to select only one proposal, which relies on paragraphs stricken from the final award in accordance with the Commercial Rules, must fail.

## B.

Conoco disputes that the award rendered by the arbitrator was a "reasoned" award. The only description of a reasoned award in this circuit was rendered in a footnote. *See Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 215 n. 1 (5th Cir.2006) (" '[A] reasoned award is something short of findings and conclusions but more than a simple result.' " (quoting *Holden v. Deloitte & Touche LLP*, 390 F.Supp.2d 752, 780 (N.D.Ill.2005))).

In *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836 (11th Cir.2011), the Eleventh Circuit reversed a district court's vacatur of an arbitration award on the ground that the award was not reasoned. The court acknowledged that courts have generally been reluctant to vacate awards challenged on the grounds that their form was improper. *Cat Charter*, 646 F.3d at 842 n. 12. The court reasoned:

Generally, an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a "standard award" and simply announce a result .... At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make "findings of fact and conclusions of law," a relatively exacting standard familiar to the federal courts.

Logically, the varying forms of awards may be considered along a "spectrum of increasingly reasoned awards," with a "standard award" requiring the least explanation and "findings of fact and conclusions of law" requiring the most .... [T]herefore, a "reasoned award is something short of findings and conclusions but more than a simple result." *Sarofim* [,440 F.3d at 215 n. 1] (citations and internal quotation marks omitted).

*Id.* at 844 (internal citations omitted). The court concluded:

We decline to narrowly interpret what constitutes a reasoned award to overturn an otherwise apparently seamless proceeding. The parties received precisely what they bargained for a speedy, fair resolution of a discrete controversy by an impartial panel of arbitrators skilled in the relevant areas of the law. To vacate the Award and remand for an entirely new proceeding would insufficiently*474 respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated.

*Id.* at 846.

Likewise, in *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir.2000), the Sixth Circuit reversed a district court's vacatur of a six-page arbitration award, which the district court had determined failed to comply with a provision of the arbitration agreement requiring that the arbitrator "explain" his decision. The court reasoned that "although the arbitrator's opinion was minimal, it was nevertheless adequate to satisfy the terms of the agreement." *Green*, 200 F.3d at 970. "If parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required." *Id.* at 976.

Conoco largely relies on a Ninth Circuit opinion vacating an arbitration award. *See W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir.1992). That case, however, is factually distinguishable from the present case. In *Jefferies*, the parties had agreed that a statement of findings of fact and conclusions of law would accompany the arbitration award. The final award included no such findings of fact or conclusions of law. Accordingly, the court concluded that "[b]y failing to provide Western with findings of fact and conclusions of law, the [ ] panel clearly failed to arbitrate the dispute according to the terms of the arbitration agreement." *Id.* at 262.

In contrast, the parties in the present case did

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

674 F.3d 469
(Cite as: 674 F.3d 469)

not request findings of fact and conclusions of law, an exhaustive standard familiar to the courts; rather, they agreed to a reasoned award, without further elaboration. Additionally, it is clear that, in eight pages, the arbitrator rendered more than a standard award, which would be a mere announcement of his decision. Thus, the remaining question is whether the arbitrator's award is sufficiently more than a standard award so as to be a reasoned award.

[6] Given the deference employed when evaluating arbitral awards, and as all doubts implicated by an award must be resolved in favor of the arbitration, the award in this case is sufficient to withstand Conoco's request for vacatur. Conoco's argument against the award hinges on the summary nature of the arbitrator's statement that, based upon all of the evidence, he found that the initial price formula should remain in effect. Conoco ignores that the preceding paragraph thoroughly delineates Rain's contention that Conoco had failed to show that the initial formula failed to yield market price, a contention that the arbitrator obviously accepted. Conoco would have this court vacate the arbitration award merely because the arbitrator did not reiterate this reason in the following paragraph. Such a narrow approach is inconsistent with the deference owed to arbitral awards and the congressional policy favoring arbitration of commercial disputes, and is also contrary to the interest of finality.

As stated in *Green,* if Conoco wanted a more thorough discussion of why the arbitrator reached the decision he did, it could have contracted for an award to include findings of fact and conclusions of law. Instead, the parties agreed to a reasoned award, which, according to our case law, is more than a simple result. In eight pages, the arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail. It is, at the very least, doubtful that the award is not more than a simple result. Accordingly, vacatur is not appropriate and the award must be enforced.

*475 IV.

For the foregoing reasons, we AFFIRM the district court's judgment.

C.A.5 (La.),2012.
Rain CII Carbon, LLC v. ConocoPhillips Co.
674 F.3d 469

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

C

United States District Court,
M.D. Florida.
Tampa Division.
Vincent ROSATI and Loretta Rosati, Plaintiffs,
v.
Jonathan Elia Sassoon BEKHOR, Alan Steven Cohen,
John Joseph Lee, Defendants.

No. 8:00CV2274T17TGW.
June 29, 2001.

Investors filed statement of claim with the National Association of Securities Dealers (NASD) against brokerage and securities traders, alleging numerous violations of securities law. Upon arbitration, NASD awarded investors compensatory and punitive damages with interest. Traders moved to vacate arbitration award, and investors moved to confirm award. The District Court, Kovachevich, J., held that: (1) award had rational basis, and thus District Court would only consider statutory grounds for vacatur; (2) arbitrators did not exceed their authority by ruling on claim that was not submitted to them; (3) there was no basis to vacate award on grounds of evident partiality or manifest disregard of the law, or on grounds that it was arbitrary and capricious or against public policy; (4) arbitrators' award of punitive damages was proper; but (8) investors were not entitled to attorneys' fees.

Motion to vacate denied, and motion to confirm granted.

West Headnotes

[1] Alternative Dispute Resolution 25T ⚖363(6)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk360 Impeachment or Vacation
                25Tk363 Motion to Set Aside or Vacate
                    25Tk363(6) k. Scope of inquiry in general. Most Cited Cases
        (Formerly 33k77(4) Arbitration)

District courts have discretion to vacate arbitration awards, however, this authority is not without limits.

