UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD.

                             Petitioner,

           -against-

AMERICAN UNIVERSITY OF ANTIGUA --
COLLEGE OF MEDICINE AND MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR, LLC

                          Respondents.
-------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF CASE)

Honorable Lewis A. Kaplan
United States District Judge


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION/MOTION TO CONFIRM ARBITRATION AWARD AND IN OPPOSITION TO CROSS-MOTION TO DISMISS OR VACATE OR MODIFY ARBITRATION AWARD


Dated: Poughkeepsie, New York
       October 16, 2012

Respectfully Submitted:

**LEWIS & GREER, P. C.**
*Attorney for Petitioner*
510 Haight Avenue, P. O. Box 2990
Poughkeepsie, New York  12603
Telephone: 845-454-1200


OF COUNSEL:
Veronica A. McMillan, Esq.
J. Scott Greer, Esq.
Alana Bartley, Esq.

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................3

    I.      The Parties ....................................................................................3

    II.    The Arbitration Proceeding.................................................................5

ARGUMENT....................................................................................................9

    I.      THE PETITION DOES NOT VIOLATE THE DOCTRINE OF FORUM
          NON CONVENIENS ...............................................................9

          A.    The Petitioner's Choice of Forum is Entitled to a
               High Level of Deference..........................................................10

               1.    There is a Significant Connection to the United States .................11

               2.    Leeward is Not Seeking a Tactical Advantage ...............................13

          B.    Antigua is Not an Appropriate Alternative Forum ....................................15

          C.    Private and Public Interests Favor Maintaining the
               Current Forum....................................................................16

    II.    LEEWARD HAS ADEQUATELY STATED A CLAIM AGAINST
          MANIPAL EDUCATION AMERICAS, LLC F/K/A GCLR, LLC ....................18

    III.    THE AWARD IS NOT SUBJECT TO VACATUR OR MODIFICATION
          AND IS FULLY ENFORCEABLE UNDER THE CONVENTION
          AND THE FAA ....................................................................21

CONCLUSION....................................................................................................26

## TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Allen v. West Point-Pepperell, Inc.,* 945 F.2d 40 (2d Cir. 1991) .................................................. 18

*Apex Plumbing Supply, Inc. v. U.S. Supply Co.,* 142 F.3d 188 (4th Cir. 1998)............................. 25

*Commercial Risk Reinsurance Company Limited v. Security Insurance Company
of Hartford,* 526 F. Supp.2d 424 (S.D.N.Y. 2007) ........................................... 14, 21, 22

*Conley v. Gibson,* 355 U.S. 41 (1957) ...................................................................................18

*Constellation Energy Commodities Group, Inc. v. Transfield ER Cape LTD.,*
801 F.Supp.2d 211 (S.D.N.Y. 2011)................................................................................ 21

*Figueiredo Ferraz E. Engenharia De Projeto LTDA v. Republic of Peru,*
665 F.3d 384 (2d Cir. 2011)........................................................................................ 15, 17

*Florasynth, Inc. v. Pickholz,* 750 F.2d 171 (2d Cir. 1984) ......................................... 22

*Folco Inv., Ltd. v. Moonriver Dev., Ltd.,* 486 F.Supp.2d 261 (S.D.N.Y. 2007) ........................... 20

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) ................................................. 9, 16, 17

*Iragorri v. United Techs. Corp.,* 274 F.3d 65 (2d Cir. 2001) ................................. 9, 10, 14, 15, 16

*Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit,* 507 U.S. 163 (1993) ...................................................................... 18

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC,*
268 F.3d 58 (2d Cir. 2001)..........................................................................................20

*Matter of the Arbitration Between Monegasque De Reassurances S.A.M. v.
Nak Naftogaz of Ukraine,* 311 F.3d 488 (2d Cir. 2002) ................................. 2, 11, 17, 19

*Norex Petroleum Ltd. v. Access Industries, Inc.,* 416 F.3d 146 (2d Cir. 2005) ........................... 15

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,*
32 F.2d 299 (2d Cir. 1963)........................................................................................ 20

*Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003) ............................. 15

*Rain CII Carbon, LLC v. ConocoPhillips Co.,* 674 F.3d 469 (5th Cir. 2012)........................ 24, 25

*Rosati v. Bekhor,* 167 F.Supp.2d 1340 (M.D. Fla. 2001) ............................................................ 23

*Sarofim v. Trust Co. of the West*, 440 F.3d 213 (5th Cir. 2006) ................................................. 3, 24

*Sonera Holding B.V. v. Cukurova Holding A.*, 2012 WL 3925853 (S.D.N.Y. 2012) ...... 12, 16, 17

*Thomson CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ........................ 2, 11, 19

*Vandenavond v. 12 Technologies, Inc.* 2008 WL 5336300 (N.D. Texas 2008) ........................... 23

*Williams v. Recovery Ltd. Partnership*, 542 F.3d 43 (2d Cir. 2008) ........................................... 20

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997)............................................................................................................ 9, 22

*Zeiler v. Deitsch,*500 F.3d 157 (2d Cir. 2007) .......................................................................... 21

## STATUTES                                                                          PAGE(S)

9 U.S.C. § 1 *et seq.*............................................................................................................. 1, 2, 13

9 U.S.C. § 10 ........................................................................................................................14, 22

9 U.S.C. § 201 *et seq.* ....................................................................................................1, 2, 9, 13

9 U.S.C. § 207 ............................................................................................................................21

21 U.S.T. 2517 ...........................................................................................................................9

## OTHER AUTHORITIES                                                                  PAGE(S)

Antigua Arbitration Act .............................................................................................................13

http://www.uncitral/en.uncitral_texts/arbitration/NYConvention_status.html...............................9

Restatement (Second) of Contracts (1981) ................................................................................. 24

