UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

        Petitioner,

    v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

        Respondents.

------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF Case)

Honorable Lewis A. Kaplan
United States District Judge

# RESPONDENTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS MOTION TO DISMISS

SILLS CUMMIS & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 643-7000

*Attorneys for Respondents
American University in Antigua –
College of Medicine and Manipal Education
Americas, LLC f/k/a GCLR LLC*

Of Counsel and On the Brief:
    Michael B. Goldsmith
    Katherine M. Lieb

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    THERE IS NO MOTION PENDING TO CONFIRM THE AMENDED PETITION ................................................................................................................. 1

    II.    LEEWARD HAS FAILED TO ESTABLISH THAT VENUE IS PROPER IN NEW YORK ...................................................................................................... 2

        A.    No Basis Exists for Holding MEA Liable on a Veil Piercing or Agency Theory .............................................................................................. 2

        B.    AUA Has Permanent and Substantial Assets and Contacts in Antigua ........................................................................................................ 3

        C.    Leeward Cannot Confirm the Arbitration Award as to MEA Pursuant to this Summary Proceeding ...................................................... 5

    III.    LEEWARD'S AMENDED PETITION FAILS TO STATE A CLAIM AGAINST MEA ............................................................................................................ 6

    IV.    IN THE ALTERNATIVE, THE AWARD SHOULD BE VACATED OR MODIFIED ......................................................................................................... 6

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 6

*In Re Arbitration Between Promotora de Navegacion, S.A. v. Sea Containers, Ltd.*,
    131 F. Supp. 2d 412 (S.D.N.Y. 2000) ................................................................................. 5

*In re Cephalonian Shipping Co. S/A*,
    1979 AMC 1451 (S.D.N.Y. 1979) ....................................................................................... 8

*Kransco v. Am. Empire Surplus Lines Ins. Co.*,
    23 Cal. 4th 390 (Cal. 2000) .................................................................................................. 8

*One Call Constr. Co. v. Grenada Solid Waste Mgmt. Auth.*,
    Court of Appeal of Grenada, decided September 8, 2010 .................................................. 4

*PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*,
    400 Fed. App'x 654 (3d Cir. 2010) ..................................................................................... 8

*Rosati v. Bekhor*,
    167 F. Supp. 2d 1340 (M.D. Fla. 2001) ....................................................................... 7, 8, 9

*Sarofim v. Trust Co.*,
    440 F.3d 213 (5th Cir. 2006) ............................................................................................. 10

*VandenAvond v. I2 Technologies, Inc.*,
    2008 WL 5336300 (N.D. Tex. 2008) ............................................................................ 7, 8, 9

*W. Employers Ins. Co. v. Jefferies & Co.*,
    958 F.2d 258 (9th Cir. 1992) ............................................................................................. 10

## PRELIMINARY STATEMENT

In its opposition papers, Leeward[1] continues to attempt to convince the Court that venue is proper in New York, and in the United States generally, because of the presence of MEA in New York (which is, in fact, the only basis for venue cited in the petition). In an effort to do so, Leeward suggests that MEA should be bound by the Award on some unsupported theory of agency or corporate veil piercing. Leeward does this by disingenuously attempting to connect MEA to the underlying dispute, while at the same time, misleading the Court as to AUA's alleged connection to New York. Leeward also attempts to justify venue in New York by suggesting that the reason it chose to venue the matter in New York is that AUA's "assets" are in New York. Leeward's arguments are based upon unsupported conjecture, and its discussion of the relationship between AUA and MEA entirely misconstrues the substance of the relationship in an effort to sustain venue in a country that has no contacts with the underlying dispute.

## FACTUAL BACKGROUND

While the majority of the pertinent facts are set forth in Declaration of Leonard Sclafani, dated September 25, 2012, additional facts pertinent to this reply are set forth in the Reply Declaration of Leonard Sclafani, dated November 15, 2012 ("*Sclafani Reply Decl.*").

## ARGUMENT

### I.   THERE IS NO MOTION PENDING TO CONFIRM THE AMENDED PETITION

Simultaneous with the filing of its opposition, Leeward filed an Amended Petition adding additional allegations regarding its alter ego and agency claims, yet made no attempt to amend or withdraw its pending motion to confirm. As the motion only sought to have the original petition confirmed, no motion is properly before the Court to confirm the Amended Petition.

---

[1] Unless otherwise indicated, Respondents will utilize the terms as previously defined in their initial brief.

