### INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **LEEWARD CONSTRUCTION COMPANY, LTD.,** | |
| **Claimant,** | |
| **vs.** | **Case No.: 50 110 T 00075 11** |
| **AMERICAN UNIVERSITY OF ANTIGUA –** **COLLEGE OF MEDICINE,** | |
| **Respondent.** | |

### FINAL AWARD



We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into between the above named parties and dated September 25, 2008, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and the parties having agreed that the Arbitrators need to render a reasoned award, do hereby, AWARD, as follows:



**I.   BRIEF PROCEDURAL BACKGROUND:**

The present case was brought on February 3, 2011 by Leeward Construction Company, LTD. ("Leeward") against American University of Antigua - College of Medicine ("AUA"), claiming the amount of EC $13,161,137[1] from a dispute that arose out of the construction of a medical school in St. Johns, Antigua.  Leeward claimed that AUA breached their contract and sought remedies under § 4.6 of the Contract, henceforth, demanded arbitration for the disputes set forth in their claim.

AUA filed a response on March 4, 2011, stating that Leeward's claim was so vague, confusing and contradictory that AUA was not in the position to understand the basis for the claims.

The Panel was selected and sworn on July 6th, 2011, comprised by Attorneys José R. Capó, Jorge R. Jiménez and Professional Engineer Héctor M. Varela.  Attorney Jiménez was designated Chair of the Panel.

On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC $6,800.572.28 in damages.  AUA filed its Answering Statement and Counterclaim on November 30, 2011.

---

[1] Whenever reference is made to a monetary sum, same shall be understood to be represented in Eastern Caribbean (EC) dollars, unless otherwise stated.

On December 12, 2011, Leeward filed a Statement objecting AUA's claims for liquidated damages and delay damages, arguing that such claims have been presented untimely.   On December 23, 2011, AUA's filed a Statement in opposition to the motion presented by Leeward to dismiss AUA's counterclaims, asserting the timeliness of its claims.

Afterwards both parties commenced discovery proceedings and filed numerous motions including dispositive motions, the resolution of which the Panel held in abeyance until the holding of the Hearings to be decided as part of the Final Award.  We will discuss same in detail in *Section III* of this Award.  The Hearings were held in the Marriott Courtyard in Isla Verde, Puerto Rico, from March 5th through March 9th 2012.  On April 11, 2012, AUA withdrew from its Answering Statement and Counterclaim the portion that sought actual damages and left only those claims for liquidated damages in the amount of US $117,000 and for attorneys' fees and expenses.   As per their request, the parties submitted their Proposed Findings of Facts and Conclusions of Law on April 20, 2012. The parties also submitted rebuttal briefs on May 4th, 2012.



The Panel declared the hearings closed and the case submitted for resolution on May 22, 2012.



This case was administered under the AAA Construction Industry Arbitration Rules ("CIAR") as amended and in effect October 1, 2009.

## II.    UNCONTESTED FACTS:

1.     Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.

2.     AUA is owned by the GCLR, LLC, a limited liability company organized and existing under the laws of the State of New York, with office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York, U.S.A.

3.     In the Spring of 2008, AUA and Leeward began to negotiate the terms of a contract to construct the structural works portion of the AUA's new medical school campus in Antigua.

4.     AUA and Leeward entered into a Letter of Intent on or about April 21, 2008 which was signed by Neal Simon, President of AUA, and Andy Green, Managing Director of Leeward.  A copy of the April 21, 2008 Letter of Intent was marked as LC 69.

5.     AUA and Leeward entered into a second Letter of Intent on or about May 10, 2008, which was signed by Corey Greenberg, Chief Operating Officer of AUA, and Andy Green, Managing Director of Leeward.  A copy of the May 10, 2008 Letter of Intent was marked as LC 70.

6.     On September 25, 2008, Leeward (as contractor) and AUA (as project owner) executed a contract for the construction of the College of Medicine in St. John's

2

Antigua for the fixed price of EC $27,436,824.00, subject to additions and deductions as provided in the Contract Documents, under the AIA Contract Document (A101-1997).

7.     The parties agreed that the commencement date for the works was May 1, 2008.

8.     Leeward had to achieve substantial completion of the entire work in 364 calendar days or as follows:

| Portion of the work | Substantial Completion Date |
|---|---|
| Classroom block | 29/01/2009 |
| Lab Block | 06/03/2009 |
| Service Block | 29/01/2009 |
| Library and Admin. Block | 30/04/2009 |

9.     Lt. Colonel Roche Antony was AUA's representative for the project and signed the Contract Documents on AUA's behalf.

