On December 12, 2011, Leeward filed a Statement objecting AUA's claims for liquidated damages and delay damages, arguing that such claims have been presented untimely. On December 23, 2011, AUA's filed a Statement in opposition to the motion presented by Leeward to dismiss AUA's counterclaims, asserting the timeliness of its claims.

Afterwards both parties commenced discovery proceedings and filed numerous motions including dispositive motions, the resolution of which the Panel held in abeyance until the holding of the Hearings to be decided as part of the Final Award. We will discuss same in detail in *Section III* of this Award. The Hearings were held in the Marriott Courtyard in Isla Verde, Puerto Rico, from March 5th through March 9th 2012. On April 11, 2012, AUA withdrew from its Answering Statement and Counterclaim the portion that sought actual damages and left only those claims for liquidated damages in the amount of US $117,000 and for attorneys' fees and expenses. As per their request, the parties submitted their Proposed Findings of Facts and Conclusions of Law on April 20, 2012. The parties also submitted rebuttal briefs on May 4th, 2012.

The Panel declared the hearings closed and the case submitted for resolution on May 22, 2012.




This case was administered under the AAA Construction Industry Arbitration Rules ("CIAR") as amended and in effect October 1, 2009.

II. **UNCONTESTED FACTS:**

1. Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.

2. AUA is owned by the GCLR, LLC, a limited liability company organized and existing under the laws of the State of New York, with office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York, U.S.A.

3. In the Spring of 2008, AUA and Leeward began to negotiate the terms of a contract to construct the structural works portion of the AUA's new medical school campus in Antigua.

4. AUA and Leeward entered into a Letter of Intent on or about April 21, 2008 which was signed by Neal Simon, President of AUA, and Andy Green, Managing Director of Leeward. A copy of the April 21, 2008 Letter of Intent was marked as LC 69.

5. AUA and Leeward entered into a second Letter of Intent on or about May 10, 2008, which was signed by Corey Greenberg, Chief Operating Officer of AUA, and Andy Green, Managing Director of Leeward. A copy of the May 10, 2008 Letter of Intent was marked as LC 70.

6. On September 25, 2008, Leeward (as contractor) and AUA (as project owner) executed a contract for the construction of the College of Medicine in St. John's

Antigua for the fixed price of EC $27,436,824.00, subject to additions and deductions as provided in the Contract Documents, under the AIA Contract Document (A101-1997).

7. The parties agreed that the commencement date for the works was May 1, 2008.

8. Leeward had to achieve substantial completion of the entire work in 364 calendar days or as follows:

| Portion of the work | Substantial Completion Date |
| --- | --- |
| Classroom block | 29/01/2009 |
| Lab Block | 06/03/2009 |
| Service Block | 29/01/2009 |
| Library and Admin. Block | 30/04/2009 |

9. Lt. Colonel Roche Antony was AUA's representative for the project and signed the Contract Documents on AUA's behalf.

10. Neil Dickinson was Leeward's Project Manager for the project and signed the Contract Documents on Leeward's behalf.

11. Sundaram Architects Pvt., Ltd. ("SAPL" or the "Architect") was the architect that designed AUA's new Medical School Campus. A.S. Nagesh served as the Architect's representative.

12. Leeward and AUA also entered into a number of Separate Contracts, including a contract to install the doors and windows dated July 13, 2009 (marked as LC 228) and a contract of laying floor tiles dated July 13, 2009 (marked as LC 229).

13. On February 3, 2011, Leeward filed a Demand for Arbitration seeking EC$13,161,137.00 in damages.

14. On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC$6,800,572.28 in damages.

III. TRIAL EXHIBITS:

A) Leeward's Trial Exhibits

*Exhibit list 1-245 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

B) AUA's Trial Exhibits

*Exhibit list 1-71 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

3

IV. **WITNESSES:**

A) Leeward's Witnesses

1. Robert Winwood-Senior Quantity Surveyor for Leeward, from Sept. 1, 2008-August 14, 2009. He was responsible for administration and surveying of the work with respect to the Construction of the AUA Project.

2. Eric Linde-Director of Leeward. Over 45 years of hands on experience in the Construction Industry in Antigua and US.

3. Neil Dickinson-Projects Director for Leeward from March 1, 2007 to Feb. 17, 2009, then managing director until Oct. 9, 2009, and was responsible for contract negotiations and administration of the works with respect to the Construction of the AUA Project.

