UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

                  Petitioner,

          v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

                  Respondents.

----------------------------------------------------------x

Case No. 1:13-CV-0620-LAK/GWG

Honorable Lewis A. Kaplan
United States District Judge

**DECLARATION OF**
**JONATHAN S. JEMISON**

Jonathan S. Jemison, being duly sworn, deposes and says:

1.      I am Of Counsel with Sills Cummis & Gross P.C., counsel for respondents American University of Antigua – College of Medicine ("AUA"), and am fully familiar with all the facts and circumstances set forth herein.

2.      I submit this declaration in support of AUA's motion, brought by way of an order to show cause seeking temporary restraints, for a stay of enforcement of the Corrected Amended Judgment entered in this case on June 11, 2013.

3.      As detailed herein and in the accompanying Declaration of Leonard Sclafani (the "Sclafani Declaration"), AUA seeks a stay based on a fully executed agreement to stay execution of the Judgment (as amended) entered into by and between AUA and Leeward Construction Company, Ltd. ("Leeward") as of May 8, 2013 (the "Stay Agreement"), a true and accurate copy of which is attached as Exhibit 1 to the accompanying Declaration of Leonard Sclafani (the

"Sclafani Declaration").  Alternatively, AUA seeks a stay based on this Court's inherent powers to grant one in the interests of justice.

**The Negotiation of the Stay Agreement**

4.      The Petitioner and now judgment creditor, Leeward, brought this proceeding pursuant to 9 U.S.C. 201 *et seq.* to confirm an arbitration award (the "Award") issued by the American Arbitration Association International Center for Dispute Resolution (the "ICDR"), arising out a contractual dispute related to a construction project in Antigua (the "Project").

5.      AUA moved to dismiss the Petition on *forum non conveniens* grounds and/or to vacate or modify the Award.  The Court heard oral argument on Leeward's Petition and AUA's motion on December 17, 2012, and reserved decision.  In a March 26, 2013 Memorandum and Opinion, this Court confirmed the Award.  Judgment was thereafter entered by the Clerk on March 28, 2013.

6.      By its terms, Fed. R. Civ. P. 62 automatically stayed enforcement of the Judgment for a period of fourteen (14) days, which period expired on April 11, 2013.  On April 12, 2013, I contacted Leeward's counsel, J. Scott Greer, Esq. of Lewis & Greer, P.C., to provide Leeward with notice that this office would be filing an Order to Show Cause later that day seeking a stay of execution of the Judgment pending resolution of another arbitration between the two parties arising out of the Project (the "Second Arbitration").  I explained that AUA was seeking a stay because AUA asserted a counterclaim against Leeward in the arbitration that exceeded the amount AUA owed Leeward under the Judgment, and because AUA had reason to believe Leeward, an Antiguan entity, was no longer in business and had no assets other than the Judgment to satisfy AUA's claim.

7.      During that phone call, I proposed a compromise that would obviate the filing of AUA's Order to Show Cause.  In exchange for a stay pending confirmation of an award issued in

2

the Second Arbitration, AUA offered to post a bond to secure the Judgment and to waive its right to appeal from the Judgment.   I sent Mr. Greer a copy of the papers that I had prepared in support of AUA's application for the stay that I had advised Mr. Greer AUA intended to seek in the absence of his client's acceptance of my proposal, and we agreed to discuss my proposal later that day.  Early in the afternoon that same day, I reached an agreement in principal with Leeward's counsel on a stay, and the parties agreed to a standstill while we "papered" the agreement – *i.e.*, Leeward would cease enforcement proceedings and AUA would not file its stay application.

8.      Over the course of the next several weeks, I negotiated the terms of the Stay Agreement.  Veronica McMillan, Esq., a Lewis & Greer partner, was my primary negotiating counterpart, although I did have a few conversations with Mr. Greer, particular with respect to AUA's request that Leeward accept an alternative form of security to a bond.

9.      The two main issues that arose during negotiations were whether Leeward would accept some alternative form of security in lieu of a bond (it would not) and whether AUA would agree to the Southern District of New York as the exclusive jurisdiction for any proceedings to confirm or vacate the award in the Second Arbitration (AUA would not).

10.     After exchanging several drafts, the parties finally reached agreement on the terms of the Stay Agreement.  On May 8, 2013, Ms. McMillan and I sent the final versions to our respective clients for execution.

11.     On May 9, 2013, Ms. McMillan sent me the Stay Agreement as executed by her client, Eric Linde of Leeward.  On May 13, I sent Ms. McMillan the Stay Agreement counter-signed by my client, Leonard Sclafani, the authorized AUA representative.  A true copy of the

Stay Agreement is annexed as Exhibit 1 to the Declaration of Leonard Sclafani submitted
herewith.

12.     The Stay Agreement provided that, upon full execution, the parties were to file
within seven (7) days, a Stipulation and Consent Order for the purpose of having the agreed upon
stay "so ordered" by this Court.  However, the Stay Agreement clearly provided that, regardless
of whether the Court entered the Stipulation and Consent Order, the terms of the Stay Agreement
controlled.  In other words, the Stay Agreement was a final and enforceable agreement upon its
full execution.

13.     Having entered into the final and enforceable agreement, AUA promptly began
the process of obtaining the bond that the agreement required it to post.  As hereinafter more
fully set forth, it did secure the bond (Exhibit 1).  In order to secure the bond, AUA paid the full
amount of the premium on the bond and wire transferred an amount equal to the face amount of
the bond to the surety who issued the bond as security.

### Leeward Attempts to Renege and Then Violates the Stay Agreement

14.     On May 15, 2013, I received an email from Mr. Greer, in which he accused me of
being "pathetic, slimy and unethical" -- accusations that I find highly offensive:

> Yesterday, I participated in the pre-hearing conference with Leonard Sclafani
> with respect to the "ABST arbitration."  During the conference, Sclafani advised
> for the first time that your client intends to amend its counter-claim in that
> arbitration to assert a claim for construction defects, which he did not define or
> quantify.  This obviously changes the dynamics of the proposed "stay agreement."
> Quite frankly, if you knew about the AUA's intent to assert a construction defect
> claim in the ABST arbitration (or even in a separate arbitration) and withheld that
> information from Veronica and me, then you are as pathetic, slimy, and unethical
> as your client; and if you didn't know about the your client's intent, then I have to
> assume that's the result of willful blindness.  ***Regardless, we hereby place the
> "stay agreement" on hold until we discuss these latest developments with
> Leeward.***  I'm not saying one way or the other whether Leeward will withdraw
> from the stay agreement (which we have yet to sign and file) as a result of your
> client's fraudulent withholding of a material fact, but we do need to reconsider all
> of our options.

