UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| LEEWARD CONSTRUCTION COMPANY, LTD., | Case No. 1:12-CV-06280-LAK/GWG (ECF CASE) |
| Petitioner, | |
| v. | Honorable Lewis A. Kaplan<br>United States District Judge |
| AMERICAN UNIVERSITY OF ANTIGUA – COLLEGE OF MEDICINE and MANIPAL EDUCATION AMERICAS, LLC f/k/a GCLR, LLC, | **DECLARATION OF**<br>**LEONARD SCLAFANI** |
| Respondents. | |

-----------------------------------------------------------x

Leonard Sclafani, being duly sworn, deposes and says:

1.  I am the Senior Vice President and General Counsel of Manipal Education Americas, LLC, agent for American University of Antigua Inc.-- College of Medicine ("AUA"), and unless otherwise stated, I am fully familiar with all of the facts and circumstances set forth herein. I submit this declaration in support of AUA's motion for a stay of execution of the Correct Amended Judgment entered in this case on June 11, 2013.

2.  As detailed herein and in the accompanying Declaration of AUA's outside counsel, Jonathan S. Jemison, Esq. (the "Jemison Declaration"), AUA seeks a stay based on a fully executed agreement to stay execution entered into by and between AUA and Leeward Construction Company, Ltd. ("Leeward") as of May 9, 2013, a true and accurate copy of which is attached hereto as Exhibit 1 (the "Stay Agreement"). Even if the parties had not entered into an enforceable Stay Agreement, as Leeward now contends, AUA submits for the reasons stated

1

herein that a stay of execution is nonetheless warranted, and therefore requests in the alternative that this Court exercise its inherent powers to grant a stay.

**Leeward's Judgment**

3. The Petitioner and now judgment creditor, Leeward, brought this proceeding pursuant to 9 U.S.C. 201 *et seq.* to confirm an arbitration award (the "Award") issued by the American Arbitration Association International Center for Dispute Resolution (the "ICDR"), arising out a contractual dispute related to a construction project in Antigua (the "Project"). A true and correct copy of the Award is attached hereto as Exhibit 2.

4. AUA moved to dismiss the Petition on *forum non conveniens* grounds and/or to vacate or modify the Award. The Court heard oral argument on Leeward's Petition and AUA's motion on December 17, 2012, and reserved decision. In a March 26, 2013 Memorandum and Opinion, this Court confirmed the Award. Judgment was thereafter entered by the Clerk on March 28, 2013. A true and accurate copy of the Judgment is attached hereto as Exhibit 3.

5. On April 25, 2013, Leeward filed a motion, pursuant to Fed. R. Civ. Pr. 59(a), to amend the Judgment so as to reduce it to a monetary judgment consistent with the Award. AUA did not oppose the motion, and this Court entered the Amended Judgment on May 23, 2013. Under the Amended Judgment, Leeward's net award, inclusive of interest as of April 23, 2013, is $910,804.49. A true and accurate copy of the Amended Judgment is attached hereto as Exhibit 4.

6. Pursuant to Fed. R. Civ. P. 62, the fourteen (14) day automatic stay of enforcement on the Amended Judgment expired on June 6, 2013.

7. On June 11, 2013, the Court entered, at Leeward's request, a Correct Amended Judgment. Under the Corrected Amended Judgment, Leeward's net award, inclusive of interest

as of June 11, 2013, is $966,026.79. A true and accurate copy of the Corrected Amended Judgment is attached hereto as Exhibit 5.

8.     Pursuant to Fed. R. Civ. P. 62, the fourteen (14) day automatic stay of enforcement on the Corrected Amended Judgment expired on June 25, 2013.

9.     On June 27, 2013, the Clerk issued a Writ of Execution in connection with the Corrected Amended Judgment. A true and accurate copy of the Court's electronic notice of this docket entry is attached hereto as Exhibit 6.

**The Second Arbitration**

10.    On February 7, 2013, while the parties were awaiting a decision on Leeward's Petition and AUA's motion to dismiss, Leeward commenced a separate arbitration against AUA arising out of the Project with the ICDR under case number 50 110 T 00118 13 (the "Second Arbitration"). Specifically, Leeward sought to recover EC $83,059.63/US $30,672.80 in monies that had been treated as a payment by AUA of Antigua and Barbuda Sales Tax ("ABST") during the Project. A true and correct copy of Leeward's claim is attached hereto as Exhibit 7. I am counsel of record for AUA in the Second Arbitration.

