UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

        Petitioner,

    v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

        Respondents.

-------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF Case)

Honorable Lewis A. Kaplan
United States District Judge

---

**AMERICAN UNIVERSITY OF ANTIGUA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS ORDER TO SHOW CAUSE SEEKING A STAY OF EXECUTION
OF THE JUNE 11, 2013 CORRECTED AMENDED JUDGMENT**

---

SILLS CUMMIS & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 643-7000

*Attorneys for Respondents
American University in Antigua –
College of Medicine*

Of Counsel and On the Brief:
    Jonathan S. Jemison

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 5

ARGUMENT .................................................................................................................................. 5

I.    THE STAY AGREEMENT SHOULD BE ENFORCED ................................................. 5

II.    AUA IS ENTITLED TO A STAY OF EXECUTION ....................................................... 6

III.    AUA IS ENTITLED TO TEMPORARY RESTRAINTS ............................................... 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Accenture LLP v. Spreng,*
  2010 U.S. Dist. LEXIS 137744 (S.D.N.Y. Dec. 23, 2010) ....................................................... 9

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.,*
  No. 08 Civ. 2152, 2008 U.S. Dist. LEXIS 22026, 2008 WL 759353
  (S.D.N.Y. Mar. 20, 2008) ...................................................................................................... 9

*Butler v. Ungerleider,*
  199 F.2d 709 (2d Cir. 1952) .................................................................................................. 5

*Katz v. Feinberg,*
  No. 99 Civ. 11705, 2001 U.S. Dist. LEXIS 16116 (S.D.N.Y.
  Sept. 24, 2001) ............................................................................................................. passim

*Landis v. North American Co.,*
  299 U.S.. 238, 81 L. Ed 153, 57 S. Ct. 163 (1936) .............................................................. 5

*Skyler v. Woodruff,*
  610 F. Supp. 2d 256 (S.D.N.Y. 2009) ................................................................................... 9

**RULES**

*Fed. R. Civ. P.* 60 ......................................................................................................................... 1

*Fed. R. Civ. P.* 62 ..................................................................................................................... 1, 6

*Fed. R. Civ. P.* 62(a) .................................................................................................................... 3

*Fed. R. Civ. P.* 62(d) .................................................................................................................... 7

## PRELIMINARY STATEMENT

Respondent American University in Antigua – College of Medicine ("AUA") brings this application pursuant to *Fed. R. Civ. P.* 60(b)(6), 62 and/or the Court's inherent powers to stay enforcement of the Judgment (as amended and corrected on June 11, 2013) issued by this Court in favor of Petitioner Leeward Construction Company, Ltd. ("Leeward") because (i) Leeward agreed in writing to stay enforcement and (ii) the circumstances warrant this Court exercising its inherent authority to grant one notwithstanding the parties' agreement. Leeward having now taken steps to enforce the June 11, 2013 Corrected Amended Judgment in violation of the parties agreement, AUA is compelled to seek relief.

As set forth in the accompanying Declarations of Leonard Sclafani and Jonathan S. Jemison, Leeward and AUA entered into a binding agreement (the "Stay Agreement") that stays enforcement of Leeward's Judgment pending resolution of a separate arbitration between the parties (the "Second Arbitration") and ensures prompt payment to whichever party is ultimately entitled to a net award when considering both the Judgment and any award issued in the Second Arbitration. In consideration of the stay granted by Leeward, and in fulfillment of its obligations under the Stay Agreement, AUA obtained a payment bond that fully secures the Judgment (and more) and AUA agreed to waive its appellate rights.[1]

AUA and Leeward, through their respective counsel, spent weeks negotiating the Stay Agreement. At no time during the negotiations did the parties discuss, nor does the agreement ultimately executed by the parties provide for, any waiver, limitation or restriction of AUA's rights in the manner in which it participated in the Second Arbitration, including, but not limited

---

[1] AUA obtained the requisite bond, but has not yet withdrawn its appeal because Leeward indicated it would not honor the Stay Agreement. AUA has repeatedly told Leeward that once it abandons its attempt to renege on the Stay Agreement, AUA will withdraw the appeal consistent with its obligations under the Stay Agreement.

1

to, the right to amend its answer and counterclaims in the arbitration to add additional claims or defenses as the rules governing the arbitration allow.

