22.   Controversy:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

Panel's Decision:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.

23.   Controversy:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced timely.



24.   Controversy:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25.   Controversy:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

Panel's Decision:

This Panel finds that Peter McLeod's testimony is not that of an expert witness. Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record.   However, this Panel considered as factual the testimony

13

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26.  Controversy:

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

   Panel's Decision:

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

B.   RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:

1.   Controversy:

Is Leeward barred from seeking to be paid EC.$1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

   Panel's Decision:

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2.   Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

  Panel's Decision:

*See Panel's Decision to Controversy 1, supra.*

3.   Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

    a) Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? Or

    b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? Or

    c) Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

Panel's Decision:

This Panel will not exclude any claim under the sole contention of timeliness. Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4.   Controversy:

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?

Panel's Decision:

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5.   Controversy:

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

Panel's Decision:

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract; therefore, this Panel will not exclude

16

any claim under the sole contention of timeliness. The evidence also showed that Leeward in many instances notified AUA of its claims, even though it was not in the manner set forth in the Contract. Therefore, the Panel finds that Leeward is entitled to receive compensation for work performed; however, with regard to the Flooring Work, which is part of the Separate Contracts, same is not subject to this Arbitration.

6.   Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Flooring Work that AUA deleted from Leeward's scope of work on the ground that AUA did not document the deletion of this work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

Panel's Decision:

The Panel finds that the Separate Contracts are not subject to this Arbitration. Therefore, this Panel will not grant remedies for the Flooring Work.

7.   Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Flooring Work (EC $1,741,032. * 18% = EC $313,385.76) for one or more of the following separate reasons:

a) Because Leeward asserted this new alternative claim for the first time in its post-trial submissions, in violation of CIAR R-6(b), thereby depriving AUA of a fair opportunity to proffer a defense? Or

b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim on April 21, 2009 and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 20, 2012 Proposed Findings of Fact and Conclusions of Law? Or

17

c)  Because the new alternative claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance against each other regarding the terms of the Contract under the sole contention of timeliness and, therefore, will consider all claims brought without regard to timeliness. However, this Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, but not for the Flooring Work, which was given to Leeward under a Separate Contract.

8.    Controversy:

Even if Leeward had initiated its alternative claim for overhead and profit on the Flooring Work timely under the Contract Documents and the CIAR, is Leeward entitled to be paid EC $313,385.76 in overhead and profit on the Flooring Work given that Leeward entered into a separate contract with AUA on July, 2009 to perform this work, and was paid under the terms of that separate contract?

Panel's Decision:

No.  Refer to Panel's Decision in Section VI. (B-7), above.

9.    Controversy:

There is no decision to render with respect to the Modified Work Delta of negative EC $14,294.10.  Leeward is not seeking to recover any money reflected in this delta, which reflects that Leeward was paid more by seeking payment for work "as built" and in accordance with the "final measure" that it would have received had it been paid based upon the measurements in the initial Bills of Quantities.

18

Panel's Decision:

This Panel finds that Controversy number 9, as stated by AUA, does not require the Panel's decision for it does not constitute a claim. In the alternative, the Panel finds the claim to be inadmissible and therefore, dismissed and denied.

10. Controversy:

Is Leeward barred from pursuing its May 11, 2009 Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 (the difference between the EC $5,891,857.68 in Preliminaries sought by Leeward and the EC $4,936,303.60 approved and paid by AUA) because it failed to initiate the claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits that it was aware on January, 2009 that it was not going to complete its work within the Contract Time?

Panel's Decision:

No. Although this Panel finds that both parties were not in strict compliance with the Contract and Contract documents, Leeward is not barred from its claim regarding the responsibility for delays and substantial completion. Consequently, this Panel finds AUA responsible for 50% of the Additional Preliminaries amounting to EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Is Leeward barred from pursuing its Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the Claim accrued in January 2009 and Leeward waited until February 3, 2011 – 25 months later – to commence arbitration?