[2] Alternative Dispute Resolution 25T ⚖363(6)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk360 Impeachment or Vacation
                25Tk363 Motion to Set Aside or Vacate
                    25Tk363(6) k. Scope of inquiry in general. Most Cited Cases
        (Formerly 33k77(4) Arbitration)

Upon review, great deference is afforded to arbitration awards.

[3] Alternative Dispute Resolution 25T ⚖362(1)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk360 Impeachment or Vacation
                25Tk362 Grounds for Impeachment or Vacation
                    25Tk362(1) k. In general. Most Cited Cases
        (Formerly 33k76(1) Arbitration)

Alternative Dispute Resolution 25T ⚖362(2)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk360 Impeachment or Vacation
                25Tk362 Grounds for Impeachment or Vacation
                    25Tk362(2) k. Limitation to statutory grounds. Most Cited Cases
        (Formerly 33k76(2) Arbitration)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

Alternative Dispute Resolution 25T ☞363(6)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and En-
forcement of Award
            25Tk360 Impeachment or Vacation
                25Tk363 Motion to Set Aside or Vacate
                    25Tk363(6) k. Scope of inquiry in
general. Most Cited Cases
    (Formerly 33k77(4) Arbitration)

In reviewing arbitration awards, if the arbitration award is silent as to its rationale, the reviewing court first reviews the arbitration award to determine if there is a rational basis for the award, with the onus being on the party requesting the vacatur to refute every rational basis upon which the arbitrator could have relied, and if a proper basis for the award is found, then the party seeking to vacate the award is restricted to only four statutory grounds for vacatur; if an award is not silent as to its rationale, the reviewing court shall review any of the statutory or non-statutory grounds for vacatur raised by the party seeking to vacate.

[4] Alternative Dispute Resolution 25T ☞307

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk302 Making and Formal Requisites
                25Tk307 k. Findings, conclusions, and
reasons for decision. Most Cited Cases
    (Formerly 33k52.5 Arbitration)

An arbitration panel need not state any basis for its award.

[5] Alternative Dispute Resolution 25T ☞416

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Custom-
er-Investors and Broker-Dealers
                25Tk416 k. Award. Most Cited Cases
    (Formerly 33k91 Arbitration, 160k11(11.1))

There was a rational basis for National Associa-tion of Securities Dealers (NASD) arbitrators' award

to investors of compensatory and punitive damages with interest against brokerage and securities traders, and thus District Court would only consider statutory grounds for vacatur upon traders' motion to vacate award, which was partially silent as to its rationale, but stated that causes of action were related to fraudulent trading practices and day trading of approximately 18,000 buy/sell orders in approximately 5,121,000 securities.

[6] Alternative Dispute Resolution 25T ☞417

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Custom-
er-Investors and Broker-Dealers
                25Tk417 k. Review, conclusiveness,
and enforcement of award. Most Cited Cases
    (Formerly 33k91 Arbitration, 160k11(11.1))

National Association of Securities Dealers (NASD) arbitrators did not exceed their authority by ruling on claim that was not submitted to them, and thus there was no basis for modification of award in investors' action against brokerage and securities traders, alleging numerous violations of securities law, although Florida law mentioned in award was not submitted to arbitrators, where general issue submit-ted to arbitrators was securities fraud. 9 U.S.C.A. § 11; Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

[7] Alternative Dispute Resolution 25T ☞316

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk316 k. Actions exceeding arbitrator's
authority. Most Cited Cases
    (Formerly 33k57.1 Arbitration)

If an arbitration panel rules on issues not pre-sented to it by the parties, it has exceeded its authority and the award must be vacated.

[8] Alternative Dispute Resolution 25T ☞416

25T Alternative Dispute Resolution
    25TII Arbitration

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

25TII(I) Exchanges and Dealer Associations
    25Tk411 Relations Between Customer-Investors and Broker-Dealers
        25Tk416 k. Award. Most Cited Cases
    (Formerly 33k91 Arbitration, 160k11(11.1))

There was no basis for vacatur of National Association of Securities Dealers (NASD) arbitrators' award to investors of compensatory and punitive damages with interest against brokerage and securities traders, on grounds of evident partiality, where there were no direct or definite facts, or even suggestions, that arbitrators acted inappropriately or had an alternative agenda.

[9] Alternative Dispute Resolution 25T ☞335

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk331 Fraud, Partiality, or Misconduct
                25Tk335 k. Prejudice or partiality and interest in subject matter. Most Cited Cases
    (Formerly 33k64.3 Arbitration)

In order to find that there was evident partiality, as would provide district court with grounds to vacate arbitration award, the alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, and speculative.

[10] Alternative Dispute Resolution 25T ☞335

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk331 Fraud, Partiality, or Misconduct
                25Tk335 k. Prejudice or partiality and interest in subject matter. Most Cited Cases
    (Formerly 33k64.3 Arbitration)

The mere appearance of bias or partiality is not enough to set aside an arbitration award under evident partiality grounds for vacatur.

[11] Alternative Dispute Resolution 25T ☞329

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award

25Tk327 Mistake or Error
    25Tk329 k. Error of judgment or mistake of law. Most Cited Cases
    (Formerly 33k63.1 Arbitration)

To vacate an arbitration award on grounds of manifest disregard of the law, requirements include that: (1) the applicable legal principle is clearly defined and not subject to reasonable debate, and (2) the arbitrators refused to heed that legal principle.

[12] Alternative Dispute Resolution 25T ☞417

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Customer-Investors and Broker-Dealers
                25Tk417 k. Review, conclusiveness, and enforcement of award. Most Cited Cases
    (Formerly 33k91 Arbitration, 160k11(11.1))

National Association of Securities Dealers (NASD) arbitrators did not refuse to heed clearly stated applicable legal principle, as would provide District Court with non-statutory grounds of manifest disregard of the law to vacate award to investors in their action against brokerage and securities traders, alleging numerous violations of securities law, although Florida law mentioned in award was not submitted to arbitrators, where Court could not assume that arbitrators took only Florida Statutes into consideration, since award did not specify which facts arbitrators found to be true, nor did it specify, beyond doubt, which law or laws were found to be violated.