## PRELIMINARY STATEMENT

This proceeding arises out of a contract between the Leeward Construction Company, Ltd. ("Petitioner" or "Leeward") and American University of Antigua -- College of Medicine ("Respondent" or "AUA") for the construction of a medical school in St. Johns, Antigua. Pursuant to the terms of the parties' contract (Exhibit A to the Petition), the Petitioner initiated arbitration proceedings against the AUA in February, 2011, which resulted in a Final Award, in favor of the Petitioner, on June 22, 2012. (Exhibit B to the Petition)  The Final Award was modified on August 8, 2012 to correct some minor clerical errors. (Exhibit D to the Petition)

On August 16, 2012, Leeward commenced the instant proceeding for an order confirming the Final Arbitration Award, certified June 22, 2012 and modified on August 8, 2012, and for the entry of a money judgment against the Respondents in the amounts stated in the Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Award, 9 U.S.C. §201 *et seq.*  On September 25, 2012, the Respondents cross-moved pursuant to the *Forum Non Conveniens* Doctrine and Fed. R. Civ. P. 12(b)(6) to dismiss Leeward's Petition or in the alternative, to vacate or modify the award pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

Dismissal of the instant petition on *forum non conveniens* grounds is inappropriate as the Respondents have substantial contacts with the United States and the State of New York, in particular.  Their contacts, *inter alia*, entitles Petitioner to a high level of deference in its selection of this forum.  Respondents have suggested Antigua as an appropriate alternative forum.  Yet, they have not provided any documentary evidence that the AUA is actually an Antiguan corporation.  Moreover, Antigua is less of an appropriate alternative given the

1

presence of ongoing business activities and assets in this forum.  Finally, private and public interest factors favor maintaining this proceeding in this Court.

The Respondents also claim that the Petition should be dismissed because the Petitioner has failed to state a claim against Respondent Manipal Education Americas, LLC f/k/a GCLR, LLC ("Manipal") because it was not a party to the subject contract or arbitration.  In so arguing, the Respondents have ignored precedent, including *Thomson CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995), in which the Second Circuit Court of Appeals has "recognized certain theories under which a non-signatory may be bound by an arbitration agreement and thus subject to the jurisdiction of the court in proceedings to compel arbitration or confirm an arbitration award," including agency and veil piercing/alter ego. *Matter of the Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 495 (2d Cir. 2002).

Finally, the Respondents claim that the arbitration award is subject to modification or vacatur under the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Award, 9 U.S.C. §201 *et seq.* and the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* because the Tribunal 1) exceeded its authority in awarding damages for bad faith and lost profit and overhead because Respondents claim Leeward never demanded these damages during the arbitration; 2) failed to provide a reasoned award; and 3) committed a computational error in the arbitration award.  The Tribunal did not exceed its authority in awarding Leeward damages for bad faith and lost profit and overhead as the general issue of breach of contract was before the Tribunal and, therefore, the Tribunal was authorized to consider every breach of contract supported by the evidence even if the fact, law or legal tenet may not have been specifically argued by the parties.  Second, the Tribunal has provided a reasoned award, as it issued an

award that is "something short of findings of fact and conclusions of law but more than a simple result." *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 215, n. 1 (5th Cir. 2006).  Third, the Tribunal did not include a computational error in its award.  The Respondents claims in this regard are based on conjecture and not upon mathematical errors appearing on the face of the award.  Thus, the arbitration award is not subject to modification or vacatur and should be enforced by this Court.

## STATEMENT OF FACTS

### I.     The Parties

Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.  The AUA is owned and operated by Manipal, a limited liability company organized and existing under the laws of the State of New York, with office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York. (*See* Declaration of Veronica A. McMillan, Esq., dated October 16, 2012 (the "McMillan Declaration") submitted herewith, ¶5; a copy of Manipal's information as maintained by the New York State Secretary of State is annexed to the McMillan Declaration as Exhibit "C".)  According to AUA's website, Manipal acts as AUA's agent in the United States and New York State, in particular.  Leonard Sclafani, Esq., Manipal's Senior Vice President and General Counsel avers that Manipal "provides back office and administrative services, such as accounting, finance and registarial services for AUA" from its offices in New York. (*See* Declaration of Leonard Sclafani, dated September 25, 2012 (the "Sclafani Declaration") submitted with the Respondents' Cross-Motion herein, ¶5)

3

The AUA and Manipal have an exceptionally close relationship.  For example, the first page of the AUA's contract with Leeward indicated its address as c/o Greater Caribbean Learning Center, New York, NY 10005. (A copy of the contract between Leeward and the AUA is annexed to the Petition as Exhibit "A".)[1]  The AUA's website also demonstrates an extensive connection between the two entities.   Screen shots from the AUA's website indicate that the AUA's Admissions, Bursar, and Financial Aid offices as well as its contact information are all based in New York.  (A copy of these printouts is annexed to the McMillan Declaration as Exhibit "A".) The employees have email addresses that all end in "auamed.org" which is the AUA's internet address. (Exhibit A)  Further, online applications can be submitted through the website and are paid in US dollars. (Exhibit A)

Throughout the Project, Leeward was paid via wire transfer from New York bank accounts which, upon information and belief, were held by AUA and/or Manipal. (*See* Declaration of Andy Green, dated October 12, 2012 (the "Green Declaration"), ¶5; Exhibit A to Green Declaration) During the arbitration hearings, Manipal (formerly known as GCLR, LLC) disbursed funds on AUA's behalf for fees from its bank accounts in New York. (A copy of a check Lewis & Greer, P.C. received from GCLR, LLC as reimbursement for the AUA's half of the cost of the hearing rooms in Puerto Rico is annexed to the McMillan Declaration as Exhibit "B".)  GCLR, LLC's Chief Financial Officer, Prabhu Marudheri entered a witness statement and testified via Skype from New York on behalf of the AUA.  In Mr. Marudheri's witness statement and during his testimony, he acknowledged that GCLR, LLC owns AUA. (A copy of Mr. Marudheri's witness statement is annexed to the McMillan Declaration as Exhibit "D"; ¶2)