Consequently, Leeward's present motion to confirm should be denied as moot, but, to the extent the Court considers the motion on substantive grounds, it should also be denied on the merits.[2]

## II. LEEWARD HAS FAILED TO ESTABLISH THAT VENUE IS PROPER IN NEW YORK

In an effort to invent some sort of connection between the underlying arbitration and New York, Leeward has filled its opposition to dismissal on forum non conveniens grounds with factual errors and wholly misleading and inaccurate statements. While these statements are too numerous to address in this brief reply, three areas warrant particular attention as set forth below.

### A. No Basis Exists for Holding MEA Liable on a Veil Piercing or Agency Theory

Leeward is attempting to establish a connection to New York by arguing that MEA, a New York limited liability company, should be bound to the Award. Apparently ignorant to the realities of the relationship between AUA and MEA, Leeward claims in a conclusory fashion that, because certain services are performed in New York by MEA for AUA as set forth on AUA's website, this is somehow a basis to either pierce the corporate veil and/or issue a finding that AUA is acting as the agent for the real party in interest, MEA. Leeward is wrong.

In reality, both AUA and MEA are separately capitalized with separate sets of books, and all corporate and limited liability company formalities are always observed. (*Sclafani Reply Decl*., ¶ 16.) MEA does act as AUA's agent for certain administrative functions related to the operation of the medical school. (*Id*., ¶ 6.) In January 2006, AUA entered into a written

---

[2] Counsel for Respondents advised Leeward's counsel that they believed that both the motion to confirm and cross-motion to dismiss should be voluntarily withdrawn without prejudice as moot. However, Leeward's counsel maintained that it did not need a new motion in order for the Court to confirm the Amended Petition and that its motion was properly before the Court. To the extent that the Court believes that it can confirm the arbitration award despite the lack of request to confirm the Amended Petition, Respondents request that the pending cross-motion be applied to the Amended Petition and that the present reply papers be deemed a response to the Amended Petition. However, should the Court dismiss the pending motions without prejudice as moot, Respondents respectfully request that their time to respond to the Amended Petition be extended to the same deadline as its opposition to any re-filed motion to confirm by Leeward.

2

agreement with MEA pursuant to which MEA committed to perform certain back-office administrative services consisting of among other things, admissions, financial aid and accounting.  (*Id.*, ¶ 14.)  These services have always been provided in accordance with the written agreement and pursuant to a transfer pricing study prepared by Ernst & Young to ensure that any agreement that was entered into between AUA and MEA was at arms-length and for fair consideration.  (*Id.*, ¶ 15.)   Leeward offers no evidence to the contrary.

As to its agency theory, Leeward is apparently arguing that, for purposes of the Construction Agreement, AUA served as MEA's agent, so as to bind MEA to the Award's terms.  Yet, Leeward's sole support for such a claim is, in fact, the opposite, as Leeward points to purported evidence of MEA serving as AUA's agent for certain administrative services.  (Opp. Br. at 18-19.)  It is therefore not even clear who Leeward believes is the agent versus the principal.  Even assuming that MEA is the purported principal, Leeward points to nothing in the Construction Agreement to indicate that MEA could be bound to this agreement as a principal, nor evidence that AUA was acting as MEA's agent when it entered the Construction Agreement.  As Leeward has failed to set forth any evidence that would bind MEA to the Award, its veil piercing and agency claims are merely an attempt to establish a connection to New York.

> B.      **AUA Has Permanent and Substantial Assets and Contacts in Antigua**

Leeward frivolously suggests that AUA operates in New York and that its "presence in Antigua is likely nothing more than a shell." (Leeward's Memorandum of Law in Further Support of Petition/Motion to Confirm Arbitration Award and in Opposition to the Cross-Motion ("Opp. Br.") at 12.)  This claim is also wrong.  AUA was incorporated under the law of Antigua and Barbuda,[3] and has its business offices and place of business at its seventeen acre campus in

---

[3] Leeward is apparently questioning whether AUA is an Antiguan corporation in light of the fact that Respondents did not attach any "documents to verify the AUA's corporate status in Antigua." (Opp. Br. at 15.)  To eliminate any

3

Antigua.  (*Sclafani Reply Decl.*, ¶¶ 4 & 5, Ex. A.)  AUA's only office is located in Antigua.  (*Id.*, ¶ 5.)  Pursuant to an Agreement and Charter with the Ministry of Health, Sports and Youth Affairs of Antigua and Barbuda, AUA operates an institution of higher education that confers graduate degrees of medicine.  (*Id.*)

AUA has significant assets in Antigua, including an approximately $35 million campus facility in Antigua, along with the maintenance of at least five bank accounts in Antigua in order to operate the school.  (*Id.*, ¶¶ 8 & 12.)  In addition to AUA's main campus in Antigua, it owns and/or leases approximately twenty different parcels of student and faculty housing in Antigua.  (*Id.*, ¶ 10.)  In light of these assets, if Leeward, a citizen of Antigua, could successfully confirm the Award, the assets in Antigua would be sufficient to satisfy any judgment against AUA.