10.     Neil Dickinson was Leeward's Project Manager for the project and signed the Contract Documents on Leeward's behalf.

11.     Sundaram Architects Pvt., Ltd. ("SAPL" or the Architect") was the architect that designed AUA's new Medical School Campus.  A.S. Nagesh served as the Architect's representative.

12.     Leeward and AUA also entered into a number of Separate Contracts, including a contract to install the doors and windows dated July 13, 2009 (marked as LC 228) and a contract of laying floor tiles dated July 13, 2009 (marked as LC 229).

13.     On February 3, 2011, Leeward filed a Demand for Arbitration seeking EC$13,161,137.00 in damages.

14.     On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC$6,800,572.28 in damages.

III.     **TRIAL EXHIBITS:**

A)  Leeward's Trial Exhibits

   *Exhibit list 1-245 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

B)  AUA's Trial Exhibits

   *Exhibit list 1-71 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

3

IV.   **WITNESSES:**

A) Leeward's Witnesses

1.   Robert Winwood-Senior Quantity Surveyor for Leeward, from Sept. 1, 2008-August 14, 2009. He was responsible for administration and surveying of the work with respect to the Construction of the AUA Project.

2.   Eric Linde-Director of Leeward. Over 45 years of hands on experience in the Construction Industry in Antigua and US.

3.   Neil Dickinson-Projects Director for Leeward from March 1, 2007 to Feb. 17, 2009, then managing director until Oct. 9, 2009, and was responsible for contract negotiations and administration of the works with respect to the Construction of the AUA Project.



4.   Andy Green-Managing Director of Leeward.

B) AUA's Witnesses

1.   Prabhu Marudheri-Executive Director of Finance for GCLE, LLC, an agent for AUA.

2.   Peter McLeod-Partner with DHP Associates, a firm of Chartered Quantity Surveyors and Project Managers located in the Bahamas.

3.   A.S.Nagesh-Architects' representative.

4.   Lt. Col. Roche Antony-General Manager on behalf of AUA, for the project.

V.   **INTERLOCUTORY MATTERS:**

1.   Controversy:

Leeward's request to strike the testimony of AUA's witness Peter McLeod based on the fact that same is expert testimony, which AUA had represented it would not be using. The Panel must decide if said testimony is factual or expert testimony.

   Panel's Decision:

*Refer to the Panel's Decision in section VI. (A-25).*

2.   Controversy:

AUA's motion requesting dismissal of Leeward's claims for amounts unpaid or due under the contracts for additional work. The Panel must decide if: (1) Leeward's claim for unpaid

4

balances and monies owed for additional works was included in the Amended Demand for Arbitration, henceforth, providing AUA with due process; and (2) if the parties submitted to arbitration said claims in this proceeding.

Panel's Decision:

After reviewing both parties' arguments and careful analysis of the questions posed, this Panel finds that all claims arising from the Separate Contracts are not subject to this Arbitration.  We find in favor of AUA and conclude that the arbitration clause that both parties agreed to, only reached claims arising out of or relating to the original Contract. Nothing in the Separate Contracts evidence intent from the parties to subject same to arbitration, nor does the record show that AUA agreed to arbitrate disputes under the Separate Contracts.

3.   Controversy:

AUA's motion requesting that Leeward's claims be dismissed for untimely filing.  This Panel must decide if dismissal is appropriate against Leeward, because Leeward's claim for final payment was initiated in violation of the 21 day notice requirement, and because Leeward's 16-20 month delay in commencing arbitration was unreasonable.

Panel's Decision:

After due analysis, this Panel denies AUA's motion requesting that Leeward's claims be dismissed for untimely filing.

4.   Controversy:

Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.  This Panel must determine if AUA filed the counterclaim within the time period stated under Section R-4(c)(ii) of the AAA's CIAR.

Panel's Decision:

After due analysis, this Panel denies Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.

## VI.   CONTROVERSIES SUBMITTED TO THE PANEL FOR RESOLUTION:

### A.   Claimant's (Leeward's) controversies submitted to arbitration:

1.   Controversy:

Whether the Contract is a fixed price contract subject to additions or deletions by change order or whether the Contract price is based upon measured works?

Panel's Decision:

The Panel rules that the Contract is a fixed price contract subject to additions and deletions. Leeward is entitled to receive compensation for work performed. Even though the Contract provides that additions and deletions should be made by formal change orders, from the evidence considered by the Panel it appears that both parties waived this requirement.