4. Andy Green-Managing Director of Leeward.



B) AUA's Witnesses

1. Prabhu Marudheri-Executive Director of Finance for GCLE, LLC, an agent for AUA.

2. Peter McLeod-Partner with DHP Associates, a firm of Chartered Quantity Surveyors and Project Managers located in the Bahamas.

3. A.S.Nagesh-Architects' representative.

4. Lt. Col. Roche Antony-General Manager on behalf of AUA, for the project.

V. **INTERLOCUTORY MATTERS:**

1. <u>Controversy:</u>

Leeward's request to strike the testimony of AUA's witness Peter McLeod based on the fact that same is expert testimony, which AUA had represented it would not be using. The Panel must decide if said testimony is factual or expert testimony.

<u>Panel's Decision:</u>

*Refer to the Panel's Decision in section VI. (A-25).*

2. <u>Controversy:</u>

AUA's motion requesting dismissal of Leeward's claims for amounts unpaid or due under the contracts for additional work. The Panel must decide if: (1) Leeward's claim for unpaid

4

balances and monies owed for additional works was included in the Amended Demand for Arbitration, henceforth, providing AUA with due process; and (2) if the parties submitted to arbitration said claims in this proceeding.

<u>Panel's Decision:</u>

After reviewing both parties' arguments and careful analysis of the questions posed, this Panel finds that all claims arising from the Separate Contracts are not subject to this Arbitration. We find in favor of AUA and conclude that the arbitration clause that both parties agreed to, only reached claims arising out of or relating to the original Contract. Nothing in the Separate Contracts evidence intent from the parties to subject same to arbitration, nor does the record show that AUA agreed to arbitrate disputes under the Separate Contracts.

3. <u>Controversy:</u>

AUA's motion requesting that Leeward's claims be dismissed for untimely filing. This Panel must decide if dismissal is appropriate against Leeward, because Leeward's claim for final payment was initiated in violation of the 21 day notice requirement, and because Leeward's 16-20 month delay in commencing arbitration was unreasonable.

<u>Panel's Decision:</u>

After due analysis, this Panel denies AUA's motion requesting that Leeward's claims be dismissed for untimely filing.

4. <u>Controversy:</u>

Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing. This Panel must determine if AUA filed the counterclaim within the time period stated under Section R-4(c)(ii) of the AAA's CIAR.

5

Panel's Decision:

After due analysis, this Panel denies Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.

VI. CONTROVERSIES SUBMITTED TO THE PANEL FOR RESOLUTION:

A. Claimant's (Leeward's) controversies submitted to arbitration:

1. Controversy:

Whether the Contract is a fixed price contract subject to additions or deletions by change order or whether the Contract price is based upon measured works?

Panel's Decision:

The Panel rules that the Contract is a fixed price contract subject to additions and deletions. Leeward is entitled to receive compensation for work performed. Even though the Contract provides that additions and deletions should be made by formal change orders, from the evidence considered by the Panel it appears that both parties waived this requirement.

2. Controversy:

Whether AUA breached the Contract with respect to the issuance of change orders, certificates of substantial completion, certificate of final completion, the review, certification, and payment of payment requisitions, the determination of claims, and the administration of the Contract?

Panel's Decision:

This Panel finds that both parties failed in their contractual responsibility to follow and enforce the General Conditions of the Contract AIA 201-1997. The respective liability of each party with respect to certain claims will be addressed in this Final Award.

3.  <u>Controversy:</u>

Whether AUA breached the Contract by failing to timely pay the amount due on payment requisitions?

   <u>Panel's Decision:</u>

This Panel finds that AUA did breach the Contract on this matter. In many instances AUA had concerns regarding the quantities invoiced, however, there were reasonable alternatives in case the parties did not reach an agreement to issue the partial payments, as stated in Article 9.5.1 of the Contract. This Panel rules that holding the entire amount was far from reasonable and fair.

4.  <u>Controversy:</u>

If AUA breached the Contract by failing to timely pay the amount due on payment requisitions, is Leeward entitled to interest on the late payments at the legal rate under the laws of Antigua and if so, whether 10% per annum is the proper rate?