A copy of Mr. Greer's email is attached hereto as Exhibit 2 (emphasis in original).

15.     Mr. Greer's accusations were not only unprofessional, but factually flawed.  As set forth in the Sclafani Declaration, Leeward's counsel were aware that AUA intended to assert construction defect claims in February 2013, and therefore did not learn about them "for the first time" on May 14, after the Stay Agreement was signed.  Moreover, despite this knowledge, at no time during the negotiations did Leeward seek, nor does the agreement ultimately executed by the parties provide for, any waiver, limitation or restriction of AUA's rights in the manner in which it participated in the Second Arbitration, including, but not limited to, the right to amend its answer and counterclaims in the arbitration to add additional claims or defenses as the rules governing the arbitration allow.

16.     On May 16, 2013, I responded to Mr. Greer's email by stating that the Stay Agreement had already been fully executed, and thus counsel was obligated to execute the Stipulation and Consent Order so that it could be filed with the Court.  I signed the Stipulation, attached it to my email, and asked that Leeward's counsel sign and return the document to my attention by close of business on Monday, May 20, 2013.  Attached hereto as Exhibit 3 is a copy of my May 16, 2013 email.

17.     On May 17, 2013, Mr. Greer responded to my email, insisted that AUA "deliberately withheld material information as to [its] intent with respect to the scope of the second arbitration," and claimed that if I had been "honest" about AUA's intentions he "would have immediately terminated the negotiations… ."  Leeward then purportedly "rejected" the Stay Agreement because of AUA's alleged "dishonesty."  Attached hereto as Exhibit 4 is a true and correct copy of Mr. Greer's May 17, 2013 email.

18.     On May 22, 2013, I provided a substantive response to Mr. Greer's emails, reminding him that Leeward was well aware of AUA's construction defect claims long before

the parties negotiated the Stay Agreement, and that Leeward never once addressed that issue during the negotiations.  I also put Leeward on notice that AUA would hold it liable for any and all costs incurred in the event Leeward took any action contrary to the Stay Agreement.  Finally, I advised that given Leeward's position, AUA needed to protect its appeal rights and could not withdraw its appeal "at this time" in light of Mr. Greer's assertion that his client would not honor the Stay Agreement.  Attached hereto as Exhibit 5 is a copy of my May 22, 2013 email.

19.     Mr. Greer did not respond to my May 22, 2013 email.

20.     During the negotiations of the Stay Agreement, Leeward moved to amend the Judgment confirming the Award so as to reduce it to a monetary award.  AUA consented, and also agreed to allow Leeward to file its motion notwithstanding the stay of enforcement.  The Court entered the Amended Judgment on May 23, 2013.  The fourteen (14) day automatic stay on the Amended Judgment expired on June 6, 2013.

21.     On June 11, 2013, we received notice from the Clerk that a Writ of Execution had been issued on the Amended Judgment, but for some reason the document was deleted by the Clerk because it was "filed in the wrong case."

22.     Thereafter, I was copied on an email from Leeward's counsel asking the Judgments and Orders Clerk to correct the amount of the Amended Judgment due to a mathematical error.  The Clerk entered a Corrected Amended Judgment that same day, and Leeward was once again subject to an automatic fourteen (14) day stay of enforcement as a result.

23.     As above noted, on June 12, 2013, AUA obtained the bond required by the Stay Agreement.  That same day I emailed a copy of the bond to Mr. Greer, asked that he sign and return the Stipulation and Consent Order, and advised that upon receipt I would file the

Stipulation and withdraw the pending appeal.  Attached hereto as Exhibit 6 is a true and correct copy of my June 12, 2013 email to which was attached a copy of the bond attached hereto as Exhibit 1.

24.     In response, Mr. Greer referred back to his May 15 and May 17 emails, and confirmed that Leeward intended to enforce the Judgment absent an appeal bond or a court-ordered stay.  Attached hereto as Exhibit 7 is a true and correct copy of Mr. Greer's June 12, 2013 responding email.

25.     I have since advised Mr. Greer orally that if Leeward took steps to enforce the Corrected Amended Judgment, AUA would seek immediate action to enforce the Stay Agreement.

26.     The fourteen (14) day stay of enforcement of the Correct Amended Judgment expired on June 25, 2013.

27.     On July 27, 2013, Leeward caused a Writ of Execution to be issued by the Clerk with respect to the Corrected Amended Judgment, in direct violation of the Stay Agreement.  Leeward's act in this regard constituted a breach of the Stay Agreement.

28.     Prior to filing the within application, I contacted Mr. Greer to provide notice and emailed him a set of the papers in support thereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                        _____
                                        JONATHAN S. JEMISON, ESQ.

Dated: June 28, 2013

# EXHIBIT
# 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEEWARD CONSTRUCTION COMPANY, LTD.,

                              Petitioner,

        -against-

AMERICAN UNIVERSITY OF ANTIGUA- COLLEGE
OF MEDICINE AND MANIPAL EDUCATION
AMERICAS, LLC f/k/a GCLR, LLC,

                         Respondents.
-------------------------------------------------------------------X

Bond Number 3348489

Civil Action No. 12-CIV-6280

ECF CASE

UNDERTAKING TO STAY

WHEREAS, **Petitioner Leeward Construction Company, Ltd. ("Leeward")** and **Respondent American University of Antigua – College of Medicine ("AUA")** entered into a Stay Agreement (copy attached as Exhibit 1) as of May 8, 2013 staying enforcement of the Judgment of the United States District Court for the Southern District of New York entered on March 28, 2013 and the Amended Judgment of the United States District Court for the Southern District of New York entered on May 23, 2013 (the "Stay Agreement") pending resolution of an arbitration currently pending between **Leeward** and **AUA** before the American Arbitration Association International Center for Dispute Resolution under Case No. 50 110 T 00118 13 (the "Second Arbitration"), as detailed in the attached Stat Agreement;

WHEREAS, pursuant to the Stay Agreement, **AUA** is required to post a bond in the amount of **ONE MILLION SEVENTY THREE THOUSAND AND 00/100ths ($1,073,000)** to secure its obligations under the Stay Agreement;

NOW, THEREFORE the **SureTec Insurance Company** having an office and principal place of business at 1330 Post Oak Boulevard, Houston TX 77056 and authorized by the State of New York to execute bonds in the State of New York having an office at 60 East 42nd Street,

1

Suite 965, New York, NY 10165, does hereby undertake pursuant to the said Stay Agreement in the sum of **ONE MILLION SEVENTY THREE THOUSAND AND 00/100ths ($1,073,000)**, that **AUA** will pay to the **Leeward** that portion of the Amended Judgment, if any, that may be due and owing to **Leeward** when due, in accordance with the terms of the Stay Agreement attached hereto, which is incorporated by reference herein.