11.    Because Leeward's claim was relatively small in amount, the ICDR planned to adjudicate it under its "Fast Track" procedures that are reserved for cases involving less than $75,000 in amount. On February 15, 2013, I wrote to the ICDR on behalf of AUA and requested a thirty (30) day extension of time to submit an Answering Statement. In that e-mail, copying Leeward's lead counsel, J. Scott Greer, Esq., I advised that AUA was "in the process of compiling counterclaims arising from Leeward's incompetent, defective and deficient construction of the [Project]," that the claims would far exceed the Fast Track $75,000 limit, and,

3

given their complexity, additional time was needed to assert them. A true and accurate copy of the February 15, 2013 email is attached hereto as Exhibit 8.

12. In a February 19, 2013 letter, Mr. Greer's law firm partner, Veronica McMillan, Esq., formally opposed AUA's request for an extension, arguing among other things that any counterclaim "related to allegedly defective work performed on the project" should have been brought in the prior arbitration and was now barred. A true and accurate copy of the February 19, 2013 letter is attached hereto as Exhibit 9.

13. AUA was not given the requested extension of time. On February 27, 2013, AUA filed its Answering Statement, a true and accurate copy of which is attached hereto as Exhibit 10. AUA was unable to get its construction defect claims together in time, but AUA did assert a counterclaim to recover EC $3,614,552.41/US $1,334,854.21 in ABST (*i.e.*, Antigua and Barbuda sales tax) that AUA mistakenly paid to Leeward during the course of the Project (the "ABST Claim"). Attached hereto as Exhibit 11 is a true and correct copy of my transmittal email to the ICDR (copying Mr. Greer) submitting AUA's Answer and Counterclaim. In that email I stated that if the ICDR deemed AUA's counterclaim to be untimely, AUA would commence a separate arbitration and seek to have the two cases consolidated as would be its right under the rules governing both arbitrations. At no time did I indicate that AUA was abandoning its construction defect claims.

14. As explained in the Answer and Counterclaim attached hereto as Exhibit 10, the basis of AUA's ABST Claim is that the funds were mistakenly paid to Leeward as reimbursement for taxes that it asserted it had paid, or would pay, to the government of Antigua and Barbuda, despite that: (i) it had not provided any evidence that it paid such taxes; and (ii) that it was Leeward's, and not AUA's, obligation to pay the sales taxes due on the project under

4

the express provisions of the parties' contract. In this regard, Section 3.6.1 of the General Conditions to the Contract (the "Contract"), entitled "Taxes," unambiguously obligated the Contractor, Leeward, to "pay sales, consumer, use and similar taxes for the Work provided by the Contractor ... ." A true and correct copy of the relevant portions of the Contract is attached hereto as Exhibit 12.

15. Prior to asserting this counterclaim, AUA submitted a claim to the Project architect, Sundaram Architect Pvt. Ltd. ("Sundaram"), seeking recovery of the EC $3,614,552.41/ US $1,334,854.21 in ABST that Leeward wrongfully charged and AUA mistakenly paid. Under Section 4.4.1 of the Contract, claims are to be referred initially to the architect. Section 4.4.5 provides that the architect is to issue a written decision approving or rejecting the claim, which decision is "final and binding," but subject to arbitration. In other words, decisions of the architect are binding until an arbitrator rules it is not. With respect to AUA's ABST claim, the architect approved the claim, and provided its written decision to Leeward's counsel, a true and correct copy of which is attached hereto as Exhibit 13.

16. Leeward submitted its Answer to the Counterclaim on March 15, 2013, a true and correct copy of which is attached hereto as Exhibit 14. Based on Leeward's Affirmative Defenses, Leeward is opposing the ABST Claim on procedural and substantive grounds. Procedurally, Leeward contends, among other things, that the claim is barred by *res judicata*. Substantively, Leeward does not appear to challenge the language of the contract, but rather contends that the parties modified the contract in writing and/or by their conduct.

17. Aside from AUA's contractual argument, AUA also contends that it is entitled to recover the ABST paid to Leeward on the grounds that Leeward failed to pay some or all of the ABST it collected from AUA, as required by Antiguan Law. To date, Leeward has failed to

5

demonstrate that it paid the ABST it collected, including ABST on Leeward's overhead and profits on the work that Leeward itself did on the project and on the materials and equipment that it imported into the country in connection with its work on the Project, all of which were subject to ABST.

18. On June 20, 2013, AUA submitted its constructive defects claim to the architect for disposition. AUA contends that Leeward caused approximately EC $2,630,000/US $974,000 in damages as a result of its faulty construction work. AUA has informed the arbitrators presiding over the Second Arbitration that it intends to amend its Counterclaims once it receives a ruling from the architect (or the passage of thirty (30) days, which triggers the right to commence arbitration under the Contract Documents).

19. It remains an open question whether the arbitrators will allow AUA to amend its Counterclaims at this juncture, or whether AUA will need to pursue its construction defect claims in a separate arbitration.