Two days after the parties exchanged the fully executed Stay Agreement, however, Leeward indicated its intention to back-out of the agreement, claiming that it was deceived by AUA because AUA did not volunteer that it planned to amend its answer and counterclaims in the Second Arbitration to include a claim that Leeward was liable as the construction manager under the contract for the construction of AUA's main campus building in Antigua that contains the provision for arbitration under which the original arbitration and Second Arbitration have proceeded, for defects in construction of the project.

The merit of Leeward's belated protest is belied by documentary evidence. Leeward claimed that it never would have agreed to a stay if it knew AUA planned to pursue a counterclaim for construction defects in the Second Arbitration, however months before the parties negotiated the Stay Agreement, AUA expressly advised Leeward and the arbitrators in that arbitration, in writing, that it planned to assert such counterclaim. Yet, Leeward agreed to the stay without ever asking AUA about its intentions with respect to its construction defects counterclaim or requesting that any stay be subject to AUA waiving its rights to add any new claims or counterclaims in the Second Arbitration.

Under these circumstances, Leeward's assertion that it was somehow deceived is less than baseless. Leeward willingly entered into the Stay Agreement; it was not deceived, tricked, misled or improperly induced in any way to do so. Because Leeward has now proceeded to enforce its Judgment despite the express terms of the Stay Agreement that it freely made, it should now be ordered to comply with its obligations under that agreement. This Court should,

2

therefore, enforce the stay agreement and grant AUA relief from the Judgment by entering an Order staying execution of the Corrected Amended Judgment.

   Even if AUA and Leeward had not entered into the Stay Agreement, AUA submits the circumstances at issue here warrant the issuance of a stay.  Pending in the Second Arbitration is a dispute over AUA's reimbursement of Leeward's payment of Antigua and Barbuda Sales Tax ("ABST") that it asserted it had paid in connection with the construction of AUA's building.  For its counterclaim, AUA seeks affirmation of the project architect's currently binding ruling -- made pursuant to the claims process delineating in the applicable contract documents -- that Leeward is obligated to repay AUA EC $3,614,552.41/US $1,334,854.21 in ABST that AUA paid to Leeward during the course of the Project.  AUA contends that while Leeward invoiced and collected this sum from AUA, it never paid the sum or any part of it, directly or indirectly, to the government of Antigua and Barbuda.  Leeward has yet to prove otherwise.  AUA further claims that, even if Leeward had paid the taxes that it had collected from AUA, it is liable to repay those taxes to AUA because they were paid to Leeward in the mistaken belief that Leeward was entitled to be reimbursed for the taxes it paid in connection with the project. AUA's ABST claim alone exceeds the amount due Leeward on the Judgment.  AUA further contends that Leeward is liable for various construction defects, and is in the process of amending its counterclaims in the Second Arbitration to recover an additional US $ 974,000 in damages as a result.

   A stay of enforcement is needed until the Second Arbitration is adjudicated because Leeward has no ability to satisfy any judgment that may be awarded to AUA on its counterclaims without using the Judgment as a set-off.  Leeward, an Antiguan entity, appears to have ceased active operations and its only asset is the Judgment it holds against AUA, a fact that

Leeward has not refuted, despite numerous opportunities to do so. Absent a stay of execution, AUA believes Leeward will dissipate any monies it collects, leaving it with no ability to pay AUA should AUA prevail on its claims in the Second Arbitration. It is for this precise reason AUA sought and obtained the Stay Agreement in the first place. Given that AUA has already posted a bond fully securing Leeward, and given the harsh and inequitable consequences that may result absent a stay, AUA respectfully requests this Court exercise its inherent power to enter a stay of enforcement of the Corrected Amended Judgment.

In addition to seeking a stay of enforcement, AUA seeks temporary relief until the Court can adjudicate the merits of this application. The automatic stay of enforcement under *Fed. R. Civ. P.* 62(a) expired on June 25, 2013. AUA had hoped that Leeward would ultimately honor the Stay Agreement, but that has not happened as Leeward has now pursued enforcement in breach of the Stay Agreement. Absent entry of a temporary restraining order and/or preliminary injunction, Leeward will be free to execute on the Judgment, and, as a result, may render moot AUA's stay application before this Court ever decides it on the merits. Equity and fairness dictates avoiding such a harsh result, particularly given that Leeward's Judgment is already fully secured.

For the reasons set forth below and in the accompanying Declarations of Leonard Sclafani and Jonathan S. Jemison, AUA respectfully requests a stay of execution and the entry of temporary restraints while this Court determines the merits of application.

## STATEMENT OF FACTS

AUA incorporates by reference the Declarations of Leonard Sclafani and Jonathan S. Jemison, and the exhibits attached thereto, which provide the pertinent facts and procedural history with respect to this motion.