19

Panel's Decision:

No. *Refer to Panel's Decision in Controversy number 10, above, where the controversy relative to the Additional Preliminaries is resolved.*

12.   Controversy:

Even if Leeward had initiated its Claim for Additional Preliminaries timely and commenced arbitration in a reasonable amount of time, is Leeward entitled to Additional Preliminaries based upon the ground asserted in its May 11, 2009 Claim, *i.e.*, that it had been denied access to a $500,000.00 (EC $1,350,000.02) set aside for Non-Productive Overtime, given the absence of any evidence that such an account was agreed to by the parties or that the alleged lack of access to overtime impacted the critical path and caused the damages asserted?

Panel's Decision:

Yes. *Refer to the Panel's Decision in Controversy number 10, above.*

13.   Controversy:

Aside from the Claim for Additional Preliminaries based on the alleged denial of Non-Productive Overtime initiated on May 11, 2009, did Leeward timely initiate any other claims for an extension of the Contract Time or an increase in the Contract Sum for the Additional Preliminaries in accordance with Section 4.3 of the General Conditions based on any other alleged theory of delay?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness. AUA shall refer to the Award as to claims granted, on pages 31-32.

14.    Controversy:

If so, did Leeward establish that each such claim for delay satisfied each of the following elements:  (a) caused by AUA; (b) impacted the critical path; and (c) resulted in a specific loss of time or amount of damages?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.  However, the numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal fault for each party regarding the delays in the substantial completion.  Moreover, AUA shall refer to the Award on pages 31-32, as to the claims granted.

15.    Controversy:

Is Leeward barred from seeking to be paid EC $190,210.19 more than the EC $1,232,008.91 it was already paid for additional work it documented as "Change Orders" in the monthly payment applications because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

The Panel finds that Leeward is entitled to payment for all work performed under the Contract subject to this Arbitration, without consideration to the timeliness of the claims.

16.    Controversy:

Even if Leeward had timely initiated a claim to be paid an additional EC $190,210.19 for Change Order work, is Leeward entitled to be paid this money given that Leeward did not

21

make a demand for payment contemporaneous with the payment of its Draft Final Account and given that Leeward did not otherwise submit evidence to substantiate its right to payment?

<u>Panel's Decision:</u>

From the evidence presented at trial, the Panel finds that Leeward is entitled to the additional EC $190,210.19. Consequently, the Panel grants Leeward's claim for EC $190,210.19.

17.    <u>Controversy:</u>

Is Leeward barred from pursuing its claim to recover EC $19,475.40 for the Whitsuntide Holiday because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on June 1, 2009 and Leeward waited until February 3, 2011 – 21 months later – to commence arbitration?

<u>Panel's Decision:</u>

The Panel finds that Leeward is not barred from any of its claims based on timeliness. However, claims pertaining to delays in the completion of the Project are subject to the Panel Decisions in *Section VI. (B-14) and (B-15), above.*

18.    <u>Controversy:</u>

Even if Leeward had commenced arbitration in a reasonable amount of time, is Leeward entitled to EC $19,475.40 in damages for closing the construction site on June 1, 2009 for the Whitsuntide Holiday given that the holiday occurred after the May 14, 2009 deadline for Leeward to complete its work under the Contract Documents?

<u>Panel's Decision:</u>

No. Refer to the Panel's Decision in *Section VI. (B-14), above.*

19. <u>Controversy:</u>

Is Leeward barred from seeking payment for an additional EC $162,372.12 in "claims" out of the EC $181,847.52 sought in the Amended Demand for Arbitration because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 – 14 months later?

<u>Panel's Decision:</u>

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in the Award on page 31.

20. <u>Controversy:</u>

Even if Leeward had timely initiated a claim, is Leeward entitled to recover an additional EC $162,372.12 in "claims" given that Leeward was already paid that precise amount, EC $162,372.12, for these identical "claims," as confirmed by the Draft Final Account submitted by Leeward, certified by the Architect, and paid by AUA?

<u>Panel's Decision:</u>

This Panel finds that Leeward was rightfully paid for extra work, and for the "claims" (adverse weather and holiday) for a total of EC $1,232,008.91 in Change Orders and EC $162,372.12 in "Claims" paid in the Draft Final Account.