[13] Alternative Dispute Resolution 25T ☞416

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Customer-Investors and Broker-Dealers
                25Tk416 k. Award. Most Cited Cases
    (Formerly 33k91 Arbitration, 160k11(11.1))

Vacatur of arbitration award to investors in their action against brokerage and securities traders, alleging numerous violations of securities law, was not warranted on grounds that award was arbitrary and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

capricious, although Florida law mentioned in award
was not submitted to arbitrators, since Florida law and
federal securities law were so similar that District
Court could infer from written arbitration award that
there were sufficient grounds for award.

**[14] Alternative Dispute Resolution 25T ⚖325 324**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk324 k. Consistency and reasonable-
ness; lack of evidence. Most Cited Cases
        (Formerly 33k61 Arbitration)

    Court may vacate an arbitration award that is ar-
bitrary and capricious only if a ground for the arbi-
trator's decision cannot be inferred from the facts of
the case.

**[15] Fraud 184 ⚖13(3)**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k8 Fraudulent Representations
            184k13 Falsity and Knowledge Thereof
                184k13(3) k. Statements recklessly
made; negligent misrepresentation. Most Cited Cases

**Securities Regulation 349B ⚖278**

349B Securities Regulation
    349BII State Regulation
        349BII(A) In General
            349Bk278 k. Fraudulent or other prohibited
practices. Most Cited Cases

    Stating a cause of action under the Florida Secu-
rities Investors Protection Act or Florida common-law
fraud is virtually identical to stating a claim under
Rule 10b-5, except that scienter requirement under
Florida law is satisfied by showing of mere negli-
gence, whereas Rule 10b-5 requires reckless disre-
gard. Securities Exchange Act of 1934, § 10(b), 15
U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[16] Alternative Dispute Resolution 25T ⚖312**

25T Alternative Dispute Resolution

25TII Arbitration
    25TII(G) Award
        25Tk312 k. Conformity to public policy.
Most Cited Cases
    (Formerly 33k56 Arbitration)

    The grounds of vacating an arbitration award
based on public policy is implicated when enforce-
ment of the award compels one of the parties to take
action which directly conflicts with public policy.

**[17] Alternative Dispute Resolution 25T ⚖416**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Custom-
er-Investors and Broker-Dealers
                25Tk416 k. Award. Most Cited Cases
        (Formerly 33k91 Arbitration, 160k11(11.1))

    Neither party would be required to take any action
which directly conflicted with public policy, as would
provide District Court with non-statutory grounds to
vacate award to investors in their action against bro-
kerage and securities traders, alleging numerous vio-
lations of securities law; damages to be paid by de-
fendants were compensatory for amount of money
investors lost due to fraudulent trading practices.

**[18] Alternative Dispute Resolution 25T ⚖112**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(A) Nature and Form of Proceeding
            25Tk112 k. Contractual or consensual basis.
Most Cited Cases
        (Formerly 33k1.1 Arbitration)

    Arbitration is a matter of consent, not coercion,
and parties are generally free to structure their arbi-
tration agreements as they see fit.

**[19] Alternative Dispute Resolution 25T ⚖416**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(I) Exchanges and Dealer Associations
            25Tk411 Relations Between Custom-
er-Investors and Broker-Dealers

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

25Tk416 k. Award. Most Cited Cases
(Formerly 33k91 Arbitration, 160k11(11.1))

National Association of Securities Dealers (NASD) arbitrators' award of punitive damages to investors was proper, in investors' action against brokerage and securities traders, alleging numerous violations of securities law, although traders did not file submissions to arbitration, where traders answered claim and included punitive damages in agreement to arbitrate, since a trader requested punitive damages in his counterclaim.

[20] Federal Civil Procedure 170A ⚲2737.14

170A Federal Civil Procedure
  170AXIX Fees and Costs
    170Ak2737 Attorney Fees
      170Ak2737.14 k. Miscellaneous matters.
Most Cited Cases

Under Florida law, investors were not entitled to attorney fees incurred in bringing action against brokerage and securities traders, alleging numerous violations of securities law, where investors' arbitration award of well in excess of $500,000 was sufficient and an additional award of attorney fees would be unjust. West's F.S.A. § 517.211(3)(b), (6).

[21] Federal Civil Procedure 170A ⚲2737.1

170A Federal Civil Procedure
  170AXIX Fees and Costs
    170Ak2737 Attorney Fees
      170Ak2737.1 k. Result; prevailing parties; "American rule". Most Cited Cases

Absent special legislation or contract providing otherwise, litigants must generally pay their own attorney fees.

*1343 Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, for Plaintiffs.

Burton Webb Wiand, Maya M. Wolfe, Fowler, White, Gillen, Bogs, Tampa, FL, for defendant.

### ORDER ON DEFENDANT'S, ALAN STEVEN COHEN'S, MOTION TO VACATE PLAINTIFFS' PETITION FOR ORDER CONFIRMING THE

### ARBITRATION AWARD AND DIRECTING ENTRY OF FINAL JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on the following motions and responses:

1. Defendant's, Alan Steven Cohen, Motion to Vacate the Arbitration Award (Dkt.15);

2. Defendant's, Alan Steven Cohen, memorandum of law in support of his Motion to Vacate and Memorandum in Opposition to the Plaintiffs' Petition for an Order Confirming the Arbitration Award and Directing Entry of Final Judgment (Dkt.16);

3. Plaintiffs' Memorandum of Law in Opposition to Defendant's, Alan Steven Cohen, Motion to Vacate Plaintiffs' Petition for Order Confirming the Arbitration Award and Directing Entry of Final Judgment (Dkt.19);

4. Affidavit of Vincent Rosati in Opposition to Defendant's, Alan Steven Cohen, Motion to Vacate Plaintiffs' Petition for Order Confirming the Arbitration Award and Directing Entry of Final Judgment (Dkt.20);

5. Affidavit of Barbara J. Glenns, in Support of Defendant's, Alan Steven Cohen, Motion to Vacate the Arbitration Award (Dkt.20).