---

[1] Manipal was formerly known as the GCLR, LLC.  A few days after the arbitration concluded, GCLR, LLC changed its name to Manipal. (Exhibit C to the McMillan Declaration)

## II.     The Arbitration Proceeding

On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed a

contract for the construction of a medical school in St. Johns, Antigua (the "Contract"). (Green

Declaration, ¶3)  Section 4.6 of the General Conditions to the Contract contained an arbitration

agreement that reads as follows:

> § 4.6 ARBITRATION
>
> § 4.6.1  Any Claim arising out of or related to the Contract, except
> Claims relating to aesthetic effect and except those waived as
> provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision
> by the Architect or 30 days after submission of the Claim to the
> Architect, be subject to arbitration.
>
> § 4.6.2  Claims shall be decided by arbitration which, unless the
> parties mutually agree otherwise, shall be in accordance with the
> Construction Industry Arbitration Rules of the American Arbitration
> Association currently in effect.  The demand for arbitration shall be
> filed in writing with the other party to the Contract and with the
> American Arbitration Association, and a copy shall be filed with the
> Architect. Location of any Arbitration will be Antigua.

(A copy of the Contract containing the arbitration agreement is annexed to the Petition as Exhibit

"A.")

On February 3, 2011, Leeward commenced an arbitration proceeding with the American

Arbitration Association International Center for Dispute Resolution ("AAA") to arbitrate claims

arising out of or related to the Contract.  Pursuant to the Construction Industry Rules of American

Arbitration Association, the AAA appointed a panel of three arbitrators to hear and determine the

claims (the "Tribunal").

On or about October 14, 2011, Leeward served and filed an Amended Demand for

Arbitration requesting an award for breach of contract in the amount of US $2,518,931.97/EC

$6,800,572.28; interest on late payments as provided in the Contract from the date the payments

were due until the date the payments were made at the legal rate of interest in Antigua as determined by the Arbitrators; and legal fees and expenses, including the cost and expense of arbitration, as determined by the Arbitrators in accordance with the laws of Antigua. (A copy of Leeward's Amended Demand for Arbitration is annexed to the Sclafani Declaration as Exhibit C.)

Leeward's breach of contract claim alleged that the AUA repeatedly breached the contract by failing to issue change orders/change directives for additional contract work; failing to pay for additional work that the AUA authorized and directed Leeward to perform; failing to pay Leeward's payment applications in accordance with the terms of the Contract; failing to certify the Project as substantially complete; failing to issue a final certificate of payment; failing to make final payment to Leeward in accordance with the terms of the Contract; failing to pay the mobilization fee as provided in the Contract; failing to authorize overtime as provided in the Contract; failing to coordinate the work of other contractors as required in the Contract; and failing to properly administer the Contract as provided in the Contract documents. (Sclafani Declaration, Exhibit C)

On or about November 30, 2011, the AUA filed a reply to the Amended Demand that included counterclaims for liquidated delay damages in the amount of US $117,000.00 and in the alternative, actual delay damages in the amount of US $371,955.31/EC $1,004,199.00. (The AUA withdrew its counterclaim for actual delay damages on April 11, 2012.)

On December 11, 2011, the Tribunal held a hearing during which the parties stipulated to conduct the evidentiary hearings in San Juan, Puerto Rico, notwithstanding the venue provision in the arbitration agreement requiring that the arbitration take place in Antigua.  The arbitration hearings were heard at the Courtyard Marriott in Isla Verde, Puerto Rico from March 5, 2012 through March 9, 2012.  The parties submitted lengthy post-hearing findings of fact and

conclusions of law. (A copy of the parties' Proposed Findings of Fact and Conclusions of Law, as well as the Respondent's Rebuttal Proposed Findings of Fact and Conclusions of Law submissions, is annexed to the Sclafani Declaration as Exhibits D, E, and F; A copy of the Petitioner's Reply Proposed Findings of Fact and Conclusions of Law is annexed to the McMillan Declaration as Exhibit "E".) The Arbitrators declared the hearings closed and the case submitted for resolution on May 22, 2012.

By Final Award certified June 22, 2012 and modified August 8, 2012, the Arbitrators directed the AUA to pay damages to Leeward in the amount of $976,421.37, plus interest at the rate of seven percent (7%) per annum as provided in the Award. (A copy of the Final Arbitration Award certified on June 22, 2012, is annexed to the Petition as Exhibit B; a copy of the Resolution dated August 9, 2012 modifying the Final Award is annexed to the Petition as Exhibit C; and a copy of the August 8, 2012 modified Final Award as modified on August 8, 2012 is annexed to the Petition as Exhibit D)

On July 10, 2012, the AUA moved the Tribunal to modify the arbitration award claiming that the award contained "technical and computational errors." (A copy of the AUA's motion to modify the arbitration award before the Tribunal is annexed to the Sclafani Declaration as Exhibit G.) As here, the AUA in its motion to modify claimed that the award contained errors in that the Tribunal improperly: 1) awarded Leeward too much money in interest on payments due under the Contract; 2) failed to provide a reasoned award; and 3) exceeded its authority in awarding damages for bad faith and lost profit and overhead because Respondents claimed Leeward never demanded these damages during the arbitration. (Sclafani Declaration, Exhibit G)  On July 19, 2012, Leeward filed its opposition to the motion to modify contesting each of the grounds the AUA claimed the award was subject to modification. (A copy of Leeward's July 19, 2012

7

opposition to the AUA's motion to modify is annexed to the McMillan Declaration as Exhibit "F".)  On August 8, 2012, the Tribunal issued a modified award correcting some minor clerical errors, but maintaining the damages awards as initially provided in the June 22, 2012 award. (Exhibits B and D to the Petition)