AUA currently employs approximately 115 administrative staff and 66 faculty members in Antigua.  (*Id.*, ¶ 11.)  All of these individuals reside on the island of Antigua.  (*Id.*)  The 66 faculty members teach in Antigua 1,248 AUA students who come from 24 different countries.  (*Id.*)  Not only is AUA one of the largest employers in Antigua, but the ripple effect of its students and staff has a profound economic effect upon the economy of Antigua.  (*Id.*, ¶ 12.)

Contrary to Leeward's unsupported assertions, AUA does not "operate" in New York or in the United States.  As noted above, some back-office administration functions for AUA are performed in New York through an arms-length agreement with MEA, yet these functions are all

---

doubt, we are herein submitting a copy of AUA's Articles of Incorporation, which clearly shows that AUA was incorporated under the laws of Antigua and Barbuda.  (*Sclafani Reply Decl.*, Ex. A.)

Leeward also criticizes AUA for not providing the Arbitration Act of Grenada to confirm that it is the same as the Arbitration Act of Antigua.  (Opp. Br. at 13.)  Yet, the relevant portion of the Arbitration Act of Granada is quoted directly in *One Call*, which states that Section 19(2) of the Arbitration Act of Grenada provides that "[w]here an arbitrator or umpire has misconducted himself or the proceedings, and where an arbitration or award has been improperly procured, the Court may set aside the award."  *One Call Constr. Co. v. Grenada Solid Waste Mgmt. Auth.*, at [10], Court of Appeal of Grenada, decided September 8, 2010 (*Lieb Decl.*, Ex. B.)  The same grounds for setting aside an award are set forth in paragraph 24(2) of the Arbitration Act of Antigua.  (*Id.*, Ex. A.)  The Arbitration Act of Antigua is even more broad than that of Granada, as it allows the setting aside of the arbitration award where an arbitrator "has misconducted himself or the proceedings," *or* "where an arbitration or award has been improperly procured."  (*Id.*)

4

performed by MEA, and not AUA. (*Id.*, ¶ 15.) AUA does not own or lease premises anywhere other than in Antigua, nor is it authorized to do business anywhere in the United States. (*Id.*, ¶¶ 5 & 10.) AUA also has no employees in the United States. (*Id.*, ¶ 11.) Thus, Leeward's suggestion that AUA's presence in Antigua is merely a shell is wholly false.

### C. Leeward Cannot Confirm the Arbitration Award as to MEA Pursuant to this Summary Proceeding

Leeward is unable to confirm the arbitration Award against MEA in this summary proceeding. Instead, because the questions of alter ego and agency liability are factually intensive inquiries, the confirmation of the Award sought in the Amended Petition cannot be made herein. *See In Re Arbitration Between Promotora de Navegacion, S.A. v. Sea Containers, Ltd.*, 131 F. Supp. 2d 412, 422 (S.D.N.Y. 2000) (noting that "questions of alter ego are generally inappropriate for resolution on a motion to confirm"). Consequently, Leeward's suggestion that this case will not burden this Court is incorrect. Leeward must proceed to a plenary action in order to determine the issue of whether MEA can be bound to the terms of the Award, thereby increasing this Court's congestion and potentially burdening the jury pool of this district.

Rather than tolerate such an imposition on a Court and country that have nothing to do with the underlying arbitration dispute, the Court should dismiss the case on *forum non conveniens* grounds. AUA, and not MEA, entered into the Agreement, and AUA, and not MEA, operates a medical school out of a $35M facility in Antigua. AUA is not only an Antiguan corporation not authorized to do business in the United States, but Leeward is as well. Indeed, the parties each recognized this when they negotiated the Construction Agreement and inserted a clause that required that any disputes be resolved in accordance with the laws of Antigua and Barbuda. Given the citizenship of the parties, the nature of the dispute, the location of AUA's campus and operating facility, and the application of Antigua law to the dispute, Leeward's

5

attempt at forum shopping which has been occasioned by Leeward's designation of New York venue solely based upon the residence of its parent, MEA, should be rejected.