2.   Controversy:

Whether AUA breached the Contract with respect to the issuance of change orders, certificates of substantial completion, certificate of final completion, the review, certification, and payment of payment requisitions, the determination of claims, and the administration of the Contract?

Panel's Decision:

This Panel finds that both parties failed in their contractual responsibility to follow and enforce the General Conditions of the Contract AIA 201-1997. The respective liability of each party with respect to certain claims will be addressed in this Final Award.

6

3.   Controversy:

Whether AUA breached the Contract by failing to timely pay the amount due on payment requisitions?

Panel's Decision:

This Panel finds that AUA did breach the Contract on this matter.  In many instances AUA had concerns regarding the quantities invoiced, however, there were reasonable alternatives in case the parties did not reach an agreement to issue the partial payments, as stated in Article 9.5.1 of the Contract.  This Panel rules that holding the entire amount was far from reasonable and fair.

4.   Controversy:

If AUA breached the Contract by failing to timely pay the amount due on payment requisitions, is Leeward entitled to interest on the late payments at the legal rate under the laws of Antigua and if so, whether I0% per annum is the proper rate?

Panel's Decision:

This Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under sections 7.2 and 13.6.1 of the Contract and General Conditions.  However, this Panel agrees with AUA in that the interest agreed upon by the parties was the "legal rate" and therefore interest shall be calculated at 7% per annum.

5.   Controversy:

If the Contract was for a fixed price, is Leeward entitled to payment for work that AUA omitted, deleted or modified from the Contract's original scope of work?

Panel's Decision:

No.  Leeward is only entitled to payment for work performed.  However, this Panel finds that Leeward is entitled to damages in the amount of EC $ 232,670.13 for work that was deleted

7

from the Contract and then assigned to Leeward under Separate Contracts, under the bad faith doctrine.

6.   Controversy:

If the Contract price is based upon measured works, what adjustments should be made to the Contract sum for work omitted, deleted or modified from the Contract's original scope of work despite the AUA's failure and refusal to issue change orders?



   Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.

7.   Controversy:

If the Contract was based upon measured works, is Leeward entitled to overhead and/or profit for work omitted, deleted or modified from the Contract's original scope of work and if so, what amount is Leeward entitled to for overhead and/or profit on omitted, deleted or modified work?

   Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.  When both additions and credits covering related work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change, i.e., AIA Document A201-1997 General Conditions of the Contract for Construction, Section 7.3.7.  Therefore, Leeward is entitled to overhead and profit for work omitted, deleted or modified as claimed, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

8

8.   Controversy:

What amount is Leeward entitled to for additions to the Contract that should have been added pursuant to change orders had AUA properly issued change orders on the Project?

Panel's Decision:

This Panel finds that Leeward is entitled to receive compensation for work performed, despite any formal change orders, based on Measured Work and the Bill of Quantities (BOQ).

9.   Controversy:

Whether AUA was responsible for project delays that impaired Leeward's ability to substantially complete the Contract work by the substantial completion dates in the Contract, as extended?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were equally responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.  The numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal responsibility for both parties regarding the delays in the substantial completion.

10.   Controversy:

If AUA is responsible for project delays that impaired Leeward's ability to complete the project by the substantial completion dates in the Contract as extended, then what amount is Leeward entitled to for additional preliminaries as a result of the AUA's actions?

Panel's Decision:

This Panel finds that both parties were equally responsible for the project delays. Consequently, we find AUA responsible for 50% of the Additional Preliminaries in the

9

amount of EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Whether Leeward was responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines?

Panel's Decision:

No.  *Refer to Panel Decisions in **Section VI. (A-9) and (A-10)**, above.*

12. Controversy:

If Leeward is responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines, what amount is due from Leeward to AUA for liquidated damages?

Panel's Decision:

*Refer to Panel Decisions in **Section VI. (A- 9), (A-10) and (B-36)**, above.*

13.   Controversy:

Whether Leeward substantially complied with the notice of claim provision in the Contract?

Panel's Decision:

By reason of the conduct of the parties during the development, construction and liquidation of the Project, the Panel concludes that the time limit for the notice of claims stipulated in Section 4.3.2 of the General Conditions was waived, as well as Section 4.6.3 of the General Conditions referring to the initiation of an arbitration process.  This decision is applicable to both parties.