   <u>Panel's Decision:</u>

This Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under sections 7.2 and 13.6.1 of the Contract and General Conditions. However, this Panel agrees with AUA in that the interest agreed upon by the parties was the "legal rate" and therefore interest shall be calculated at 7% per annum.

5.  <u>Controversy:</u>

If the Contract was for a fixed price, is Leeward entitled to payment for work that AUA omitted, deleted or modified from the Contract's original scope of work?

   <u>Panel's Decision:</u>

No. Leeward is only entitled to payment for work performed. However, this Panel finds that Leeward is entitled to damages in the amount of EC $ 232,670.13 for work that was deleted

7

from the Contract and then assigned to Leeward under Separate Contracts, under the bad faith doctrine.

6. <u>Controversy</u>:

If the Contract price is based upon measured works, what adjustments should be made to the Contract sum for work omitted, deleted or modified from the Contract's original scope of work despite the AUA's failure and refusal to issue change orders?

<u>Panel's Decision</u>:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.

7. <u>Controversy</u>:

If the Contract was based upon measured works, is Leeward entitled to overhead and/or profit for work omitted, deleted or modified from the Contract's original scope of work and if so, what amount is Leeward entitled to for overhead and/or profit on omitted, deleted or modified work?

<u>Panel's Decision</u>:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost. When both additions and credits covering related work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change, i.e., AIA Document A201-1997 General Conditions of the Contract for Construction, Section 7.3.7. Therefore, Leeward is entitled to overhead and profit for work omitted, deleted or modified as claimed, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

8. <u>Controversy:</u>

What amount is Leeward entitled to for additions to the Contract that should have been added pursuant to change orders had AUA properly issued change orders on the Project?

<u>Panel's Decision:</u>

This Panel finds that Leeward is entitled to receive compensation for work performed, despite any formal change orders, based on Measured Work and the Bill of Quantities (BOQ).

9. <u>Controversy:</u>

Whether AUA was responsible for project delays that impaired Leeward's ability to substantially complete the Contract work by the substantial completion dates in the Contract, as extended?

<u>Panel's Decision:</u>

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were equally responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon. The numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal responsibility for both parties regarding the delays in the substantial completion.

10. <u>Controversy:</u>

If AUA is responsible for project delays that impaired Leeward's ability to complete the project by the substantial completion dates in the Contract as extended, then what amount is Leeward entitled to for additional preliminaries as a result of the AUA's actions?

<u>Panel's Decision:</u>

This Panel finds that both parties were equally responsible for the project delays. Consequently, we find AUA responsible for 50% of the Additional Preliminaries in the

9

amount of EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. <u>Controversy</u>:

Whether Leeward was responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines?

<u>Panel's Decision</u>:

No. *Refer to Panel Decisions in Section VI. (A-9) and (A-10), above.*

12. <u>Controversy</u>:

If Leeward is responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines, what amount is due from Leeward to AUA for liquidated damages?

<u>Panel's Decision</u>:

*Refer to Panel Decisions in Section VI. (A-9), (A-10) and (B-36), above.*

13. <u>Controversy</u>:

Whether Leeward substantially complied with the notice of claim provision in the Contract?

<u>Panel's Decision</u>:

By reason of the conduct of the parties during the development, construction and liquidation of the Project, the Panel concludes that the time limit for the notice of claims stipulated in Section 4.3.2 of the General Conditions was waived, as well as Section 4.6.3 of the General Conditions referring to the initiation of an arbitration process. This decision is applicable to both parties.

14. <u>Controversy</u>:

If Leeward did not substantially comply with the notice of claim provision in the Contract, whether AUA waived compliance with such provision?

<u>Panel's Decision</u>:

*See Panel's Decision of Controversy in Section VI. (A-13), above.*

10

15. <u>Controversy:</u>

Whether AUA substantially complied with the notice of claim provision in the Contract?

<u>Panel's Decision:</u>

See Panel Decisions in *Section VI. (A-14) and (A-15)*, above.

16. <u>Controversy:</u>

Whether Leeward is entitled to pre-judgment interest on its damages as a result of the AUA's breach of the Contract?