PROVIDED, HOWEVER, that under no condition shall the liability hereunder exceed the sum of **ONE MILLION SEVENTY THREE THOUSAND AND 00/100ths ($1,073,000)**.

Dated:  New York, New York
        June 11ᵗʰ  2013

**SureTec Insurance Company**

By: _Margaret M McLaughlin_

Margaret McLaughlin,    Attorney-In-Fact

2

**Surety Acknowledgment**

STATE OF        **New York**

COUNTY OF     **New York**

On the 11th day of June, 2013, before me personally came Margaret McLaughlin, resides at 60 East 42nd Street, New York, New York, State of New York, that she is Attorney-In-Fact of **SureTec Insurance Company,** described in and which executed the within instrument; that she knows the corporate seal of said corporation; that the seal affixed to said instrument is such corporate seal; that is was so affixed by the Board of Directors of said corporation, and that he signed his name thereto by like order; and that the **SureTec Insurance Company** is duly authorized to transact business in the State of New York in pursuance of the statues in such case made and provided; that the Superintendent of Insurance of the State of New York, has, pursuant to Chapter 28 of the Consolidated Laws of the State of New York, known as the Insurance Law, issued to the **SureTec Insurance Company** a Certificate of Solvency and of Qualification to become surety or guarantor on all bonds, undertakings, recognizances, guaranties and other obligations required or permitted by law; and that such certificate has not been revoked.

Notary Public

ANITA HUNTER
**Notary** Public, State of New York
NO. 01HU4828371
Qualified in Richmond County
Commission Expires April 30, 20 15

POA #: 3210004

# SureTec Insurance Company
## LIMITED POWER OF ATTORNEY

***Know All Men by These Presents,*** That SURETEC INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Texas, and having its principal office in Houston, Harris County, Texas, does by these presents make, constitute and appoint

Anita Hunter, Carol Levine, Sybil Levine, Margaret McLaughlin, Maria Sponza

its true and lawful Attorney-in-fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings or other instruments or contracts of suretyship to include waivers to the conditions of contracts and consents of surety for:

Three Million and 00/100 Dollars ($3,000,000.00)

and to bind the Company thereby as fully and to the same extent as if such bond were signed by the President, sealed with the corporate seal of the Company and duly attested by its Secretary, hereby ratifying and confirming all that the said Attorney-in-fact may do in the premises. Said appointment shall continue in force until _____8/30/2015_____ and is made under and by authority of the following resolutions of the Board of Directors of the SureTec Insurance Company:

*Be it Resolved,* that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-in-Fact* may be given full power and authority for and in the name and on behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved,* that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached. *(Adopted at a meeting held on 20th of April, 1999.)*

***In Witness Whereof,*** SURETEC INSURANCE COMPANY has caused these presents to be signed by its President, and its corporate seal to be hereto affixed this 21st day of March, A.D. 2013.

SURETEC INSURANCE COMPANY

By: _____
John Knox Jr., President

State of Texas          ss:
County of Harris

On this 21st day of March, A.D. 2013 before me personally came John Knox Jr., to me known, who, being by me duly sworn, did depose and say, that he resides in Houston, Texas, that he is President of SURETEC INSURANCE COMPANY, the company described in and which executed the above instrument; that he knows the seal of said Company; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Company; and that he signed his name thereto by like order.



JACQUELYN MALDONADO
Notary Public
State of Texas
My Comm. Exp. 5/18/2017

Jacquelyn Maldonado, Notary Public
My commission expires May 18, 2017

I, M. Brent Beaty, Assistant Secretary of SURETEC INSURANCE COMPANY, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Company, which is still in full force and effect; and furthermore, the resolutions of the Board of Directors, set out in the Power of Attorney are in full force and effect.

Given under my hand and the seal of said Company at Houston, Texas this 11th day of June, 2013, A.D.

M. Brent Beaty, Assistant Secretary

Any instrument issued in excess of the penalty stated above is totally void and without any validity.
For verification of the authority of this power you may call (713) 812-0800 any business day between 8:00 am and 5:00 pm CST.

# SURETEC INSURANCE COMPANY

1330 Post Oak Blvd., Suite 1100

Houston, Texas   77056

(713) 812-0800

## Financial Information:

| As of: | Dec. 31, 2009 | Dec. 31, 2010 | Dec. 31, 2011 |
|---|---|---|---|
| Total Assets | $103,723,699 | $115,996,536 | $122,816,131 |
| Total Liabilities | $44,135,796 | $36,558,010 | $44,135,796 |
| Asset to Liability Ratio | 2.3 | 2.3 | 2.1 |
| Capital | $5,000,000 | $5,000,000 | $5,000,000 |
| Net Surplus | $54,587,902 | $62,400,576 | $61,447,182 |
| Net Life Ins | N/A | N/A | N/A |

## Premiums:

| As of: | Dec. 31, 2009 | Dec. 31, 2010 | Dec. 31, 2011 |
|---|---|---|---|
| Life and Annuities | N/A | N/A | N/A |
| Accident and Health | $0 | $0 | $0 |
| Property and Casualty | $25,548,522 | $22,482,231 | $18,257,067 |
| Total Texas Premium | $25,548,522 | $22,482,231 | $18,257,067 |
| National Premium | $41,572,718 | $46,273,274 | $50,023,232 |

CERTIFICATE OF SOLVENCY UNDER SECTION 1111 OF THE NEW YORK INSURANCE LAW

### STATE OF NEW YORK

### DEPARTMENT OF FINANCIAL SERVICES

It is hereby certified that

### SURETEC INSURANCE COMPANY

Of Houston, Texas

a corporation organized under the laws of the State of Texas and duly authorized to transact the business of insurance in this State, is qualified to become surety or guarantor on all bonds, undertakings, recognizances, guaranties and other obligations required or permitted by law; and that the said corporation is possessed of a capital and surplus including gross paid-in and contributed surplus and unassigned funds (surplus) aggregating the sum of $69,333,286 (Capital $5,000,000) as is shown by its sworn financial statement for the Third Quarter of September 30, 2012, on file in this Department, prior to audit.

The said corporation cannot lawfully expose itself to loss on any one risk or hazard to an amount exceeding 10% of its surplus to policyholders, unless it shall be protected in excess of that amount in the manner provided in Section 4118 of the Insurance Law of this State.