**The Stay Agreement**

20. On April 12, 2013 -- after the entry of the Judgment but before Leeward moved to amend the Judgment -- AUA had its outside counsel contact Leeward's counsel to give notice that AUA was planning to file an Order to Show Cause to stay execution of the Judgment pending resolution of the Second Arbitration. AUA's counsel provided Leeward's counsel with a copy of the papers and explained that it was seeking a stay because the amount of AUA's counterclaim in the Second Arbitration (the US $1,334,854.21 in ABST payments that the architect ruled Leeward owed AUA), exceeded the amount of the Judgment and, as detailed below, AUA had reason to believe Leeward, an Antiguan entity, was no longer in business and had no assets other than the Judgment to satisfy AUA's allowed claim.

6

21.     As set forth in more detail in the accompanying Declaration of Jonathan S. Jemison, Esq., AUA's outside counsel, when AUA gave notice to Leeward's counsel of its intention to seek a stay, it offered a compromise: if Leeward would agree to a stay of execution pending resolution of the Second Arbitration, AUA would forego its right to appeal the Judgment and provide a bond to secure the Judgment, with interest, for the duration of the stay.

22.     Leeward agreed. AUA and Leeward, through their counsel, then spent the next few weeks negotiating the terms of the Stay Agreement, exchanging several drafts and negotiating numerous details of the parameters of the stay. On May 8, 2013, the parties finally agreed on all terms. Leeward's principal, Eric Linde, executed the Stay Agreement on May 9, 2013 and I counter-signed the agreement on May 13, 2013.

23.     Under the terms of the Stay Agreement, Leeward agreed to stay enforcement of the Judgment and/or the Amended Judgment until the resolution of the Second Arbitration. To secure Leeward's Judgment in the event AUA did not prevail in the Second Arbitration, AUA agreed to obtain a bond in the amount of $1,073,000, which amount was sufficient to cover the Amended Judgment and Leeward's claim in the Second Arbitration, plus interest for two years. AUA further agreed that it would supplement the bond if the passage of time rendered the amount of the security inadequate.

24.     In accordance with the Stay Agreement, AUA obtained a bond in the amount of $1,073,000 on June 12, 2013. Attached hereto as Exhibit 15 is a true and correct copy of the bond. AUA paid the full amount of the premium on the bond in order to secure it and write transferred an amount equal to the face amount of the bond to the surety who issued the bond as security.

25.     Under the Stay Agreement, AUA also agreed to forgo its right to appeal the Judgment upon full execution of the Stay Agreement. While the parties were negotiating the Stay Agreement, AUA filed a Notice of Appeal to preserve its right to pursue an appeal should the parties fail to finalize the agreement on a stay. AUA was about to withdraw the appeal upon full execution of the Stay Agreement when Leeward's counsel suddenly indicated that would renege on its obligations under the Stay Agreement.

**Leeward's Breach of the Stay Agreement**

26.     Specifically, on May 14, 2013, AUA and Leeward conducted a regularly scheduled conference call with the arbitrators on the Second Arbitration for the purpose of discussing scheduling and procedural issues. During that call, I reminded the arbitrators that AUA was still compiling its construction defect claims and advised that AUA intended to amend its counterclaims if and when it was in a position to assert such claims. J. Scott Greer, Esq., who appeared on behalf of Leeward, objected for the same reasons that Leeward set forth in its February 19, 2013 letter, when I first raised the construction defect claims. The arbitrators advised that they would address the issue of whether AUA would be permitted to amend its counterclaim when such new counterclaims were actually filed, and instructed AUA to file them as soon as possible. To date, AUA has not moved to amend its counterclaims to assert its construction defect claims in the Second Arbitration, nor has it commenced a separate arbitration to address those claims (although, per the direction of the Tribunal that the parties were to produce itemized statements of their claims, counterclaims and defenses, AUA did include in its list what it would claim were construction defects for which Leeward was responsible and liable).

27. I learned that on May 15, 2013, the very next day, Mr. Greer e-mailed our outside counsel, Jonathan S. Jemison, Esq., claiming that Mr. Jemison was "pathetic, slimy, and unethical" in that he failed to disclose during the course of his negotiation with Leeward's counsel over the terms of the Stay Agreement AUA's intention to expand the scope of the Second Arbitration to assert construction defect counterclaims. *See* Jemison Declaration, Exhibit 2.

28. The details of the negotiation of the Stay Agreement are set forth in Mr. Jemison's Declaration, as he is the one with personal knowledge of them, but I will say that is outrageous for Leeward to suggest that AUA or its counsel made any misrepresentations or hid the fact that AUA intended to assert construction defect claims. To the contrary, Leeward has known since February 2013 that AUA intended to assert construction defect claims, yet Leeward did not once request AUA to waive its procedural rights to amend its counterclaims in the Second Arbitration as a condition for agreeing to the stay, let alone ask whether AUA intended to pursue those claims.