## ARGUMENT

### I.   THE STAY AGREEMENT SHOULD BE ENFORCED

AUA and Leeward entered into an enforceable agreement to stay enforcement of the Judgment pending resolution of the Second Arbitration. *See* Sclafani Decl., Ex. 1. The Stay Agreement, which was negotiated by counsel, is supported by valuable consideration. AUA agreed to, and did, obtain a bond to fully secure the Judgment. Sclafani Decl. Ex. 15. AUA also agreed to waive its right to appeal the Judgment and has only refrained from withdrawing that appeal for the time being because of Leeward's anticipatory breach. *Id.* ¶ 25.

Leeward's stated reason for refusing to honor the Stay Agreement is meritless. Leeward contends that AUA pulled a "bait and switch" by purportedly getting Leeward to agree to a stay pending resolution of the ABST claims, and then seeking to expand the Second Arbitration to include construction defect claims as soon as Leeward signed the Stay Agreement. The problem with Leeward's theory is that Leeward was expressly made aware, in writing, that AUA intended to assert construction defects counterclaims in the Second Arbitration long before it executed and delivered to AUA the Stay Agreement, and agreed thereunder to stay enforcement of its Judgment against AUA. Its claim that it learned of AUA's intent to advance a counterclaim for construction defects in the Second Arbitration "for the first time" after the parties executed the Stay Agreement is bunk. AUA not only notified Leeward as much in writing in February 2013, but Leeward responded in kind. Sclafani Decl. Exs. 8 and 9. Yet, at no time during the several weeks that the parties negotiated the Stay Agreement did Leeward ask AUA whether it still

intended to pursue the construction defect claims, nor did it demand that any stay be subject to AUA waiving its right to add any claims to the Second Arbitration. Jemison Decl. ¶ 15. Leeward wrongfully accuses AUA of deceit, but the reality is that it is Leeward who is guilty of bad faith in reneging on its written agreement.

Leeward is a sophisticated party represented by able counsel. It entered into the Stay Agreement knowingly and willingly, and cannot unilaterally avoid that agreement because it now has buyer's remorse. The Stay Agreement should be enforced and Leeward enjoined from taking any actions to enforce the Judgment.

## II.   AUA IS ENTITLED TO A STAY OF EXECUTION

It has long been recognized that the district courts have the inherent power to stay proceedings. *See Landis v. North American Co.*, 299 U.S.. 238, 254-55, 81 L. Ed 153, 57 S. Ct. 163 (1936); *Butler v. Ungerleider*, 199 F.2d 709 (2d Cir. 1952). The use of that power in the context of a motion to stay of execution of a money judgment in circumstances similar those present here has been expressly recognized by the Southern District of New York in *Katz v. Feinberg*, No. 99 Civ. 11705, 2001 U.S. Dist. LEXIS 16116 (S.D.N.Y. Sept. 24, 2001). Specifically, in *Katz* the district court found sufficient grounds to stay execution of the judgment it entered pending resolution of a related arbitration because, without such a stay, the judgment debtor risked losing the benefit of a contractual right of set off that would allow it to recover monies allegedly due to it by the judgment creditor. In granting the application, the district court recognized that *Fed. R. Civ. P.* 62, which governs stays of enforcement, does not expressly apply to the motion to stay execution before it. Yet, the Court determined that it could invoke its inherent powers to grant such relief if warranted. *Id.* at *5-*6.

In *Katz*, the district court confirmed an arbitration award in favor of the petitioner, Katz, and entered a money judgment against the respondent, Feinberg. Feinberg moved for a stay of

enforcement pending resolution of another arbitration between Katz and another entity that, according the Feinberg, would establish Feinberg's contractual right to withhold all or part of the judgment funds due Katz -- in effect a right of setoff. The Court temporarily stayed execution on consent pending resolution of the stay application, and ultimately ruled that a stay was warranted.

To reach that conclusion, the district court applied the factors normally employed to determine whether to grant a stay pending appeal under *Fed. R. Civ. P.* 62(d), namely "the likelihood of success on the merits of the appeal; the threat that other parties will be substantially harmed in the event of a stay; and the public interest." *Id.* at *7-*8. First, the district court found that Feinberg was likely to be successful on its right to withhold some or all of the judgment, reasoning that "it was at least possible" he would be entitled to a setoff against the money he owed Katz if the arbitrators ruled a certain way. *Id.* at *10. Second, the district court determined that if Feinberg paid out the judgment before his right to setoff was secured via the arbitration, he may be left without any other means to recoup those monies should it be determined he was entitled to a setoff, noting that the New York State taxing authority had been unable to collect on a judgment against Katz for three years. *Id.* at *11. On the other hand, Feinberg was willing to post a bond to secure the judgment if a stay were granted. Given that fact, and the fact that Katz was entitled to post-judgment interest, the district court reasoned that Katz would suffer nothing more than "inconvenience" if a stay issued. *Id.* at *12.