21. <u>Controversy:</u>

Is Leeward barred from seeking EC $1,000,000 allegedly due and owing from the Cash Allowance portion of the Contract Sum because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that

23

Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Award.

22.    Controversy:

Even if Leeward had timely initiated such a claim, is Leeward entitled to recover EC $1,000,000 from the Cash Allowance component of the Initial Contract Sum for contingent costs, including craneage, scaffolding and overtime, given that the EC $2,262,166.51 that Leeward billed for and received for such contingent costs includes the EC $1,000,000 allocated to contingent costs in the EC $27,436,824 Contract Sum, which Leeward uses as costs?

Panel's Decision:

This Panel finds that Leeward is not entitled to its claim for Cash Allowance because the evidence received and considered demonstrated to the Panel that, Leeward was paid EC $2,262,166.51 in Cash Allowance, with included the EC $1,000,000.00 claim.

23.    Controversy:

Is Leeward barred from pursuing to recover overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA from Leeward's scope of work because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

Panel's Decision:

This Panel finds that Leeward is barred from pursuing the overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA because such work was then given to Leeward under a Separate Contract and, therefore, is not subject to this Arbitration. Refer to the Panel's Decision in Section V. *(2)*.

24.    Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Doors and Windows Work, is Leeward entitled to recover EC $34,396.20 as and for its overhead and profit on this work given that the unit rates contained in the initial Bills of Quantities were "provisional sum rates" and given that Leeward entered into a separate contract with AUA in July 2009 to perform this work?

Panel's Decision:

*No.  Refer to Panel's Decision in Controversy number 23, above.*

25.    Controversy:

Is Leeward barred from pursuing its claim to recover overhead and profit on the EC $1,735,589 in Painting Work deleted by AUA from Leeward's scope of work because Leeward failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Final Award.



25

26. Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Painting Work, is Leeward entitled to recover EC $312,406.02 as and for its overhead and profit on this work given that Leeward would have incurred more in liquidated damages had the Painting Work not been removed from Leeward's scope of work than it seeks to recover in overhead and profit for this work?

Panel's Decision:

Yes. *Refer to the Panel's Decision in Section VI. (A-7).*

27. Controversy:

Is Leeward barred from seeking to recover monies allegedly due and owing under the Separate Contracts in the arbitration for either of the following separate reasons:

> a) Claims under the Separate Contracts are not arbitrable because AUA did not agree to arbitrate them; Or
>
> b) In the event Leeward's payment claims under the Separate Contracts fall within the scope of the arbitration provision (Section 4.6.1 of the General Conditions), because Leeward failed to initiate any claims within 21 days of their accrual in accordance with Section 4.3 of the General Conditions.

Panel's Decision:

Yes. This Panel finds in favor of AUA in that works that were performed under Separate Contracts are not subject to this Arbitration

28. Controversy:

Even if Leeward's claims under the Separate Contracts are subject to arbitration, and even if Leeward had initiated claims timely, has Leeward established that AUA only paid Leeward EC $1,359,035.40, in the aggregate, on the Separate Contracts and owes it an additional EC $202,943 on these contracts based upon the proposed contract amounts, particularly considering the evidence presented by AUA that Leeward was to be paid as per actual work (not the proposed amounts), and that Leeward was paid EC $1,452,261.32 for that work?

26

<u>Panel's Decision:</u>

No.  See *Panel Decisions in Section VI. (A-7 and (B-2)*.

29.    <u>Controversy:</u>

Is Leeward entitled to an award for the EC $590,083 that AUA holds as retainage given that Leeward has not provided evidence that it satisfied its obligations under Section 9.10.2 of the General Conditions to provide "an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered have been paid or otherwise satisfied."?

<u>Panel's Decision:</u>

This Panel finds that the only issue regarding the retainage is the submittance by Leeward to AUA of the required documents.  Therefore, this Panel hereby Orders Leeward to comply with Section 9.10.02 of the General Conditions, as applicable to the particular Project within the term provided in the Award on pages 31-32 and, thereafter, AUA must pay the remaining 2.5% of the Contract Sum equal to EC $590,083.00, without interest, if paid within the time allowed.