### FACTUAL BACKGROUND

The facts as set out in the Arbitrator's Award are as follows: Plaintiff, Vincent Rosati, filed a Statement of Claim against Defendants, Jonathan Elia Sassoon Bekhor (Bekhor), Alan Steven Cohen (Cohen), and John Joseph Lee (Lee) with the National Association of Securities Dealers (NASD). The Statement of Claim included the following allegations: (1) violations of Rule 10b-5 of the Securities and Exchange Act as to all Defendants; (2) common law fraud as to all Defendants; (3) excessive trading as to all Defendants; (4) unauthorized trading as to all Defendants; (5) unsuitability as to all Defendants; (6) breach of contract as to all defendants; (7) breach of duty of good faith and fair dealing as to all Defendants; (8) breach of fiduciary duty as to Defendants Cohen and Lee; (9) failure to supervise as to Defendant Cohen; (10) negligence as to all Defendants; and (11) unjust enrichment as to all Defendants. These claims relate to fraudulent trading practices and day trading of ap-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

proximately 18,000 buy/sell orders in approximately 5,121,000 securities between June 1996 and February 1997.

Upon Defendant Cohen's oral motion, Loretta Rosati was added as a party. She then adopted all claims and defenses asserted by and against Vincent Rosati. Defendants asserted the following defenses: (1) Plaintiffs failed to state a claim upon which relief may be granted; (2) Plaintiffs *1344 knew of the risks involved with their investments; (3) Defendants Bekhor and Cohen were not liable for the conduct of Lee; (4) Defendants Cohen and Bekhor also asserted that Plaintiffs authorized and ratified the transactions at issue and that Plaintiffs were estopped from asserting claims relating to the transaction at issue. Also, Defendants Cohen and Bekhor asserted a counterclaim for defamation against Plaintiffs. Defendants Cohen and Bekhor also asserted a cross-claim for indemnification against Defendant Lee. Plaintiffs denied all claims made in the counterclaim.

Except for the above-recited claims, all other claims, cross-claims, and counterclaims were dismissed with prejudice and need not be recited here. An amended award was issued on October 19, 2000. This award deemed Cohen, Lee, Bekhor, and Island Securities to be jointly and severally liable to the Plaintiffs for the following damages: (1) compensatory damages of $113,316.00, plus pre-judgment interest in the amount of $33,600.00, and post-judgment interest accruing at the legal rate under Florida law in accordance with Section 10330(h) of the Code; (2) punitive damages of $400,000.00, plus post-judgment interest accruing in the same manner as above; and (3) reimbursement of the claim filing fee in the amount of $300.00. The Panel also allowed for a court to award attorney's fees, but did not award them as it does not have the power to do so.

STANDARD OF REVIEW

[1][2][3] District courts have discretion to vacate arbitration awards, however, this authority is not without limits. Great deference is afforded to these types of awards. *O.R. Securities, Inc. v. Professional Planning Associates*, 857 F.2d 742, 746 (11th Cir.1988). There are four statutory grounds upon which a court may vacate an award and three non-statutory grounds. The Eleventh Circuit's procedure for reviewing arbitration awards is as follows: If the arbitration award is silent as to its rationale, the "reviewing court first reviews the arbitration award to determine if there is a rational basis for the award. 'The onus is on the party requesting the vacatur to refute ... every rational basis upon which the arbitrator could have relied.'" *Brown v. Rauscher*, 994 F.2d 775, 779 (11th Cir.1993) (quoting *Robbins v. Day*, 954 F.2d 679, 684 (11th Cir.), *cert. denied, sub nom. Robbins v. PaineWebber, Inc.*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992)). If a proper basis for the award is found, then the party seeking to vacate the award is restricted to only the four statutory grounds. However, when an award is *not* silent as to its rationale, the reviewing court shall review any of the statutory or non-statutory grounds raised by the party seeking to vacate. *Id.*

DISCUSSION

The Arbitration Award at issue begins by naming the representation of the parties, then gives case information, and next provides a case summary. The case summary outlines the Plaintiffs' causes of action as described in the Statement of the Claim. The case summary also outlines the responses, counterclaims, and cross-claims presented to the Arbitration Panel. It then states the relief requested by each party. Next, it discusses other issues considered and decided by the Panel, such as claims against other parties that were dismissed for various reasons. Finally, the Panel presents its full and final resolution of the issues submitted for determination and its award. Paragraph four of the award section states a lump-sum amount for compensatory damages along with pre-judgment and post-judgment interest. Paragraph five states a lump-sum amount of punitive damages along with post-judgment*1345 interest. Paragraph six of the arbitration award's award section states, "The Panel finds that Respondents Cohen, Lee, Bekhor, and Island Securities violated Sections 517.211 and 517.301, Florida Statutes." It is this statement that brings the arbitration award into question.

[4] It is well established that an arbitration panel need not state any basis for its award. This Arbitration Panel, in its award, did not specify which facts it found to be true, or which facts led to its conclusion, nor did it state with any specificity upon which law or laws it relied in awarding the monetary damages. The paragraph in question does not conclusively state that the *only* violations found were violations of the Florida Statutes. There is a fine line between offering a basis for an award and merely stating a fact or law that was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

found. This award gives very little information to distinguish between the two. This arbitration panel had to have made many determinations and conclusions during the course of hearing this dispute. Out of the many determinations, this one determination was stated in the award, however, that does not allow this Court to automatically assume that this is the only conclusion drawn.

[5] Since this award was partially silent as to its rationale, this Court must follow Eleventh Circuit procedure to determine whether there was a rational basis for an award. The award states that "[t]he causes of action relate to fraudulent trading practices and day trading of approximately 18,000 buy/sell orders in approximately 5,121,000 securities." Based on the arbitration panel's finding for the Plaintiffs, this Court must take this fact as true. Therefore, there is a rational basis for the award. Since there is a rational basis for the award, according to procedure, the only grounds that may be examined are the four statutory grounds for vacatur. Of these four, the only two raised by Defendant Cohen are (1) exceeding the arbitrators' powers and (2) evident partiality.