On August 16, 2012, the Petitioner filed its Petition herein.  On September 25, 2012, the Respondents filed their cross-motion to dismiss on the basis of, *inter alia*, Fed. R. Civ. P. 12(b)(6) for Petitioner's alleged failure to state a claim against Manipal.  Pursuant to Fed. R. Civ. P. 15(a), the Petitioner is within the allowed time to amend the Petition as of right.  While the Petitioner's allegations in the Petition were sufficient to constitute a cause of action against Manipal as AUA's owner, agent and/or alter ego, for enforcement of the arbitration award, the Petitioner has out of an abundance of caution, filed an Amended Petition amending its allegations against Manipal. (McMillan Declaration, ¶20; Exhibit G to the McMillan Declaration)

## ARGUMENT

### I.   THE PETITION DOES NOT VIOLATE THE DOCTRINE OF FORUM NON CONVENIENS

In opposition to Leeward's Petition to confirm the arbitration award, the Respondents have cross-moved to dismiss arguing that this Court is a *forum non conveniens*. *See* Respondents' Memorandum of Law in Support of Their Cross Motion to Dismiss and in Opposition to the Petition and Motion to Confirm Arbitration Award (the "Respondents MOL"), pp. 10-19.   The Respondents are incorrect.

Leeward seeks confirmation of the arbitration award and entry of judgment in accordance therewith pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, dated June 10, 1958 (the "Convention"), 21 U.S.T. 2517, as incorporated in to the Federal Arbitration Act, 9 U.S.C. §§201-208 (the "FAA").[2]   While the Petition is entirely proper under the auspices of the Convention and the FAA, Leeward acknowledges that the Court is within its discretion to consider whether it should "resist imposition upon its jurisdiction" under the principle of *forum non conveniens*. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). Applying the three step analysis that the Second Circuit has enunciated in cases such as *Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001), demonstrates that this Court is not a *forum non conveniens* and the Respondents' motion to dismiss on this basis should be denied.   The three step analysis requires the Court to consider: (1) the level of deference accorded to the plaintiff's choice of forum; (2) whether an alternative forum exists; and (3) the balance of private and public factors implicated in the litigation. *See Iragorri*, 274 F.3d 70-76.

---

[2] The Convention, also known as the "New York Convention" and the "1958 Convention," was enacted on June 10, 1958 and ratified by the United States on December 29, 1970. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15-18 n.1. (2d Cir. 1997).   The Commonwealth of Antigua and Barbuda ratified the Convention on February 2, 1989. *See* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/ NYConvention_status.html.

## A.  The Petitioner's Choice of Forum is Entitled to a High Level of Deference

The first step in deciding a motion to dismiss for *forum non conveniens* is to determine the

degree of deference accorded to the plaintiff's choice of forum.  *See Id*. at 70-71.  The degree of

deference

> moves on a sliding scale depending on several relevant
> considerations… the greater the plaintiff's or the lawsuit's bona
> fide connection to the United States and to the forum of choice and
> the more it appears that considerations of convenience favor the
> conduct of the lawsuit in the United States, the more difficult it
> will be for the defendant to gain dismissal for *forum non
> conveniens*.

*Id*. at 71-72.  Factors militating against a dismissal include: the convenience of the plaintiff's

residence in relation to the chosen forum; the availability of witnesses or evidence in the forum;

the defendant's amenability to the forum; the availability of appropriate legal assistance; and other

factors associated with convenience and expense.  *See Id*. at 72.  The *forum non conveniens*

doctrine guards against forum-shopping where a plaintiff selects the forum for: a tactical

advantage resulting from local laws that favor the plaintiff; the generosity of juries in the subject

forum or the United States in general; the plaintiff's popularity or the defendant's unpopularity in

the region; and the defendant's inconvenience or expense. *Id*. at 72.  Emphasizing that a reviewing

court must consider the totality of the circumstances, the *Iragorri* court stated:

> It is not a correct understanding of the rule to accord deference
> only when the suit is brought in the plaintiff's home district.
> Rather, the court must consider a plaintiff's likely motivations in
> light of all the relevant indications….We thus understand the
> Supreme Court's teachings on the deference due to plaintiff's
> forum choice as instructing that we give greater deference to a
> plaintiff's forum choice to the extent that it was motivated by
> legitimate reasons, … and diminishing deference to a plaintiff's

forum choice to the extent that it was motivated by tactical
advantage.

*Id.* at 73.

### 1. There is a Significant Connection to the United States

Despite the Respondents' contention otherwise, the instant dispute bears a significant
connection to the United States and New York, in particular. *See* Respondents' MOL, pp. 11-13.
First, while Leeward is not a New York corporation, Manipal is a New York limited liability
corporation. (McMillan Declaration, Exhibit C)   The Respondents have acknowledged that
Manipal is AUA's parent corporation. (AUA Rule 7.1 Statement)   While Manipal is not a
signatory to the Contract, the Second Circuit has "recognized certain theories under which a non-
signatory may be bound by an arbitration agreement and thus subject to the jurisdiction of the
court in proceedings to compel arbitration or confirm an arbitration award," including agency and
veil piercing/alter ego. *Matter of the Arbitration Between Monegasque De Reassurances S.A.M.,*
311 F.3d at 495 (citing *Thomson CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.
1995)).   As Petitioner makes clear in Point II herein, the agency and veil piercing/alter ago
theories work to bind Manipal to the arbitration agreement. *See* Point II, *infra.*   Thus, enforcing
the arbitration award in Manipal's home forum represents a significant contact to the United
States.