### III. LEEWARD'S AMENDED PETITION FAILS TO STATE A CLAIM AGAINST MEA

Recognizing the total absence of any allegations that would establish MEA's liability in the initial petition, Leeward has made a half-hearted and feeble attempt to remedy such obvious deficiencies by filing an Amended Petition, which adds a single additional paragraph filled with conclusory and unsupported statements. This paragraph suggests that MEA, as AUA's owner, can be held liable as "an agent and/or alter-ego" theory, yet fails to state any facts that, taken as true, would establish such liability. (*See* Declaration of Veronica McMillan, Ex. G, ¶ 17.)

Leeward even fails to cite the proper standard on a motion to dismiss, citing pre-*Twombly/Iqbal* language to suggest that it need only a short, simple statement regarding its claim to survive dismissal. (Opp. Br. at 18.) The standard on a post-*Twombly/Iqbal* motion to dismiss is clear: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). As Leeward's Amended Petition fails to contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," it must be dismissed as to MEA. *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

### IV. IN THE ALTERNATIVE, THE AWARD SHOULD BE VACATED OR MODIFIED

Tellingly, Leeward has not disputed any of the facts surrounding the deficiencies of the arbitration. As a result, Leeward does not dispute that the arbitrators: (i) awarded Leeward EC $232,670.13 under the "bad faith doctrine," even though Leeward never asked to be awarded additional damages under this doctrine or any other theory; and (ii) awarded Leeward a total of

6

EC $802,399.25 in lost profits and overhead that included claims that were raised for the first time in the post-trial briefs and for which AUA had no opportunity to defend. Leeward has also failed to cite any additional reasoning in the Award regarding the bad faith damages or Change Order Work such that those portions of the Award would satisfy the standard for a reasoned award, nor has Leeward made any attempt to argue in support of the obvious mathematical error.

Leeward simply argues, despite such gross and glaring defects in the Award, that it still satisfies the requirements for confirmation under the FAA. First, Leeward misleadingly suggests that "[a]n arbitration panel only exceeds its authority when it reaches conclusions on issues that the parties never submitted to arbitration at least in general," citing to *Rosati v. Bekhor*, 167 F. Supp. 2d 1340 (M.D. Fla. 2001) and *VandenAvond v. 12 Technologies, Inc.*, 2008 WL 5336300 (N.D. Tex. 2008). (Opp. Br. at 23.) Neither *Rosati* nor *VandenAvond* stand for the broad proposition cited by Leeward, and both are factually distinguishable from the situation herein. In *Rosati*, the arbitrators made an arbitration award pursuant to a different securities law statute than that argued by the claimant (167 F. Supp. 2d at 1345), and in *VandenAvond*, the arbitrators awarded contractual damages pursuant to a different provision in the contract than that argued by the claimant (2008 WL 5336300, at *4). In interpreting *Rosati*, *VandenAvond* explained that:

> [S]ince the broad 'matter' of securities fraud was submitted, the arbitrators were free to hold the defendants liable for the violation of any law prohibiting securities fraud. Here, the parties submitted a contract to the arbitrator and asked him to determine whether [the respondent] breached it. That was the 'matter' or 'issue' before the arbitrator.

*Id*. at *4.

As in *VandenAvond*, the issue before the arbitrator was whether AUA breached the Construction Agreement. However, unlike in *VandenAvond*, the arbitrators here not only went outside of what the parties argued, but instead went far outside the scope of the contractual

damages contemplated by the agreement. The arbitrators' award of damages pursuant to the "bad faith doctrine" are tort damages, which are typically not permitted in a contract case. *See Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (Cal. 2000) (in discussing the bad faith doctrine, noting that while breach of the duty of good faith and fair dealing is normally "limited to contract rather than tort remedies," "[a]n exception to this general rule has developed in the context of insurance contracts where . . . [an insurer's] breach of the implied covenant will provide the basis for an action in tort") (citations omitted.) Notably, the Construction Agreement itself precludes an award of consequential damages (*Sclafani Decl.*, Ex. A, Petition at Ex. A, AUA 000035), and *a fortiori*, should preclude tort damages.