14.   Controversy:

If Leeward did not substantially comply with the notice of claim provision in the Contract, whether AUA waived compliance with such provision?

Panel's Decision:

*See Panel's Decision of Controversy in **Section VI. (A-13)**, above.*

10

15.   Controversy:

Whether AUA substantially complied with the notice of claim provision in the Contract?

Panel's Decision:

*See Panel Decisions in **Section VI. (A-14) and (A-15)**, above.*

16.   Controversy:

Whether Leeward is entitled to pre-judgment interest on its damages as a result of the AUA's breach of the Contract?

Panel's Decision:

This Panel is awarding pre-judgment interest to Leeward from October 31, 2009, as detailed in the Award, at the rate of 7% per annum.

17.   Controversy:

If Leeward is entitled to pre-judgment interest on its damages, is 10% per annum the appropriate rate of interest to be charged under the laws of Antigua and if so, from what date should the interest begin to run?

Panel's Decision:

Yes. *But see Panel's Decision to Controversy **16**, above.*

18.   Controversy:

Whether Leeward is entitled to payment in the amount of US $30,743.20/EC $83,000.00 for the AUA's acknowledged error in the calculation of ABST payments?

Panel's Decision:

This Panel finds that the ABST error was mutually acknowledged by both parties, and not having been originally claimed and submitted as a controversy in this Arbitration and having been discovered and in good faith informed by AUA representatives during the Hearings,

11

the Panel concludes that this claim should be corrected outside of the context of this Arbitration.

19.   Controversy:

If Leeward is not entitled to any other damages in this proceeding, whether Leeward is entitled to the payment of US $218,566.74/EC $590,083.00 in retainage?

   Panel's Decision:

After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine.   Therefore, this Panel grants Leeward damages in an amount equal to EC $232,670.13.   As per Leeward's claim for retainage, *refer to the Panel's Decision in section VI. (B-29), infra.*

20.   Controversy:

If AUA breached the Contract, is Leeward entitled to damages as specified in Claimant's Proposed Findings of Fact and Conclusions of Law Paragraphs 130, 131, or 133 or some other amount?

   Panel's Decision:

The Panel finds that both parties breached the Contract and therefore, in some instances share direct responsibility for same.   As such, this Panel will not grant damages to Leeward as requested, but as specifically provided in the Award on page 31.

21.   Controversy:

Whether the additional works contracts Leeward entered into with AUA are subject to arbitration?

   Panel's Decision:

The Panel finds that the additional works contracts are not subject to this Arbitration.

12

22.   Controversy:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

   Panel's Decision:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.



23.   Controversy:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?

   Panel's Decision:



The Panel finds that this Arbitration was commenced timely.

24.   Controversy:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

   Panel's Decision:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25.   Controversy:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

   Panel's Decision:

This Panel finds that Peter McLeod's testimony is not that of an expert witness.  Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record.  However, this Panel considered as factual the testimony

13

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26.  Controversy:

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

Panel's Decision:

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

B.  RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:

1.  Controversy:

Is Leeward barred from seeking to be paid EC $1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

Panel's Decision:

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2.   Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?




   Panel's Decision:

*See Panel's Decision to Controversy 1, supra.*

3.   Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

   a)  Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? **Or**

   b)  Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? **Or**

   c)  Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

<u>Panel's Decision:</u>

This Panel will not exclude any claim under the sole contention of timeliness.  Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4.    <u>Controversy:</u>

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?



<u>Panel's Decision:</u>

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5.    <u>Controversy:</u>

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

<u>Panel's Decision:</u>

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract, therefore, this Panel will not exclude

16

any claim under the sole contention of timeliness.  The evidence also showed that Leeward in many instances notified AUA of its claims, even though it was not in the manner set forth in the Contract.  Therefore, the Panel finds that Leeward is entitled to receive compensation for work performed; however, with regard to the Flooring Work, which is part of the Separate Contracts, same is not subject to this Arbitration.

6.    Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Flooring Work that AUA deleted from Leeward's scope of work on the ground that AUA did not document the deletion of this work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

Panel's Decision:

The Panel finds that the Separate Contracts are not subject to this Arbitration.  Therefore, this Panel will not grant remedies for the Flooring Work.