<u>Panel's Decision:</u>

This Panel is awarding pre-judgment interest to Leeward from October 31, 2009, as detailed in the Award, at the rate of 7% per annum.

17. <u>Controversy:</u>

If Leeward is entitled to pre-judgment interest on its damages, is 10% per annum the appropriate rate of interest to be charged under the laws of Antigua and if so, from what date should the interest begin to run?

<u>Panel's Decision:</u>

Yes. But see Panel's Decision to Controversy *16*, above.

18. <u>Controversy:</u>

Whether Leeward is entitled to payment in the amount of US $30,743.20/EC $83,000.00 for the AUA's acknowledged error in the calculation of ABST payments?

<u>Panel's Decision:</u>

This Panel finds that the ABST error was mutually acknowledged by both parties, and not having been originally claimed and submitted as a controversy in this Arbitration and having been discovered and in good faith informed by AUA representatives during the Hearings,



11


the Panel concludes that this claim should be corrected outside of the context of this Arbitration.

19. <u>Controversy:</u>

If Leeward is not entitled to any other damages in this proceeding, whether Leeward is entitled to the payment of US $218,566.74/EC $590,083.00 in retainage?

<u>Panel's Decision:</u>

After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine. Therefore, this Panel grants Leeward damages in an amount equal to EC $232,670.13. As per Leeward's claim for retainage, refer to the Panel's Decision in section VI. (B-29) infra.

20. <u>Controversy:</u>

If AUA breached the Contract, is Leeward entitled to damages as specified in Claimant's Proposed Findings of Fact and Conclusions of Law Paragraphs 130, 131, or 133 or some other amount?

<u>Panel's Decision:</u>

The Panel finds that both parties breached the Contract and therefore, in some instances share direct responsibility for same. As such, this Panel will not grant damages to Leeward as requested, but as specifically provided in the Award on page 31.

21. <u>Controversy:</u>

Whether the additional works contracts Leeward entered into with AUA are subject to arbitration?

<u>Panel's Decision:</u>

The Panel finds that the additional works contracts are not subject to this Arbitration.

22. <u>Controversy</u>:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

<u>Panel's Decision</u>:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.

23. <u>Controversy</u>:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?



<u>Panel's Decision</u>:

The Panel finds that this Arbitration was commenced timely.

24. <u>Controversy</u>:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

<u>Panel's Decision</u>:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25. <u>Controversy</u>:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

<u>Panel's Decision</u>:

This Panel finds that Peter McLeod's testimony is not that of an expert witness. Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record. However, this Panel considered as factual the testimony

13

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26. <u>Controversy</u>:

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

<u>Panel's Decision</u>:

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise. Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

B. **RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:**

1. <u>Controversy</u>:

Is Leeward barred from seeking to be paid EC $1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

<u>Panel's Decision</u>:

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2. Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

Panel's Decision:

See Panel's Decision to Controversy 1, supra.

3. Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

   a) Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? Or

   b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? Or

   c) Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

15

Panel's Decision:

This Panel will not exclude any claim under the sole contention of timeliness. Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4. Controversy:

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?

Panel's Decision:

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5. Controversy:

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

Panel's Decision:

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract, therefore, this Panel will not exclude

16

any claim under the sole contention of timeliness. The evidence also showed that Leeward in many instances notified AUA of its claims, even though it was not in the manner set forth in the Contract. Therefore, the Panel finds that Leeward is entitled to receive compensation for work performed; however, with regard to the Flooring Work, which is part of the Separate Contracts, same is not subject to this Arbitration.

6. <u>Controversy</u>:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Flooring Work that AUA deleted from Leeward's scope of work on the ground that AUA did not document the deletion of this work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

<u>Panel's Decision</u>:

The Panel finds that the Separate Contracts are not subject to this Arbitration. Therefore, this Panel will not grant remedies for the Flooring Work.

7. <u>Controversy</u>:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Flooring Work (EC $1,741,032 * 18% = EC $313,385.76) for one or more of the following separate reasons:

    a) Because Leeward asserted this new alternative claim for the first time in its post-trial submissions, in violation of CIAR R-6(b), thereby depriving AUA of a fair opportunity to proffer a defense? Or

    b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim on April 21, 2009 and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 20, 2012 Proposed Findings of Fact and Conclusions of Law? Or

17