In Witness Whereof, I have here-
unto set my hand and affixed the
official seal of this Department
at the City of Albany, this 20th
day of November, 2012

Benjamin M. Lawsky
Superintendent

By Jacqueline Catalfamo

Jacqueline Catalfamo
Special Deputy Superintendent

www.dfs.ny.gov

## STAY AGREEMENT

This Stay Agreement (the "Agreement") is made as of May 8, 2013, by and between Leeward Construction Company, Ltd., an Antiguan corporation ("Leeward") and American University of Antigua – College of Medicine, an Antiguan corporation ("AUA").

WHEREAS, Leeward and AUA conducted an arbitration before the American Arbitration Association International Center for Dispute Resolution under Case No. 50 110 T 00075 11 (the "First Arbitration");

WHEREAS, on June 22, 2012, the tribunal issued an arbitration award in the First Arbitration: (a) in favor of Leeward on certain claims it had asserted against AUA; and (b) in favor of AUA on certain counterclaims it had asserted against Leeward, which award was modified on August 8, 2012 (the "Award");

WHEREAS, the monies due and owing Leeward and AUA pursuant to the Award remain outstanding;

WHEREAS, on August 16, 2012, Leeward filed a Petition to confirm the Award in the United States District Court for the Southern District of New York in a proceeding styled entitled *Leeward Construction Company, Ltd. v. American University of Antigua – College of Medicine, et al.*, Case No. 12-CV-06280 (LAK) (the "Action");

WHEREAS, on March 28, 2013, a Judgment was entered in the Action confirming the Award (the "Judgment"), a copy of which is attached hereto as Exhibit 1;

WHEREAS, on April 24, 2013, Leeward filed a motion to amend the Judgment so as to reduce the Judgment to a money judgment in the net amount due Leeward under the Award, with interest (the "Motion to Amend"), which motion seeks the entry of a proposed Amended

1

Judgment in Leeward's favor in the net amount of $910,804.49 as of April 23, 2013, plus interest at a rate of 7% per annum until paid;

WHEREAS, a second arbitration is pending between Leeward and AUA before the American Arbitration Association International Center for Dispute Resolution under Case No. 50 110 T 00118 13 (the "Second Arbitration");

WHEREAS, Leeward has asserted a claim in the amount of US $30,672.80 (exclusive of interest) against AUA in the Second Arbitration, and AUA has asserted a counterclaim against Leeward in the amount of US $1,334,854.21 (exclusive of interest) in the Second Arbitration; and

WHEREAS, AUA and Leeward have reached an agreement that mutually serves to (a) secure payment by AUA of (i) the Judgment or any Amended Judgment that may be entered and (ii) Leeward's claim in the Second Arbitration; and (b) secure payment by Leeward of AUA's counterclaim in the Second Arbitration to the extent of the monies due Leeward under the Judgment;

NOW, THEREFORE, Leeward and AUA agree as follows:

1.      Leeward shall cease any and all efforts to execute on the Judgment, or any Amended Judgment that may be entered (the "Amended Judgment"), pending the issuance of an arbitration award by the tribunal in the Second Arbitration, except that Leeward shall be permitted to file the Motion to Amend to seek entry of an Amended Judgment.

2.      Within seven (7) days of execution of this Agreement, the parties shall file a Stipulation and Consent Order staying execution of the Judgment/Amended Judgment in the

2

form attached hereto as Exhibit 2.  Notwithstanding the express intent of Leeward and AUA to seek entry of the Stipulation and Consent Order, Leeward and AUA shall be bound by the mutual obligations set forth in this Agreement regardless of whether the Court enters the Stipulation and Consent Order submitted.  Leeward and AUA further agree that both shall cooperate in modifying the form of the Stipulation and Consent Order attached hereto as Exhibit 2 to the extent necessary to facilitate its entry by the Court.

3.    To secure payment of the Judgment/Amended Judgment, AUA shall post security in the form of a bond issued by a surety company authorized by the laws of the State of New York to transact business and certified by the New York State Superintendent of Insurance under the provisions of Insurance Law § 1111 or who holds a certificate of authority from the Secretary of the U.S. Treasury.  The bond shall be in the amount the amount of $1,073,000.00, which is presently sufficient to fully secure both the Judgment/Amended Judgment and Leeward's claim in the Second Arbitration, plus interest on such Judgment/Amended Judgment and such claim at a rate of 7% per annum through April 23, 2015.  To the extent AUA is required to maintain its bond beyond April 23, 2015, AUA shall be obligated to increase the amount of its bond to cover additional interest that may accrue in no less than three (3) month increments, as and when necessary, to ensure that it remains sufficient in amount to fully secure Leeward.  If an increase in the amount of the bond becomes necessary and AUA fails to increase the amount of the bond as required, AUA shall be liable for actual attorneys' fees and expenses incurred by Leeward to seek enforcement of this provision.

4.      Upon issuance of an award by the tribunal in the Second Arbitration, the parties shall determine the net amount due to either Leeward or AUA, taking into consideration: (a) the Judgment/Amended Judgment; and (b) the award, whether in favor of Leeward or AUA, issued in the Second Arbitration.

5.      To the extent Leeward is entitled to a net award, such net award, including interest, shall be paid within sixty (60) days of the issuance of the award in the Second Arbitration by AUA and/or from the security posted by AUA pursuant to Paragraph 3 of this Agreement, with the source of such payment being within AUA's sole discretion. Payment shall be to "Lewis & Greer, P.C., as attorney" and shall be in U.S. dollars, only, subject to the following:

(a)      If AUA moves to vacate or modify the award issued in the Second Arbitration prior to the expiration of the sixty (60) day period, then AUA shall not be obligated to pay Leeward as set forth in this Paragraph unless and until Leeward posts security in the form of a bond issued by a surety company authorized by the laws of the State of New York to transact business and certified by the New York State Superintendent of Insurance under the provisions of Insurance Law § 1111 or who holds a certificate of authority from the Secretary of the U.S. Treasury, to secure the amount of such payment made to Leeward. Such bond shall remain in place during the pendency of AUA's motion to vacate or modify the award issued in the Second Arbitration. If the award is vacated in full only, such bond shall continue to remain in place through any further proceedings until the claims in the Second Arbitration are finally resolved and confirmed. If Leeward elects payment and posts a bond and AUA's motion to vacate or

4

modify is denied, then AUA agrees to reimburse Leeward for the costs incurred to obtain the bond.