29. Under the Stay Agreement, AUA and Leeward were to submit within seven (7) days of full execution of the Stay Agreement a Stipulation and Consent Order for execution by the Court so that the parties Stay Agreement would be memorialized as a Court Order. I understand that AUA's counsel requested that Leeward execute the Stipulation and Consent Order, but Leeward refused.

30. Instead, on May 17, 2013, Leeward unilaterally rejected the Stay Agreement based upon its mistaken belief that AUA and its counsel were "dishonest" during negotiations about AUA's intention to pursue its construction defect claims in the Second Arbitration. *See* Jemison Declaration, Ex. 4. Notably, Mr. Greer did not acknowledge, or even mention, that he

9

and Leeward were well aware of AUA's construction defect claims long before the parties discussed the stay agreement.

31. Given Leeward's position, AUA did not withdraw its appeal because it would forever lose the right to appeal the Judgment if it did so, a right AUA is only willing to forego in exchange for the stay Leeward agreed to provide. AUA did, however, proceed with procuring the bond because, as far as AUA is concerned, the Stay Agreement is an enforceable contract.

32. As stated above and in Jemison Declaration, the fourteen (14) day automatic stay of enforcement provided by Fed. R. Civ. Pr. 62 on the Correct Amended Judgment expired on June 25, 2013.

33. As stated above, on July, 27, 2013, Leeward caused a Writ of Execution to be issued by the Clerk's office in direct violation of the Stay Agreement.

34. If permitted to serve the Writ of Execution on AUA and others that may hold AUA's assets, in violation of the Stay Agreement, Leeward will cause immediate harm to AUA, an institution of higher education, and if not enjoined, will cause irreparable harm because it will be extremely difficult to force Leeward, an Antiguan entity, to return monies wrongfully obtained by way of execution in the event this Court grants the within application.

35. AUA, therefore, respectfully requests that the Court "so Order" the Stay Agreement, and temporarily and preliminarily enjoin Leeward from executing on the Corrected Amended Judgment pending resolution of this motion.

### Leeward is Believed to be a Defunct Entity

36. In the prior arbitration, Leeward's Director and co-owner, Eric Linde, submitted a witness statement. A true and correct copy of Mr. Linde's February 2012 Witness Statement is attached hereto as Exhibit 16. In his witness statement, Mr. Linde explained that Leeward is an

Antiguan construction corporation that he formed with Andy Green in 2006, and that it was supported by resources and expertise of Leeward Construction Corp., Mr. Linde's United States-based construction company. *Id.*, ¶ 13.

38. According to Mr. Linde, in addition to the Project, Leeward (and/or its affiliated companies), performed several lucrative projects for Stanford Development Company ("Stanford"), generating annual revenues between US $300,000 and US $4.9 million. *Id.*, ¶ 12. During the arbitration hearing, Mr. Linde admitted that Leeward and its related Antiguan company had "generated significant revenues" for the work they performed for Stanford, but that those revenues ceased in 2009 because Stanford, owned by Allen Stanford, ceased operations in January 2009. A true and correct copy of relevant excerpts of Mr. Linde's testimony is attached hereto as Exhibit 17.

38. Upon information and belief, since Leeward completed its work on the Project in 2010, it has not been engaged in active operations. AUA, which has continued to engage in construction on Antigua since Leeward completed its work on the Project, is not aware of any construction project (major or minor) where Leeward has been engaged in Antigua, or elsewhere.

39. According to Leeward's counsel, as of October 2012 Leeward had its office and principal place of business at All Saints Road, St. John's, Antigua, which is the location they occupied during the time they were working on the Project for AUA. I am aware, however, that these offices have been closed for the past few years, and I am not aware of Leeward occupying any other location on Antigua.

40. Given the foregoing, AUA is concerned that Leeward had no assets other than the Judgment it holds against AUA, leaving AUA is at risk of being left without a means to recover

11

from Leeward the ABST payments should it prevail in the Second Arbitration. It was this concern that motivated AUA to negotiate the Stay Agreement and give up its appeal rights.

41.     AUA disclosed this concern to Leeward's counsel during the course of those negotiations. It is my understanding that at no time since, has Leeward provided any information to rebut those allegations.

42.     AUA, therefore, respectfully requests that regardless of whether the Stay Agreement is enforced, this Court should stay execution of the Amended Judgment pending resolution of the Second Arbitration to avoid the harsh and unfair result, particularly given that AUA has already posted a bond fully secured Leeward for the next two years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
LEONARD SCLAFANI, ESQ.

Dated:  June 27, 2013