After weighing the relative merits of the parties' positions, the district court in *Katz* determined "fairness dictates" a stay. *Id.* at *12. Feinberg had a "cognizable claim for setoff" and a "well-founded fear" that he would be unable to collect on his claim absent a stay. *Id.* at *11. On the other hand, Katz would suffer no harm because he would be protected by a bond.

7

*Id.* at *12. A stay of execution was entered immediately and Feinberg was directed to post a bond for 110% of the amount of the Judgment then due and owing. *Id.*

A similar result is warranted here. AUA has a cognizable claim pending in arbitration to recoup US $1.3 million in ABST from Leeward that exceeds the monies due to Leeward under the Judgment entered by this Court. Sclafani Decl., ¶¶ 13-15 and Ex. 10. Following the procedure provided by contract, AUA submitted its claim, which was based on the express terms of the contract, to the Project architect, and the architect granted the claim. *Id.*, ¶ 15 and Ex. 13. The architect's decision is "final and binding," but subject to arbitration. *Id.*, ¶ 15 and Ex. 12 at § 4.4.5. In other words, until an arbitrator rules otherwise, AUA is entitled to recover these monies. Sclafani Decl., ¶ 15. In fact, given the arbitrator's ruling in AUA's favor, Leeward has, in essence, been paid its Judgment by way of set-off.

Leeward's stated substantive defense is that the contractual provision was modified by writing and/or course of conduct, but to date Leeward has not provided any legal authority under Antiguan law (the law governing the contract at issue) to support its claim. Leeward also raises several procedural defenses, including that AUA did not timely assert a claim under the Contract, despite the fact that Leeward's own claim in the Second Arbitration would be time barred but for Leeward's express assertion (to which AUA has agreed) that the arbitrators in the original arbitration had ruled that both parties were barred from asserting timeliness as a basis to defend against the other's claims due to failures of both parties to observe the provisions relating to the timing of assertion of claims and other provisions in the parties' agreement. Having asserted this ruling as supporting its rights to bring the Second Arbitration in the first instance, Leeward cannot be heard to argue that AUA is barred from raising its counterclaims involving the same subject in that same arbitration. Sclafani Decl. Ex. 2 at p. 14-15 (Section B.1 of the Award).

Leeward also claims that AUA's ABST claim is barred by *res judicata*, but the subject matter of who was responsible for ABST was not at issue or determined by the Tribunal in the original arbitration. Moreover, to the extent Leeward contends AUA's ABST claim should be barred because it could have been, but was not, raised in the prior arbitration is undermined by the fact that the Tribunal refused to adjudicate the claim relating to ABST Leeward now asserts in the Second Arbitration because it fell outside of the scope of Leeward's then-asserted claims. Leeward's *res judicata* defense, therefore, is inherently inconsistent with the claim Leeward itself is pursuing in the Second Arbitration. If Leeward can bring its claim, so too can AUA.

In addition to the contractual arguments raised by AUA, AUA contends that Leeward did not pay, directly or indirectly, some or all of the ABST collected from AUA to the Antiguan government. Sclafani Decl. ¶ 17. Leeward claims that it complied with its obligations under Antiguan law, but to date has not submitted any documentation supporting its contention, including proof that Leeward paid ABST collected on the overhead and profits it earned on the construction project or on the importation of materials and equipment needed for the construction project, all of which were subject to ABST. *Id.* Thus, regardless of whether Leeward has a defense to AUA's contract claim, absent proving it indeed paid all the ABST collected from AUA, Leeward is subject to liability.