30.    <u>Controversy:</u>

Should the mutual accounting mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $83,059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover this amount?

Panel's Decision:

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having it been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, we conclude that this issue should be resolved outside of the context of this Arbitration.

31.   Controversy:

Is Leeward entitled to an award of interest for any portion of Leeward's EC $6,701,390.33 demand? If so, when should interest begin to run given Leeward's long delay in commencing arbitration on the three claims it actually initiated during the Project (*i.e.*, Additional Preliminaries, Whitsuntide Holiday and Overhead and Profit on the Painting Work and Doors and Windows Work) and given Leeward's failure to identify the remainder of its claims until filing its Amended Demand for Arbitration dated October 14, 2011?

Panel's Decision:

This Panel finds that Leeward is entitled to the claims recognized in this Award as herein stated. These claims shall accrue interest at the rate of 7% per annum, since the date of termination of the Project, October 31, 2009, as determined by the Panel; except for those claims that are specifically without interest.

32.   Controversy:

Did Leeward establish that AUA failed to pay one or more monthly payment applications timely, and if so, then what is the date of each such late payments and is Leeward entitled to an award of interest on any alleged late payments?

Panel's Decision:

Yes. *See Panel's Decision in Controversy (A-3) in Section VI.*

28

33.    Controversy:

Is Leeward entitled to an award of interest on any allegedly late mobilization payments, or were its claims with respect to this issue settled in January 2009 as set forth in AUA Ex. 67 at AUA 003269?

Panel's Decision:

The Panel finds that the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009.

34.    Controversy:

To the extent Leeward is awarded any interest, should the rate of interest equal the statutory judgment rate in Antigua of 5%, given that the Contract Documents refer to the "legal rate" in Antigua?

Panel's Decision:

The Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under Section 13.6.1 of the Contract and General Conditions as of October 3, 2009. However, this Panel finds that the interest shall be calculated at 7% per annum.

35.    Controversy:

Is Leeward entitled to recover any of its legal fees and expenses in prosecuting its claims or in defending AUA's counterclaim for Liquidated Damages?

Panel's Decision:

Upon careful consideration and considering that both parties were equally at fault (Leeward 50% - AUA 50%) regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise. Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

29

36.   Controversy:

Is AUA entitled to an award of Liquidated Damages in the amount of US $117,000.00 based upon Leeward's failure to achieve Substantial Completion within the Contract Time, but instead doing so 78 days later?

  Panel's Decision:

After a careful analysis and evaluation of the witness statements as well as the evidence presented to the Panel, we find that both parties shared responsibilities for the project delays and, consequently, Leeward is responsible for 50% of the Liquidated Damages in the amount of EC $ 157,950.00[2], and such amount is hereby granted in favor of AUA.

37.   Controversy:

Is AUA entitled to setoff Liquidated Damages from the retainage it currently holds?

  Panel's Decision:

No.  The Panel finds neither spurious allegations in Leeward's claims, nor intentional wrongdoing to award damages to AUA.  Consequently, AUA is denied its claim to setoff Liquidated Damages.

38.   Controversy:

Is AUA entitled to recover any of its legal fees and expenses in defending the claims asserted by Leeward and in prosecuting its counterclaim for Liquidated Damages?

  Panel's Decision:

Upon careful consideration and considering that both parties were at fault regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as

---

[2] As per AUA's counterclaim for Liquidated Damages, the amount was expressed in US dollars and not EC dollars, therefore, considering the current currency conversion, said amount was calculated at $315,900.00 of which 50% is granted to AUA for $157,950.00.

provided under the laws of Antigua or otherwise. Each party shall bear their own attorneys'
fees, arbitration expenses and such the like.