*I. Statutory Grounds for Vacatur*

*A. Exceeding Arbitrators Powers*

[6][7] Defendants argue that the Arbitrators exceeded their powers by ruling on a claim that was not submitted to them. The law is clear, as Defendant, Cohen, states on page 7 of his Motion to Vacate the Arbitration Award, that "if an arbitration panel rules on issues not presented to it by the parties, it has exceeded its authority and the award must be vacated." *Dighello v. Busconi,* 673 F.Supp. 85, 87 (D.Conn.1987) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). However, the general *issue* submitted to the arbitration panel was securities fraud. While the specific law mentioned in the Award was not submitted to the arbitrators, the issue of securities fraud was submitted. Pursuant to § 11 of the Federal Arbitration Act (FAA), the grounds for modification occurs if the arbitrators decide *matters* not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. 9 U.S.C.S. § 11. Since the subject *matter* was submitted to them, § 11 does not apply here. Hence, there is no basis for modification of the

award. Therefore, it is the opinion of this Court that the Arbitrators did not exceed their powers.

*B. Evident partiality*

[8][9][10] The Defendant, Alan Steven Cohen, asserts evident partiality on the part of the arbitrators. In order to find that there was evident partiality, "The alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain and speculative." *1346*Lifecare International, Inc. v. CD Medical, Inc.,* 68 F.3d 429, 433 (11th Cir.1995). The Defendant has made no assertions, nor established any facts, that indicate improper motives on the part of the Arbitrators prior to their decision. "The mere appearance of bias or partiality is not enough to set aside an arbitration award." *Id.* This Court sees no basis for vacatur on grounds of evident partiality, as there are no direct or definite facts, or even suggestions, that the arbitrators acted inappropriately or had an alternative agenda.

*II. Non-Statutory Grounds for Vacatur*

While this Court has found that non-statutory grounds for vacatur should not be considered, this Court finds that if they were reviewed, as below, they would not alter the outcome of this case.

*A. Manifest Disregard of Law*

[11][12][13] Manifest disregard of the law requires that: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer,* 210 F.3d 666, 668-669 (6th Cir.2000). In the instant case, the applicable legal principle was clearly stated, however, there is no basis for this Court to say that the arbitrators refused to heed that principle. Again, this Court cannot assume that the arbitration panel took only the Florida Statutes into consideration. It is not necessary for an arbitration panel to invoke any statute by name; it is also not necessary to give complete reasoning for an arbitration panel's decision. In this case, the arbitration panel did not specify which facts it found to be true, nor did it specify, beyond doubt, which law or laws it found to be violated. Given this information, this Court cannot vacate the arbitration award for manifest disregard of the law.

*B. Arbitrary and Capricious*

[14][15] This Court may vacate an arbitration award that is arbitrary and capricious only if "a ground

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
(Cite as: 167 F.Supp.2d 1340)

for the arbitrator's decision cannot be inferred from the facts of the case." *Id.* at 434. (quoting *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir.1992)). Since Florida law and Federal securities law are so similar, this Court can infer from the written arbitration award that there are sufficient grounds for the decision. "Stating a cause of action under the Florida Securities Investors Protection Act or Florida common-law fraud is virtually identical to stating a claim under Rule 10b-5, except that scienter requirement under Florida law is satisfied by showing of mere negligence, where as Rule 10b-5 requires reckless disregard." *In re Sahlen & Associates, Inc. Securities Litigation*, S.D.Fla.1991, 773 F.Supp. 342. Also, regardless of the similarities or differences of Florida securities law and Federal securities law, the arbitration panel stated that "[t]he causes of action relate to fraudulent trading practices and day trading of approximately 18,000 buy/sell orders in approximately 5,121,000 securities." This gives grounds for the award. Since there are sufficient grounds for the award, the award will not be vacated since it is not arbitrary and capricious.

### C. Public Policy

[16] "[T]he Public policy exception is implicated when enforcement of the award compels one of the parties to take action which directly conflicts with public policy." See, e.g., *Delta Air Lines*, 861 F.2d at 671 (enforcement of award violated public policy because it required reinstatement of pilot who had piloted aircraft while drunk); *Iowa Elec. Light and Power Co. v. Local Union 204 of the Int'l Bhd. Of Elec. Workers*, 834 F.2d 1424, 1428 (8th Cir.1987) (enforcement of award violated public policy because it *1347 required reinstatement of nuclear power plant machinist who had deliberately pulled fuse on containment area door in violation of NRC rules). *Brown* at 782.

[17] Neither party, in the instant case, will be required to take any action, which directly conflicts with public policy. The damages to be paid by the Defendant are compensatory for the amount of money the Plaintiffs lost due to the fraudulent trading practices. The punitive damages awarded are discussed below.

Essentially, for this Court to vacate an arbitrator's decision, it must find that there is no basis for the Panel's decision. This Court finds that the Panel's award was not arbitrary and capricious, nor violative

of any public policy. The Panel need not state the reasons for its award. *Robbins* at 684. The decision was not so palpably faulty that no judge could have arrived at the same ruling. This Court can infer grounds for the Panel's award from the facts of the case. "Arbitration is not a perfect system of justice, nor is it designed to be." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 at 30-32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

### III. Punitive Damages

[18] Given that the mention of the Florida Statutes does not affect the final outcome of the arbitration award as noted above, punitive damages are not precluded from being awarded by either the federal securities law or New York law. "[T]he New York Court of Appeals has decided that in New York the power to award punitive damages is limited to judicial tribunals and may not be exercised by arbitrators..." *Mastrobuono v. Shearson Lehman Hutton, Inc., et al.*, 514 U.S. 52 at 55, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). However, the Supreme Court of the United States has ruled that the FAA was put in place in order to overcome states refusals to enforce agreements to arbitrate. "Arbitration ... is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Id.*

[19] Although Defendants Cohen, Lee and Bekhor did not file submissions to arbitration, however, did answer the claim, they are required to submit to arbitration and are bound by the determination of the Panel on all issues submitted. (Arbitration Award) Since there was no formal agreement and both Plaintiffs and Defendant Cohen requested punitive damages, it can be concluded that punitive damages were included in the "agreement" to arbitrate.