AUA also operates in New York.  Throughout the course of the Project, AUA routinely
paid Leeward via funds wired transferred from a New York bank account. (Green Declaration,
¶¶5-6, Exhibit A to Green Declaration)  According to its website, all of its operations offices are in
New York, including the Bursar, Admissions and Financial Aid offices.  The employees of these
offices have New York telephone numbers and email addresses with "auamed.org" designations,

which is the AUA's internet address.  The AUA's website contacts page refers people to a New York address and a New York telephone number.  Further, the online applications are paid in US dollars. (McMillan Declaration, ¶6; Exhibit A to McMillan Declaration)  During the arbitration hearings, the parties agreed to split the cost of the hearing room in Puerto Rico.  AUA's reimbursement payment for its half of the cost was paid to Petitioner's counsel, Lewis & Greer, P.C., in a check from GCLR, LLC (Manipal's predecessor), drawn on a New York bank account. (McMillan Declaration, ¶7; Exhibit B to McMillan Declaration)

What should be clear when considering these factors is the ultimate reason Leeward venued its Petition to confirm the arbitration award in this Court – the assets are in New York. Given the significance of its contacts with New York, the AUA's presence in Antigua is likely nothing more than a shell.  Thus, confirming the award in Antigua is an expensive and unnecessary step because Leeward will have to come to New York to enforce the award.  Why? New York is where the money is.  As this Court held in *Sonera Holding B.V. v. Cukurova Holding A.*, 2012 WL 3925853 (SDNY 2012), a plaintiff's forum selection made on the basis of its ability to seek to enforce the award against assets that may be found in the United States is entitled to deference.  "This is an entirely legitimate purpose.  The New York Convention and the FAA sanction the use of this forum for that very purpose." *Id*. at *8.

Since this is an application to confirm the arbitration award, the availability of witnesses and documents, another determinative factor, is irrelevant. *See Id.* at *9.  Was this a relevant consideration, however, the Court should note that during the arbitration hearings, two of AUA's witnesses traveled from India to testify in Puerto Rico.  The third witness, GCLR, LLC's Chief Financial Officer who testified as to the AUA's counterclaim damages, testified in the hearings via

Skype from his home office New York.  None of AUA's witnesses in the proceeding reside or had any connection to Antigua.

In addition to the Respondents' amenability to the jurisdiction, their counsel is also amendable to this forum.   The Respondents counsel is not located in Antigua.   Rather, Respondents' attorneys are located right here in New York and New Jersey.  In fact, Respondents' counsel traveled from New Jersey to Puerto Rico for the arbitration hearings.  The New York office of the same firm is handling the instant motion practice.

### 2.  Leeward is Not Seeking a Tactical Advantage

Respondents contend that Leeward has brought its Petition to confirm the arbitration award to this Court because it is forum-shopping to gain a tactical advantage. *See* Respondents' MOL, pp. 14-16.   The Respondents are incorrect.   There is no tactical advantage to applying the Convention and the FAA to the enforcement of the arbitration award instead of the Antiguan Arbitration Act.  In fact, in comparing the two, the Convention and the FAA are broader in terms of the grounds for refusing to recognize or enforce an award. *See* 9 U.S.C. §1 et seq; 9 U.S.C. §201 et seq.; Antigua Arbitration Act, Chapter 33. (A copy of the Antigua Arbitration Act is annexed to the Declaration of Katherine Lieb, Esq., dated September 25, 2012 as Exhibit A.)

*One Call Construction Company Limited v. Grenada Solid Waste Management Authority*, Court of Appeal of Grenada, September 8, 2010, which the Respondents cite has little if any applicability to the instant proceeding.  *One Call* appears to have been a local arbitration which only required consideration of the Arbitration Act of Grenada.   The Respondents have not provided the Arbitration Act of Grenada to confirm that it is "identical" to the Arbitration Act of Antigua.  Further, claiming that the errors the Respondents accuse the arbitrators of having made amount to 'misconduct' under the Arbitration Act of Antigua based on *One Call* is a stretch, at

best.   The decision in *One Call* dealt with a lack of evidence available to the arbitrators to consider, as a result of a recording mistake.   Here, the Respondents claim that the arbitration award would not be enforced under the Arbitration Act of Antigua because the arbitrators reached a conclusion they don't agree with based on the evidence provided – the two are starkly different. The Respondents have not provided any evidence to indicate that the enforcement of the arbitration award would be any different under the Arbitration Act of Antigua.

Moreover, as set forth more fully in Point III herein, the arbitrators have not engaged in any misconduct and the arbitration award does not contain errors subject to modification or vacatur under the Convention or the FAA.   The combined standard of enforcement under the Convention and the FAA is higher than that required for enforcement under the Arbitration Act of Antigua or the Convention alone. *See Commercial Risk Reinsurance Company Limited v. Security Insurance Company of Hartford*, 526 F.Supp.2d 424, 427 (SDNY 2007) (the Convention applies to arbitration proceedings held in the United States involving at least one party that is not a United States citizen); 9 U.S.C. §10.   Thus, Leeward does not gain a tactical advantage by venuing the Petition in the instant forum.

The generosity of New York juries and the relative popularity of the parties, two other determinative factors, are also not issues in this forum selection determination.   Since this is a petition to enforce an arbitration award, a jury will not be required to proceed.   Further since no trial is required, the relative popularity of the parties is also not a factor.   Finally, as already provided, the Respondents will not incur additional inconvenience or expense in having Leeward's Petition heard in this court because their counsel is located right here.   Considering all of these factors on the *Iragorri* sliding scale makes clear that Leeward's forum selection is entitled to a high degree of deference.

## B.  Antigua is Not an Appropriate Alternative Forum

The second step in a *forum non conveniens* analysis is to consider whether an alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. *See Iragorri*, 274 F.3d at 73.  The Second Circuit has held that "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  The Respondents have not definitively demonstrated that Antigua is actually an alternative forum under this standard.  While Mr. Sclafani's Declaration indicates that the AUA is an Antiguan corporation, the Respondents have not provided any documents to verify the AUA's corporate status in Antigua. (Sclafani Declaration, ¶4)  Moreover, the Second Circuit has provided that

> Where adequacy of an alternative forum is assessed in the context of a suit to obtain a judgment and ultimately execution on a defendant's assets, the adequacy of the alternate forum depends on whether there are some assets of the defendant in the alternate forum...