       The arbitrators' imposition of an entirely inappropriate and unrequested type of liability is far different than simply ruling on a different contractual provision or ruling on a different statute, as in *Rosati* and *VandenAvond*. "[C]ourts should vacate an arbitration award if: (1) the form of the award cannot 'be rationally derived either from the agreement between the parties or from the parties submissions to the arbitrators' and (2) the terms of the award are 'completely irrational.'" *PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd*., 400 Fed. App'x 654, 656 (3d Cir. 2010) (not precedential)(citations omitted). In *PMA Capital*, the district court vacated an award where the arbitrators went beyond the scope of the relief requested by the parties by rewriting a provision out of the contract, *inter alia*. *Id*. The Third Circuit affirmed, noting that "[t]he arbitrators in this case, by ordering unrequested relief and rewriting material terms of the contract they purported to implement, went beyond the scope of their authority." *Id; see also In re Cephalonian Shipping Co. S/A*, 1979 AMC 1451 (S.D.N.Y. 1979) (vacating arbitration award where arbitrator ruled on matters outside the issues that the parties stipulated should be decided by the arbitrator).

The award of bad faith damages is so fundamentally unfair that it flies in the face of due process. The record is totally devoid of any request for relief under the bad faith doctrine, and Leeward has pointed to no evidence to support such a claim. This award was therefore not derived from the parties' submissions and was instead entirely invented by the arbitrators. As the arbitrators did not provide any reasoning to support its award of bad faith damages, it is impossible to understand the rationale of the arbitrators, particularly as this relief was not requested and these damages are tort damages awarded in insurance litigation. As a result, the bad faith damages are wholly and completely irrational and must be vacated.

The award of lost profit and overhead on the "Omitted Work" and "Flooring Work" is likewise distinguishable from *Rosati* and *VanderAvond*. Here, the arbitrator never even heard evidence on these points during the hearings, and Leeward instead raised these claims in its post-trial brief. Consequently, AUA was denied the opportunity to even try to rebut or argue against these claims. It is a fundamental issue of due process that a party be given the opportunity to defend a claim.

Likewise unavailing is Leeward's suggestion that "where there is no agreement between the parties as to what the award shall contain (as in the present case), the contents of a reasoned award is within the discretion of the arbitrators . . . ." (Opp. Br. at 24)  Leeward has cited no case law supporting this proposition, and in fact, the Tribunal ruled during a preliminary hearing that the award in this Arbitration would be a "Reasoned Award."  (*Sclafani Decl.*, ¶ 10, Ex. B.) Thus, there is no question that the award was required to be reasoned.

Notably, while Leeward conclusory suggests that the "Tribunal has more than complied with the requirements for a reasoned award" (Opp Br. at 25), Leeward has failed to cite to any reasoning in the award to support the arbitrators' award of damages pursuant to the Bad Faith

9

doctrine, Change Order Work, and overhead and profit on the Omitted Work and Flooring Work. As Leeward knows full well, there is no such reasoning for these damages in the award, and thus, the award falls short of "something . . . more than a simple result." *Sarofim v. Trust Co.*, 440 F.3d 213, 215 n.1 (5th Cir. 2006).  Consequently, the arbitrators exceeded their authority. *See W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 262 (9th Cir. 1992).

Finally, contrary to Leeward's assertions, the arithmetical error by the Tribunal is obvious and should be modified.  Leeward asked for a total of EC $63,739.12 in interest in its proposed findings of fact for both the mobilization payments and monthly invoices, calculated at 10%.  (*Sclafani Decl.*, Ex. E, at 29-31.)  The Tribunal ruled that interest should be calculated at 7% (*id.*, Ex. A, Petition at Ex. B, at 7), and awarded a total interest of EC$44,617.37 (*id.* at 31). The final interest award was thereby calculated by simply reducing the total amount sought at 10% (EC$63,739.12) to 7% (EC$44,617.37).  In doing so, it is clear that the Tribunal did not subtract any of the interest sought for mobilization, totaling EC$39,234.94 (*id.*, Ex. E, at 29-31), which should have been subtracted, as these claims were excluded altogether by the Tribunal (*id.*, Ex. A, Petition at Ex. B at 29).  Had the Tribunal properly calculated interest, the proper amount of the award would have been much lower, equal to EC$17,152.92.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court grant the present cross-motion to dismiss, or in the alternative, vacate or modify the Award.

| | |
|---|---|
| Dated: New York, New York<br>November 15, 2012 | Respectfully submitted,<br>SILLS CUMMIS & GROSS P.C.<br>30 Rockefeller Plaza<br>New York, New York 10112<br>(212) 643-7000<br>By: s/ Michael B. Goldsmith<br>    MICHAEL B. GOLDSMITH<br>    KATHERINE M. LIEB<br>*Attorneys for Respondents* |