7.    Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Flooring Work (EC $1,741,032 * 18% = EC $313,385.76) for one or more of the following separate reasons:

a)  Because Leeward asserted this new alternative claim for the first time in its post-trial submissions, in violation of CIAR R-6(b), thereby depriving AUA of a fair opportunity to proffer a defense?  Or

b)  Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim on April 21, 2009 and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 20, 2012 Proposed Findings of Fact and Conclusions of Law?  Or

17

c) Because the new alternative claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance against each other regarding the terms of the Contract under the sole contention of timeliness and, therefore, will consider all claims brought without regard to timeliness. However, this Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, but not for the Flooring Work, which was given to Leeward under a Separate Contract.

8.   Controversy:

Even if Leeward had initiated its alternative claim for overhead and profit on the Flooring Work timely under the Contract Documents and the CIAR, is Leeward entitled to be paid EC $313,385.76 in overhead and profit on the Flooring Work given that Leeward entered into a separate contract with AUA on July, 2009 to perform this work, and was paid under the terms of that separate contract?

Panel's Decision:

No. *Refer to Panel's Decision in Section VI. (B-7), above.*

9.   Controversy:

There is no decision to render with respect to the Modified Work Delta of negative EC $14,294.10. Leeward is not seeking to recover any money reflected in this delta, which reflects that Leeward was paid more by seeking payment for work "as built" and in accordance with the "final measure" that it would have received had it been paid based upon the measurements in the initial Bills of Quantities.

Panel's Decision:

This Panel finds that Controversy number **9**, as stated by AUA, does not require the Panel's decision for it does not constitute a claim. In the alternative, the Panel finds the claim to be inadmissible and therefore, dismissed and denied.

10. Controversy:

Is Leeward barred from pursuing its May 11, 2009 Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC \$955,554.08 (the difference between the EC \$5,891,857.68 in Preliminaries sought by Leeward and the EC \$4,936,303.60 approved and paid by AUA) because it failed to initiate the claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits that it was aware on January, 2009 that it was not going to complete its work within the Contract Time?

Panel's Decision:

No. Although this Panel finds that both parties were not in strict compliance with the Contract and Contract documents, Leeward is not barred from its claim regarding the responsibility for delays and substantial completion. Consequently, this Panel finds AUA responsible for 50% of the Additional Preliminaries amounting to EC \$477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Is Leeward barred from pursuing its Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC \$955,554.08 because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the Claim accrued in January 2009 and Leeward waited until February 3, 2011 – 25 months later – to commence arbitration?

Panel's Decision:

No. *Refer to Panel's' Decision in Controversy number 10, above, where the controversy relative to the Additional Preliminaries is resolved.*

12. Controversy:

Even if Leeward had initiated its Claim for Additional Preliminaries timely and commenced arbitration in a reasonable amount of time, is Leeward entitled to Additional Preliminaries based upon the ground asserted in its May 11, 2009 Claim, *i.e.,* that it had been denied access to a $500,000.00 (EC $1,350,000.02) set aside for Non-Productive Overtime, given the absence of any evidence that such an account was agreed to by the parties or that the alleged lack of access to overtime impacted the critical path and caused the damages asserted?

Panel's Decision:

Yes. *Refer to the Panel's Decision in Controversy number 10, above.*

13. Controversy:

Aside from the Claim for Additional Preliminaries based on the alleged denial of Non-Productive Overtime initiated on May 11, 2009, did Leeward timely initiate any other claims for an extension of the Contract Time or an increase in the Contract Sum for the Additional Preliminaries in accordance with Section 4.3 of the General Conditions based on any other alleged theory of delay?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness. AUA shall refer to the Award as to claims granted, on pages 31-32.

14.     Controversy:

If so, did Leeward establish that each such claim for delay satisfied each of the following elements:  (a) caused by AUA; (b) impacted the critical path; and (c) resulted in a specific loss of time or amount of damages?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.  However, the numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal fault for each party regarding the delays in the substantial completion.  Moreover, AUA shall refer to the Award on pages 31-32, as to the claims granted.

15.     Controversy:

Is Leeward barred from seeking to be paid EC $190,210.19 more than the EC $1,232,008.91 it was already paid for additional work it documented as "Change Orders" in the monthly payment applications because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

The Panel finds that Leeward is entitled to payment for all work performed under the Contract subject to this Arbitration, without consideration to the timeliness of the claims.

16.     Controversy:

Even if Leeward had timely initiated a claim to be paid an additional EC $190,210.19 for Change Order work, is Leeward entitled to be paid this money given that Leeward did not

make a demand for payment contemporaneous with the payment of its Draft Final Account and given that Leeward did not otherwise submit evidence to substantiate its right to payment?