(b)      If AUA moves to vacate or modify the award issued by the tribunal in the Second Arbitration as provided in subparagraph (a) and Leeward does not elect to post a bond in exchange for receiving payment while AUA pursues such motion, the stay of execution on the Judgment/Amended Judgment shall remain in place, as will AUA's bond securing such Judgment/Amended Judgment, during the pendency of the AUA's motion to vacate or modify the award issued in the Second Arbitration. If the award is vacated in full only, such stay and such bond shall continue to remain in place through any further proceedings until the claims in the Second Arbitration are finally resolved and confirmed. In the event Leeward thereafter remains entitled to a net award, Leeward shall be paid the net award then due it by AUA and/or from the security provided by AUA within ten (10) days of any court order denying AUA's motion to vacate or, if the award is vacated, upon issuance of any confirmed award that results from further proceedings. Upon receipt of payment of the net award plus interest due and owing in accordance with the Paragraph, Leeward shall thereafter file a Satisfaction of Judgment with the United States District Court for the Southern District of New York. In the event AUA and/or the surety fails to make payment within the time frames set forth in this Paragraph, AUA shall be liable for actual attorneys' fees and expenses incurred to collect the Judgment/Amended Judgment that may be entered, including any enforcement action against the surety/bond.

6. To the extent AUA it entitled to a net award, then sixty (60) days after the issuance of an award in the Second Arbitration, the security posted by AUA shall be released and returned to AUA and AUA's award shall be deemed partially satisfied to the extent of the

5

Judgment/Amended Judgment, inclusive of interest, due to Leeward on the date such award is issued. In that event, the Judgment/Amended Judgment against AUA shall be deemed satisfied in full, and Leeward shall thereafter file a Satisfaction of Judgment with the United States District Court for the Southern District of New York, subject to the following: If Leeward moves to vacate or modify the award issued in the Second Arbitration within sixty (60) days of its issuance, then AUA's bond and Leeward's stay of execution on the Judgment/Amended Judgment shall remain in place during the pendency of a motion by Leeward to vacate or modify the award. If the award is vacated in full only, both AUA's bond and Leeward's stay of execution on the Judgment/Amended Judgment shall continue to remain in place until the claims in the Second Arbitration are finally resolved and confirmed. In the event AUA thereafter remains entitled to a net award, the security posted by AUA shall be released and returned to AUA within ten (10) days of any court order denying Leeward's motion to vacate or, if the award is vacated, upon issuance of any confirmed award that results from further proceedings. AUA's award shall be deemed partially satisfied to the extent of the Judgment/Amended Judgment, inclusive of interest, due to Leeward on the date such decision or award is issued. In such event, the Judgment/Amended Judgment against AUA shall be deemed satisfied in full, and Leeward shall thereafter file a Satisfaction of Judgment with the United States District Court for the Southern District of New York.

7.     In consideration of the stay of execution referenced in Paragraph 1 and 2, above, AUA agrees to waive its right to appeal the Judgment/Amended Judgment. Such waiver shall be effective upon full execution of this Agreement.

8.     This Agreement constitutes the entire and complete understanding and agreement between the parties hereto concerning the matters set forth herein, and there are no understandings and agreements, oral or otherwise, that are not reflected herein. This Agreement may not be clarified, modified, changed or amended except in a writing signed by each of the parties hereto.

9.     Leeward and AUA were represented by counsel and this Agreement was negotiated by counsel. Each party and counsel for each party to this Agreement have reviewed this Agreement and have participated in its drafting and, accordingly, no party shall attempt to invoke the rule of construction to the effect that ambiguities, if any, are to be resolved against the drafting party.

10.     If any provision of this Agreement, or the application thereof to any person or circumstance, is invalid or unenforceable in any jurisdiction: (a) a substitute and equitable provision shall be substituted therefore in order to carry out, so far as may be valid and enforceable in such jurisdiction, the intent and purpose of the invalid or unenforceable provision; and (b) the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall the invalidity or unenforceability of such provisions affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

11.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the doctrine of conflicts of law. The Federal and

7

States Courts within the State of New York shall have exclusive jurisdiction over any claim arising from this Agreement, and Leeward and AUA each consent and agree to be subject to the jurisdiction of said Courts for the limited purpose of adjudicating any such disputes arising out of this Agreement. Further, the parties agree that service of any such action commenced pursuant to this paragraph of the Agreement shall be deemed effective if service is made by FedEx upon Leeward to its counsel of record: J. Scott Greer, Esq., Lewis & Greer, P.C., 510 Haight Avenue, Suite 202, Poughkeepsie, New York 12603, and to AUA to its counsel of record: Jonathan S. Jemison, Esq., Sills Cummis & Gross, P.C., 30 Rockefeller Center, New York, New York 10112.

12.     This Agreement may be executed in one or more counterparts, each of which shall be an original as against the party who signed it, and all of which shall constitute one and the same instrument. Signatures may be transmitted by facsimile or email.

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

Leeward Construction Company, Ltd.,

By: _____
Its: _____

American University of Antigua – College of Medicine

By: _____
Its: _____

8

# EXHIBIT

# 2

**Jonathan Jemison**

| | |
|---|---|
| **From:** | J. Scott Greer <jsgreer@lewisgreer.com> |
| **Sent:** | Wednesday, May 15, 2013 11:34 AM |
| **To:** | Jonathan Jemison |
| **Cc:** | 'Veronica A. McMillan Esq.' |
| **Subject:** | Leeward w/ AUA |

Jonathon,

Yesterday, I participated in the pre-hearing conference with Leonard Sclafani with respect to the "ABST arbitration." During the conference, Sclafani advised for the first time that your client intends to amend its counter-claim in that arbitration to assert a claim for construction defects, which he did not define or quantify. This obviously changes the dynamics of the proposed "stay agreement." Quite frankly, if you knew about the AUA's intent to assert a construction defect claim in the ABST arbitration (or even in a separate arbitration) and withheld that information from Veronica and me, then you are as pathetic, slimy, and unethical as your client; and if you didn't know about the your client's intent, then I have to assume that's the result of willful blindness. ***Regardless, we hereby place the "stay agreement" on hold until we discuss these latest developments with Leeward.*** I'm not saying one way or the other whether Leeward will withdraw from the stay agreement (which we have yet to sign and file) as a result of your client's fraudulent withholding of a material fact, but we do need to reconsider all of our options.