AUA also has a very real and well-founded fear that it will never be able to recover these monies if Leeward is permitted to enforce the Judgment. As far as AUA can tell, the Judgment (and any proceeds Leeward receives upon collection) is Leeward's only asset. *Id.*, ¶ 40. In the 2000s, "one of [Leeward's] main sources of work and revenue ... was projects completed for Stanford Development Company." Sclafani Decl., Ex. 16 at ¶ 12. According to Leeward, this work generated annual revenues between US $300,000 and US $4.9 million. *Id.* But Leeward's

lucrative revenue stream ended abruptly when Stanford Development Corporation ceased operations in January 2009. *Id.* at ¶ 13 and Ex. 17 at p. 343. Leeward finished the construction project for AUA in 2010 and, since that time, AUA is unaware of Leeward engaging in any Antiguan construction projects. Sclafani Decl., ¶ 38. Rather, it appears that Leeward has not been operating its business for some time, as evidenced by the fact that the offices it operating from while working on the Project for AUA have been closed for the past few years. *Id.*

While AUA stands to be significantly, and irreparably, harmed absent a stay of execution, Leeward stands to lose nothing more than time. AUA has already obtained a bond, in accordance with the Stay Agreement, that fully secures the Judgment (and more) by paying the full amount of the premium on the bond in order to secure it and wire transferring an amount equal to the face amount of the bond to the surety who issued the bond as security. Sclafani Decl., ¶ 24. As was the case in *Katz*, this bond, which is governed by the Stay Agreement) ensures that Leeward will collect on its Judgment should it prevail in the pending arbitration. Sclafani Decl. ¶ 15. Plus, as in *Katz*, interest is running on the Judgment (at a rate of 7% per annum), and thus Leeward will be compensated for any delay.

On balance, fairness dictates a stay.

### III. AUA IS ENTITLED TO TEMPORARY RESTRAINTS

The standard for the issuance of a preliminary injunction or a temporary restraining order are well-established. The moving party must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor. *Accenture LLP v. Spreng*, 2010 U.S. Dist. LEXIS 137744, 3-4 (S.D.N.Y. Dec. 23, 2010) (citations omitted). "The Court of Appeals for the Second Circuit has defined 'irreparable harm' as 'an injury that is not remote or speculative but

actual and imminent; and for which a monetary award cannot be adequate compensation.'" *Skyler v. Woodruff*, 610 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (citations omitted). "These elements must be established by a preponderance of the evidence." *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08 Civ. 2152, 2008 U.S. Dist. LEXIS 22026, 2008 WL 759353, at *4 (S.D.N.Y. Mar. 20, 2008).

As set forth in Point I, above, AUA will be harmed absent a stay of execution and will be irreparably harmed if Leeward is able to pursue execution of the Judgment while AUA's motion for a stay is pending resolution. To put it bluntly, absent an immediate stay, AUA's stay motion could be rendered moot before it is ever heard. AUA cannot possibly undue that harm if it eventually prevails in arbitration.

AUA also satisfies the second requirement for immediate, temporary restraints. AUA is likely to succeed on the merits of its stay application for the reasons detailed above, namely because Leeward entered into a binding agreement to stay enforcement of its Judgment, and has breached that agreement by causing the clerk to issue a Writ of Execution on the Corrected Amended Judgment.

Even if Leeward were able to avoid the Stay Agreement on its specious claim that AUA deceived it, this Court has the power to grant the relief requested, as confirmed by *Katz, supra*, and the factual circumstances here are really no different than those at issue there. In both, the outcome of a pending arbitration looms large over whether the judgment debtor will have the right to setoff against the monies owed under the judgment. And although here there is no contractual right of setoff, given Leeward's financial status, that is the practical effect of what would be lost. If Leeward, which by all accounts appears to be a defunct entity whose only remaining purpose is to prosecute its claims against AUA, is able to execute on its judgment and

take the proceeds back to Antigua, AUA stands to be left without any means to recover from Leeward the US $1.3 million in ABST payments (and the additional US $ 974,000 in construction defect damages) that it is seeking to recover in the Second Arbitration.

In sum, fairness not only dictates granting AUA a stay of execution, but it also dictates allowing AUA's motion to be heard before it is rendered moot.

## CONCLUSION

This Court has the power to hold Leeward to its agreement to stay enforcement of the Corrected Amended Judgment, and the inherent power to stay enforcement to avoid an injustice. AUA will be severely harmed without a stay of execution, while Leeward risks, and loses, nothing with a stay. For the reasons set forth above, AUA respectfully requests that an order be entered staying execution of the Judgment in accordance with the terms of the Stay Agreement, and that a temporary restraining order and/or preliminary injunction be issued allowing for an immediate stay of execution pending resolution of this motion.

Dated: New York, New York
June 28, 2013

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
(212) 643-7000

By: _____
JONATHAN S. JEMISON

*Attorneys for Respondents*
*American University in Antigua – College of Medicine*