## AWARD

Accordingly, we ORDER and AWARD as follows:

1. Within thirty (30) days from the date of issuance of this Final Award Respondent
AUA shall pay to Claimant Leeward the following amounts:

| a) Interest on the Payments Due and Unpaid | EC $44,617.37 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. |
|---|---|---|
| b) Damages | EC $232,670.13 | This sum shall accrue interest of 7% per annum from the date of issuance of this Final Award. |
| c) Overhead and Profit for work deleted, omitted or modified | EC $802,399.25 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009. |
| d) Additional Preliminaries | EC $477,777.04 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009. |
| e) Change Order Work | EC $190,210.19 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009. |
| f) Retainage | EC $590,083.00 | This sum shall not accrue any interest. Leeward shall submit to AUA all contractually required documentation as set forth in Section 9.10.2 of the General Conditions. Leeward will have a term of not more than 30 calendar days from the date of issuance of this Final Award to submit said documentation. Once Leeward has submitted all required documentation accordingly, AUA shall release the retainage in a term not to exceed 30 calendar days, upon after which such amount shall start accruing interest at the rate of 7% per annum. If Leeward fails to comply with Section 9.10.2. of the General Conditions in the time hereby stated and granted the claim for such amount will be considered |

31

relinquished. Considering that this case is sub-judice, the herein referred notice may be made by counsel for Leeward to counsel for AUA, or by Leeward to AUA.

2. As per AUA's counterclaim for Liquidated Damages, this Panel grants 50% of such in the amount of EO $157,950.00, which will accrue interest at the rate of 7% per annum from the date of this Final Award.

3. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling $17,550.00 shall be borne by the parties as incurred. The compensation and expenses of the Panel totaling $151,992.75 shall be borne by the parties as incurred.

4. The terms of this Final Award shall be complied within thirty (30) days from the date of this Final Award.

This Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Per the arbitration clause, the location of the arbitration is Antigua; however, the parties jointly agreed for the Hearings to be held in Isla Verde, Puerto Rico. We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Isla Verde, Puerto Rico, on June 22, 2012, amended *nunc pro tunc* on this 8 day of August, 2012.

32

8/8/2012
Date

Jorge R. Jiménez, Esq.
Panel Chairman

8/8/2012
Date

Héctor M. Varela, P.E.
Arbitrator

8/8/2012
Date

José R. Capó, Esq.
Arbitrator

State of Puerto Rico
County of San Juan      Affidavit # 301

On this __8__ day of August, 2012 before me personally came and appeared Jorge R. Jiménez, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8/8/2012
Dated

Notary Public

State of Puerto Rico      Affidavit # 302
County of San Juan

On this __8__ day of August, 2012 before me personally came and appeared Héctor M. Varela, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8/8/2012
Dated

Notary Public

State of Puerto Rico      Affidavit # 303
County of San Juan

On this __8__ day of August, 2012 before me personally came and appeared José R. Capó, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8/8/2012
Dated

Notary Public



33



301



#302



#303

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
COUNTY OF DUTCHESS   ) ss:

    MELINDA L. BENANTI, being sworn says:  I am not a party to the action, am over 18 years of age and reside at Marlboro, New York.

    On  February 7, 2013, I served the within Demand for Arbitration with arbitration clause  by depositing a true copy thereof, enclosed  in a post-paid wrapper, sent in an official depository under the exclusive care and custody of:

**VIA INTERNATIONAL FEDERAL EXPRESS**
A.S. Nagesh
Sundaram Architects Pvt. Ltd.
No. 19 Kumara Krupa Road
Bangalore – 560001
India

**V IA U. S. POSTAL SERVICE**
**CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Neal S. Simon, President
American University of Antigua,
College of Medicine
c/o Manipal Education Americas, LLC,
Agent for American University of Antigua, College
of Medicine
Kasturba Medical College International Center
One Battery Park Plaza, 33rd Floor
New York, New York 10004

**V IA U. S. POSTAL SERVICE**
**CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Leonard Sclafani, Esq.
American University of Antigua,
College of Medicine
c/o Manipal Education Americas, LLC,
Agent for American University of Antigua, College
of Medicine
Kasturba Medical College International Center
One Battery Park Plaza, 33rd Floor
New York, New York 10004

MELINDA L. BENANTI

Sworn to before me on the 7th
day of February, 2013.