### IV. Attorney's Fees

[20][21] In the United States, absent special legislation or contract providing otherwise, the general "American Rule" is that litigants must pay their own attorney's fees. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). The Florida Supreme Court in *Insurance Company of North America v. Acousti Engineering Co. of Florida*, 579 So.2d 77 (Fla.1991), held that Section 682.11 precluded arbitrators from awarding attorney's fees, but not trial courts, provided there existed a contract or statute upon which the trial court could base the award. Under *Florida Statute §*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611
**(Cite as: 167 F.Supp.2d 1340)**

517.211(3)(b), (6), reasonable attorneys' fees shall be awarded unless the court finds that these fees would be unjust. In the instant case, the award is well in excess of $500,000.00. This Court finds that this award is sufficient and that an additional award of attorney's fees would be unjust.

This Court having considered all the arguments of the parties as set forth and alleged in the aforementioned documents *1348 is convinced that the Motion to Confirm the Award be granted. Accordingly it is

**ORDERED** that Defendant's Motion to Vacate the Arbitrator's Award (Dkt.15) be **DENIED**; and that Plaintiffs' Motion to Confirm the Award (Dkt.1) be **GRANTED**. The Clerk of Court is directed to enter judgment for the Plaintiffs, jointly and severally, in the amounts of: (1) compensatory damages of $113,316.00, plus pre-judgment interest in the amount of $33,600.00, and post-judgment interest accruing at the legal rate under Florida law in accordance with Section 10330(h) of the Code; (2) punitive damages of $400,000.00, plus post-judgment interest accruing at the legal rate under Florida law in accordance with Section 10330(h) of the Code; and (3) reimbursement of the claim filing fee in the amount of $300.00.

M.D.Fla.,2001.
Rosati v. Bekhor
167 F.Supp.2d 1340, 14 Fla. L. Weekly Fed. D 611

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)
(Cite as: 2008 WL 5336300 (N.D.Tex.))

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
Cary VANDENAVOND, an Individual, Petitioner/
Counter Respondent,
v.
I2 TECHNOLOGIES, INC., a Delaware Corpora-
tion, Respondent/Counter Claimant.

Civil Action No. 3:08-CV-1000-G.
Dec. 19, 2008.

West KeySummaryAlternative Dispute Resolu-
tion 25T ⟿316

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk316 k. Actions Exceeding Arbitrat-
or's Authority. Most Cited Cases
    An arbitrator did not exceed his authority by
basing an award on a provision of an employment
contract to which an employer and employee never
specifically referred during arbitration. There was
no indication the parties requested the arbitrator to
examine only other provisions of the contract and
thus, it was reasonable for the arbitrator to infer
from all materials submitted.

Arthur F. Selander, Quilling, Selander, Cummiskey
& Lownds, Dallas, TX, Allan S. Rubin, Rubin
Shulman, PLC, Southfield, MI, for Petitioner/
Counter Respondent.

Anne Marie Johnson, Haynes & Boone, Lori M.
Carr, Taber, Estes, Thorne & Carr, PLLC, Dallas,
TX, for Respondent/Counter Claimant.

### MEMORANDUM OPINION AND ORDER
A. JOE FISH, Senior District Judge.
    *1 Before the court is the motion of the re-

spondent, i2 Technologies, Inc. ("i2" or "the re-
spondent"), to vacate or, alternatively, modify an
arbitration award. For the reasons discussed below,
the motion to vacate is denied, and the counter-mo-
tion to confirm the award is granted.

### I. BACKGROUND
    The respondent, i2, is a Delaware corporation
that develops, licenses, and implements computer
software. Motion to Vacate or, Alternatively, Modi-
fy Arbitration Award ("Motion to Vacate or Modi-
fy") at 3. The petitioner, Cary VandenAvond
("VandenAvond" or "the petitioner"), joined i2 in
1997 as an account manager. *Id.* In July of 2005, i2
promoted VandenAvond to Vice President. *Id.*
VandenAvond is currently i2's Vice President of
Sales and Marketing of the Manufacturing and In-
dustry Sector. *Id.* at 4. The dispute between these
two parties developed in late 2005 to early 2006.
Petitioner Cary VandenAvond's Response to Re-
spondent i2 Technologies, Inc.'s Motion to Vacate
or, Alternatively, Modify Arbitration Award and
Claimant's Counter Motion to Confirm the Award
("Response") at 2-5. During this time,
VandenAvond performed services for i2 which he
argues entitled him to a sales commission pursuant
to the terms of his 2005 Account Manager Com-
pensation Plan ("the Compensation Plan"). *Id.* at
2-3. i2 argued that the terms of the Compensation
Plan did not allow VandenAvond to recover a com-
mission. *Id.* at 5. The parties took their dispute to
an arbitrator who awarded VandenAvond a
$1,000,000 commission. *Id.* at 8. i2 now seeks to
vacate the arbitration award. Motion to Vacate or
Modify at 3.

    A more detailed review of the facts giving rise
to the underlying dispute that led to arbitration is
useful. In 2002, i2 entered into an agreement with
EDS, in which i2 agreed to provide EDS, over time,
with $30 million worth of licenses and software.
Response at 2. The agreement gave EDS the right
to resell i2's software licenses to its customers. Mo-
tion to Vacate or Modify at 4. i2 recognized the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)
(Cite as: 2008 WL 5336300 (N.D.Tex.))

value of this contract as current income in 2000 and 2001. Response at 2. Later, i2 discovered that by recognizing the revenue early, it had violated generally accepted accounting principles. *Id.* As a result, i2 reclassified the money as deferred contract revenue. *Id.* Between 2002 and 2005, VandenAvond sold software to EDS in an effort to "burn down" the deferred revenue, *i.e.,* to convert the deferred revenue into current revenue. *Id.* at 3. By 2005, the deferred revenue remaining from i2's original contract with EDS was $23.2 million. *Id.* Throughout 2005, VandenAvond worked to "burn down" the remaining deferred revenue. *Id.* at 3-4. Overall, VandenAvond claims he was responsible for "burning down" approximately $23.3 million of the deferred revenue. *Id.* at 5. When he submitted his claim for a commission, management deliberated for over a month before telling VandenAvond that i2 would not pay him a commission. *Id.* On March 10, 2006, VandenAvond filed an arbitration demand, seeking a $2,732,275.00 sales commission. Motion to Vacate or Modify at 6.