*Figueiredo Ferraz E Engenharia De Projeto LTDA. v. Republic of Peru*, 665 F.3d 384, 391 (2d Cir. 2011) (citing *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 158 (2d Cir. 2005)).  Given that the AUA is conducting much of its business in New York, including its banking, its Antiguan status, assuming it has one, may be nothing more than a shell.  Bringing a confirmation proceeding in Antigua would amount to a waste of time if once the arbitration award was reduced to a judgment, Leeward then had to bring an additional enforcement proceeding in New York to actually collect.  This is exactly why this Court has recognized that a forum selection made on the basis of a plaintiff's ability to enforce the award against assets that may be found in

15

the United States is entirely proper. *See Sonera Holding B.V.*, 2012 WL 3925853 at *8.   Thus, Antigua is not an appropriate alternative forum.

### C.   Private and Public Interests Favor Maintaining the Current Forum

Assuming there is an alternative forum, the third step in a *forum non conveniens* analysis is for the Court to balance the private and public interests implicated in the choice of forum. *See Iragorri*, 274 F.3d at 73-74.   The private factors are considered first and these include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 73-74 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).   Applying the private interest factors to this instant proceeding does not favor dismissal.   "While the location of witnesses and evidence would be relevant to the conduct of a trial on the merits, it is not germane to a confirmation proceeding." *Sonera Holding B.V.*, 2012 WL 3925853 at *9.   The parties will not need to engage in further litigation.   The arguments for and against confirmation will be on paper without discovery or the presentation of evidence in open court.   Thus, the private factors do not favor dismissal.

Next, the public interest factors are applied.

> These factors include the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law.

*Matter of Arbitration Between Monegasque De Reassurances S.A.M.*, 311 F.3d at 500 (citing *Gulf Oil Corp.*, 330 U.S. at 508-509).   Applying the public interest factors also does not favor dismissal.  This is one petition to confirm an arbitration award.  It will not have any impact on issues of court congestion.  Further, there is no need for a jury trial, thus, hearing this Petition in New York will not be an imposition on the community.  Confirming the arbitration award will only require the Court to apply the Convention and/or the FAA (to a lesser degree), it will not require the application of Antiguan law.  Even if it did, this Court is perfectly capable of applying Antiguan law to the arbitration award.

Perhaps the most important public interest factor that favors keeping this Petition in this forum is the exact reason why Leeward came here in the first place – the Respondents have their financial assets here.

> The United States undoubtedly has a strong interest in satisfying its treaty obligations by permitting confirmation and enforcement of foreign arbitral awards 'in the vast majority of cases.'  And New York has a particular interest in convincing the international business community of the benefits of selecting New York law and a New York forum in order to ensure fairness and predictability in their commercial relationships.

*Sonera Holding, B.V.*, 2012 WL 3925853 at *10 (quoting *Figueiredo*, 556 F.3d at 394 (Lynch, J., dissenting)).  Leeward and other international companies like it need to be assured that their litigations will be heard by New York courts, especially in instances like this one where the Respondents are maintaining their financial assets here.

In sum, the Respondents have failed to demonstrate that they are entitled to a dismissal of the instant Petition on the basis of the *forum non conveniens* doctrine.  Accordingly, their cross-motion to dimiss should be denied.

## II.   LEEWARD HAS ADEQUATELY STATED A CLAIM AGAINST MANIPAL

Leeward has sufficiently stated a claim against Manipal.  The Federal Rules of Civil Procedure only require a "short and plain statement of the claim." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).  In determining the adequacy of a pleading under Fed. R. Civ. P. 12(b)(6), consideration is given to the facts stated in the complaint, documents attached to the complaint and to matters of which judicial notice may be taken. *See Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  Dismissal is only appropriate under Fed. R. Civ. P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In its Petition, Leeward alleges and the Respondents have confirmed that Manipal owns the AUA, as well as acts as its agent in the United States. (*See* Petition, ¶5; AUA Rule 7.1 Statement; Marudheri Witness Statement ¶2, Exhibit D to McMillan Declaration)  The Second Circuit has recognized certain theories under which a non-signatory to an arbitration agreement may be bound by the agreement and subject to the court's jurisdiction in a proceeding to confirm an arbitration award.

> Those theories arise out of common law principles of contract and agency law.  Accordingly, we have recognized five theories for bonding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.

*Matter of the Arbitration Between Monegasque De Reassurances S.A.M.*, 311 F.3d at 495 (quoting *Thomson CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). As such, Manipal can be held liable for payment of the arbitration award.

In *Thompson,* the Second Circuit held that "traditional principles of agency law may bind a non-signatory to an arbitration agreement." *Id.* at 776. In *Thompson*, the subject agreement had been entered into long before the parent's purchase of the subsidiary and, as such, the Second Circuit found that the parent could not be bound to the arbitration agreement on the basis of agency. *See Id.* at 777. The instant case is markedly different. Mr. Sclafani avers that Manipal has owned AUA since December, 2007. (Sclafani Declaration, ¶5) Thus, Manipal already owned AUA at the time AUA entered into the Contract with Leeward and can be bound by the arbitration agreement. Further, the Respondents have openly admitted that Manipal is AUA's agent in the United States and that it provides "back office and administrative services, such as accounting, finance and registarial services…" (Sclafani Declaration, ¶5)

With regard to veil piercing/alter ego, the Second Circuit has identified several relevant factors to be considering, including:

- disregard of corporate formalities;

- inadequate capitalization, intermingling of funds;

- overlap in ownership, officers, directors and personnel;

- common office space, address and telephone numbers of corporate entities;

- the degree of discretion shown by the allegedly dominated corporation;

- whether the dealings between the entities are at arm's length;

- whether the corporations are treated as independent profit centers;

- payment or guarantee of the corporation's debts by the dominating entity; and

- intermingling of property between the entities.