Panel's Decision:

From the evidence presented at trial, the Panel finds that Leeward is entitled to the additional EC $190,210.19. Consequently, the Panel grants Leeward's claim for EC $190,210.19.

17.    Controversy:

Is Leeward barred from pursuing its claim to recover EC $19,475.40 for the Whitsuntide Holiday because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on June 1, 2009 and Leeward waited until February 3, 2011 – 21 months later – to commence arbitration?

Panel's Decision:

The Panel finds that Leeward is not barred from any of its claims based on timeliness. However, claims pertaining to delays in the completion of the Project are subject to the Panel Decisions in *Section VI. (B-14) and (B-15)*, above.

18.    Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time, is Leeward entitled to EC $19,475.40 in damages for closing the construction site on June 1, 2009 for the Whitsuntide Holiday given that the holiday occurred after the May 14, 2009 deadline for Leeward to complete its work under the Contract Documents?

Panel's Decision:

No. Refer to the Panel's Decision in *Section VI. (B-14)*, above.

22

19.   Controversy:

Is Leeward barred from seeking payment for an additional EC $162,372.12 in "claims" out of the EC $181,847.52 sought in the Amended Demand for Arbitration because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in the Award on page 31.

20.   Controversy:

Even if Leeward had timely initiated a claim, is Leeward entitled to recover an additional EC $162,372.12 in "claims" given that Leeward was already paid that precise amount, EC $162,372.12, for these identical "claims," as confirmed by the Draft Final Account submitted by Leeward, certified by the Architect, and paid by AUA?

Panel's Decision:

This Panel finds that Leeward was rightfully paid for extra work, and for the "claims" (adverse weather and holiday) for a total of EC $1,232,008.91 in Change Orders and EC $162,372.12 in 'Claims' paid in the Draft Final Account.

21.   Controversy:

Is Leeward barred from seeking EC $1,000,000 allegedly due and owing from the Cash Allowance portion of the Contract Sum because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that

Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Award.



22.     Controversy:

Even if Leeward had timely initiated such a claim, is Leeward entitled to recover EC $1,000,000 from the Cash Allowance component of the initial Contract Sum for contingent costs, including craneage, scaffolding and overtime, given that the EC $2,262,166.51 that Leeward billed for and received for such contingent costs includes the EC $1,000,000 allocated to contingent costs in the EC $27,436,824 Contract Sum, which Leeward uses as costs?

Panel's Decision:

This Panel finds that Leeward is not entitled to its claim for Cash Allowance because the evidence received and considered demonstrated to the Panel that, Leeward was paid EC $2,262,166.51 in Cash Allowance, with included the EC $1,000,000.00 claim.

23.     Controversy:

Is Leeward barred from pursuing to recover overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA from Leeward's scope of work because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

24

<u>Panel's Decision:</u>

This Panel finds that Leeward is barred from pursuing the overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA because such work was then given to Leeward under a Separate Contract and, therefore, is not subject to this Arbitration. Refer to the Panel's Decision in Section *V. (2)*.

24.    <u>Controversy:</u>





Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Doors and Windows Work, is Leeward entitled to recover EC $34,396.20 as and for its overhead and profit on this work given that the unit rates contained in the initial Bills of Quantities were "provisional sum rates" and given that Leeward entered into a separate contract with AUA in July 2009 to perform this work?

<u>Panel's Decision:</u>

No. *Refer to Panel's Decision in Controversy number **23**, above.*

25.    <u>Controversy:</u>

Is Leeward barred from pursuing its claim to recover overhead and profit on the EC $1,735,589 in Painting Work deleted by AUA from Leeward's scope of work because Leeward failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

<u>Panel's Decision:</u>

The Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Final Award.

26.   <u>Controversy:</u>

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for

overhead and profit on the Painting Work, is Leeward entitled to recover EC $312,406.02 as

and for its overhead and profit on this work given that Leeward would have incurred more in



liquidated damages had the Painting Work not been removed from Leeward's scope of work

than it seeks to recover in overhead and profit for this work?



   <u>Panel's Decision:</u>

Yes. *Refer to the Panel's Decision in Section VI. (A-7).*

27.   <u>Controversy:</u>

Is Leeward barred from seeking to recover monies allegedly due and owing under the

Separate Contracts in the arbitration for either of the following separate reasons:

> a) Claims under the Separate Contracts are not arbitrable because AUA did not
> agree to arbitrate them; **Or**

> b) In the event Leeward's payment claims under the Separate Contracts fall within
> the scope of the arbitration provision (Section 4.6.1 of the General Conditions),
> because Leeward failed to initiate any claims within 21 days of their accrual in
> accordance with Section 4.3 of the General Conditions.