Please note that I am unavailable to speak with my client until Friday at the earliest and therefore, please do not call or email me every fifteen minutes asking for our intent.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315



www.lewisgreer.com

*NOTICE: This message, together with any attachments, is intended only for the addressee. It may contain information which is legally privileged, confidential, and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use, or any action or reliance on this communication is strictly prohibited. If you are not the intended recipient, please notify Lewis & Greer, P.C. immediately by replying to this message or by sending an e-mail to info@lewisgreer.com and destroy all copies of this message and any attachments. Thank you.*

*IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the*

*purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.*

# EXHIBIT

# 3

**Jonathan Jemison**

| | |
|---|---|
| **From:** | Jonathan Jemison |
| **Sent:** | Thursday, May 16, 2013 10:48 AM |
| **To:** | 'J. Scott Greer' |
| **Cc:** | 'Veronica A. McMillan Esq.' |
| **Subject:** | RE: Leeward w/ AUA |
| **Attachments:** | Scan001.PDF |

Scott:

I obviously disagree with your inappropriate personal attacks and will not justify them with a response.  As you know, the agreement was fully executed on Monday, May 13.   That agreement requires that the parties file the Stipulation and Consent Order within seven (7) days of full execution (*i.e.*, by May 20).  Attached is an executed copy.  Please have you or Veronica sign and return it to me so I can file it by COB on Monday.

**Jonathan Jemison**
Of Counsel



website | bio | vCard | newsroom | email

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047 | f (973) 643-6500   map

---

**From:** J. Scott Greer [mailto:jsgreer@lewisgreer.com]
**Sent:** Wednesday, May 15, 2013 11:34 AM
**To:** Jonathan Jemison
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** Leeward w/ AUA

Jonathon,

Yesterday, I participated in the pre-hearing conference with Leonard Sclafani with respect to the "ABST arbitration."  During the conference, Sclafani advised for the first time that your client intends to amend its counter-claim in that arbitration to assert a claim for construction defects, which he did not define or quantify.  This obviously changes the dynamics of the proposed "stay agreement."  Quite frankly, if you knew about the AUA's intent to assert a construction defect claim in the ABST arbitration (or even in a separate arbitration) and withheld that information from Veronica and me, then you are as pathetic, slimy, and unethical as your client; and if you didn't know about the your client's intent, then I have to assume that's the result of willful blindness.   ***Regardless, we hereby place the "stay agreement" on hold until we discuss these latest developments with Leeward.***   I'm not saying one way or the other whether Leeward will withdraw from the stay agreement (which we have yet to sign and file) as a result of your client's fraudulent withholding of a material fact, but we do need to reconsider all of our options.

Please note that I am unavailable to speak with my client until Friday at the earliest and therefore, please do not call or email me every fifteen minutes asking for our intent.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315

_____



_____

www.lewisgreer.com

*NOTICE: This message, together with any attachments, is intended only for the addressee.  It may contain information which is legally privileged, confidential, and/or exempt from disclosure.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use, or any action or reliance on this communication is strictly prohibited.  If you are not the intended recipient, please notify Lewis & Greer, P.C. immediately by replying to this message or by sending an e-mail to info@lewisgreer.com and destroy all copies of this message and any attachments.  Thank you.*

*IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.*

.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
LEEWARD CONSTRUCTION COMPANY, LTD.,

                              Petitioner,

         -against-

AMERICAN UNIVERSITY OF ANTIGUA- COLLEGE
OF MEDICINE AND MANIPAL EDUCATION
AMERICAS, LLC f/k/a GCLR, LLC,

                             Respondents.
---------------------------------------------------------------------X

Civil Action No. 12-CIV-6280

ECF CASE

STIPULATION AND CONSENT
ORDER FOR A STAY OF
EXECUTION

     IT IS HEREBY STIPULATED AND AGREED, by and through the undersigned counsel

for American University of Antigua – College of Medicine  ("AUA") and Leeward Construction

Company, Ltd. ("Leeward"), that Leeward's right to execute on the Judgment entered by this

Court on March 28, 2013, or any Amended Judgment that may be entered thereafter, shall be

stayed pending the resolution of a separate arbitration pending between Leeward and AUA

before the American Arbitration Association International Center for Dispute Resolution under

Case No. 50 110 T 00118 13 (the "Second Arbitration").

IT IS HEREBY FURTHER STIPULATED AND AGREED, that the terms of this

Stipulation and Consent Order, including the security AUA shall provide to secure the Judgment

and Amended Judgment, pending resolution of an award in the Second Arbitration are as set

forth in the Stay Agreement entered into by and between the parties as of May 8, 2013.

Dated:  New York, New York
      May /6 , 2013

LEWIS & GREER, P.C.                    SILLS CUMMIS & GROSS, P.C.

By:_____           By:_____
    Veronica A. McMillan, RN, BSN, Esq.        Jonathan S. Jemison, Esq.

Attorneys for *Leeward Construction*        Attorneys for *American University of Antigua –*
*Company, Ltd.*                         *College of Medicine*
510 Haight Avenue, Suite 202          30 Rockefeller Plaza
Poughkeepsie, New York 12603        New York, NY 10112
Tel:  (845) 454-1200                    Tel:  (212) 653-7000
Fax:  (845) 454-3315                 Fax: (212) 643-6500

SO ORDERED:

_____
Judge Lewis A. Kaplan, U.S.D.J.

# EXHIBIT
# 4

**Jonathan Jemison**

| | |
|---|---|
| **From:** | J. Scott Greer <jsgreer@lewisgreer.com> |
| **Sent:** | Friday, May 17, 2013 5:19 PM |
| **To:** | Jonathan Jemison |
| **Cc:** | 'Veronica A. McMillan Esq.' |
| **Subject:** | RE: Leeward w/ AUA |

Jonathon,

Please save your soapbox for someone who actually cares.  You should recall that during the first arbitration and in particular, the five day hearing in Puerto Rico, both you and Olinsky repeatedly attacked me personally.  The purpose of my comments, however, is not to get even for your personal attacks upon me (that's not my style), but to emphasize the obvious – that you and/or your client deliberately withheld material information as to your client's intent with respect to the scope of the second arbitration.  You never mentioned or even suggested while negotiating the stay agreement that your client planned to expand the scope of the second arbitration beyond the ABST claims to include alleged construction defects.  Your client most certainly knew about the construction defect claims when we were negotiating the stay agreement and if you had been honest about your client's intent to try to include those claims in the ABST arbitration, then we would have immediately terminated the negotiations (which is probably why you and/or your client withheld the information in the first place).  While you and/or Sclafani might call this sharp lawyering, decent and honest people would equate the lack of candor with a con-man's bait and switch.

***Please be advised that Leeward hereby rejects the stay agreement in its entirety as a result of your client's dishonesty in failing to disclose a material fact with respect to the ABST arbitration.***  We hereby demand that you, your law firm, and your client retain and preserve all paper and electronic communications and other documents concerning your client's intent to amend its counterclaim in the ABST arbitration to include claims related to alleged construction defects since "what you knew and when you knew it" is obviously relevant to any legal proceeding that the AUA might commence to resurrect or enforce the stay agreement.