Notary Public

*Carol A. Verdis*
*NOTARY PUBLIC, State of New York*
*No. 01VE5037251*
*Qualified in Dutchess County*
*Commission Expires May 6, 2015*

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CONSTRUCTION INDUSTRY ARBITRATION RULES
ANSWER AND COUNTERCLAIM

TO: Leeward Construction Company, Ltd.
 c/o Lewis & Greer, P.C.
 Attorneys for Claimant
 510 Haight Avenue
 Poughkeepsie, New York 12603

Re: 50 110 T 00118 13
 Leeward Construction Corp. v. American University of Antigua College of
Medicine

PLEASE TAKE NOTICE that American University of Antigua College of Medicine
hereby answers the Statement of Claim of Leeward Construction Company, Ltd. and
Counterclaims as follows:

 Claimant claims entitlement to EC$83,059.56/US$30,762/80 which said sum
derives from an alleged "mis-tabulation as Antigua and Barbuda Sales Tax ("ABST")
during the requisition process.
 There is no issue that the sum was paid to Leeward. The claim here is that the
sum was paid as reimbursement for ABST that AUA allegedly owed to Leeward, but
was subsequently added to the amount that was paid to Leeward as a progress
payment so that, when Leeward was paid on the following requisition, the amount
allegedly "mis-tabulated" was deducted from that requisition leaving Leeward short
on the payment of the requisition in the amount of the sum above stated.
 AUA asserts herein, first, that Leeward has not provided any evidence that it
actually paid the Government of Antigua and Barbuda the ABST in connection with
the requisition at issue or in connection with any prior or subsequent requisition.
 AUA further asserts that, even if Leeward establishes that it paid this, or any
other amount of ABST, it was its responsibility and obligation to do so under the
terms of the parties contract, such that the amount that Leeward was paid for the
requisition at issue was correctly added to the amount of its progress payment.
Leeward was not entitled to a separate or additional payment for reimbursement of
ABST.
 AUA further asserts by way of a defense and a counterclaim that it paid ABST to
Leeward in addition to, and not as a part of its progress payments in all but the one
from which Leeward's claim herein originates in the sum of EC$3,614,552.41 as a
result of error, mis-tabulation and mutual mistake, despite that Leeward provided
no proof of payment of the tax and, in any event, was, itself, obligated to pay the tax
without reimbursement by AUA.
 Lastly, AUA asserts that it submitted its claim for a reimbursement of the said
sum to the Project Architect, R. Sundaram, Sundaram Architects as required by the
parties contract; and that the Project Architect has approved the claim. AUA is
therefore entitled to this sum. (see the attached correspondence)

In this regard, AUA states the following:

Section 3.6.1 of the General Conditions to the Contract, entitled "Taxes," unambiguously obligates the Contractor, Leeward, to "pay sales, consumer, use and similar taxes for the Work provided by the Contractor … ." This obligation plainly includes the Antigua and Barbuda Sales Tax ("ABST"). Notwithstanding this clear mandate, as evidenced by the payment applications submitted by Leeward (*e.g.,* Ex. A to Leeward's December 21, 2012 letter to the Project Architect), throughout the Project Leeward charged AUA ABST at a rate of 15% for all the work Leeward performed on the Project. As the invoices AUA approved for payment reflect, AUA paid the ABST charged by Leeward. See Ex. 1, hereto. Our records reflect that Leeward wrongfully charged, and AUA mistakenly paid, no less than EC $3,614,552.41 in ABST. Accordingly, AUA is entitled to a ruling that Leeward was obligated to pay ABST, and Leeward, in turn, is therefore obligated to reimburse AUA for all the ABST it collected from AUA.

In its November 20, 2012 claim, Leeward contends that AUA conceded during a prior arbitration that it was obligated to pay Leeward EC $83,083.24 in progress payment, because that payment was a payment for ABST in connection with Payment Requisition No. 22 and wrongfully applied. However, Leeward's claim for this money, and the alleged concession made by AUA's counsel during opening arguments at the prior arbitration, are both premised on the mistaken belief that AUA was responsible to pay ABST and on the assumption to Leeward actually paid Antigua EC $ 83,083.24 for the ABST collected at that time.[1]

As set forth in Leeward's December 21, 2012 supplemental submission to the Project Architect on its claim herein, what the parties called at the arbitration the "ABST Error" and what Leeward has now labeled a "mis-tabulation" was a product of the manner in which Leeward tracked payments on the Project. Generally speaking, Leeward issued monthly payment applications for the work it completed on the Project since the last payment application, which amounts were based upon measuring the work done and applying the predetermined unit rates set forth in the Bill of Quantities that was made a part of the Contract. Leeward's payment application would calculate the amount earned to date for its Work and then subtract the total amount that had been paid to date. Leeward would then bill AUA for this difference, separately charge AUA 15% in ABST and request payment for the sum. AUA would then pay the sum, including ABST.