*2 VandenAvond's demand for arbitration lists two claims: breach of contract and violation of the Michigan Sales Commission Act. Appendix to Respondent i2 Technologies, Inc's Motion to Vacate or, Alternatively, Modify Arbitration Award and Brief in Support ("Appendix to Motion to Vacate or Modify") at APP00010-11. The contract VandenAvond refers to is the Compensation Plan. VandenAvond refers to several sections of the Compensation Plan by name, and quotes relevant excerpts. *Id.* at APP0004-09. The breach of contract claim is not expressly predicated, however, on the violation of any one section of the contract.

i2 nonetheless contends that VandenAvond's breach of contract claim revolved around § 1. 15.1 of the Rules of Engagement of the Compensation Plan("the ROE"). Motion to Vacate or Modify at 6-8. According to i2, VandenAvond only argued he was entitled to the commission under § 1.15.1. *Id.* i2 asserts that VandenAvond never argued the commission qualified as a "flex-deal" under § 1.16.1 of

the ROE. *Id.* at 7. Moreover, i2 argues, the arbitrator assured both parties that he was "committed to providing the parties with an opportunity to respond to any new issues raised because he disliked it when arbitrators ruled on grounds not raised and that no one had an opportunity to address." *Id.* at 8. As further proof that the arbitrator did not intend to examine whether the commission qualified as a flex-deal, i2 asserts that the arbitrator submitted a list of questions to the parties, none of which asked about, mentioned, or alluded to flex-deals. *Id.* at 9. For all these reasons, i2 was confident that the arbitrator would not inquire into whether the commission qualified as a flex-deal. As a result, i2 never contended that the commission did *not* qualify as a flex-deal.

On May 28, 2008, the parties received the arbitrator's award. *Id.* at 9. The arbitrator rejected VandenAvond's claim for $2,732,275.00 and instead awarded him $1,000,000 on the grounds that the commission constituted a flex-deal under § 1.16.1 of the ROE. *Id.* According to that section, a flex-deal is a special type of deal in which "the license addendum is priced in consideration for software to be selected by the customer from a fixed list of products in a finite period of time." *Id.* at 9-10. A flex-deal requires a signed license agreement, as well as special approval by i2's Chief Executive Officer, before the deal is bid or proposed in any way. *Id.* at 10. The arbitrator found that all these requirements were met. i2 now contends that such a finding exceeded the arbitrator's authority because the parties did not ask the arbitrator to consider whether the commission qualified as a flex-deal.

## II. *ANALYSIS*
### A. *Standard for Vacating or Modifying Arbitration Awards*

Congress has provided by statute the only grounds for vacating or modifying an arbitration award. According to 9 U.S.C. § 10(a), a district court may vacate an arbitration award in any of the following cases:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)
(Cite as: 2008 WL 5336300 (N.D.Tex.))

*3 (1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Additionally, 9 U.S.C. § 11 provides that a district court may modify or correct an arbitration award in the following cases:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

In deciding whether one of the above situations meriting vacatur or modification of an arbitration award exists, the court must remember that judicial review of an arbitration award is "exceedingly deferential." *American Laser Vision, P.A. v. Laser Vision Institute, L.L.C.,* 487 F.3d 255, 258 (5th Cir.2007) (citing *Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 352 (5th Cir.2004)). Vacatur is available "only on very narrow grounds," and federal courts must "defer to the arbitrator's decision when possible." See *id.* (citing *Brabham v. A.G. Edwards & Sons Inc. .,* 376 F.3d 377, 380 (5th Cir.2004)). In fact, the Supreme Court recently reemphasized the

narrowness of the available grounds for vacatur. See *Hall Street Associates, L.L.C. v. Mattel, Inc.,* --- U.S. ----, 128 S.Ct. 1396, 1400, 170 L.Ed.2d 254 (2008) (holding that the statutory bases for vacatur under the FAA are exclusive). Even before *Hall Street,* the Fifth Circuit had fleshed out the very narrow standard of review, stating that an award must be upheld as long as it "is rationally inferable from the letter or purpose of the underlying agreement." See *American Laser Vision,* 487 F.3d at 258 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 164-65 (5th Cir.1998)). Even "the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award." See *id.* (citing *Kergosien,* 390 F.3d at 356).

Additionally, courts are not permitted to weigh the merits of the grievance or consider whether there is equity in a particular claim. *Kergosien,* 390 F.3d at 358. An arbitrator's factual findings "are unreviewable." *Apache Bohai Corporation LDC v. Texaco China BV,* 480 F.3d 397, 407 (5th Cir.2007) . Courts must accept arbitrators' factual findings as true. *Id.* at 409. The Supreme Court has stated that "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Association v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). In short, courts are "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Kergosien,* 390 F.3d at 357. "Even 'serious error' on the arbitrator's part does not justify overturning his decision, where, ... he is construing a contract and acting within the scope of his authority." *Kergosien,* 390 F.3d at 358 (quoting *Major League Baseball,* 532 U.S. at 510). All the law requires is that the award is "in some logical way ... derived from the wording or purpose of the contract." *Kergosien,* 390 F.3d at 353.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)
(Cite as: 2008 WL 5336300 (N.D.Tex.))

**B. *The Arbitrator did not Exceed his Authority***

*\*4 According to i2, the parties never asked the arbitrator to consider § 1.16.1 of the ROE, the section of the contract on which he based his award. i2 contends that throughout the discovery process and the arbitration, VandenAvond referenced § 1. 15.1 of the ROE repeatedly, but never claimed that the commission qualified as a "flex deal" under § 1.16.1. In support of this assertion, i2 points to VandenAvond's deposition, during which he stated, "You asked me where in the contract I would base my position on ... and I pointed to [§ 1.15.1 ] ... [t]hat's my position." Motion to Vacate or Modify at 7. Statements such as these, in conjunction with the arbitrator's never mentioning § 1.16.1, leads i2 to argue that the arbitrator had no authority to rule based on § 1.16.1. According to i2, this court must vacate the ruling under 9 U.S.C. § 10(a)(4) and 9 U.S.C. § 11(b).