See *MAG Protfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *see also, Folco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 271-272 (SDNY 2007)  This is not an exhaustive list and there is no minimum number of factors that must be satisfied.  Rather, the guiding principle is whether piercing the corporate veil "would achieve an equitable result." *Williams v. Recovery Ltd. Partnership*, 542 F.3d 43, 53 (2d Cir. 2008).

The Petitioner has demonstrated herein that many of these factors point to piercing AUA's corporate veil and holding Manipal liable as its alter ego.  Namely, the entities have disregarded their corporate formalities and intermingled funds through the Project and the arbitration hearings when Manipal wired funds in payment of AUA's obligations from New York bank accounts. (Green Declaration, ¶¶5-6; Exhibit A to Green Declaration; McMillan Declaration, ¶7; Exhibit B to McMillan Declaration)  In addition there is an overlap in personnel as well as common office space, address and telephone numbers for Manipal and AUA in that Manipal's offices in New York are used to run AUA's operation. (McMillan Declaration, ¶6; Exhibit A to McMillan Declaration)

In arguing against this claim, the Respondents cite to *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 32 F.2d 299, (2d Cir. 1963).  However, *Orion Shipping* was a fundamentally different case from the one at hand.  In *Orion Shipping*, the arbitrator in the underlying arbitration decided to hold the parent corporation in that case liable under the arbitration agreement even though the parent corporation was not a party to the arbitration.  Here, Leeward seeks to hold Manipal, AUA's owner and agent liable for the payment of the arbitration award rendered against AUA.  The Tribunal did not make a decision against Manipal.  Rather, Leeward is seeking the enforcement order and attendant judgment from this Court.  Assuming

*arguendo*, that *Orion* may be applicable here, this Court has held that a claim for piercing the corporate veil within a confirmation hearing may be construed as a separate action and the action can proceed against the relevant parties. *See Constellation Energy Commodities Group, Inc. v. Transfield ER Cape Ltd.*, 801 F.Supp.2d 211, 222 (SDNY 2011).

In addition, Leeward has filed an Amended Petition as a matter of right, pursuant to Fed. R. Civ. P. 15(a), which further describes the agent and/or alter ego relationship between the AUA and Manipal. (McMillan Declaration, ¶20; Exhibit G to the McMillan Declaration)  As a result of the foregoing, Leeward has adequately stated a cause of action against Manipal.

### III.   THE AWARD IS NOT SUBJECT TO VACATUR OR MODIFICATION AND IS FULLY ENFORCEABLE UNDER THE CONVENTION

Under the Convention, which applies to international arbitrations, arbitrations between citizens of signatory states must be confirmed except when a court finds one of the grounds for refusal of recognition or enforcement specified in the Convention. *See* 9 U.S.C. §207; *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007); *Commercial Risk Reinsurance Company Limited. v. Security Insurance Company of Hartford*, 526 F.Supp. 2d 424, 427 (SDNY 2007).  Although the arbitration at issue occurred within the jurisdiction of the United States, the Convention governs confirmation of the arbitration award because Leeward is incorporated under the laws of Antigua; Leeward's principal office and place of business is located in Antigua; the underlying dispute concerns the construction of a medical school in Antigua; and the contract between Leeward and the AUA for the construction of the medical school, specifically provides that Antiguan Law shall apply to the interpretation of the Contract. *See Zeiler,* 500 F3d at 164 (even though the arbitration took place in New York it is international arbitration for the purposes of the FAA and subject to the Convention given the fact that the parties chose a foreign law to govern the arbitration and the

commercial transactions issued in the arbitration had a clear international character); *see also,* *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d at 19 (2d Cir. 1997) (the Convention applies to a domestic arbitration between two non-domestic parties and a United States corporation with respect to the performance of a contract in the Middle East); *Commercial,* 526 F.Supp 2d at 427 (the Convention applies to arbitration proceedings held in the United States involving at least one party that is not a United States citizen).

The confirmation of an arbitration award pursuant to the Convention and the FAA is a summary proceeding that merely converts a final arbitration award into an enforceable judgment of the Court. *See Yusuf*, 126 F.3d at 23 (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).  The primary goal of arbitration is to resolve disputes efficiently without long and expensive litigation, and in furtherance of that goal, review of arbitration awards is extremely limited and the showing required to avoid summary confirmation is extremely high.  *Id.*  The Court must summarily confirm an arbitration award governed by the Convention unless the party opposing confirmation meets its heavy burden of proving one of the seven defenses for vacating the award under Article V(1) of the Convention. *See Zieler* 500 F.3d at 164; *Yusuf* 126 F.3d at 19.[3]  In addition, when an international arbitration governed by the Convention takes place within the United States, the court may also vacate the arbitration award upon any of the grounds set forth in Section 10 of the FAA for vacating a domestic arbitration. *See Zieler*, 500 F.3d at 164 (citing *Yusuf*, 126 F.3d at 21-23); 9 U.S.C. §10.  The Respondents have failed to articulate any reason

---

[3] Under Article V of the Convention, the grounds for vacating an arbitration award are: (a) incapacity of a party to the Arbitration Agreement; (b) failure to provide proper notice of the appointment of the arbitrator or of the arbitration proceeding; (c) the award exceeds the scope of the arbitration agreement; (d) the composition of the arbitral authority or procedure was not in accordance with the arbitration agreement; or (e) "the award has not yet become binding on the parties, or has been satisfied or suspended by a competent authority of the country in which, or under the law of which, that award was made."

Article V(2) of the Convention further provides that a court may refuse to enforce an arbitration award if the subject matter of the dispute is not capable of resolution by arbitration or if recognition or enforcement of the award would be contrary to public policy. *See Yusuf*, 126 F.3d at 19.

under either the Convention or the FAA for vacating or modifying the arbitration award. The Court should confirm the arbitration award in all respects.