   <u>Panel's Decision:</u>

Yes.  This Panel finds in favor of AUA in that works that were performed under Separate

Contracts are not subject to this Arbitration

28.   <u>Controversy:</u>

Even if Leeward's claims under the Separate Contracts are subject to arbitration, and even

if Leeward had initiated claims timely, has Leeward established that AUA only paid Leeward

EC $1,359,035.40, in the aggregate, on the Separate Contracts and owes it an additional

EC $202,943 on these contracts based upon the proposed contract amounts, particularly

considering the evidence presented by AUA that Leeward was to be paid as per actual work

(not the proposed amounts), and that Leeward was paid EC $1,452,261.32 for that work?

Panel's Decision:

No. *See Panel Decisions in Section VI. (A-7 and (B-2).*

29.   Controversy:

Is Leeward entitled to an award for the EC $590,083 that AUA holds as retainage given that Leeward has not provided evidence that it satisfied its obligations under Section 9.10.2 of the General Conditions to provide "an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered have been paid or otherwise satisfied."?

Panel's Decision:

This Panel finds that the only issue regarding the retainage is the submittance by Leeward to AUA of the required documents.  Therefore, this Panel hereby Orders Leeward to comply with Section 9.10.02 of the General Conditions, as applicable to the particular Project within the term provided in the Award on pages 31-32 and, thereafter, AUA must pay the remaining 2.5% of the Contract Sum equal to EC $590,083.00, without interest, if paid within the time allowed.

30.   Controversy:

Should the mutual accounting mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $83,059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover this amount?

27

<u>Panel's Decision:</u>

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having it been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, we conclude that this issue should be resolved outside of the context of this Arbitration.



31.     <u>Controversy:</u>



Is Leeward entitled to an award of interest for any portion of Leeward's EC $6,701,390.33 demand? If so, when should interest begin to run given Leeward's long delay in commencing arbitration on the three claims it actually initiated during the Project (*i.e.*, Additional Preliminaries, Whitsuntide Holiday and Overhead and Profit on the Painting Work and Doors and Windows Work) and given Leeward's failure to identify the remainder of its claims until filing its Amended Demand for Arbitration dated October 14, 2011?

<u>Panel's Decision:</u>

This Panel finds that Leeward is entitled to the claims recognized in this Award as herein stated.  These claims shall accrue interest at the rate of 7% per annum, since the date of termination of the Project, October 31, 2009, as determined by the Panel; except for those claims that are specifically without interest.

32.     <u>Controversy:</u>

Did Leeward establish that AUA failed to pay one or more monthly payment applications timely, and if so, then what is the date of each such late payments and is Leeward entitled to an award of interest on any alleged late payments?

<u>Panel's Decision:</u>

Yes. *See Panel's Decision in Controversy (A-3) in Section VI.*

28

33.   Controversy:

Is Leeward entitled to an award of interest on any allegedly late mobilization payments, or were its claims with respect to this issue settled in January 2009 as set forth in AUA Ex. 67 at AUA 003269?

Panel's Decision:

The Panel finds that the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009.

34.   Controversy:

To the extent Leeward is awarded any interest, should the rate of interest equal the statutory judgment rate in Antigua of 5%, given that the Contract Documents refer to the "legal rate" in Antigua?

Panel's Decision:

The Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under Section 13.6.1 of the Contract and General Conditions as of October 3, 2009. However, this Panel finds that the interest shall be calculated at 7% per annum.

35.   Controversy:

Is Leeward entitled to recover any of its legal fees and expenses in prosecuting its claims or in defending AUA's counterclaim for Liquidated Damages?

Panel's Decision:

Upon careful consideration and considering that both parties were equally at fault (Leeward 50%- AUA 50%) regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

29

36.   <u>Controversy:</u>

Is AUA entitled to an award of Liquidated Damages in the amount of US $117,000.00 based upon Leeward's failure to achieve Substantial Completion within the Contract Time, but instead doing so 78 days later?

   <u>Panel's Decision:</u>

After a careful analysis and evaluation of the witness statements as well as the evidence presented to the Panel, we find that both parties shared responsibilities for the project delays and, consequently, Leeward is responsible for 50% of the Liquidated Damages in the amount of EC $ 157,950.00[2], and such amount is hereby granted in favor of AUA.