Enjoy your weekend.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315



www.lewisgreer.com

**From:** Jonathan Jemison [mailto:JJemison@sillscummis.com]
**Sent:** Thursday, May 16, 2013 10:48 AM
**To:** 'J. Scott Greer'
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** RE: Leeward w/ AUA

Scott:

I obviously disagree with your inappropriate personal attacks and will not justify them with a response.  As you know, the agreement was fully executed on Monday, May 13.   That agreement requires that the parties file the Stipulation and Consent Order within seven (7) days of full execution (*i.e.*, by May 20).  Attached is an executed copy.  Please have you or Veronica sign and return it to me so I can file it by COB on Monday.

**Jonathan Jemison**
Of Counsel

| ☒ |
|---|

**website | bio | vCard | newsroom | email** | ☒ | ☒ | ☒ |

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047 | f (973) 643-6500  **map**

**From:** J. Scott Greer [mailto:jsgreer@lewisgreer.com]
**Sent:** Wednesday, May 15, 2013 11:34 AM
**To:** Jonathan Jemison
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** Leeward w/ AUA

Jonathon,

Yesterday, I participated in the pre-hearing conference with Leonard Sclafani with respect to the "ABST arbitration."  During the conference, Sclafani advised for the first time that your client intends to amend its counter-claim in that arbitration to assert a claim for construction defects, which he did not define or quantify.  This obviously changes the dynamics of the proposed "stay agreement."  Quite frankly, if you knew about the AUA's intent to assert a construction defect claim in the ABST arbitration (or even in a separate arbitration) and withheld that information from Veronica and me, then you are as pathetic, slimy, and unethical as your client; and if you didn't know about the your client's intent, then I have to assume that's the result of willful blindness.   ***Regardless, we hereby place the "stay agreement" on hold until we discuss these latest developments with Leeward.***   I'm not saying one way or the other whether Leeward will withdraw from the stay agreement (which we have yet to sign and file) as a result of your client's fraudulent withholding of a material fact, but we do need to reconsider all of our options.

Please note that I am unavailable to speak with my client until Friday at the earliest and therefore, please do not call or email me every fifteen minutes asking for our intent.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315

---



<u>www.lewisgreer.com</u>

*NOTICE: This message, together with any attachments, is intended only for the addressee.  It may contain information which is legally privileged, confidential, and/or exempt from disclosure.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use, or any action or reliance on this communication is strictly prohibited.  If you are not the intended recipient, please notify Lewis & Greer, P.C. immediately by replying to this message or by sending an e-mail to <u>info@lewisgreer.com</u>  and destroy all copies of this message and any attachments.  Thank you.*

*IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.*

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

# EXHIBIT
# 5

**Jonathan Jemison**

| | |
|---|---|
| **From:** | Jonathan Jemison |
| **Sent:** | Wednesday, May 22, 2013 12:40 PM |
| **To:** | 'J. Scott Greer' |
| **Cc:** | 'Veronica A. McMillan Esq.' |
| **Subject:** | RE: Leeward w/ AUA |

Scott:

The parties spent weeks negotiating the specific terms of the stay agreement.  During that time, there were no negotiations over AUA's procedural rights under the rules governing the Second Arbitration other than Leeward's request that AUA agree to reduce the number of arbitrators from three to one as a condition for the stay, which AUA rejected.  Leeward never asked AUA to waive any other rights it had under the governing arbitration rules, such as its right to amend its counterclaims , and AUA never agreed to so waive any such rights.  Simply stated, AUA's procedural right to amend its counterclaim in the Second Arbitration was never discussed during the negotiations.  In fact, it was never discussed despite the fact that AUA previously told both the arbitrators and Leeward in writing that it was in the process of compiling counterclaims against Leeward for construction defects when AUA requested more time to file an Answering Statement in the arbitration.  Given these facts, your claim that AUA "deliberately withheld material information as to [its] intent with respect to the scope of the second arbitration" is without basis.

Notwithstanding your pronouncement that Leeward "hereby rejects the stay agreement in its entirety," the fact remains that the parties entered into an enforceable agreement and we expect that your client will honor it.  Please be advised that should Leeward take any action that is inconsistent with the stay agreement, AUA will seek to hold Leeward liable for any and all damages it incurs as a result.

Finally, please note that  because of the position you have taken, AUA needs to protect its appeal rights and cannot withdraw its appeal  at this time.  As you know from the appellate docket, AUA is obligated to file Forms C and D to avoid a dismissal of its appeal, and thus plans to do so.

**Jonathan Jemison**
Of Counsel



website | bio | vCard | newsroom | email 

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047  | f (973) 643-6500  **map**

---

**From:** J. Scott Greer [mailto:jsgreer@lewisgreer.com]
**Sent:** Friday, May 17, 2013 5:19 PM
**To:** Jonathan Jemison
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** RE: Leeward w/ AUA

Jonathon,

Please save your soapbox for someone who actually cares. You should recall that during the first arbitration and in particular, the five day hearing in Puerto Rico, both you and Olinsky repeatedly attacked me personally. The purpose of my comments, however, is not to get even for your personal attacks upon me (that's not my style), but to emphasize the obvious – that you and/or your client deliberately withheld material information as to your client's intent with respect to the scope of the second arbitration. You never mentioned or even suggested while negotiating the stay agreement that your client planned to expand the scope of the second arbitration beyond the ABST claims to include alleged construction defects. Your client most certainly knew about the construction defect claims when we were negotiating the stay agreement and if you had been honest about your client's intent to try to include those claims in the ABST arbitration, then we would have immediately terminated the negotiations (which is probably why you and/or your client withheld the information in the first place). While you and/or Sclafani might call this sharp lawyering, decent and honest people would equate the lack of candor with a con-man's bait and switch.

***Please be advised that Leeward hereby rejects the stay agreement in its entirety as a result of your client's dishonesty in failing to disclose a material fact with respect to the ABST arbitration.*** We hereby demand that you, your law firm, and your client retain and preserve all paper and electronic communications and other documents concerning your client's intent to amend its counterclaim in the ABST arbitration to include claims related to alleged construction defects since "what you knew and when you knew it" is obviously relevant to any legal proceeding that the AUA might commence to resurrect or enforce the stay agreement.

Enjoy your weekend.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315



www.lewisgreer.com

---

**From:** Jonathan Jemison [mailto:JJemison@sillscummis.com]
**Sent:** Thursday, May 16, 2013 10:48 AM
**To:** 'J. Scott Greer'
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** RE: Leeward w/ AUA

Scott:

I obviously disagree with your inappropriate personal attacks and will not justify them with a response. As you know, the agreement was fully executed on Monday, May 13. That agreement requires that the parties file the Stipulation and Consent Order within seven (7) days of full execution (i.e., by May 20). Attached is an executed copy. Please have you or Veronica sign and return it to me so I can file it by COB on Monday.