Leeward would determine how much had been paid to date by keeping a running tally of the prior progress payments, exclusive of ABST, which it submitted with its payment applications. With respect to the EC $ 83,083.24 ABST payment at issue, Leeward, according to its claim, mistakenly recorded the total amount paid by AUA, including ABST, in its running tally. As a result, when Leeward issued the following payment application, the amount of money Leeward reflected as having been paid by AUA in prior progress payments was EC $ 83,083.24 more than it should have been.

---

[1]   AUA's wrongful payment of ABST, in general, was not at issue in the prior arbitration.

The so-called concession was simply an acknowledgment of this alleged error and by implication assumed that AUA was obligated to pay the misapplied ABST in the first place, nothing more.  Because, as demonstrated above, AUA was not obligated to pay ABST, Leeward's misapplication of the money serves to reimburse AUA for a small fraction of the ABST Leeward wrongfully collected.

In sum, AUA respectfully requests that Leeward's claim be denied and that an award issue in AUA's favor declaring for the amount of the ABST that Leeward was wrongfully paid; to wit, EC $3,614,552.

Dated:  February 27, 2013
         New York, New York

American University of Antigua College of Medicine

By: _____
      Leonard A. Sclafani, Esq.
      Law Offices of Leonard A. Sclafani, Esq.
      Attorneys for Respondent AUA
      One Battery Park Plaza, 33rd Fl.
      New York, New York 10004
      (Tel.) 212-696-988
      email:  l.a.s@mindspring.com

**ABST Payments**

$50,075.05
$65,398.08
$36,694.52
$36,586.04
$46,519.90
$120,969.00
$176,431.68
$70,116.02
$9,666.98
$143,779.67
$137,766.27
$409,676.77
$550,835.46
$230,721.53
$410,551.87
$415,282.54
$196,410.71
$209,080.45
$190,590.53
$83,083.24
$8,586.66
$15,729.44
**$3,614,552.41**



# SUNDARAM ARCHITECTS PVT. LTD.

ARCHITECTURE • ENGINEERING • PLANNING • INTERIORS • SERVICES

Fax : 001-845-454-3315                                    Date : 27.02.2013

### *Kind attn: Veronica A. McMillan.*

M/s. Lewis & Greer, P.C.
Attorneys at Law,
510 Haight Avenue,
POUGHKEEPSIE,
NEW YORK 12603, USA

Dear Sirs,

### Leeward Claim with respect to ABST

It is verified that AUA paid the ABST charged by Leeward. The amount is $3,614,552.41

As per contract Leeward has to pay all taxes including ABST.

It is a fact that AUA has paid Leeward ABST taxes although Leeward should pay the taxes.

Please advise Leeward to return the ABST collected from AUA to AUA.

Thanking you,

Yours faithfully,
For Sundaram Architects Pvt. Ltd.

R. SUNDARAM



#19, Kumara Krupa Road, Bangalore - 560 001, India
Tel  : +91 (0)80 2238 0701 / 2238 0702 / 2238 0703
Fax : +91 (0)80 2225 2339   Email : edp@sundaramarchitects.com

SUNDARAM CONSULTANTS
GROUP

**ABST Payments**

$50,075.05
$65,398.08
$36,694.52
$36,586.04
$46,519.90
$120,969.00
$176,431.68
$70,116.02
$9,666.98
$143,779.67
$137,766.27
$409,676.77
$550,835.46
$230,721.53
$410,551.87
$415,282.54
$196,410.71
$209,080.45
$190,590.53
$83,083.24
$8,586.66
$15,729.44
**$3,614,552.41**