No court has yet addressed the question of whether an arbitrator can base his decision in a breach of contract case on a section of the contract that was not specifically referenced in the parties' briefs or during the arbitration. There are, however, helpful analogous cases. In *Rosati v. Bekhor,* 167 F.Supp.2d 1340 (M.D.Fla.2001), the plaintiff alleged, *inter alia,* that the defendants had violated Rule 10b5 promulgated pursuant to the Securities Exchange Act. *Rosati,* 167 F.Supp.2d at 1343. The arbitrators held, however, that the defendants had violated Florida Statutes Sections 517.211 and 517.301, statutes that were not raised during the arbitration. *Id.* at 1345. The defendants sought to vacate the award, arguing that the arbitrators exceeded their powers by ruling on a claim not submitted to them. *Id.* The court refused to vacate, reasoning that "the general *issue* submitted to the arbitration panel was securities fraud." *Id.* (emphasis in original). Although "the specific law mentioned in the Award was not submitted to the arbitrators, the issue of securities fraud was submitted." *Id.* The court stated that under 9 U.S.C. § 11, modification is proper only if "the arbitrators decide *matters* not submitted to them." *Id.* (emphasis

in original). In other words, since the broad "matter" of securities fraud was submitted, the arbitrators were free to hold the defendants liable for the violation of any law prohibiting securities fraud. Here, the parties submitted a contract to the arbitrator and asked him to determine whether i2 had breached it. That was the "matter" or "issue" before the arbitrator. Although the parties never argued over the specific provision on which the arbitrator based his ruling, that provision was part of the matter or issue-the contract-put before the arbitrator for consideration.

The language of *Kergosien* supports this broad interpretation of the word "matter." There, the Fifth Circuit held that, when considering whether an arbitrator has exceeded his authority in ruling upon a matter not submitted to him,[FN1] the only question the court is permitted to ask is "whether the award, however arrived at, is rationally inferable from the contract." [FN2] *Kergosien,* 390 F.3d at 353-54 (quoting *Anderman/Smith Operating Company v. Tennessee Gas Pipeline Company,* 918 F.2d 1215, 1219 n. 3 (5th Cir.1990)). This language from *Kergosian* suggests that the court should uphold the arbitration award, "however arrived at," so long as the arbitrator could rationally infer from his source of authority-here, the contract and the submissions and argument of the parties-that the award was proper. So long as the arbitrator could rationally have made such an inference, the award is said to "draw its essence" from the arbitrator's authority. *Id.* at 353. If the award can pass this "essence test," it must be upheld. *Id.*

> FN1. In *Kergosien,* the employer moved to vacate the arbitration award on grounds that, *inter alia,* "the arbitrator wrongly took up the breach of fiduciary claim" and "exceeded his powers by reviewing the merits of the [ERISA] Plan and its amendments." 390 F.3d at 352. The district court agreed with the employer but was reversed by the Court of Appeals.

> FN2. The "contract" this language refers to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)
(Cite as: 2008 WL 5336300 (N.D.Tex.))

is the agreement between the parties to submit the dispute to arbitration. Typically, courts would look to such an agreement in order to determine whether the arbitrator had exceeded his authority. Here, however, the parties do not argue that the arbitration clause in the Compensation Plan did not grant the arbitrator authority to decide whether the contract had been breached. Instead, i2 merely argues that the arbitrator relied on language within that contract that the parties never referenced. In other words, the source of authority i2 contends the arbitrator exceeded is the submissions and argument of the parties. Thus, instead of asking whether the arbitrator made an award rationally inferable from the arbitration clause, i2 insists that this court must ask whether the arbitrator could have rationally inferred, from the submissions and argument of the parties, that an award based on § 1.16.1 is permissible.

**\*5** The arbitrator here could have rationally inferred that he had the power to rule based upon § 1. 16.1 of the ROE. There is no indication that the parties requested that the arbitrator only examine § 1. 15.1 of the ROE. Although § 1. 16.1 was only referenced four times throughout the arbitration. Appendix to Motion to Vacate or Modify at APP00448, APP00535-36, APP00562, APP00640. More importantly, each time § 1. 15.1 *was* referenced, that reference was made by the attorneys for i2. Vandenavond only referred to § 1. 15.1 in response to direct questions about it. Thus, if there was any emphasis on § 1. 15.1 during the arbitration, it occurred only as the result of i2's efforts. VandenAvond never restricted the dispute to the interpretation of § 1.15.1. The court cannot vacate the arbitration award merely because i2 focused on one particular section of the contract. It was reasonable, and certainly rational, for the arbitrator to infer from all the materials submitted, which included the entire ROE, that he could rest his decision on a different section than the one i2 emphasized.

The court in *Rosati* confirmed an arbitration award based on an entirely different statute than the one the claimants alleged had been violated. *Rosati,* 167 F.Supp.2d at 1346. This court neither accepts nor rejects that exact holding; to do so is unnecessary here. Such a finding is in keeping, however, with the wide latitude given to arbitrators under Fifth Circuit precedent. The court finds *Rosati* persuasive and holds that the arbitrator did not exceed his authority by basing his award on a section of the contract to which the parties never specifically referred.

### III. CONCLUSION

For the reasons discussed above, the respondent's motion to vacate the arbitration award is **DENIED,** and petitioner's counter-motion to confirm the award is **GRANTED.** Within ten days of this date, counsel for the petitioner shall submit a proposed form of judgment in conformity with the memorandum opinion and order.

**SO ORDERED.**

N.D.Tex.,2008.
Vandenavond v. i2 Technologies, Inc.
Not Reported in F.Supp.2d, 2008 WL 5336300 (N.D.Tex.)

**END OF DOCUMENT**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.