In its opposition to the instant Petition, the Respondents allege that the arbitration award should be vacated because it "contains several major defects." Respondents' MOL, pp. 22. First, the Respondents spend several pages arguing that the Tribunal improperly awarded Petitioner EC $232,670.13 in damages under the "bad faith doctrine" because they claim it is a tort claim and Leeward never asked to be awarded damages on the basis of this doctrine. The Respondents also argue that the Tribunal improperly awarded Leeward EC $802,399.25 in lost profit and overhead for omitted work because Respondents claim Leeward never demanded these damages until after the conclusion of the hearings. The Respondents claim the Tribunal exceeded its authority under the Convention and the FAA in making these awards. The Respondents are incorrect.

Federal courts enforcing arbitration awards under the Convention and the FAA have held that an arbitrator does not exceed his/her authority where he/she decides an issue submitted for arbitration even when the award is made on the basis of a fact, law or legal tenet that may not have been specifically argued. An arbitration panel only exceeds its authority when it reaches conclusions on issues that the parties never submitted to arbitration at least in general. *See, e.g., Rosati v. Bekhor*, 167 F.Supp.2d 1340, 1345 (M.D. Fla. 2001) (applying the FAA, court upheld award in favor of the claimant based upon Florida securities law statute even though claimant raised the issue of securities fraud, in general, without a specific reference to the Florida statute); *Vandenavond v. 12 Technologies, Inc.*, 2008 WL 5336300 (N.D. Texas 2008) (applying FAA, court upheld arbitration award for breach of employment contract even though the award was based upon the breach of a contract provision that neither party specifically addressed during arbitration).

Here, the general issue before the Tribunal was whether the AUA breached the contract. The Tribunal was, therefore, authorized to consider every breach of contract theory supported by the evidence, including whether the AUA breached the contract by acting in bad faith[4] and whether Leeward was entitled to damages for that bad faith, as well as overhead and profit for work deleted, omitted or modified and unpaid through change orders.  Thus, the Tribunal did not exceed its authority and its award for bad faith damages should be enforced.

The Respondents also claim that the award is not a reasoned in that the Tribunal did not provide an explanation of its decision to award Leeward damages for bad faith, lost profit and overhead on omitted work and unpaid change orders.  As support for its argument, the Respondents cite *Redfern and Hunter on International Arbitration* (5th ed.).  Although the AAA ICDR has administered this arbitration, the Respondents are well aware that the arbitration is not governed by the International Arbitration Rules.  Rather, the parties agreed in Section 4.6.2 of the General Conditions to the Contract to arbitrate in accordance with "the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect." Exhibit A to the Petition)  The Respondents' citation to a treatise on international arbitration to define a reasoned award in an arbitration governed by the AAA Construction Industry Arbitration Rules is irrelevant, improper and violates the terms of the arbitration agreement between the parties.

Further, federal courts have held that where there is no agreement between the parties as to what the award shall contain (as in the present case), the contents of a reasoned award is within the discretion of the arbitrators and the award will be deemed a reasoned award if it is "something short of findings of fact and conclusions of law but more than a simple result." *Sarofim*, 440 F.3d at 215, n. 1; *see also, Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469 (5th Cir 2012)

---

[4] Every contract carries with it a duty that the parties exercise good faith. *See Restatement (Second) of Contracts*, §205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.")

(applying FAA, court found that arbitrators had rendered a sufficiently "reasoned award" when the arbitration award thoroughly described contentions asserted by the parties and then summarily concluded that the evidence presented either supported or did not support each contention). The Tribunal has more than complied with the requirements for a reasoned award and the arbitration award should be enforced.

Finally, the Respondents claim that the arbitration award contains a computational error in its award to Petitioner of interest on late payments. The Respondents' claims, however, are based upon conjecture and not upon mathematical errors appearing on the fact of the award. *See Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998) (applying FAA, court denied modification of award because alleged miscalculation was not evident from the face of the award). The Respondents have not demonstrated that the Tribunal's award was inappropriate or that it does not reflect exactly what the Tribunal intended to award. Rather, the Tribunal has made an award with which the AUA disagrees. Moreover, the Tribunal is not required to provide an explanation of how it calculated the amount of the damages. The Tribunal has met its obligations for a reasoned award by stating the issue, finding for Leeward (or the AUA) on the issue, and stating the damages associated therewith. *See Rain CII Carbon, LLC*, 674 F.3d at 474 (court sustained eight page award as "reasoned" where the "arbitrator laid out the facts, described the contentions of the parties, and decided which of the two parties should prevail"). The Respondents are not entitled to anything more and the arbitration award should be confirmed in its entirety.

## CONCLUSION

For the reasons set forth herein, Petitioner, Leeward Construction Company, Ltd. respectfully requests that this Court deny the Respondents' cross-motion and opposition herein and confirm the arbitration award in its favor and against the Respondent, American University of Antigua -- College of Medicine and to enter judgment against the Respondents in US $976,421.37/EC $2,636,126.82 which includes interest as provided in the Award through August 14, 2012.

Dated: October 16, 2012
      Poughkeepsie, New York

                    Veronica A. McMillan (VM 1107)
                    **LEWIS & GREER, P.C.**
                    *Attorney for Petitioner,*
                    *Leeward Construction Company, Ltd.*
                    510 Haight Avenue, Suite 202
                    Poughkeepsie, New York 12603
                    Telephone: (845) 454-1200

To:    Michael B. Goldsmith, Esq.
        Katherine M. Lieb, Esq.
        Sills, Cummis & Gross, P.C.
        *Attorney for Respondents,*
        *American University of Antigua -- College of Medicine*
        *and Manipal Education Americas, LLC f/k/a GCLR, LLC,*
        30 Rockefeller Center
        New York, New York 10112
        Telephone: (212) 643-7000