37.   <u>Controversy:</u>

Is AUA entitled to setoff Liquidated Damages from the retainage it currently holds?

   <u>Panel's Decision:</u>

No.   The Panel finds neither spurious allegations in Leeward's claims, nor intentional wrongdoing to award damages to AUA.   Consequently, AUA is denied its claim to setoff Liquidated Damages.

38.   <u>Controversy:</u>

Is AUA entitled to recover any of its legal fees and expenses in defending the claims asserted by Leeward and in prosecuting its counterclaim for Liquidated Damages?

   <u>Panel's Decision:</u>

Upon careful consideration and considering that both parties were at fault regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as

---

[2] As per AUA's counterclaim for Liquidated Damages, the amount was expressed in US dollars and not EC dollars, therefore, considering the current currency conversion, said amount was calculated at $315,900.00 of which 50% is granted to AUA for $157,950.00.

provided under the laws of Antigua or otherwise. Each party shall bear their own attorneys'

fees, arbitration expenses and such the like.

## AWARD

Accordingly, we ORDER and AWARD as follows:

1. Within thirty (30) days from the date of issuance of this Final Award Respondent

AUA shall pay to Claimant Leeward the following amounts:

| | | |
|---|---|---|
| a) Interest on the Payments Due and Unpaid | EC $44,617.37 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. |
| b) Damages | EC $232,670.13 | This sum shall accrue interest of 7% per annum from the date of issuance of this Final Award. |
| c) Overhead and Profit for work deleted, omitted or modified | EC $802,399.25 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| d) Additional Preliminaries | EC $477,777.04 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| e) Change Order Work | EC $190,210.19 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| f) Retainage | EC $590,083.00 | This sum shall <u>not accrue any interest</u>. Leeward shall submit to AUA all contractually required documentation as set forth in Section 9.10.2 of the General Conditions. Leeward will have a term of not more than 30 calendar days from the date of issuance of this Final Award to submit said documentation. Once Leeward has submitted all required documentation accordingly, AUA shall release the retainage in a term not to exceed 30 calendar days, upon after which such amount shall start accruing interest at the rate of 7% per annum. If Leeward fails to comply with Section 9.10.2, of the General Conditions in the time hereby stated and granted the claim for such amount will be considered |

31

relinquished. Considering that this case is sub-judice, the herein referred notice may be made by counsel for Leeward to counsel for AUA, or by Leeward to AUA.

2. As per AUA's counterclaim for Liquidated Damages, this Panel grants 50% of such in the amount of EC $157,950.00, which will accrue interest at the rate of 7% per annum from the date of this Final Award.

3. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling $17,550.00 shall be borne by the parties as incurred. The compensation and expenses of the Panel totaling $151,992.75 shall be borne by the parties as incurred.

4. The terms of this Final Award shall be complied within thirty (30) days from the date of this Final Award.

This Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Per the arbitration clause, the location of the arbitration is Antigua; however, the parties jointly agreed for the Hearings to be held in Isla Verde, Puerto Rico.  We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Isla Verde, Puerto Rico, on June 22, 2012, amended *nunc pro tunc* on this 8 day of August, 2012.

32

_8|8|2012_
Date

_Jorge R. Jiménez, Esq._
Panel Chairman

_8|8|2012_
Date

_Héctor M. Varela, P.E._
Arbitrator

_8|8|2012_
Date

_José R. Capó, Esq._
Arbitrator

State of Puerto Rico        Affidavit # 301
County of San Juan

On this __8__ day of August, 2012 before me personally came and appeared Jorge R. Jiménez, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

_8|8|2012_
Dated

Notary Public

State of Puerto Rico        Affidavit # 302
County of San Juan

On this __8__ day of August, 2012 before me personally came and appeared Héctor M. Varela, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

_8|8|2012_
Dated

Notary Public

State of Puerto Rico        Affidavit # 303
County of San Juan

On this __8__ day of August, 2012 before me personally came and appeared José R. Capó, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

_8|8|2012_
Dated

Notary Public

33





9397
07/05/2012
$3.00
$3 Sello Asistencia Legal
51281-2012-0705-53394916

301





9397
07/05/2012
$3.00
$3 Sello Asistencia Legal
51281-2012-0705-53394919

# 302





9397
07/05/2012
$3.00
$3 Sello Asistencia Legal
51281-2012-0705-53394922

# 303