**Jonathan Jemison**
Of Counsel



website | bio | vCard | newsroom | email 

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047 | f (973) 643-6500   **map**

---

**From:** J. Scott Greer [mailto:jsgreer@lewisgreer.com]
**Sent:** Wednesday, May 15, 2013 11:34 AM
**To:** Jonathan Jemison
**Cc:** 'Veronica A. McMillan Esq.'
**Subject:** Leeward w/ AUA

Jonathon,

Yesterday, I participated in the pre-hearing conference with Leonard Sclafani with respect to the "ABST arbitration." During the conference, Sclafani advised for the first time that your client intends to amend its counter-claim in that arbitration to assert a claim for construction defects, which he did not define or quantify. This obviously changes the dynamics of the proposed "stay agreement." Quite frankly, if you knew about the AUA's intent to assert a construction defect claim in the ABST arbitration (or even in a separate arbitration) and withheld that information from Veronica and me, then you are as pathetic, slimy, and unethical as your client; and if you didn't know about the your client's intent, then I have to assume that's the result of willful blindness. ***Regardless, we hereby place the "stay agreement" on hold until we discuss these latest developments with Leeward.*** I'm not saying one way or the other whether Leeward will withdraw from the stay agreement (which we have yet to sign and file) as a result of your client's fraudulent withholding of a material fact, but we do need to reconsider all of our options.

Please note that I am unavailable to speak with my client until Friday at the earliest and therefore, please do not call or email me every fifteen minutes asking for our intent.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel:  845.454.1200
Fax: 845.454.3315

---



_____

www.lewisgreer.com

*NOTICE: This message, together with any attachments, is intended only for the addressee. It may contain information which is legally privileged, confidential, and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use, or any action or reliance on this communication is strictly prohibited. If you are not the intended recipient, please notify Lewis & Greer, P.C. immediately by replying to this message or by sending an e-mail to info@lewisgreer.com and destroy all copies of this message and any attachments. Thank you.*

*IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.*

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

# EXHIBIT
# 6

**Jonathan Jemison**

| | |
|---|---|
| **From:** | Jonathan Jemison |
| **Sent:** | Wednesday, June 12, 2013 12:33 PM |
| **To:** | J. Scott Greer (jsgreer@lewisgreer.com) |
| **Subject:** | AUA/Leeward |
| **Attachments:** | Leeward bond.pdf |

Scott:

In accordance with the fully executed Stay Agreement entered by and between Leeward and AUA as of May 8, 2013, attached is a copy of the surety bond AUA obtained in the amount of $1,073,000.  While, as set forth in  Paragraph 2 of the stay agreement, upon full execution the parties became bound by the obligations set forth in that agreement regardless of whether the Court entered a Stipulation and Consent Order "so ordering" the stay, the parties did agree to file a Stipulation and Consent Order with the Court.  We note that you have not yet executed that document.  Please return a fully executed copy of the Stipulation and Consent Order, and I will  then both file that document and withdraw AUA's pending appeal.

**Jonathan Jemison**
Of Counsel



website | bio | vCard | newsroom | email 

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047  |  f (973) 643-6500   **map**

1

# EXHIBIT
# 7

**Jonathan Jemison**

| | |
|---|---|
| **From:** | J. Scott Greer <jsgreer@lewisgreer.com> |
| **Sent:** | Wednesday, June 12, 2013 6:06 PM |
| **To:** | Jonathan Jemison |
| **Cc:** | 'Veronica A. McMillan Esq.' |
| **Subject:** | RE: AUA/Leeward |

Jonathon,

Please see my email to you dated May 15, 2013 and May 17, 2013. Leeward's position remains unchanged. If your client stipulates that it will not assert or attempt to assert any claim other than the ABST counterclaim in the pending arbitration or otherwise, then we will reconsider our position. Otherwise, Leeward intends to enforce the judgment in the absence of a supersedes bond pending appeal or court ordered stay of enforcement.

In the alternative, your client can "man-up" to the fact that it lost the arbitration fair and square, satisfy the arbitration award, and stop wasting everyone's time and money with frivolous claims and arguments that are going nowhere and could lead to sanctions in view of the most recent arbitration decisions out of the Second Circuit Court and Supreme Court. Indeed, in the spirit of settlement, Leeward may be willing to withdraw its ABST claim and waive future claims in the court system with respect to the "additional works contracts" that the arbitrators ruled are not subject to arbitration in exchange for payment of the net arbitration award. Your client's last settlement offer was $800,000 back in September, 2012, prior to the District Court judgment confirming the arbitration award and your client bargaining position has obviously deteriorated as a result of the confirmation. The difference between your client's last settlement offer and the net arbitration award is undoubtedly a lot less than your client will spend on the appeal of the judgment confirming the first arbitration award, the second arbitration, the confirmation and appeal of the second arbitration award, and the payment of the $30,000 (plus interest) that the AUA repeatedly confessed to owing Leeward in the prior arbitration. If you client has any sense of business ethics, then it will satisfy the judgment and move onto to bigger and better things like medicine and health care.

Scott

J. Scott Greer, Esq.
Lewis & Greer, P.C.
510 Haight Ave.
Poughkeepsie, NY 12603
Tel: 845.454.1200
Fax: 845.454.3315



www.lewisgreer.com

**From:** Jonathan Jemison [mailto:JJemison@sillscummis.com]
**Sent:** Wednesday, June 12, 2013 12:33 PM
**To:** J. Scott Greer (jsgreer@lewisgreer.com)
**Subject:** AUA/Leeward


Scott:

In accordance with the fully executed Stay Agreement entered by and between Leeward and AUA as of May 8, 2013, attached is a copy of the surety bond AUA obtained in the amount of $1,073,000.  While, as set forth in  Paragraph 2 of the stay agreement, upon full execution the parties became bound by the obligations set forth in that agreement regardless of whether the Court entered a Stipulation and Consent Order "so ordering" the stay, the parties did agree to file a Stipulation and Consent Order with the Court.  We note that you have not yet executed that document.  Please return a fully executed copy of the Stipulation and Consent Order, and I will  then both file that document and withdraw AUA's pending appeal.


**Jonathan Jemison**
Of Counsel

 **Sills Cummis & Gross** P.C.

website | bio | vCard | newsroom | email 

One Riverfront Plaza, Newark, NJ 07102
p (973) 643-6047  |  f (973) 643-6500   **map**


NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.